Robert P. Goe – State Bar No. 137019
Reem J. Bello – State Bar No. 198840
**GOE FORSYTHE & HODGES LLP**
17701 Cowan, Building D, Suite 210
Irvine, CA 92614
Email: rgoe@goeforlaw.com
       rbello@goeforlaw.com
Telephone:  (949) 798-2460
Facsimile:   (949) 955-9437

Attorneys for American Open Space
Remedies, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>AMERICAN OPEN SPACE REMEDIES, LLC,<br><br>Debtor and Debtor-in-Possession. | Case No.  8:24-bk-12885-SC<br><br>Chapter 11 Proceeding<br><br>**DEBTOR'S DISCLOSURE STATEMENT DESCRIBING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION DATED MARCH 7, 2025; DECLARATION OF SCOTT KRENTEL IN SUPPORT THEREOF**<br><br><u>Disclosure Statement Hearing:</u><br>Date:            May 7, 2025<br>Time:            1:30 p.m.<br>Courtroom:    5C<br>                   U. S. Bankruptcy Court<br>                   411 West Fourth Street<br>                   Santa Ana CA 92701 |

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 6

    A.    General Disclaimers and Information ................................................. 8

    B.    Deadlines For Voting and Objecting; Date of Confirmation Hearing ................. 9

II. BACKGROUND AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE
................................................................................................................... 11

    A.    Description and History of the Debtor's Properties ............................. 11

    B.    Significant Events During the Case ................................................. 13

    C.    Bar Date and Claims Against The Estate .......................................... 15

    D.    Adversary Proceedings and Other Claims/Litigation........................... 16

III. FINANCIAL INFORMATION OF THE DEBTOR ...................................... 16

IV. SUMMARY OF THE PLAN OF REORGANIZATION ................................ 17

    A.    Classification of Claims .................................................................. 17

    B.    Treatment of Unclassified Claims under the Plan................................ 18

    C.    Treatment of Classified Claims and Interests Under the Plan............... 21

    D.    Disputed Claims ............................................................................ 24

    E.    Allowed Claims and Interests ......................................................... 25

    F.    Reservation of Rights to Object to Claims......................................... 25

V. MEANS OF IMPLEMENTING THE PLAN ................................................... 25

    A.    Funding for the Plan....................................................................... 26

    B.    Operations After the Occurrence on the Effective Date....................... 26

    C.    Provisions Governing Distributions ................................................. 28

VI. OTHER PLAN PROVISIONS ....................................................................... 35

VII. TAX CONSEQUENCES OF THE PLAN .................................................... 42

VIII. CERTAIN RISK FACTORS OF THE PLAN TO BE CONSIDERED ...... 44

IX. CONFIRMATION REQUIREMENTS .......................................................... 46

    A.    Classification and Treatment of Claims and Interests........................... 47

    B.    Who May Vote to Accept or Reject the Plan .................................... 48

    C.    Cramdown: Treatment of Non-Consenting Classes............................ 50

    D.    Liquidation Analysis/Best Interests Test........................................... 50

    E.    Feasibility .................................................................................... 53

X. EFFECT OF CONFIRMING THE PLAN ...................................................... 53

    A.    Revesting Of Property In Debtor .................................................... 53

    B.    Property Free and Clear of Claims................................................... 53

    C.    Limitation of Liability.................................................................... 53

    D.    No Liability for Solicitation or Participation. .................................... 54

    E.    Corporate Actions ......................................................................... 54

    F.    Post-Confirmation Injunctions ....................................................... 55

    G.    Modificaiton of Plan...................................................................... 56

    H.    Post-Confirmation Status Report .................................................... 56

I.    Quarterly Fees ............................................................................................................ 56
J.    Post-Confirmation / Pre-Effective Date ...................................................................... 56
K.    Post-Confirmation Conversion/Dismissal .................................................................. 57
L.    Final Decree ................................................................................................................ 57

**XI. RECOMMENDATION AND CONCLUSION ................................................................ 57**

**TABLE OF DISCLOSURE STATEMENT EXHIBITS**

<u>**Exhibit**</u>      <u>**Title**</u>

| Exhibit | Title |
| --- | --- |
| 1 | Debtor's Chapter 11 Plan of Reorganization Dated March 7, 2025 |
| 2 | Site Plan map |
| 3 | Site Plan map |
| 4 | Summary Pages of Appraisal |
| 5 | State Court Lawsuit |
| 6 | Claims Register |
| 7 | Liquidation Analysis |

**SUMMARY INFORMATION**[1]

| | |
|---|---|
| Debtor: | American Open Space Remedies, LLC, a California limited liability company |
| **Recommendation:** | **The Debtor recommends that you vote in favor of the Plan.** |
| Vote Required to Accept the Plan: | Acceptance of the Plan requires an affirmative vote of two-thirds in amount and a majority in number of the Allowed Claims actually voted in each Class of Impaired Claims entitled to vote. Entities holding Claims in Classes 3 and 4 are Impaired and entitled to vote. Classes 1 and 2 are Unimpaired and not entitled to vote. If any of these Classes reject the Plan, however, the Bankruptcy Court nevertheless may confirm the Plan if the "cramdown" requirements of Bankruptcy Code section 1129(b) are satisfied with respect to such Class. |
| Voting Information: | If you are entitled to vote, you should have received a Ballot with this Disclosure Statement. After completing and signing your Ballot, you should return it by mail or fax to: |

> Goe Forsythe & Hodges LLP
> Attn: Robert P. Goe
> 17701 Cowan, Suite 210
> Irvine, CA 92614
> Fax: (949) 955-9437

For your Ballot to be counted, it must be *received* not later than 5:00 p.m. Pacific Standard Time on [Date Not Yet Set].

| | |
|---|---|
| Treatment of Claims: | The treatment that Creditors will receive if the Bankruptcy Court confirms the Plan is set forth in the Plan and only summarized in this Disclosure Statement. The terms of the Plan are controlling, and all Creditors and interested parties are urged to read the Plan in its entirety. |
| The Effective Date: | The Effective Date of the Plan shall be the date fifteen days following the entry of the Confirmation Order (which Confirmation Order shall be a Final Order) and the later of date of the close of escrow on either: (i) the sale of the Beaumont Property; (ii) refinance of the Beaumont Property; or (iii) joint venture on the |

---

[1] Capitalized terms not otherwise defined in this Disclosure Statement have the meanings ascribed to them in the Plan, a true and correct copy of which is attached hereto as **Exhibit 1**. The Plan, once confirmed, is the legally binding document regarding the treatment of Claims against the Debtor and the terms and conditions of the Debtor's reorganization. Accordingly, to the extent that there is any inconsistency between the terms contained herein and those contained in the Plan, the terms of the Plan will govern.

Beaumont Property.

Questions:    All inquiries about the Plan and Disclosure Statement should be in writing and should be sent to:

Goe Forsythe & Hodges LLP
Attn: Robert P. Goe
17701 Cowan, Suite 210
Irvine, CA 92614
Fax: (949) 955-9437
Email: rgoe@goeforlaw.com

**IMPORTANT NOTICE:**    **THE PLAN, DISCLOSURE STATEMENT, AND BALLOT CONTAIN IMPORTANT INFORMATION THAT IS NOT INCLUDED IN THIS SUMMARY. THAT INFORMATION COULD MATERIALLY AFFECT YOUR RIGHTS. YOU SHOULD THEREFORE READ THE PLAN, DISCLOSURE STATEMENT, AND BALLOT IN THEIR ENTIRETY. YOU ALSO SHOULD CONSULT WITH YOUR LEGAL AND FINANCIAL ADVISORS BEFORE VOTING ON THE PLAN.**

## I.    INTRODUCTION

The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on November 8, 2024 ("Petition Date"), thereby commencing the instant bankruptcy case ("Case"). The Case is pending before the Honorable Scott Clarkson, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("Bankruptcy Court") under case number 8:24-bk-12885-SC.  Pursuant to Bankruptcy Code sections 1107 and 1108, the Debtor is managing its affairs as a debtor and debtor in possession.

The Debtor is the plan proponent and has filed the Plan that is attached to this Disclosure Statement as **Exhibit 1**.  The Plan contemplates that the Debtor will administer its assets and distribute the proceeds and funds on hand to its Creditors on account of Allowed Claims and Interest Holders in accordance with the priorities set forth in the Bankruptcy Code.  The Debtor will continue to be managed by its current management following the Effective Date of the Plan. **THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ACCOMPANYING PLAN**.  The Plan sets forth the manner in which the Claims against the Debtor will be treated if the Plan is confirmed by the Court and the Effective Date occurs.

\\\

This Disclosure Statement provides background information on the Debtor and its Case, describes certain aspects of the Plan, and discusses other related matters.

For a complete understanding of the Plan, you should read this Disclosure Statement, the Plan, and the exhibits in their entirety.  To the extent of any conflict or discrepancy between the Plan and the Disclosure Statement, the Plan will control.  Where a particular word or a phrase is capitalized in this Disclosure Statement, that word or phrase has the meaning provided in Section 2.1 (Definitions) of the Plan.

This Disclosure Statement sets forth the assumptions underlying the Plan, describes the process that the Court will follow when determining whether to confirm the Plan, and describes how the Plan will be implemented if it is confirmed by the Court and the Effective Date occurs. Bankruptcy Code section 1125 requires that a disclosure statement contain "adequate information" concerning a plan of reorganization.

**THE BANKRUPTCY COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT.  THEREFORE, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  IF THE COURT LATER CONFIRMS THE PLAN AND THE EFFECTIVE DATE OCCURS, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL PARTIES IN INTEREST IN THIS CASE, INCLUDING CREDITORS AND INTEREST HOLDER OF THE DEBTOR. CONVERSELY, IF THE PLAN IS NOT CONFIRMED, OR IF IT IS CONFIRMED AND THE EFFECTIVE DATE DOES NOT OCCUR, THEN THE PLAN WILL BE OF NO FORCE OR EFFECT AND WILL NOT BE BINDING ON THE DEBTOR, PARTIES IN INTEREST IN THE CASE, CREDITORS OR THE INTEREST HOLDER OF THE DEBTOR.**

The Debtor believes that the Plan provides the best possible recoveries to Creditors under the circumstances of this Case, that acceptance of the Plan is in the best interests of all parties in interest, and that any alternative would result in unnecessary delay, uncertainty, and expense to the Estate.  The Debtor therefore recommends that all eligible Creditors entitled to vote on the Plan cast their Ballots to accept the Plan.

### A.    General Disclaimers and Information

Please carefully read the Disclosure Statement and the exhibits, which explain who may object to confirmation of the Plan, who is entitled to vote to accept or reject the Plan, and the treatment that Creditors can expect to receive if the Court confirms the Plan, and the Effective Date occurs.  The Disclosure Statement also describes the history of the Debtor, the events precipitating the Case, certain events that have taken place in the Case, the effect of confirmation of the Plan, and some of the things the Court may consider in deciding whether to confirm the Plan.  It also addresses the Plan's feasibility and how your treatment under the Plan compares to the hypothetical treatment you would receive in a chapter 7 liquidation.  The statements and information contained in the Plan and Disclosure Statement, however, do not constitute financial or legal advice.  You should therefore consult your own advisors if you have questions about the impact of the Plan on your Claims.

The financial information used to prepare the Plan and Disclosure Statement was prepared by the Debtor from information in its books and records and is the sole responsibility of the Debtor. The Debtor's Professionals have prepared the Plan and Disclosure Statement.  The Debtor and its Professionals have not independently verified this information.

The statements and information that concern the Debtor that are set forth in this document constitute the only statements and information that the Court has approved for the purpose of soliciting votes to accept or reject the Plan.  Therefore, no statement or information that is inconsistent with anything contained in this Disclosure Statement is authorized unless otherwise ordered by the Court.

You may not rely on the Plan and Disclosure Statement for any purpose other than to determine whether to vote to accept or reject the Plan.  Nothing contained in the Plan or Disclosure Statement constitutes an admission of any fact or liability by any party or may be deemed to constitute evidence of the tax or other legal effects that the transactions to be carried out in furtherance of the Plan may have on entities holding Claims.

\\\

- 8 -

The exhibits attached or to be attached to the Disclosure Statement are incorporated into the Disclosure Statement and will be deemed to be included in the Disclosure Statement when they are filed with the Bankruptcy Court.

**B.**     **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

**1.**     **Time and Place of the Confirmation Hearing**

The hearing at which the Court will determine whether to confirm the Plan will take place on TBD, prevailing Pacific Standard Time, in Courtroom 5C of the United States Bankruptcy Court, 411 West Fourth Street, Santa Ana CA 92701.

**2.**     **Ballot Deadline and Voting Instructions**

If you wish to vote to accept or reject the Plan, your completed, executed Ballot must be returned to Goe Forsythe & Hodges LLP by mail or fax at the address listed immediately below so that it is actually received by Goe Forsythe & Hodges LLP at the following address by 5:00 p.m. prevailing Pacific Standard Time, on [INSERT] (the "Ballot Deadline"):

Goe Forsythe & Hodges LLP
Attn: Robert P. Goe
17701 Cowan, Suite 210
Irvine, CA 92614
Fax: (949) 955-9437
Email: rgoe@goeforlaw.com

If your Ballot is not timely received, it will not be counted.

Classes 3 and 4 are Impaired and entitled to vote on the Plan. Classes 1 and 2 are Unimpaired and not entitled to vote on the Plan. Entities holding Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote on the Plan.

In voting to accept or reject the Plan, please use only the Ballot sent to you with this Disclosure Statement, and please carefully read the voting instructions on the Ballot for an explanation of the applicable voting procedures and deadlines.  If, after reviewing this Disclosure Statement, you believe that you are entitled to vote on the Plan, but you did not receive a Ballot, or if your Ballot is damaged or lost, please send a written request for a Ballot to Goe Forsythe & Hodges LLP at the address set forth above or via email to rgoe@goeforlaw.com.

If your Claim is subject to an objection, which includes the State Court Lawsuit defined below, and you nevertheless wish to vote on the Plan, you will be required to request that the Court temporarily allow your Claim for voting purposes.  In order to do so, you must promptly take action to make such a motion and arrange for the Court to hold a hearing and adjudicate such motion no later than seven (7) days prior to the Ballot Deadline (i.e., no later than [Date Not Yet Set]).

**3.    Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information with respect to the Plan or seeking an additional copy of the Disclosure Statement should contact, in writing, Goe Forsythe & Hodges LLP, Attn: Robert P. Goe, 17701 Cowan Avenue, Suite 210, Irvine, California 92614, Facsimile: (949) 955-9437, Email: rgoe@goeforlaw.com.  All pleadings and other papers filed in this Case may be inspected free of charge during regular court hours at the Office of the Clerk, United States Bankruptcy Court, Central District of California, 411 West Fourth Street, Santa Ana, CA 92701. Documents may be accessed for a fee through the Court's electronic records system at http://www.cacb.uscourts.gov.

**4.    Objecting to Plan Confirmation**

Any party in interest in the Case – including any Creditor that voted (or was deemed to have voted) to accept or reject the Plan – may file an objection to confirmation of the Plan assuming such party has standing to do so.  Any such objection must be filed and served on the Debtor and its counsel and the U.S. Trustee by [Date Not Yet Set].  If you fail to properly and timely file and serve an objection to Plan confirmation, you may be deemed to have consented to the confirmation of the Plan.

The Debtor and other parties in interest will have the opportunity to file a reply in support of the Plan and/or in response to any objection to confirmation of the Plan no later than [Date Not Yet Set].  The deadline for the Debtor to file any declaration or memorandum in support of confirmation of the Plan is [Date Not Yet Set].

\\\

## II.   BACKGROUND AND SIGNIFICANT EVENTS DURING THE CASE

### A.   Description and History of the Debtor's Properties

The Debtor is a California Limited Liability Company formed in February 2022. Beaumont 1600, LLC is the Manager of the Debtor and Scott Krentel is its authorized manager. The Debtor is in the business of acquiring and making real estate investments. By and through its own efforts and professional consultants, the Debtor designs, plans and offers for sale, joint venture or exchange, its projects consisting of industrial and commercial sites to then sell to public and private builders and investment firms at a profit.

The Debtor's principal asset of approximately 1,230 acres is a combination of multiple land parcels of various sizes ("Beaumont Property") and is the largest portion of land of The Legacy Highlands Specific Plan ("Legacy Highlands"), which is a unique, master planned industrial and commercial development set within the rolling hills of West Beaumont, located in Riverside County, California. Attached as **Exhibit 2** is a Site Plan map of the Beaumont Property.[2] Attached as **Exhibit 3** is the Site Plan map crossing out property that is subject to the disputed liens of Liquid Fund LLC and Aminam, LLC (approximately less than 15% of Debtor's total holdings) that are subject to pending litigation in the State Court Lawsuit.

Debtor scheduled the value of the Beaumont Property at $580,000,000, which is based on the April 23, 2024 "as is value" in the MAI appraisal of Michael Frauenthal & Associates, Inc. ("Appraisal"). True and correct summary pages of the Appraisal are attached hereto as **Exhibit 4**. Legacy Highlands is situated and is contiguous to the Potrero Interchange and the 60 freeway at 4th Street. The Legacy Highlands provides a framework for the development of up to 12,192,480 square feet of industrial and commercial land within its borders, designed as a contemporary employment center laid out in a master-planned, campus-like setting. Located in an unincorporated area of Riverside County within the Beaumont Sphere of Influence, Legacy Highlands is positioned to attract a variety of types of businesses and varying sizes, ranging from local enterprises to international businesses. Legacy Highlands is specifically designed as an

---

[2] In the Site Plan map (**Exhibit 2**), the non-debtor Portero Commercial LLC's property is crossed out.

attractive location where businesses can prosper, attract economic investment, and provide goods, services, and job opportunities to the surrounding community and region, and once developed will be the largest industrial campus of its kind.

The Beaumont Property consists of approximately 1,230 acres of multi parcels of partially developed land within the Legacy Highlands specific plan (*see* Exhibit 2).  Of the foregoing acreage, approximately 690 acres will be saleable industrial property (Tracts 8-19) which equates to approximately 29,642,580 square feet.  Included within this amount are twelve (12) future industrial parcels of varying sizes for the ultimate development of 10,092,980 square feet of industrial buildings on the Beaumont Property.  The balance of the acreage is being held for future development opportunities.

The Debtor is in the final stages of the completion of its entitlement package for the project which includes an Environmental Impact Report ("EIR"), General Plan Amendment, Development Agreement, Conditions Approval, Tentative Parcel Maps, Finance Maps, Site Plan and a Community Facility District ("CFD") agreement, Transportation Agreement and those plans along with all Grading Plans.  All technical studies have been completed and approved by the appropriate governmental agencies, which is of great importance in the entitlement process.  It is anticipated that the EIR and Specific Plan will be circulated via the public review procedure and subsequently to the planning commission and the Beaumont City Council for the certification of the EIR and final approval of the remainder of the entitlement package.  It is presently anticipated that the entire entitlement approval process for the Beaumont Property will be completed by the end of 2025.

The Debtor also owns a multi-tenant office and residential building located at 4191 Brockton, Riverside, California, which Debtor values that property at $995,000 ("Brockton Property"), and more than 600 additional acres of undeveloped land for future development in Riverside, California.

\\\

\\\

- 12 -

**B.    Significant Events During the Case**

**1.    Commencement of the Case and Filing of Schedules**

Debtor filed a voluntary petition for chapter 11 relief under the Bankruptcy Code on the Petition Date.  On December 5, 2024, Debtor filed its Schedules, Statement of Financial Affairs and related documents [Dockets No. 20-21].

**2.    Litigation Regarding Usurious and Illegal Loans Against the Allegedly Secured Beaumont Property**

Prior to the Debtor's bankruptcy filing, Debtor entered into two separate loans (at times, "Usurious and Unlicensed Loans") secured by portions of the Beaumont Property with Liquid Funds LLC and Aminam, LLC.  Debtor asserts that the Usurious and Unlicensed Loans secured by a very small portion of the Beaumont Property with Liquid Funds LLC and Aminam, LLC are illegal and void and the actions taken by Liquid Funds LLC, Aminam, LLC, Ezri Namvar, Mousa Namvar, Shatar Capital, Inc. and Daniel Namvar (at times, collectively, "Lender Parties") on the Usurious and Unlicensed Loans are the product of, without limitation, fraud, illegal conduct, unfair business and predatory lending practices.  Debtor's claims against the Lender Parties are listed on Debtor's Schedule A/B of the Debtor's schedules filed in this Case on December 5, 2024 [Docket No. 21]. *See* Part 11 of Debtor's Schedule A/B at Docket No. 21.  During the Case, Debtor filed a lawsuit on February 26, 2025 against the Lender Parties with respect to the Usurious and Unlicensed Loans in the Superior Court of the State of California, County of Riverside ("State Court Lawsuit").  A true and correct copy of the State Court Lawsuit is attached hereto as **Exhibit 5.**

As set forth in the State Court Lawsuit, the first trust deed holder Liquid Funds LLC made a usurious and unlicensed loan.  The second trust deed holder, Aminam, LLC, which had scheduled a non-judicial foreclosure sale, never advanced a penny to Debtor and has filed fraudulent Claim No. 3 stating "Money Loaned" of $14,231,205.48.  Noticeably, Erzi Namvar did not sign Claim No. 3 as the only signature is from Aminam, LLC's counsel as an attachment.

As a result of the Class 1 claim of Liquid Funds LLC and Class 2 claim of Aminam, LLC, Debtor contends both claims are subject to bona fide disputes and should be voided and are subject to claims for affirmative monetary relief in the State Court Lawsuit.

**3.      Other Significant Events**

On November 14, 2024, the Court entered an order setting a Chapter 11 Case Management Conference ("Case Management Order") for January 8, 2025 [Docket No. 9].  On November 15, 2025, Debtor filed a Notice of the Case Management Order [Docket No. 12].

On December 24, 2024, Debtor filed its Chapter 11 Status Report for the Chapter 11 Case Management Conference [Docket No. 30].

On January 8, 2025, the Court held the Chapter 11 Case Management Conference and set certain deadlines pursuant to the Scheduling Order entered on January 9, 2025 [Docket No. 33].

On January 9, 2025, the Debtor filed an amended application to employ Goe Forsythe & Hodges LLP ("GFH") as general bankruptcy counsel ("GFH Amended Application") [Docket No. 32].  On February 6, 2025, the Court entered an order approving the GFH Amended Application [Docket No. 42].

On January 10, 2025, the notice of Claims Bar Date was filed and served on all creditors [Docket No. 35].

On February 25, 2025, Liquid Funds LLC obtained a Federal Rules of Bankruptcy Procedure Rule 2004 Order of Debtor's PMK [Docket No. 47].  Debtor filed a Motion for Protective Order, which is scheduled for hearing on March 27, 2025 [Docket Nos. 50, 52 and 54].

**4.      Professionals Retained by the Debtor**

On February 6, 2025, the Court entered an order approving the GFH Amended Application [Docket No. 42].

On March 4, 2025 Debtor filed an application to employ Catanzarite Law Corporation ("CLC") to represent the Debtor as special litigation counsel ("CLC Employment Application") with respect to claims in the State Court Lawsuit against the Lender Parties.

\\\

**C.      Bar Date and Claims Against The Estate**

**1.      General and Administrative Bar Dates**

By order entered January 9, 2025, the Court set a bar date of March 5, 2025 ("Claims Bar Date"), for filing proofs of claim [Docket No. 33].  Debtor filed and served its Notice of Claims Bar Date on January 10, 2025 [Docket No. 35].  There is no deadline set to file objections to Claims.

For claims arising from rejection of any executory contract or unexpired lease, the last day to file a Proof of Claim is the later of (a) the Bar Date or (b) 30 days after the date of entry of an order authorizing the rejection of such contract or lease or after any automatic rejection of such contract or lease.  For claims of governmental units, the last day to file a Proof of Claim is the later of (a) the Bar Date or (b) before 180 days after the date of the Order for Relief in this Case.  For claims arising from the avoidance of a transfer under chapter 5 of the Bankruptcy Code, the last day to file a Proof of Claim is the later of (a) the Bar Date or (b) 30 days after the entry of judgment avoiding the transfer.

**2.      Scheduled Claims**

Debtor's Schedules filed on December 5, 2024, list the total amount of the Claims against the Debtor as of the Petition Date as approximately $39,268,801.50, consisting of: (a) the disputed secured claim held by Aminam, LLC in the amount of $13 million; (b) the disputed secured claim held by Liquid Funds LLC in the amount of approximately $12,897,401.50 as of the Petition Date; (c) the secured claim of Barry Hilldebrandt in the amount of $320,000 as of the Petition Date; and (d) general unsecured claims totaling approximately $13,051,400.

**3.      Filed Claims**

To date, three Claims have been filed against the Estate.  The Claims Bar Date has passed as to General Unsecured Claims. The Claims Register is attached hereto as **Exhibit 6**.

Creditors should assume that the Debtor may file an objection to any proof of Claim that differs in amount or priority from the amount or priority of that creditor's Claim against the Debtor as listed in the Schedules or if such creditor's Claim against the Debtor is listed in the Schedules as disputed, contingent, or unliquidated.  Therefore, in voting on the Plan, no Creditor

may rely on the absence of an objection to its proof of Claim as any indication that the Debtor or other parties in interest ultimately will not object to the amount, priority, security, or allowability of its Claim against the Debtor.  Moreover, the Debtor reserves its rights with respect to all objections to Claims and counterclaims it may have with respect to Claims asserted against the Debtor and, except as specifically set forth in the Plan, reserves its rights to prosecute Claims of the Debtor and the Estate (including rights to affirmative recoveries, rights to subordinate Claims against the Debtor, as well as other rights).

**THE DEBTOR RESERVES ANY AND ALL RIGHTS, EXCEPT AS EXPRESSLY STATED IN THE PLAN, TO OBJECT TO, DEFEND AGAINST, AND REQUEST DISALLOWANCE, REDUCTION, SUBORDINATION, AND/OR RECHARACTERIZATION OF ANY CLAIM ASSERTED AGAINST THE DEBTOR OR ITS ESTATE, INCLUDING ANY CLAIM LISTED IN THE SCHEDULES.  THE DEBTOR ANTICIPATES THAT CLAIM OBJECTIONS MAY BE FILED AFTER CONFIRMATION OF THE PLAN.**

### D.    Adversary Proceedings and Other Claims/Litigation

The State Court Lawsuit against the Lender Parties as set forth above is pending in the Riverside Superior Court.  Debtor reserves all rights and remedies, and may initiate any litigation, including but not limited to subordination of Aminam, LLC pursuant to Section 510(b), pursue claims, file claims objection(s), and prosecute causes of action, including but not limited to potential claims listed in its Schedule A/B or in relation to transfers listed in its Statement of Financial Affairs.  The State Court Lawsuit and any other litigation claims of the Debtor shall collectively be referred to herein as "Litigation Claims".

### III.    FINANCIAL INFORMATION OF THE DEBTOR

The Debtor filed its Schedules and Statement of Financial Affairs on December 5, 2024 in the Case as Docket No. 21, which provide substantial financial information regarding its assets and liabilities as of the Petition Date.  The Schedules and Statement of Financial Affairs are available on-line through PACER or at the Clerk's Office or by contacting counsel for the Debtor. In addition, Debtor has prepared the monthly operating reports as required by the U.S. Trustee,

and those are also available for inspection from the same sources as the Schedules and Statement of Financial Affairs.

## IV.   SUMMARY OF THE PLAN OF REORGANIZATION

### A.   Classification of Claims

As required by the Bankruptcy Code, the Plan classifies Claims and Interests in various classes according to their right of priority.  The Plan states whether each class of Claims or Interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

In accordance with section 1122 of the Bankruptcy Code, Claims and Interests, other than Administrative Claims and Priority Tax Claims, shall be divided in Classes and receive such treatment as described below.  Administrative Claims and Priority Tax Claims are not placed into a voting class in the Plan, instead, they are unclassified.  They are not considered impaired under the Plan, and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.

a.   The Plan classifies Claims and Interests, except for Administrative Claims and Priority Tax Claims, which are not classified, for all purposes, including voting on, confirmation of, and Distributions under the Plan.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the Class description.  To the extent that part of the Claim or Interest falls within a different Class description, that portion of the Claim or Interest is classified in that different Class.  The Plan states whether each Class of Claims or Interests is Impaired and provides for treatment that each Class will receive.  The treatment in the Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each Person holding a Claim, or an Interest may have in or against the Debtor or its property.  This treatment supersedes and replaces any agreements or rights those entities have in or against the Debtor or its property.  NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM OR INTEREST THAT IS NOT AN ALLOWED CLAIM OR ALLOWED INTEREST.

\\\

\\\

b.      Claims and Interests are classified as follows:

| Class | Description | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| Class 1 | Liquid Funds LLC | No | No, subject to bona fide dispute in State Court Lawsuit and Unimpaired |
| Class 2 | Aminam, LLC | No | No, subject to bona fide dispute in State Court Lawsuit and Unimpaired |
| Class 3 | Barry Hildebrandt | Yes | Yes |
| Class 4 | General Unsecured Creditors | Yes | Yes |
| Class 5 | Interests | No | Deemed to Accept |

**B.      Treatment of Unclassified Claims under the Plan**

Certain types of Claims are not placed into voting classes; instead, they are unclassified. They are not considered impaired, and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has not placed the following claims in a class.

**1.      Administrative Claims.**  Administrative Claims are not placed into Classes that are entitled to vote to accept or reject the Plan; instead, such Claims are unclassified. Such Claims are not considered Impaired, and they do not vote on the Plan because they are entitled to specific treatment under the Bankruptcy Code.  Accordingly, the Plan does not place these Claims in Classes.  The treatment for these Claims is provided in Sections 3.4 and 3.9 of the Plan.  Holders of Allowed Administrative Claims not paid from the Administrative Claims Reserve and Allowed Priority Tax Claims shall be deemed to hold Claims against the Debtor in the amount of their Allowed Administrative Claims and Allowed Priority Tax Claims and shall receive payments on such Claims pursuant to the provisions of the Plan.

Except to the extent that the Holder of an Allowed Administrative Claim agrees to less favorable treatment or unless otherwise ordered by the Court, each Holder of an Allowed Administrative Claim shall receive in full satisfaction, discharge, exchange, and release thereof,

Cash from the Administrative Claims Reserve, or Cash from the Remaining Assets, if the Administrative Claims Reserve has been exhausted, in an aggregate amount equal to the amount of such Allowed Administrative Claim on the later of: (a) the Effective Date; and (b) the fifteenth (15th) Business Day after such Administrative Claim becomes an Allowed Administrative Claim, or, in either case, as soon thereafter as is practicable. Debtor does not know of any Administrative Claims that are not Professional Fee Claims.

**2.      Administrative Claim Bar Date.**  All requests for payment of an Administrative Claim, except for U.S. Trustee Fees and Professional Fee Claims, shall be filed with the Court no later than the Administrative Claim Bar Date or be forever barred; provided, however, that nothing in the Plan shall extend or otherwise affect any applicable bar date set forth by an order of the Court entered prior to the Effective Date.  Within five (5) business days after the Effective Date, the Debtor shall serve notice of the Effective Date, the Administrative Claim Bar Date, and the Administrative Claim Objection Deadline on all creditors and parties in interest.

**3.      Administrative Claim Objection Deadline.**  All objections to the allowance of Administrative Claims, must be filed by parties in interest no later than one hundred twenty (120) days after the Administrative Claim Bar Date (the "Administrative Claim Objection Deadline"), or according to the deadlines set forth in the Bankruptcy Rules, or such other date as may be fixed by the Court, in the event that the Holder of an Administrative Claim files a motion with the Bankruptcy Court to have such Administrative Claim become an Allowed Administrative Claim.  The Administrative Claim Objection Deadline may be extended for a one-time ninety (90) day period by the Debtor by filing a notice of the extended Administrative Claim Objection Deadline with the Court and giving notice of such extension to all Creditors and parties in interest. Thereafter, the Administrative Claim Objection Deadline may be further extended only by an Order of the Court.  If no objection to such Administrative Claim is filed on or before the Administrative Claim Objection Deadline, such Administrative Claim shall be deemed an Allowed Administrative Claim as of that date.

**4.      U.S. Trustee Fees.**  U.S. Trustee Fees shall be paid prior to and after the Effective Date by the Debtor, when due in accordance with applicable law.  The Debtor shall

continue to file reports to show the calculation of such fees for the Estate until the Effective Date; after the Effective Date, Debtor shall file such reports until the Case is closed under Bankruptcy Code section 350.

### 5.    Professional Fee Claims.

Debtor has the following Professional Fee Claims:

| Claimant | Approximate Amount Owed as of Effective Date | Treatment |
|---|---|---|
| GFH | TBD | Paid in full on the Effective Date or as otherwise agreed to by professional. |
| CLC | TBD | Paid in full on the Effective Date or as otherwise agreed to by professional. |
| Clerk's Office Fees | Estimated to be $0 on Effective Date. | Paid in full on the Effective Date. |
| U.S. Trustee Fees | Estimated to be $0 on Effective Date. | Paid in full on the Effective Date. |

The Court must first approve all Administrative Claims listed in the above chart before they are owed by the Debtor, except the fees owed to the Clerk's Office and the Office of the U.S. Trustee. See 11 U.S.C. 503(b). Only the amount of fees and expenses allowed by the Court will be owed and required to be paid under this Plan.

Each Holder of a Professional Fee Claim seeking an award by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date shall file such Holder's interim (if applicable) and final applications for the allowance of compensation for services rendered and the reimbursement of expenses. All objections to the allowance of Professional Fee Claims through the Effective Date shall be filed in accordance with applicable Bankruptcy Rules, or such other date as may be fixed by Order of the Court. To the extent granted by the Court, such Claims shall be paid, in full satisfaction, discharge, exchange, and release of such Claims, by Cash from the Administrative Claims Reserve, or Cash from the Remaining Assets, if the Administrative Claims Reserve has been exhausted, in such amounts as are allowed by the Court on the date such Professional Fee Claim becomes an Allowed Claim, or as soon thereafter as is practicable.

**6.**     **Priority Tax Claims.**  Priority Tax Claims are certain unsecured income, employment and other taxes described by 11 U.S.C. § 507(a)(8).  The Bankruptcy Code requires that each holder of a Priority Tax Claim receive the present value of such Claim in deferred cash payments over a period not exceeding five (5) years from the date the order for relief is entered under 11 U.S.C. § 301.  *See* 11 U.S.C. § 1129(a)(9).  Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive in full satisfaction, discharge, exchange, and release thereof cash from the Debtor in an aggregate amount equal to such Allowed Priority Tax Claim on the later of the Effective Date, or the fifteenth (15th) Business Day after such Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in either case, as soon thereafter as is practicable.

| Claimant | Amount Owed | Treatment |
|---|---|---|
| Franchise Tax Board | $2,617.69 (Priority portion of Claim No. 1) | To be paid in full on Effective Date. |

**C.**     **Treatment of Classified Claims and Interests Under the Plan**

The treatment of Classified Claims and Interests is as set forth below.

**1.**     **Classes of Secured Claims**

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 1 | Creditor Name: Liquid Funds LLC<br><br>Basis for Security Interest: Recorded Deed of Trust Dated March 31, 2022 Document No. 2022-0155985 against the Beaumont Property.<br><br>Collateral:<br><br>The Property located in the County of Riverside and bearing Assessor's Parcel Numbers 424-060-001; portion of 424-060-002 (ingress and egress easement only); 424-060-006; 424-060-007; 424-060-008; 424-060-009 | N | The Secured Claim in this Class is subject to bona fide dispute and is the subject of the State Court Lawsuit.<br>The Holder of the Class 1 Claim will be paid in full on its Allowed Claim within 30 days of entry of an order/judgment of a court determining the amount of the Allowed Claim, if any, and final on appeal(s). |

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | Disputed Claim Amount: $14,812,045.24 pursuant to Claim No. 2 | | |
| 2 | Creditor Name: Aminam, LLC<br><br>Basis for Security Interest: Recorded Deed of Trust Dated March 31, 2022 Document No. 2022-0155986 against the Beaumont Property.<br><br>Collateral:<br><br>Certain parcels of the Property located in the County of Riverside and bearing Assessor's Parcel Numbers 424-060-001; portion of 424-060-002 (ingress and egress easement only); 424-060-006; 424-060-007; 424-060-008; 424-060-009.<br><br>Disputed Claim Amount:<br><br>$14,231,205.48 (pursuant to Claim No. 3, although no funds were ever advanced to Debtor) | N | The Secured Claim in this Class is subject to bona fide dispute and is the subject of the State Court Lawsuit.<br>The Holder of the Class 2 Claim will be paid in full on its Allowed Claim within 30 days of entry of an order/judgment of a court determining the amount of the Allowed Claim, if any, and final on appeal(s). |
| 3 | Creditor Name: Barry Hildebrandt<br><br>Basis for Security Interest: Land Sale Contract with respect to 4191 Brockton, Riverside, California 92501.<br><br>Collateral:<br><br>4191 Brockton, Riverside, California 92501.<br><br>Claim Amount:<br><br>$320,000.00 (estimated as of Effective Date and as scheduled) | Y | The Secured Claim in this Class will be paid as follows and the claimant will retain its interest in the collateral.<br>The current monthly payment requirement under the Land Sale Contract will increase from $1,760.00 to $1,850.00.<br>The maturity date will be extended to January 31, 2030. All other terms and conditions of the Land Sale Contract will remain unchanged. |

### 2. General Unsecured Claims – Class 4

General Unsecured Claims are not entitled to priority under 11 U.S.C. § 507.  The following table identifies the Plan's treatment of the Class containing all the General Unsecured

Claims against the Estate that the Debtor does not dispute, which are general unsecured claims. These Allowed Claims and include timely filed Proofs of Claim (which are not subject to an objection to claim as of the hearing on Confirmation of the Plan) and scheduled claims listed by Debtor in Schedule E/F and not marked as contingent, disputed or unliquidated. Any creditor whose claim was listed by Debtor in Schedule E/F as contingent, disputed or unliquidated and which has not filed a Proof of Claim has been deemed disallowed, will not be entitled to vote on the Plan, and will not receive any distribution under the Plan. This Class of Creditors is Impaired under the Plan.

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 4 | All Allowed General Unsecured Claims that are not Administrative Claims or Priority Claims. | Y | Allowed General Unsecured Claims will be paid in full on their Allowed Claims as described herein.<br><br>If a Class 4 Claim is a timely filed Proof of Claim which is subject to an objection to claim that has not yet been resolved by the Effective Date, then pending resolution of the dispute by a Final Order, the Debtor will reserve sufficient funds to pay the Disputed Claim pursuant to the terms of the Plan into the Disputed Claims Reserve. Once the dispute is resolved by a Final Order, the Debtor will make a Distribution out of the Disputed Claims Reserve on account of the Allowed Class 4 Claim in accordance with the treatment described below.<br><br>The holders of Allowed Claims in this Class will share pro-rata in payments of the total Allowed General Unsecured Claim. An initial distribution of cash will be made in the amount of $151,400.00 out of the funds available for that purpose from |

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | sales, refinancing, joint venture, DIP loan or capital contribution.<br><br>In addition, there will be future cash distributions sufficient from sales, refinancing, joint venture, DIP loan or capital contribution. This class shall receive a minimum of $25,000 in quarterly payments for up to five (5) years with this obligation all due and payable five (5) years after the Effective Date.<br><br>Payments could commence earlier depending upon the results of the State Court Lawsuit. |

### 3.    Interest Holders – Class 5

Interest Holders are the parties who hold ownership interests (i.e., equity interests) in the Debtor which shall be retained and are Unimpaired.

### D.    **Disputed Claims**

For Disputed Claims, which are timely filed Proofs of Claim subject to an objection to claim or the State Court Lawsuit that has not yet been resolved by the Effective Date, then pending resolution of the dispute by a Final Order (after exhaustion of any appeal(s)) the Plan provides that the Reorganized Debtor will maintain a reserve for Disputed Claims.  Whenever distributions are due under the terms of the Plan, the Reorganized Debtor shall, with respect to each Disputed Claim, deposit in a segregated account the amount that such Disputed Claim would have received had it been an Allowed Claim. If a Disputed Claim is subsequently Allowed in whole or in part, the Reorganized Debtor will distribute from the reserve for Disputed Claims to the holder of such Claim the Cash that such holder would have received on account of such Claim if such Claim had been an Allowed Claim on the Effective Date to the extent thereafter Allowed.  If a Disputed Claim is Disallowed, in whole or in part, the Reorganized Debtor will not distribute the Cash reserved in respect of such Disallowed Claim.

- 24 -

**E.      Allowed Claims and Interests**

Distributions shall only be made to holders of Allowed Claims until such Claims have been paid in full, with any excess to be distributed to holders of Allowed Interests.  No holder of a Disputed Claim will receive any distribution on account thereof until (and then only to the extent that) its Disputed Claim becomes an Allowed Claim.  Any creditor whose claim was listed by Debtor in Schedule E/F as contingent, disputed or unliquidated and which has not filed a Proof of Claim has been deemed disallowed, will not be entitled to vote on the Plan, and will not receive any distribution under the Plan.  Debtor may, in its discretion, withhold distributions otherwise due hereunder to any Claimholder until such time as objections thereto may be filed.  Any holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its distribution in accordance with the terms and provisions of this Plan and the Confirmation Order.

**F.      Reservation of Rights to Object to Claims**

Unless a Claim is expressly described as an Allowed Claim pursuant to or under this Plan, or otherwise becomes an Allowed Claim prior to or after the Effective Date, the Reorganized Debtor shall retain the right to object and shall be deemed to have reserved any and all objections to any and all Claims and motions or requests for the payment of Claims, whether a Priority Tax Claim or General Unsecured Claim, including, without limitation, any and all objections to the validity or amount of any and all alleged Claims and security interests, whether under the Bankruptcy Code, other applicable law or contract.  The Reorganized Debtor's failure to object to any Claim in the Bankruptcy Case shall be without prejudice to Reorganized Debtor's rights to contest or otherwise defend against such Claim in the Bankruptcy Court when and if such Claim is sought to be enforced by such Claimholder.

**V.      MEANS OF IMPLEMENTING THE PLAN**

This Section is intended to explain how the Debtor intends to effectuate the Plan, and how the Debtor intends to fund the obligations to Creditors and Interest Holders undertaken in the Plan after the occurrence of the Effective Date. This Section provides information regarding funding sources for the Plan obligations and other material issues bearing upon performance of the Plan.

- 25 -

### A.    Funding for the Plan

Funding for the Plan shall come from the Debtor's sale, refinance or the joint venture of the Beaumont Property and from collection on the Litigation Claims.  The Distributions to creditors under the Plan will be funded primarily from the following sources: (a) the Debtor's cash on hand on the Effective Date, (b) the net proceeds from the collection on the Litigation Claims, if any; (3) and the net proceeds from the sale, refinance or the joint venture of the Beaumont Property.  Debtor reserves its rights to seek new financing secured by all or part of the Beaumont Property.

### B.    Operations After the Occurrence on the Effective Date

#### 1.    Post-Effective Date Management

On the Effective Date, the Debtor will continue to operate under its current management and Debtor will be vested with the duties set forth below and in the Plan Confirmation Order.  To the extent that the Debtor's operating agreement is inconsistent with the Plan, the Plan shall control.

#### 2.    Powers and Authority of the Debtor

On and after the Effective Date and except as otherwise set forth in the Plan and notwithstanding anything to the contrary in the operating agreement, the powers and authority of the Debtor shall include, but not be limited to, liquidating, abandoning or otherwise administering the Estate assets, taking any action, filing or causing to be filed any proceeding, instituting and prosecuting any litigation, executing any document, entering into any compromise or settlement, or taking any such other actions consistent with the Plan in connection with or related to:

(i)    the Plan;

(ii)    monitoring the Debtor's performance under the Plan and making distributions required under the Plan from Available Cash;

(iii)    determining the allowability, classification, and priority of Claims and Interests;

(iv)    construing or administering or enforcing the terms of the Plan, the Confirmation Order, or any order of the Court;

(v)    the opening or closing of any account that Debtor determines is reasonable,

necessary, or required under the Plan, and making any withdrawals or deposits in connection therewith;

(vi)    reviewing, approving or opposing any applications or requests for compensation and reimbursement of the expenses of any Professionals that are filed or served after the Effective Date;

(vii)    filing, prosecuting, compromising or settling any Causes of Action;

(viii)    any applications, motions, adversary proceeding, contested matters, and any other litigated matters instituted before, on, or after the Effective Date;

(iv)    modifying the Plan under Bankruptcy Code § 1127 in order to remedy any apparent defect or omission in the Plan, or to reconcile an inconsistency in the Plan so as to carry out its intent and purpose;

(x)    the seeking of an injunction, judgment or order or taking any other action as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order;

(xi)    aiding in consummation of the Plan or the Confirmation Order;

(xii)    administration of the Case and the Plan, including retaining, hiring, or terminating any employee, agent, staff, outside contractor, or professional;

(xiii)    the preparation, execution and filing of any tax return on behalf of the Debtor, including final tax returns; and

(ix)    liquidating assets and obtaining a final decree and in his sole discretion dissolving the Debtor.

In addition, on and after the Effective Date, as the case may be, Debtor shall be authorized to execute, do and perform, in the name of and on behalf of the Debtor, such acts and to prepare, execute, acknowledge, verify, file, deliver, and cause to be published such certificates, agreements, notices, reports, applications, declarations, instruments and documents as Debtor may deem necessary and appropriate in his discretion in order to carry into effect the decisions of the Debtor and the terms and provisions of the Plan.  Debtor 's performance of any such actions and execution and delivery of any such documents shall constitute conclusive evidence of such authority.

**3.**   **Funding of Post Effective Date Expenses**.  All post Effective Date Expenses shall be expenses of the Debtor and Debtor shall disburse funds from the Available Cash for the purpose of paying such expenses.  Debtor shall be authorized to retain professionals post-confirmation and pay all post-confirmation fees from any Cash and/or the operations and/or the sale, cash-out refinance or joint venture of the Property.

**4.**   **Operating Reserve.**  Payments of all Post Effective Date Expenses shall be made from the Operating Reserve.  On or as soon as practicable after the Effective Date, the Operating Reserve shall be established by Debtor and funded by Cash to pay for all projected Post Effective Date Expenses.  Debtor shall continue to fund the Operating Reserve as needed from Remaining Assets.  Any Cash remaining in the Operating Reserve that Debtor believes is not necessary to fund Post Effective Date Expenses of the Debtor shall be released from the Operating Reserve and used as Remaining Assets in accordance with the Plan.

**5.**   **Abandonment.**  If, in Debtor's reasonable judgment, any Remaining Assets cannot be sold or distributed in a commercially reasonable manner or Debtor believes in good faith that such property has inconsequential value to the Debtor or determines it to be too impractical to distribute such property to the Beneficiaries, Debtor may abandon or otherwise dispose of such property, including by donation of such property to a charity.

**6.**   **Dissolution of Debtor.**  The Debtor may be, but is not required to be, dissolved.  Debtor shall have full authority to take any action necessary, to wind up the affairs, and dissolve and terminate the existence, of the Debtor under applicable state laws and in accordance with the rights, powers and responsibilities conferred by the Bankruptcy Code, this Plan and any order of the Court.

**C.**   **Provisions Governing Distributions**

**1.**   **Estimation**.  In order to establish reserves under this Plan and avoid undue delay in the administration of this Case, the Debtor shall have the right to seek an order of the Court pursuant to Section 502(c) of the Bankruptcy Code estimating the amount of any Claim.  All estimations hereunder shall be on notice to the Holder of such Claim, and such estimated amount: (i) shall be used in calculating reserves for such Claim; and (ii) shall set the maximum allowed

amount of such Claim for purposes of Distributions on account thereof.

**2.      Distributions on Account of Allowed Claims**.  Except as otherwise provided herein, a Final Order, or as agreed by the relevant parties, distributions on account of Allowed Claims shall be made by Debtor at such periodic intervals as Debtor determines to be reasonably prudent.

**3.      Distributions on Account of Disputed Claims and Estimated Claims.** Except as otherwise provided herein, a Final Order, or as agreed by the relevant parties, distributions on account of Disputed Claims and Estimated Claims that become Allowed Claims shall be made by Debtor at such periodic intervals as Debtor determines to be reasonably prudent.

**4.      No Distributions Pending Allowance**.  Notwithstanding any other Plan provision: (i) Distributions to Holders of Claims will be made only to the extent that, such Holders hold Allowed Claims; and (ii) unless otherwise agreed by Debtor, if any portion of a Claim is a Disputed Claim, the entire Claim shall be treated as a Disputed Claim and no Distribution to the Holder of such Claim shall be made on account of such Claim unless and until no portion of the Claim is a Disputed Claim.

**5.      Disputed and Estimated Claims Reserve**.  On and after the Effective Date, Debtor shall maintain in reserve such Cash as it estimates to be necessary to satisfy the distributions required to be made under the Plan if each Disputed Claim and Estimated Claim against the Debtor becomes an Allowed Claim.

**6.      Reduced or Disallowed Secured Claims**.  To the extent that a Disputed Claim for which Cash has been deposited into the Disputed Reserve is not Allowed or becomes an Allowed Claim in an amount less than the amount retained in the Disputed Reserve with respect to such Claim, the amount that was retained in the Disputed Reserve on account of such Claim, or the excess of the amount that was retained on account of such Claim over the amount actually distributed on account of such Claim, shall be released from the Disputed Reserve and used as Available Cash in accordance with the Plan.

**7.      Reserve Amounts for Disputed and Estimated Claims.**  For purposes of establishing reserves for Disputed and Estimated Claims, the amount of such Claim shall be the

agreed amount of such Claim, unless such amount is estimated by Order of the Court.

**8.    Reservation of Rights to Object to Claims**.  Unless a Claim is expressly described as an Allowed Claim pursuant to or under this Plan, or otherwise becomes an Allowed Claim prior to or after the Effective Date, Debtor shall retain the right to object and shall be deemed to have reserved any and all objections to any and all Claims and motions or requests for the payment of Claims, whether an Administrative Expense, Priority Tax Claim, Secured Claim or General Unsecured Claim, including, without limitation, any and all objections to the validity or amount of any and all alleged Claims and security interests, whether under the Bankruptcy Code, other applicable law or contract.  The Debtor's failure to object to any Claim in the Case shall be without prejudice to Debtor's rights to contest or otherwise defend against such Claim in the Court when and if such Claim is sought to be enforced by the holder of such Claim.

**9.    Settling Disputed Claims.**  Debtor shall be authorized to settle, or withdraw any objections to, any Disputed Claims following the Effective Date.

**10.    Cash Distributions**.  The sources of all Distributions and payments under the Plan are and will be Cash.  Cash Distributions made pursuant to the Plan shall be in United States funds, by check drawn on a domestic bank, or, by wire transfer from a domestic bank.

**11.    Setoff and Recoupment.**  Notwithstanding anything to the contrary in the Plan, Debtor may set off, recoup, or withhold against the Distributions to be made on account of any Allowed Claim that the Debtor, the Estate, or Debtor may have against the Holder of the Allowed Claim.  The Debtor and the Estate will not waive or release any claim against those Holders by failing to effect such a setoff or recoupment, by allowing any Claim against the Debtor or the Estate, or by making a Distribution on account of an Allowed Claim.

**12.    No De Minimis Distributions.**  Notwithstanding anything to the contrary in the Plan, no Distribution of less than $10.00 will be made to any Holder of an Allowed Claim or on account thereof.  No consideration will be provided in lieu of the *de minimis* Distributions that are not made under this Section.

**13.    Fractional Cents.**  When any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest

whole cent (rounding down in the case of less than $0.005 and rounding up in the case of $0.005 or more); provided, however, that, in no event, shall a Distribution of less than $10.00 be made to any Holder of an Allowed Claim.

**13.     Undeliverable or Unclaimed Distributions.**

i.      Distributions to Holders of Allowed Claims (except Administrative Claims) will be made by mail as follows:

(a)     Distributions will be sent to the address, if any, set forth on a filed proof of claim as amended by any written notice of address change that is received by Debtor no later than ten (10) Business Days prior to the date of any Distribution; or

(b)     If no such address is available, Distributions will be sent to the address set forth on the Bankruptcy Schedules.

ii.      Distributions to Holders of Allowed Administrative Claims shall be made by mail to the address set forth in such Holder's request for payment, fee application, or transactional documents, as applicable.

iii.      If no address is available on a proof of claim, the Bankruptcy Schedules, request for payment, fee application, or transactional documents, as applicable, the Distribution will be deemed to be undeliverable. If a Distribution is actually returned to Debtor or is deemed to be an undeliverable Distribution under the prior sentence, Debtor will make no further Distributions to the Holder to which such undeliverable Distribution was made unless and until Debtor is timely notified in writing of that Person's current address. Subject to Section 5.25(d) of the Plan, until they become deliverable, Debtor shall deposit such undeliverable Distributions (whether returned or not made) into the Undeliverable Distributions Reserve for the benefit of the Persons entitled to such Distributions. Holders of Claims subject to undeliverable Distributions will not be entitled to any interest on account of the undeliverable Distributions.

iv.      Any Person that is otherwise entitled to an undeliverable Distribution and that does not, within 120 days after a Distribution is deemed undeliverable or returned as undeliverable, provide Debtor with a written notice asserting its claim to or interest in that undeliverable

- 31 -

Distribution and setting forth a current, deliverable address: (i) will be deemed to waive any claim to or interest in that undeliverable Distribution; (ii) will be forever barred from receiving that undeliverable Distribution or asserting any claim with respect thereto against the Debtor and the Estate, or their property; and (iii) to the extent applicable, will have the Allowed Claim relating to such undeliverable Distribution reduced on account of such undeliverable Distribution. Any undeliverable Distributions that are not claimed timely under Section 5.23 of the Plan will be withdrawn from the Undeliverable Distribution Reserve and treated as Assets of the Debtor. Nothing in the Plan requires the Debtor or Debtor to attempt to locate any Person holding an Allowed Claim and whose Distribution is undeliverable.

**14.     Undeliverable Distributions Reserve.**  On or as soon as practicable after the Effective Date, Debtor shall establish an Undeliverable Distributions Reserve into which undeliverable Distributions shall be deposited and withdrawn as provided in Section 5.23 of the Plan.

**15.     Negotiation of Checks.**  Checks issued in respect of Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Subject to Section 5.23 of the Plan, requests for reissuance of any check shall be made to Debtor by the Holder of the Allowed Claim to whom such check originally was issued and must be made on or before ninety (90) days after the expiration of the ninety (90) day period following the date of issuance of such check.  Thereafter, the funds represented by such voided check shall irrevocably revert to the Debtor and the Holder of the Claim relating to such voided check: (i) will be deemed to waive any Claim to or interest in that voided check and the funds related thereto; (ii) will be forever barred from receiving the funds represented by the voided check or asserting any Claim with respect thereto against the Debtor, the Estate, or their property; and (iii) to the extent applicable, will have the Allowed Claim relating to such funds and voided check reduced on account of such funds.  Debtor in its sole discretion may waive or modify any requirement in Section 5.23, 5.24 or 5.25 of the Plan.

**16.     Record Date.**  The record date for purposes of Distributions under this Plan shall be the Effective Date.  The Debtor will rely on the register of proofs of claim filed in the

Case except to the extent a notice of transfer of a Claim or Interest has been filed with the Court prior to the Effective Date pursuant to Bankruptcy Rule 3001.

**17.    Postpetition Interest.**  Except as otherwise provided in the Plan or by Final Court Order, interest accruing Postpetition or otherwise relating to the Postpetition period will not be paid on account of any Claims.

**18.    Sequence of Payments.**  Notwithstanding any other provision of the Plan, Distributions shall be made from the Debtor in the following order:

a)    all outstanding and projected Post Effective Date Expenses until they are paid in full or are fully reserved for;

b)    all Allowed Administrative Claims until they are paid in full, to the extent such claims are not paid by the Debtor from the Administrative Claims Reserve;

c)    all Allowed Secured Claims until they are paid in full or are reserved for;

d)    all Allowed Priority Tax Claims until they are paid in full or are reserved for;

e)    all Allowed General Unsecured Claims until they are paid in full or are reserved for with interest at the federal judgment rate in effect on the Effective Date; and

f)    All Allowed Interests.

**19.    Withholding and Reporting Requirements.**  In connection with the Distributions under the Plan, Debtor shall comply with all applicable withholding and reporting requirements imposed by any Governmental Authority, and all Distributions shall be subject to any such withholding or reporting requirements.  All such amounts withheld and paid to the appropriate Governmental Authority shall be treated as distributed to such Holders. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed by any Governmental Authority, including income, withholding, and other Tax

obligations, on account of such Distribution.  Debtor has the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to Debtor for payment of any such Tax obligations.  Debtor may require, as a condition to receipt of a Distribution, that the Holder of an Allowed Claim provide a completed Form W-8, W-9, and/or other Tax information deemed necessary in the sole discretion of Debtor.  If Debtor makes such a request and the Holder fails to comply before the date that is ninety (90) days after the request is made: (a) the amount of such Distribution shall irrevocably revert to the Debtor; (b) the Holder of the claim relating to such Distribution will be deemed to waive any claim to or interest in that Distribution and the funds related thereto;  (c) the Claim(s) of such Holder shall be deemed to be disallowed and terminated and be entitled to no Distributions; and (d) the Holder will be forever barred from receiving the funds represented by that Distribution or any Distributions on such disallowed and terminated Claims, or asserting any Claim with respect thereto against the Debtor, the Estate, or their property.

**20.    Claims Transfer.**  Debtor shall not recognize any transfer of a Claim made after the Effective Date, except to a legal heir or successor on the death or incapacity of the Holder of the Claim.  Except as otherwise provided in the Plan, any transfer of a Claim shall not affect or alter the classification and treatment of such Claim under the Plan and any such transferred Claim shall be subject to classification, allowance, or treatment under the Plan as if such Claim was held by the transferor.

**21.    Maximum Amount of Distributions**.  In no event shall a Holder of an Allowed Claim be entitled to receive in the aggregate on account of such Allowed Claim from the Debtor or any other source, more than the total amount of such Allowed Claim.

**22.    Final Distributions.**  After: (i) all Claims have been resolved; (ii) all Allowed Claims except General Unsecured Claims have been paid or satisfied as provided in the Plan; (iii) all material Assets have been converted to Cash; and (iv) the Operating Reserve has been adequately funded, Debtor shall distribute all Cash to holders of Allowed Class 4 Claims pursuant to the provisions of the Plan and up to the amount of such Allowed Class 4 Claims and taking into account any prior Distributions that have been made on account of such Allowed Class

4 Claims. After all Allowed Class 4 Claims have been paid in full, Debtor shall distribute all Cash to the holder of Allowed Class 5 Interests pursuant to the provisions of the Plan.

## VI.   OTHER PLAN PROVISIONS

**1.    Recourse for Claims**. All Holders of Claims and Interests are bound by the Plan and the Confirmation Order. No Holder of a Claim may receive any payment from, or seek recourse against, any Assets that are to be distributed under the Plan other than Assets required to be distributed to that Holder pursuant to the Plan. As of the Confirmation Date, all Persons are enjoined from asserting against any property that is to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or interests related thereto based upon any act, omission, transaction, or other activity that occurred before the Confirmation Date except as expressly provided in the Plan or the Confirmation Order. As of the Effective Date, notes, contracts, judgments, and any other evidence of Claims will represent only the right to receive the Distributions contemplated under the Plan.

**2.    Exculpation and Release of Debtor and Professionals.**

The Debtor, GFH, CLC, and their respective representatives shall have all the benefits and protections afforded under Section 1125(e) of the Bankruptcy Code and applicable law. As specified in Section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer issuance, sale, or purchase of securities.

**3.    Good Faith.**

Confirmation of this Plan shall constitute a finding that the Plan was proposed, and that acceptances of the Plan were solicited, in good faith and in compliance with applicable provisions of the Bankruptcy Code.

**4.    Injunction Enjoining Holders of Claims.**

a.     The Plan is the sole means for resolving, paying, or otherwise dealing with Claims

and Interests with respect to the Estate, the Debtor, and their assets.  To that end, except as expressly provided herein, at all times on and after the Effective Date, all Persons who have been, are, or may be Holders of Claims or Interests arising prior to the Effective Date shall be permanently enjoined from taking any of the following actions on account of any such Claims or Interests, against the Estate, the Debtor, or their property (other than actions brought to enforce any rights or obligations under the Plan and any claim, contested matters, or adversary proceedings pending in the Case as of the Effective Date):

(1)    commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Estate, the Debtor, or the Professionals, their successors, or their respective property or assets (including, without limitation, all suits, actions, and proceedings that are pending, other than before the Court or by explicit provision of the Court, as of the Effective Date, which shall be deemed to be withdrawn or dismissed with prejudice);

(2)    enforcing, levying, attaching, executing, collecting, or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree, or Order against the Estate, the Debtor, or the Professionals, their successors, or their respective property;

(3)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien against the Estate, the Debtor, or the Professionals, their successors, or their respective property; and

(4)    proceeding in any place whatsoever against the Estate, the Debtor, the or the Professionals, their successors, or their respective property, in any manner that does not conform to or comply with the provisions of the Plan.

b.    No suit, action, or other proceeding may be commenced, conducted, or continued in any manner, directly or indirectly, by a Holder of a Claim or Interest on account of such Claim or Interest against the Debtor without the written consent of Debtor or Order of the Court acquired by motion on notice to Debtor.  If the Holder of a Claim violates this provision, in addition to any other recourse or damages to which the Debtor may be entitled, the Claims of such Holder shall be

disallowed, and any Distributions made on account of such Claims shall be repaid by such Holder to the Debtor.

5. **Injunctions or Stays.** Unless otherwise provided by Court Order, all injunctions or stays arising under or entered during the Case under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

6. **Exemption from Stamp, Transfer, and Other Taxes; Exemption from Securities Laws.** Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of assets under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar Tax.  The interests of Holders of Claims against the Estate or Debtor, if any, will constitute neither "securities" under the Securities Act of 1933, as amended nor "equity securities" under Section 12(g) of the Securities Exchange Act of 1934, as amended (the "Exchange Act").  Even if such interests were, or were deemed, to constitute securities, the exemptions from registration provided by section 1145 of the Bankruptcy Code and by other applicable law apply to their issuance under the Plan. Pursuant to Bankruptcy Code sections 1125 and 1145, the Debtor shall not be required to comply with the registration and, to the fullest extent possible under law, reporting requirements of the Securities Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended.  Further, because the assets of the Debtor will not be $10 million or more, even if such interests were, or were deemed, to constitute, equity securities within the meaning of Section 12(g) of the Exchange Act, no registration or reporting requirements under the Exchange Act would attach.

7. **No Admissions.** Except as specifically provided in the Plan, nothing contained in the Plan shall be deemed or construed in any way as an admission by the Debtor or the Estate with respect to any matter set forth in the Plan, including the amount or allowability of any Claim, or the value of any property of the Estate.  Notwithstanding anything to the contrary in the Plan, if

the Plan is revoked or withdrawn or is not confirmed, the Plan will be null and void, and nothing contained in the Plan will: (a) be deemed to be an admission by the Debtor or the Estate with respect to any matter discussed in the Plan, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgement, or release of any Claims, Interests, or any claims held by the Debtor or the Estate; or (c) prejudice in any manner the rights of the Debtor or the Estate in any further proceedings.

**8.** **Severability of Plan Provisions.** If, before entry of the Confirmation Order, the Court holds that any Plan term or provision is invalid, void, or unenforceable, the Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision. That term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section, is valid and enforceable under its terms.

**9.** **Governing Law.** The rights and obligations arising under the Plan and any agreements, contracts, documents, or instruments executed in connection with the Plan will be governed by, and construed and enforced in accordance with, California law without giving effect to California law's conflict of law principles, unless a rule of law or procedure is supplied by: (a) federal law (including the Bankruptcy Code and the Bankruptcy Rules); or (b) an express choice-of-law provision in any document provided for, or executed under or in connection with, the Plan.

**10.** **Successors and Assigns.** The rights, benefits, and obligations of any Person referred to in the Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assignee of that Person.

**11.** **Nonconsensual Confirmation.** In the event that any of the Classes entitled to vote to accept or reject the Plan fails to accept the Plan in accordance with Bankruptcy Code section 1129(a)(8): (a) the Debtor reserves the right to modify the Plan in accordance with

Bankruptcy Code section 1127; and (b) with respect to any Classes of Claims that do not accept the Plan or are deemed not to accept the Plan, the Debtor seeks confirmation under section 1129(b) of the Bankruptcy Code.  Notwithstanding any other provision of the Plan, the Debtor reserves the right to modify the Plan.

**12.  Revocation of the Plan.**  The Debtor reserves the right to revoke or withdraw the Plan before the Effective Date.

**13.  Amendment or Modification of the Plan.**  The Debtor may modify the Plan at any time before Confirmation.  However, the Court may under certain circumstances require a new disclosure statement and/or revoting on the Plan if the Debtor modifies the Plan prior to its Confirmation.  After Confirmation, modification of the Plan may occur in accordance with the provisions of Bankruptcy Code section 1127(b).  In accordance with section 1127 of the Bankruptcy Code, the Debtor reserves the right to alter, amend, or modify the Plan, including amending or modifying it to satisfy the requirements of the Bankruptcy Code.

**14.  Saturday, Sunday, or Legal Holiday.**  If any payment or act under the Plan should be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**15.  Post-Effective Date Status Reports.**  Debtor shall file status reports regarding the implementation of the Plan and the review, prosecution, and resolution of Causes of Action, respectively, every one-hundred twenty (120) days following the Effective Date through entry of a final decree closing the Case, or as otherwise ordered by the Court.

**16.  Post-Effective Date Notice.**  From and after the Effective Date, any Person who desires notice of any matter as to which the Bankruptcy Code requires notice to be provided shall file a request for post-Effective Date notice and shall serve the request on Debtor and counsel for Debtor; provided, however, that the U.S. Trustee and the Debtor shall be deemed to have requested post-Effective Date notice.

**17.  Maintenance and Disposition of Trust Records.**  Debtor shall continue to maintain the books and records of account relating to any assets and liabilities of the Debtor.

Debtor may destroy the books and records of the Debtor when its final decree is obtained, or it is dissolved under applicable law.

     **18.**    **Retention of Jurisdiction.**  The Court will retain and have such jurisdiction regarding the Case, proceedings in the Case and the Plan, as such jurisdiction existed before the Effective Date, including with respect to the following:

    (a)    the resolution of any disputes regarding the interpretation, enforcement, breach, performance and/or a default under this Plan and the Confirmation Order;

    (b)    the entry of such Orders as may be necessary or appropriate to implement, execute or consummate the provisions of the Plan, including, without limitations, the Confirmation Order, any appropriate Orders to affect the provisions of this Plan and to protect the Debtor and the Exculpated Parties from Creditors' actions and all contracts, instruments, releases, modification of this Plan pursuant to Section 1127, and other agreements or documents created in connection with the Plan, and rights, title, or interest of the Estate, as modified, or specified under the Plan, in any property , including to determine the extent, validity and priority of any lien asserted against property of the Estate;

    (c)    the determination of any and all motions, objections to Claims, adversary proceedings, applications, and contested or litigated matters that may be pending before the Court on the Effective Date or that, pursuant to the Plan, may be instituted by Debtor after the Effective Date;

    (d)    ensuring that Distributions to Holders of Allowed Claims and Interests are accomplished as provided in the Plan;

    (e)    hearing and determining any objections to Administrative Claims or Proofs of Claim, both before and after the Confirmation Date, including any objections to the classification of any Claim and to allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured

or unsecured status of any Claim, in whole or in part;

(f)   the entry and implementation of such Orders as may be appropriate in the event that the Confirmation Order is, for any reason, stayed, revoked, modified, reversed, or vacated;

(g)   the issuance of such Orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(h)   consideration of any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any Order of the Court, including the Confirmation Order;

(i)   determination of requests for payment of Claims entitled to priority under Section 507 including all applications of professionals for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(j)   hearing and determining disputes arising in connection with, or relating to, the Plan or the interpretation, implementation, or enforcement of the Plan, or the extent of any Person's obligations incurred in connection with or released or exculpated under the Plan;

(k)   the recovery of all Assets of the Debtor and property of the Estate, wherever located, and the prosecution of all Causes of Action;

(l)   the issuance of injunctions or other Orders as may be necessary or appropriate to restrain interference by any Person with consummation, implementation, or enforcement of the Plan;

(m)   the determination of any other matters that may arise in connection with, or are related to, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan;

(n)   hearing and determining matters concerning state, local, and federal Taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)  hearing any other matter that is not inconsistent with the Bankruptcy Code;

(p)  hearing and determining, to the fullest extent authorized by applicable law, any issue or dispute directly or indirectly arising from or related to the Debtor, the Plan or the Assets;

(q)  hearing and determining any other matter deemed relevant to the consummation of the Plan or the administration of the Case;

(r)  interpreting and enforcing Orders entered by the Court; and

(s)  entry of a final decree closing the Case.

**19.    Entry of a Final Decree.**  Promptly following the disposition of all Assets, including the Litigation Claims, and distribution of all Assets pursuant to the Plan, the Debtor will file a motion with the Court to obtain entry of a final decree closing the Case.

**VII.    TAX CONSEQUENCES OF THE PLAN**

**CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS**.

The following disclosure of possible tax consequences is intended solely for the purpose of alerting Creditors about possible tax issues the Plan may present to the Debtor.  The Plan Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all of the tax implications of any action.

**Federal Income Tax Consequences in General**

The following summary addresses certain material federal income tax consequences of the Plan to the holders of Allowed Claims.  The summary is based upon the Internal Revenue Code, applicable Treasury Regulations, judicial authority and current administrative rulings and pronouncements of the IRS, all of which are subject to change, possibly with retroactive effect. Due to the differences in the nature of the various holders of Allowed Claims, their taxpayer status, residence and methods of accounting and prior actions taken by such Holders with respect

to their Allowed Claims, the tax consequences described below are general in nature and are subject to significant considerations applicable to each holder of an Allowed Claim.

This discussion of the federal income tax consequences is not binding on the IRS, and the Debtor has not and does not intend to request an administrative ruling from the IRS with respect to any of the federal income tax aspects of the Plan.  No opinion of counsel has either been sought or obtained with respect to the federal, state, local or foreign tax aspects of the Plan.  Legislative, judicial or administrative changes or interpretations may be forthcoming that could alter or modify the statements and conclusions set forth herein.  Additionally, changes in the facts or circumstances relating to the consummation or operation of the Plan or other changes in circumstances could likewise affect the tax consequences to such parties.  The federal income tax consequences of the Plan and distributions are complex and subject to significant uncertainties. This summary does not address foreign, state or local tax consequences of the Plan except to the extent noted herein, nor does it purport to address all of the federal income tax consequences of the Plan.  This summary also does not purport to address the federal income tax consequences of the Plan to Holders of Claims subject to special treatment under the federal income tax laws, such as broker-dealers, tax-exempt entities, financial institutions, insurance companies, limited liability companies, small business investment companies, mutual funds, regulated investment companies, foreign corporations, and foreign persons.

**The Debtor CANNOT and DOES NOT represent that the tax consequences below are the only tax consequences of the Plan because the Internal Revenue Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action on the Debtor's tax liability or the tax implications to holders of Allowed Claims and Interests.  Holders of Allowed Claims and Interests are urged to consult with their tax advisors about the state, local and foreign tax consequences of the transactions contemplated under or in connection with the Plan.**

A distribution paid to a Holder of an Allowed Claim that is attributable to accrued but unpaid interest should be treated as ordinary income. Although not free from doubt, the intent is to

treat payments as applied first to principal, and if the principal amount is paid in full, then any interest portion of the Allowed Claim.

**Importance of Obtaining Professional Tax Assistance.**

**The foregoing is intended as a summary only and is not a substitute for careful tax planning with a tax professional.  The U.S. federal, foreign, state and local income and other tax consequences of the Plan are complex and, in some cases, uncertain.  Such consequences may also vary based on the particular circumstances of each holder of an Allowed Claim.  Accordingly, each holder of an Allowed Claim is strongly urged to consult with his, her or its own tax advisor regarding the federal, foreign, state and local income and other tax consequences under the Plan.**

**To ensure compliance with requirements imposed by the Internal Revenue Service, acting on behalf of the United States Treasury, you must be informed that any tax information contained in this Disclosure Statement is not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding tax-related penalties under any applicable law or regulation.  The tax information contained in this Disclosure Statement was written to support the promotion of the transactions described in this Disclosure Statement.**

**VIII.    CERTAIN RISK FACTORS OF THE PLAN TO BE CONSIDERED**

**The Plan and its implementation are subject to certain risks, including, but not limited to, the risk factors set forth below.  Prior to voting on the Plan, each Holder of a Claim entitled to vote should carefully consider the risk factors described below, as well as all of the information contained in this Disclosure Statement, including the Exhibits hereto, before deciding whether to vote to accept or reject the Plan.**

The success of the Plan is dependent on sufficient funds being available as of the Effective Date and during the duration of the Plan from the following sources: (a) the Debtor's cash on hand on the Effective Date, and (b) the proceeds from the disposition of the Property.

These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Plan and its implementation.  No representations concerning or related to

the Debtor, the Case, or the Plan are authorized by the Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement.  Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained herein, should not be relied upon by you in arriving at your decision.

**1.      The Plan May Not Be Accepted**

There can be no assurance that the requisite acceptances to confirm the Plan will be obtained.  Thus, while the Debtor believes the Plan is confirmable under the standards set forth in section 1129 of the Bankruptcy Code, there is no guarantee that the Plan will be accepted by the requisite Class entitled to vote on the Plan.

**2.      The Plan May Not Be Confirmed**

Even if the Holders of Claims who are entitled to vote accept the Plan, the Court, which may exercise substantial discretion as a court of equity, may choose not to confirm the Plan. Section 1129 of the Bankruptcy Code requires, among other things, that the value of Distributions to dissenting Holders of Claims or Interests may not be less than the value such Holders would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code and that the Debtor have sufficient cash on hand to satisfy all Effective Date obligations.  Although Debtor believes the Plan will meet such requirements, there can be no assurance the Court will reach the same conclusion.

**3.      Distributions to Holders of Allowed Claims Under the Plan**

Each Holder of an Allowed General Unsecured Claim will, by operation of the Plan, receive its Pro Rata share of the Available Cash.  The Disputed Claims Reserve will be funded pending allowance or disallowance of Disputed Claims.  A substantial amount of time may elapse between the Effective Date and the receipt of Distributions because of the time required to achieve final resolution of Disputed Claims and liquidate Assets.

**4.      Conditions Precedent to Consummation of the Plan**

The Plan provides for certain conditions that must be satisfied (or waived) prior to its confirmation.  The Plan also provides for certain other conditions that must be satisfied (or waived) prior to the Effective Date (*e.g.,* the Confirmation Order must have been entered and not

stayed; at least 14 days must have passed since entry of the Confirmation Order; and all material actions, documents, and agreements necessary to implement the Plan must have been effected or executed.  There can be no assurance that any or all of the conditions in the Plan will be satisfied (or waived).  Any delay in effectiveness of the Plan could result in, among other things, increased Administrative Expense Claims that could endanger the ultimate consummation of the Plan. If the Plan is not consummated or the Effective Date otherwise does not occur, then the Debtor anticipates that it will most likely seek to convert this Case to a case under Chapter 7 of the Bankruptcy Code.

### 5.    Certain Tax Considerations

As noted above, there are tax considerations, risks, and uncertainties associated with consummation of the Plan.  Each Holder of a Claim or Equity Interest is urged to consult with such Holder's tax advisors concerning the federal, state, local, foreign, and other tax consequences of the Plan.

### 6.    Alternative Plan

If the Plan is not confirmed, the Debtor, or any other party in interest could attempt to formulate a different plan.  However, the additional costs, all of which would constitute Administrative Expense Claims, may be so significant that one or more parties in interest could request that the Case be converted to chapter 7.  Accordingly, the Debtor believes that the Plan enables Creditors to realize the best return under the circumstances.

## IX.    CONFIRMATION REQUIREMENTS

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing Claims.  The Debtor CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm the Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays Creditors at least as much as creditors would receive in a chapter 7 liquidation, and whether the Plan is feasible.  These requirements are not the only requirements for confirmation.

**A.    Classification and Treatment of Claims and Interests**

The Bankruptcy Code requires that a plan divide the different Claims against, and equity interests in, the Debtor into separate classes based upon their legal nature.  Claims of a substantially similar legal nature are usually classified together.  The Bankruptcy Code does not require the classification of Administrative Claims and Certain Priority Claims as they are typically denominated "unclassified claims."

The Debtor believes that the classification of Claims specified in the Plan is appropriate and consistent with the requirements of the Bankruptcy Code.  The Court will determine the appropriateness of the classification of the Claims under the Plan in conjunction with the hearing on confirmation of the Plan.

A plan must designate each separate class of Claims and Interests either as "Impaired" (affected by the Plan) or "Unimpaired" (unaffected by the Plan).  If a class of Claims or Interests is "Impaired," under the Bankruptcy Code, the Holders of Claims or Interests, as applicable, in that class are entitled (i) to vote to accept or reject the Plan (unless the Plan provides for no distribution to the class, in which case the class is deemed to reject the Plan), and (ii) to receive property with a value at least equal to the value that the claimant would receive if a debtor were liquidated under chapter 7 of the Bankruptcy Code.  If a class of Claims is Unimpaired, the holders of Claims in that class are deemed to accept the Plan.

Under Bankruptcy Code section 1124, a class of Claims is "Impaired" unless the Plan leaves unaltered the legal, equitable, and contractual rights of the holders of Claims or Interests, as applicable, in the class.  In addition, a class of Claims is "Impaired" unless the Plan cures all defaults (other than those arising from the debtor's insolvency, the commencement of the Case, or non-performance of a non-monetary obligation, which need not be cured) that occurred before or after the commencement of the Case, reinstates the maturity of the Claims in the class,

compensates the claimants for their actual damages incurred as a result of their reasonable reliance on any acceleration rights, and does not otherwise alter their legal, equitable, and contractual rights. Except for any right to accelerate the Debtor's obligations, the Holder of an Unimpaired Claim will be placed in the position in which it would have been, *inter alia*, if the Case had not been commenced.

The classification and treatment of each class of Claims and Interests are set forth in detail in the Plan. The Debtor incorporates the Plan herein by reference instead of duplicating the contents of the Plan herein.

**B.      Who May Vote to Accept or Reject the Plan**

To vote to accept or reject the Plan, your Claim must be an Impaired Claim against the Debtor that has not been disallowed. Holders of Claims against and Interests in the Debtor that do not receive or retain any value under the Plan are deemed to reject the Plan and are not entitled to vote.

**1.      Allowed Claims**

With the exceptions explained below, under the Bankruptcy Code, a Claim generally is Allowed only if a proof of the Claim is properly filed by the bar date, and either no party in interest has objected or the Court has entered an order allowing the Claim. Under certain circumstances, as provided in the Bankruptcy Code, a Creditor may have an Allowed Claim even if a proof of claim was not filed and the applicable bar date for filing a proof of Claim has passed. For example, a Claim may be deemed Allowed if the Claim is listed on a Debtor's Schedules and is not scheduled as disputed, contingent, or unliquidated.

A Holder's Claim must be an Allowed Claim for the Holder of such Claim to have the right to vote on the Plan. Generally, for voting purposes, a Claim is deemed Allowed to the extent that: (a) either (1) a proof of claim is timely filed; or (2) a proof of claim is deemed timely filed either under Bankruptcy Rule 3003(b)(1)-(2) or by an order of the Court; and (b) either (1) the Claim is not subject to an objection; or (2) the Claim is Allowed by an order of the Court notwithstanding that objection. A Claim that is Allowed for voting purposes may still be subject to later objections and disallowance.

A Creditor whose Claim is not Allowed may still be entitled to vote to accept or reject the Plan if the Creditor has timely filed a proof of Claim that is not the subject of an objection filed before the hearing on Confirmation Hearing Date or a Bankruptcy Court order disallowing the Claim entered before the Confirmation Hearing Date.  An entity whose claim is subject to an objection is not eligible to vote on the Plan unless and until that objection is resolved in the entity's favor or, after notice and a hearing under Bankruptcy Rule 3018(a), the Bankruptcy Court temporarily allows the entity's Claim for the purpose of voting to accept or reject the Plan.  Any entity that seeks temporary allowance of its Claim for voting purposes must promptly file an appropriate motion and take the steps necessary to arrange an appropriate and timely hearing.

### 2.    Voting Requirements

Under the Bankruptcy Code, Claims are placed in classes under the Plan, and each Class entitled to vote accepts or rejects the Plan as a class.  Certain types of Claims are not classified because the Bankruptcy Code requires that they be treated in a specific way.  These Claims are considered unimpaired, and their Holders cannot vote.  Section III of the Plan sets forth a summary of the types of Claims against the Debtor, their treatment under the Plan, and, where applicable, the Classes in which they have been classified.

### 3.    Votes Necessary to Confirm the Plan

Under the Bankruptcy Code, the Bankruptcy Court may confirm a Plan if at least one Class of Impaired Claims has voted to accept that plan (without counting the votes of any insiders whose claims are classified within that class) and if certain statutory requirements are met both as to non-consenting members within a consenting class and as to dissenting classes.

Even if the Debtor receives the requisite number of votes to confirm the Plan, the Plan will not become binding unless and until, among other things, the Bankruptcy Court makes an independent determination that confirmation is appropriate.  This determination will be the subject of the hearing on confirmation of the Plan.  Debtor asserts that no classes of creditors are impaired under the Plan and therefore, no class of creditors is entitled to vote on the Plan.

\\\

### 4.   Votes Necessary for a Class to Confirm a Plan

A Class of Claims has accepted the Plan only when more than one-half (1/2) in number and at least two-thirds (2/3) in amount of the Allowed Claims actually voting in that class vote to accept the Plan.  A class of Interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

### C.   Cramdown: Treatment of Non-Consenting Classes

Even if all Classes do not consent to the proposed treatment of their Claims under the Plan, the Plan nonetheless may be confirmed if each dissenting class is treated in the manner prescribed by the Bankruptcy Code.  The process by which a dissenting Class is forced to abide by the terms of the Plan is commonly referred to as "cramdown."  The Bankruptcy Code allows a dissenting Class to be crammed down if the Plan does not "discriminate unfairly" and is "fair and equitable" as to such Class.  The Bankruptcy Code does not define unfair discrimination, but it does set forth certain minimum requirements for "fair and equitable" treatment.  For a Class of Secured Claims, "fair and equitable" can mean that the secured claimants retain their Liens and receive deferred cash payments, the present value of which equals the value of their interests in the collateral.  For a class of General Unsecured Claims, the Plan is fair and equitable if the Claims in that Class receive value equal to the Allowed amount of the Claims, or, if the General Unsecured Claims are not fully satisfied, no Claim or Interest that is junior to such Claims receives or retains anything under the Plan.

### D.   Liquidation Analysis/Best Interests Test

Bankruptcy Code section 1129(a)(7) requires that each holder of a Claim against the Debtor in an Impaired Class either (i) vote to accept the Plan, or (ii) receive or retain under the Plan cash or property of a value, as of the Effective Date of the Plan, that is not less than the value such Holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.  This is commonly referred to as the "Best Interests Test."

To determine if the Plan is in the best interest of the Impaired Classes in the Plan, the present value of the Distribution from the proceeds of the chapter 7 liquidation of the Debtor's

assets available to pay Claims is compared with the value of the property offered to each such class under the Plan.

Similar to a chapter 7 liquidation, all of Debtor's assets will be administered through the Plan, and the distribution of the proceeds will be in accordance with the priority scheme established by the Bankruptcy Code and applicable law, as set forth in the Plan.

If this Case were converted to a chapter 7 liquidation, the primary difference would be that a trustee would be appointed by the Bankruptcy Court. That trustee would liquidate the remaining assets of the Estate and distribute the proceeds in accordance with the priorities established under the Bankruptcy Code, following the completion of the liquidation and resolution of all claims.

The present value of the Distributions to Creditors would be less in a chapter 7 than they will be under the Plan for the following two primary reasons: (1) the chapter 7 trustee would incur substantial additional costs, including the trustee's own fee under Section 326 and those of his professionals; and (2) the distribution of cash by a chapter 7 trustee could be delayed for a significant period of time until the chapter 7 case was fully administered.

The chapter 7 trustee and the trustee's professionals would not have familiarity with the Debtor's prior business operations, or any other potential claim objections and Causes of Action, including Avoidance Actions, to recover more assets for the Estate. The chapter 7 trustee would engage new professionals, who would need to duplicate the learning curve of the Debtor's Professionals.

In addition, the chapter 7 trustee's fees could be as much as three percent (3%) of all funds distributed. All of these additional expenses would reduce the total amount distributed to Holders of Claims in chapter 7.

Moreover, the Distributions that would be made if this Case were converted to a case under chapter 7 would likely be substantially delayed. The chapter 7 trustee would likely also seek to complete all Claim Objections and any litigation he or she chooses to pursue to recover on account of Causes of Action. In contrast, under the Plan, Debtor has the ability to make interim distributions prior to completing the liquidation and resolution of all claims.

Thus, in a chapter 7 liquidation, it is certain that the total net liquidation proceeds would be less than the proceeds under the Plan, and that the value of that distribution would be further reduced by the delay in distribution which is likely to occur.

In a chapter 7 liquidation, the net proceeds projected would need to be further reduced for trustee fees, additional professional fees and delay. Accordingly, the Debtor believes that all Creditors and Interest Holders will receive at least as much under the Plan as such Creditor or Interest Holder would receive in a chapter 7 liquidation.

Based on the foregoing, the Debtor believes that the Plan satisfies the requirements of the "Best Interests Test," and provides Creditors at least as much present value as they would receive in a chapter 7 liquidation.

**AN ANALYSIS, INCLUDING THE CLAIMS ESTIMATES, LIQUIDATION/PROJECTED RECOVERIES, WAS PREPARED SOLELY TO ASSIST THE BANKRUPTCY COURT IN MAKING THE FINDINGS REQUIRED UNDER SECTION 1129(a)(7) OF THE BANKRUPTCY CODE AND MAY NOT BE USED OR RELIED UPON FOR ANY OTHER PURPOSE.**

**THE DEBTOR BELIEVES THAT ANY ANALYSIS OF A HYPOTHETICAL LIQUIDATION REQUIRES ESTIMATES AND ASSUMPTIONS ABOUT FUTURE EVENTS THAT ARE INHERENTLY SUBJECT TO SIGNIFICANT LITIGATION AND OTHER UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF THE DEBTOR OR A CHAPTER 7 TRUSTEE. NEITHER THE LIQUIDATION ANALYSIS, NOR THE FINANCIAL INFORMATION ON WHICH IT IS BASED, HAS BEEN EXAMINED OR REVIEWED BY INDEPENDENT ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS. THERE CAN BE NO ASSURANCE THAT ACTUAL RESULTS WOULD NOT VARY MATERIALLY FROM THE HYPOTHETICAL RESULTS REPRESENTED IN THE LIQUIDATION ANALYSIS ATTACHED AS <u>EXHIBIT 7</u>.**

### E.      Feasibility

The Bankruptcy Code provides that the Plan may only be confirmed if confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor, unless such liquidation or reorganization is proposed in the Plan.  11 U.S.C. § 1129(a)(11). This is referred to as the "feasibility" requirement.

There are at least two important aspects of the feasibility analysis.  The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date.  The Liquidation Analysis spreadsheet attached hereto as **Exhibit 7** will set forth the Debtor's analysis in table form.  Debtor asserts that after the disposition of the Beaumont Property it will have sufficient funds to pay all the Allowed Claims and expenses which are entitled to be paid under the Plan.

The second aspect of feasibility considers whether the Debtor will have enough cash over the life of the Plan to make the required Plan payments.  Based upon the disposition of the Beaumont Property, Debtor is projected to have Available Cash sufficient to pay all Allowed Claims, any accrued operating liabilities, Professional Fee Claims and ordinary expenses of its Estate.  Therefore, the Debtor believes that the Plan satisfies the feasibility requirement set forth in Bankruptcy Code section 1129.

## X.      EFFECT OF CONFIRMATION OF THE PLAN

### A.      Revesting Of Property In Debtor

All property of the Estate shall be revested in the Reorganized Debtor on the Effective Date.

### B.      Property Free and Clear of Claims

Except as provided herein to the contrary, all property of the Estate distributed under the Plan shall be distributed free and clear of all Claims asserted by any Claimants, Interest Holders, parties in interest and other entities.

### C.      Limitation of Liability

The Debtor, Interest Holders, GFH and CLC shall have all the benefits and protections afforded under Section 1125(e) of the Bankruptcy Code and applicable law.  Neither the Debtor,

Interest Holders, GFH, CLC, nor any of its employees, attorneys, advisors, members, shareholders, fiduciaries or agents (including any professionals retained by such persons), nor any of their respective predecessors or successors, will have or incur any liability as set forth in 11 U.S.C §1125(e) to any holder of a Claim or Interest or any other entity for any act or omission in connection with, or arising out of, the Case, the pursuit of approval of the Disclosure Statement or the solicitation of votes for or confirmation of the Plan or consummation or administration of the Plan or the property to be distributed under the Plan, including the formulation, dissemination, confirmation, approval or consummation of the Plan, the Disclosure Statement, or any other document, instrument or agreement relating thereto, or in connection with the effectiveness or performance of the Plan, or any distributions of cash or other property to the Plan.

**D.      No Liability for Solicitation or Participation**

As specified in Section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law,  rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer issuance, sale, or purchase of securities.

**E.      Corporate Actions**

On the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects (subject to the provisions of this Plan) by virtue of the entry of the Confirmation Order, in accordance with the Bankruptcy Code and applicable state law and without any requirement of further action by the Debtor, the stockholders, officers or directors of the Debtor.  All matters provided for under the Plan involving the corporate structure of the Debtor and any corporate action required by the Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect pursuant to the Bankruptcy Code, without any requirement of further action by the Debtor, shareholders, officers or directors of the Debtor.  On the Effective Date, the Reorganized Debtor is authorized and directed to implement the

provisions by the Plan and any other agreements, documents and instruments contemplated by the Plan.

**F.      Post-Confirmation Injunction**

The Plan is the sole means for resolving, paying, or otherwise dealing with Claims and Interests with respect to the Estate, the Debtor, and their Assets. To that end, except as expressly provided herein, at all times on and after the Effective Date, all Persons who have been, are, or may be Holders of Claims or Interests arising prior to the Effective Date shall be permanently enjoined from taking any of the following actions on account of any such Claims or Interests, against the Estate, the Debtor, or their Assets (other than actions brought to enforce any rights or obligations under the Plan and any Claim, contested matters, or adversary proceedings pending in the Case as of the Effective Date):

1.      Commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Estate, the Debtor, or the Professionals, their successors, or their respective property or assets (including, without limitation, all suits, actions, and proceedings that are pending, other than before the Bankruptcy Court or by explicit provision of the Bankruptcy Court, as of the Effective Date);

2.      Enforcing, levying, attaching, executing, collecting, or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree, or Order against the Estate, the Debtor, or the Professionals, their successors, or their respective property;

3.      Creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien against the Estate, the Debtor, or the Professionals, their successors, or their respective Assets; and

4.      Proceeding in any place whatsoever against the Estate, the Debtor, or the Professionals, their successors, or their respective Assets, in any manner that does not conform to or comply with the provisions of the Plan.

5.      No suit, action, or other proceeding may be commenced, conducted, or continued in any manner, directly or indirectly, by a Holder of a Claim or Interest on account of such Claim or Interest against the Debtor without the written consent of Debtor or Order of the

- 55 -

Bankruptcy Court acquired by motion on notice to Debtor.  If the Holder of a Claim violates this provision, in addition to any other recourse or damages to which the Debtor may be entitled, the Claims of such Holder shall be disallowed, and any Distributions made on account of such Claims shall be repaid by such Holder to the Debtor.

**G.      Modification of Plan**

The Debtor may modify the Plan at any time before the Confirmation Hearing Date. However, the Bankruptcy Court may under certain circumstances require a new disclosure statement and/or revoting on the Debtor modifies the Plan prior to confirmation of the Plan.  After confirmation, modification of the Plan may occur in accordance with the provisions of Bankruptcy Code section 1127(b).

**H.      Post-Confirmation Status Report**

Within 120 days of the entry of the Confirmation Order, the Debtor shall file a status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee and those parties who have requested post-Effective Date notice in accordance with Section 7.15 of the Plan. Further status reports shall be filed every 120 days and served on the same entities.

**I.      Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of entry of the Confirmation Order shall be paid to the United States Trustee on or before the effective date of the plan. Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after the Confirmation Order shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree.

**J.      Post-Confirmation / Pre-Effective Date**

During the period between the Confirmation Hearing Date—provided that the Bankruptcy Court confirms the Plan—and the occurrence of the Effective Date, the Debtor will continue to manage the business and affairs of the Debtor as a debtor and debtor in possession under the Bankruptcy Code.

\\\

**K.** **Post-Confirmation Conversion/Dismissal**

A Creditor or party in interest may bring a motion to convert or dismiss the Case under Bankruptcy Code section 1112(b), after the Plan is confirmed. If the Bankruptcy Court orders the Case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the Estate, and that has not been disbursed pursuant to the Plan, will revest in the chapter 7 estate, and the automatic stay will be reimposed upon the revested property.

**L.** **Final Decree**

Once the Estate has been fully administered as referred to in Bankruptcy Rule 3022, Debtor shall file a motion with the Bankruptcy Court to obtain a final decree to close the Case.

## XI. RECOMMENDATION AND CONCLUSION

The Debtor believes that Plan confirmation and implementation are preferable to any feasible alternative. **Accordingly, the Debtor urges Persons who hold Allowed Claims entitled to vote to accept the Plan by checking the box marked "Accept" on their Ballots and then returning the Ballots as directed in the Disclosure Statement.**

Dated: March 7, 2025

Respectfully submitted by
**GOE FORSYTHE & HODGES LLP**

By: /s/Robert P. Goe
Robert P. Goe
Attorneys for American Open Space
Remedies, LLC, a California limited
liability company, Debtor and Debtor in
Possession

- 57 -

## DECLARATION OF SCOTT KRENTEL

I, Scott Krentel, declare and state,

I am the authorized representative of Beaumont 1600, LLC, the Manager of American Open Space Remedies, LLC, the debtor and debtor in possession in the instant bankruptcy case ("Debtor") to make this declaration in support of Debtor's *Disclosure Statement Describing Debtor's Chapter 11 Plan of Reorganization Dated March 7, 2025* ("Disclosure Statement"). I have personal knowledge of the facts stated herein, and if called upon to testify, I could and would competently and truthfully testify thereto. Capitalized terms set forth herein shall have the same meaning set forth in the Disclosure Statement.

1.    Debtor's voluntary Chapter 11 petition commencing this Case was filed on November 8, 2024 ("Petition Date").

2.    I have reviewed the Disclosure Statement.

3.    All statements and representations made in the Disclosure Statement are truthful and accurate and I support approval of the same.

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

EXECUTED this 7th day of March 2025 in California.

_____
Scott Krentel

- 55 -

# EXHIBIT 1

# EXHIBIT 1

Robert P. Goe – State Bar No. 137019
Reem J. Bello – State Bar No. 198840
**GOE FORSYTHE & HODGES LLP**
17701 Cowan, Building D, Suite 210
Irvine, CA 92614
Email: rgoe@goeforlaw.com
　　　　rbello@goeforlaw.com
Telephone:  (949) 798-2460
Facsimile:   (949) 955-9437

Attorneys for American Open Space
Remedies, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

In re:

AMERICAN OPEN SPACE REMEDIES, LLC,

Debtor and Debtor-in-Possession.

Case No.  8:24-bk-12885-SC

Chapter 11 Proceeding

**DEBTOR'S CHAPTER 11 PLAN OF
REORGANIZATION DATED MARCH
7, 2025; DECLARATION OF SCOTT
KRENTEL IN SUPPORT THEREOF**

Disclosure Statement Hearing:
Date:　　　　May 7, 2025
Time:　　　　1:30 p.m.
Courtroom:　　5C
　　　　　　　U. S. Bankruptcy Court
　　　　　　　411 West Fourth Street
　　　　　　　Santa Ana CA 92701

EXHIBIT 1                                    Page 1 of 50

## SUMMARY INFORMATION

| | |
|---|---|
| Debtor: | American Open Space Remedies, LLC, a California limited liability company |
| **Recommendation:** | **The Debtor recommends that you vote in favor of the Plan.** |
| Vote Required to Accept the Plan: | Acceptance of the Plan requires an affirmative vote of two-thirds in amount and a majority in number of the Allowed Claims actually voted in each Class of Impaired Claims entitled to vote.  Entities holding Claims in Classes 3 and 4 are Impaired and entitled to vote. Classes 1 and 2 are Unimpaired and not entitled to vote.  If any of these Classes reject the Plan, however, the Bankruptcy Court nevertheless may confirm the Plan if the "cramdown" requirements of Bankruptcy Code section 1129(b) are satisfied with respect to such Class. |
| Voting Information: | If you are entitled to vote, you should have received a Ballot with this Disclosure Statement.  After completing and signing your Ballot, you should return it by mail or fax to: |

> Goe Forsythe & Hodges LLP
> Attn: Robert P. Goe
> 17701 Cowan, Suite 210
> Irvine, CA 92614
> Fax: (949) 955-9437

For your Ballot to be counted, it must be *received* not later than 5:00 p.m. Pacific Standard Time on [Date Not Yet Set].

| | |
|---|---|
| Treatment of Claims: | The treatment that Creditors will receive if the Bankruptcy Court confirms the Plan is set forth in the Plan and only summarized in this Disclosure Statement.  The terms of the Plan are controlling, and all Creditors and interested parties are urged to read the Plan in its entirety. |
| The Effective Date: | The Effective Date of the Plan shall be the date fifteen days following the entry of the Confirmation Order (which Confirmation Order shall be a Final Order) and the later of date of the close of escrow on either: (i) the sale of the Beaumont Property; (ii) refinance of the Beaumont Property; or (iii) joint venture on the Beaumont Property. |
| Questions: | All inquiries about the Plan and Disclosure Statement should be in writing and should be sent to: |

> Goe Forsythe & Hodges LLP
> Attn: Robert P. Goe
> 17701 Cowan, Suite 210
> Irvine, CA 92614

EXHIBIT 1 - 2 -                     Page 2 of 50

Fax: (949) 955-9437
Email: rgoe@goeforlaw.com

**IMPORTANT NOTICE:** **THE PLAN, DISCLOSURE STATEMENT, AND BALLOT CONTAIN IMPORTANT INFORMATION THAT IS NOT INCLUDED IN THIS SUMMARY. THAT INFORMATION COULD MATERIALLY AFFECT YOUR RIGHTS. YOU SHOULD THEREFORE READ THE PLAN, DISCLOSURE STATEMENT, AND BALLOT IN THEIR ENTIRETY. YOU ALSO SHOULD CONSULT WITH YOUR LEGAL AND FINANCIAL ADVISORS BEFORE VOTING ON THE PLAN.**

## I. PLAN OBJECTIVES AND OVERVIEW

**Section 1.1. General Objectives.** The Plan contemplates that the Debtor will administer its assets and distribute the proceeds and funds on hand to its Creditors and Interest Holders in accordance with the priorities set forth in the Bankruptcy Code. The Effective Date of the Plan shall be the date fifteen days following the entry of the Confirmation Order (which Confirmation Order shall be a Final Order) and the later of date of the close of escrow on either: (i) the sale of the Beaumont Property; (ii) refinance of the Beaumont Property; or (iii) joint venture on the Beaumont Property.

**Section 1.2. Disclosure Statement.** A detailed overview of the Case is set forth in the Disclosure Statement, and parties should review the Disclosure Statement carefully for an understanding of both the Case and the Plan.

## II. DEFINITIONS AND RULES OF INTERPRETATION

**Section 2.1. Definitions**. The following terms, when used in the Plan, have the meanings set forth below. Terms defined in the Disclosure Statement shall have the same meaning in the Plan.

"**Administrative Claim**" means a Claim for any expense of administration of the Chapter 11 Case under Section 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) or 507(b) of the Bankruptcy Code, including, without limitation: (a) the actual, necessary costs and expenses of preserving the Estate after the Petition Date; (b) Ordinary Course

EXHIBIT 1 - 3 - Page 3 of 50

Administrative Claims; (c) Professional Fee Claims; (d) 503(b)(9) Claims; and (d) all fees payable under 28 U.S.C. § 1930.

"**Administrative Claim Bar Date**" means, unless another date is set by the Court, the date that is thirty (30) days after the Effective Date, or, if such date is not a Business Day, the next Business Day thereafter; *provided, however*, that the Administrative Claim Bar Date does not apply to Professional Fee Claims.

"**Administrative Claim Objection Deadline**" means the deadline set forth in Section 3.6.

"**Administrative Claims Reserve**" means the reserve of Cash funded by the Debtor and maintained by the Debtor, for the benefit of Holders of Allowed Administrative Claims (exclusive of Holders of Professional Fee Claims, the reserve for which Holders shall be the Professional Fee Reserve) and Allowed Priority Tax Claims, in an amount equal to the Administrative and Priority Claims Estimate.  For the avoidance of doubt, when setting this reserve amount, the Debtor may take into consideration any amounts reserved by other parties on account of the same claims.

"**Administrative and Priority Claims Estimate**" means, as of the Effective Date, the face amount, exclusive of Professional Fee Claims, of all unpaid Claims that will be Allowed Administrative Claims and Allowed Priority Tax Claims.

"**Allowed**" or "**Allowed Claim**" means

      (a)    With respect to a Claim arising prior to the Petition Date

          (i)    Either: (1) a proof of Claim was timely filed; or (2) a proof of Claim is deemed timely filed either under Bankruptcy Rule 3003(b)(1)-(2) or by a Final Order; and

          (ii)    Either: (1) the Claim is not a Disputed Claim; or (2) the Claim is allowed by a Final Order or under the Plan; and

      (b)    With respect to a Claim arising on or after the Petition Date, a Claim allowed pursuant to Order of the Court.

Unless otherwise specified in the Plan, an Allowed Claim does not include interest on the Claim accruing after the Petition Date.  Moreover, any portion of a Claim that is satisfied, released or waived during the Case is not an Allowed Claim.

EXHIBIT 1    - 4 -    Page 4 of 50

"**Assets**" means all assets of the Estate, including property of the Estate under section 541 of the Bankruptcy Code, and all rights and privileges of the Debtor and the Estate, including attorney-client and similar privileges.

"**Available Cash**" means: all Cash of the Debtor, including Cash realized from the disposition of Assets, recoveries from Causes of Action, or from any other source, and the interest earned on its funds, including on any reserves; less the amount of Cash estimated and reserved by Debtor to pay all unpaid Allowed Administrative Claims not paid from the Administrative Claims Reserve, Allowed Priority Tax Claims, Priority Non-Tax Claims, and any other costs to carry out the provisions of the Plan on and after the Effective Date.

"**Avoidance Action**" means a Cause of Action, adversary proceeding, lawsuit, or other proceeding arising under or relating to chapter 5 of the Bankruptcy Code, including without limitation sections 502(d), 506, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, or 553, or any fraudulent conveyance, fraudulent transfer, or preference laws, or any Cause of Action arising under or relating to any similar state law or federal law that constitutes, or the recoveries from which constitute, property of the Estate under Bankruptcy Code section 541, whether or not an adversary proceeding, lawsuit, or other proceeding is initiated before or after the Effective Date.

"**Ballot**" means the Ballot for accepting or rejecting the Plan.

"**Bankruptcy Code**" means title 11 of the United States Code, as applicable in the Case.

"**Bankruptcy Rules**" mean the Federal Rules of Bankruptcy Procedure, as applicable in the Case.

"**Business Day**" means any day other than a Saturday, Sunday, or a legal holiday (as defined in Bankruptcy Rule 9006(a)).

"**Case**" means the chapter 11 case of the Debtor bearing case number 8:24-bk-12885-SC.

"**Cash**" means cash or cash equivalents including but not limited to bank deposits, checks, wire transfers, readily marketable securities, instruments and obligations of the United States of America or instrumentalities thereof or other similar items.

EXHIBIT 1 - 5 -                                      Page 5 of 50

"**Causes of Action**" means any and all claims, causes of action (including the State Court Lawsuit), cross-claims, counterclaims, third-party claims, indemnity claims, contribution claims, defenses, demands, rights, actions, debts, damages, judgments, remedies, Liens, indemnities, guarantees, suits, obligations, liabilities, accounts, offsets, recoupments, rights of subordination or subrogation, the right to object to Claims; all claims and rights pursuant to Section 362 of the Bankruptcy Code; all Avoidance Actions, powers, privileges, licenses, and franchises of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, whether arising before, on or after the Petition Date, including rights, actions, causes of action, and suits of the Debtor or the Estate, of any kind or character whatsoever, known or unknown, suspected or unsuspected, in contract or in tort, at law or in equity, or under any other theory of law.

"**Claim**" means a claim, whether or not asserted, as defined in Bankruptcy Code section 101(5) against the Debtor.

"**Claims Bar Date**" means March 5, 2025, which was the date(s) fixed for filing proofs of claim against the Estate pursuant to the Court's Order entered on January 9, 2025 [Docket No. 33].

"**Claims Objection Deadline**" means the date to be set by the Court by which objections to Claims must be filed.

"**Class(es)**" means each category or group of Holders of Claims or Equity Interests that has been designated as a class in Article III herein.

"**Confirmation Date**" means the date on which the Court enters the Confirmation Order on its docket.

"**Confirmation Hearing Date**" means the first date on which the Court holds the hearing to consider the confirmation of the Plan pursuant to Bankruptcy Code section 1128(a).

"**Confirmation Order**" means the Order of the Court confirming the Plan under Bankruptcy Code section 1129.

"**Court**" means the United States Bankruptcy Court for the Central District of California, or any other court that exercises jurisdiction over the Case.

EXHIBIT 1 - 6 -                              Page 6 of 50

"**Creditor**" means the Holder of a Claim against the Debtor.

"**Debtor**" means American Open Space Remedies, LLC, a California limited company, debtor and debtor in possession in the Case.

"**Disclosure Statement**" means the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Court pursuant to Bankruptcy Code section 1125.

"**Disclosure Statement Order**" means the Order to be entered by the Court approving the Disclosure Statement.

"**Disputed Claim**" means any Claim: (a) as to which a proof of claim has been filed and the dollar amount of such Claim is not specified in a fixed liquidated amount; (b) as to which a proof of claim has been timely filed and the dollar amount of such Claim is specified in a fixed liquidated amount, the extent to which the stated amount of such Claim exceeds the amount of such Claim listed in the Bankruptcy Schedules as not being disputed, contingent, or unliquidated, or is listed in the Bankruptcy Schedules with a different priority than reflected in the proof of claim; (c)  as to which a proof of claim has not been timely filed and such Claim is not included in the Bankruptcy Schedules or is listed in the Bankruptcy Schedules as contingent, disputed, or unliquidated; (d) as to which a proof of claim was required to be filed and was not timely filed; (e) as to which an objection has been filed and such objection has neither been overruled nor been denied by a Final Order and has not been withdrawn; or (f) with respect to an Administrative Claim, as to which an objection: (i) has been timely filed (or the deadline for objection to such Administrative Claim has not expired) and (ii) has neither been overruled nor been denied by a Final Order and has not been withdrawn.

"**Disputed and Estimated Claim Reserve**" shall have the meaning set forth in Section 5.14 of the Plan.

"**Disputed Reserve**" shall have the meaning set forth in Section 5.14 of the Plan.

"**Distribution**" means any transfer under the Plan of Cash or other property to Holders of Allowed Claims under the Plan.

EXHIBIT 1
- 7 -                                                           Page 7 of 50

"**Effective Date**" means the date fifteen days following the entry of the Confirmation Order (which Confirmation Order shall be a Final Order) and the later of date of the close of escrow on either: (i) the sale of the Beaumont Property; (ii) refinance of the Beaumont Property; or (iii) joint venture on the Beaumont Property.

"**Effective Date Obligations**" means all required payments for the Effective Date to occur.

"**Estate**" means the estate created in the Case under Bankruptcy Code section 541.

"**Estimated Claim**" means a Claim, the amount of which is determined for purposes of Distributions pursuant to Section 5.10 of the Plan.

"**Final Order**" means an Order of the Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any rights to appeal, petition for certiorari, or seek reargument or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor, in the event that an appeal, writ of certiorari, or reargument or rehearing has been sought or filed, such Order of the Court or other court of competent jurisdiction shall have been determined by the highest court to which such Order was appealed, or certiorari, reargument, and rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired as a result of which such Order shall have become final in accordance with Bankruptcy Rule 8002; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable law, may be filed with respect to such Order shall not cause such Order not to be a Final Order.

"**General Unsecured Claim**" means any Claim that is not an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, a Customer Claim or a Warranty Claim, or a Subordinated Claim.

"**GFH**" means Goe Forsythe & Hodges LLP, Debtor's general bankruptcy counsel.

EXHIBIT 1 - 8 -                    Page 8 of 50

"**Governmental Authority**" means any international, federal, state, or local government or other political subdivision, department or agency thereof, including, without limitation, any Person exercising executive, legislative, judicial, regulatory, or administrative governmental powers or functions.

"**Holder**" means the holder of a Claim against or Interest in the Debtor, the Estate or the Debtor.

"**Impaired**" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Interest**" means the interest of any Person who holds an ownership interest in the Debtor no matter how held.

"**Internal Revenue Code**" means the Internal Revenue Code of 1986 as amended.

"**IRS**" means the Internal Revenue Service.

"**Lien**" means any mortgage, pledge, lien, encumbrance, charge, security interest, or other charge against or interest in property to secure payment of a debt or performance of an obligation.

"**Operating Reserve**" means the Cash Reserve to be established by Debtor for the payment of all actual and projected Post Effective Date Expenses.

"**Order**" means any writ, judgment, decree, injunction, or order of any Governmental Authority (whether preliminary or final).

"**Ordinary Course Administrative Claim**" means a Claim for an administrative cost or expense that is allowable under Bankruptcy Code section 503(b) that is incurred in the ordinary course of the Debtor's operations or the Case, or for which payment is authorized by a Final Order of the Court.

"**Penalty Claim**" means a Claim that would be subject to Bankruptcy Code 726(a)(4) if the Case had been filed under chapter 7 of the Bankruptcy Code.

"**Person**" means an individual, a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization, any other business entity, or a Governmental Authority.

EXHIBIT 1 - 9 -                    Page 9 of 50

"**Petition Date**" means November 8, 2024, the date on which the Debtor filed its voluntary petition commencing the Case.

"**Plan**" means this plan of reorganization under chapter 11 of the Bankruptcy Code, including, without limitation, all exhibits, supplements, appendices, and schedules thereto.

"**Plan Proponent**" means Debtor.

"**Post Effective Date Expenses**" means all voluntary and involuntary costs, expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent, or unliquidated incurred by the Debtor after the Effective Date related to the implementation of the Plan, including: (a) the expenses of Debtor in administering and implementing the Plan, including any Taxes incurred by the Debtor or on the Assets and accrued on or after the Effective Date; (b) all U.S. Trustee Fees which are due on or after the Effective Date; (c) the expenses of Debtor in making the Distributions as required by the Plan, including paying Taxes, filing Tax returns, and paying Professionals' fees and costs with respect to such Distributions; (d) the expenses incurred by the Debtor relating to the Plan; (e) the expenses of independent contractors and Professionals (including, without limitation, attorneys, advisors, accountants, brokers, consultants, experts, professionals, and other Persons) providing services to the Debtor relating to the Plan; and (f) the expenses related to the Debtor's indemnity obligations, the purchase of errors and omissions insurance, and/or other forms of indemnification.

"**Postpetition**" means the time after the Petition Date.

"**Priority Claims**" means Priority Non-Tax Claims and Priority Tax Claims.

"**Priority Non-Tax Claim**" means a Claim, other than an Administrative Claim or Priority Tax Claim, entitled to priority under Bankruptcy Code section 507(a).

"**Priority Tax Claim**" means a Claim entitled to priority under Bankruptcy Code section 502(i) or 507(a)(8).

"**Professional Fee Claim**" means: (a) a claim under Bankruptcy Code section 327, 328, 330, 331, 503(b), 1103, or 1106 for compensation for professional services rendered or expenses incurred prior to the Effective Date; or (b) a claim under Bankruptcy Code section 503(b)(4) for

EXHIBIT 1   - 10 -                                    Page 10 of 50

compensation for professional services rendered or under Bankruptcy Code section 503(b)(3)(D) for expenses incurred prior to the Effective Date in making a substantial contribution in the Case.

"**Professionals**" means those Persons: (a) retained pursuant to an Order of the Court in accordance with sections 327, 1103, or 1106 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Court pursuant to sections 330 and 503(b)(2) of the Bankruptcy Code.

"**Pro Rata Share**" means, for the purpose of Distributions, a proportionate share such that the ratio of (a) the amount of consideration to be distributed on account of all such Allowed Claims to such Class; provided, however, that for purposes of determining Interim Dividends, if any, the amounts of Disputed General Unsecured Claims, if any, shall be included in the calculation of (b) above.

"**Rejection Claim Bar Date**" shall have the meaning set forth in Section 4.2 of the Plan.

"**Remaining Assets**" means any and all Cash and all other Assets, including Causes of Action, of the Debtor on the Effective Date.

"**Schedules and SOFA**" means the Schedules, Statement of Financial Affairs and related documents filed on December 5, 2024 [Dockets No. 20-21].

"**Secured Claim**" means a Claim that is secured by a valid and unavoidable Lien against property in which the Estate has an interest or that is subject to setoff under Bankruptcy Code section 553. A Claim is a Secured Claim only to the extent of the value of the Holder's interest in the collateral securing the Claim or to the extent of the amount subject to setoff, whichever is applicable, and as determined under Bankruptcy Code section 506(a).

"**Tax**" or "**Taxes**" means any federal, state, local, or foreign income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental (including taxes under Internal Revenue Code section 59A), customs duties, capital stock, franchise, profits, withholding, social security (or similar), unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or

EXHIBIT 1
- 11 -
Page 11 of 50

addition thereto, whether disputed or not and including any obligations to indemnify or otherwise assume or succeed to the tax liability of any other Person.

"**Unclassified Claim**" means any Claim which is not assigned to a Class under the Plan.

"**U.S. Trustee**" means the Office of the United States Trustee for the Central District of California.

"**U.S. Trustee Fees**" means all fees and charges assessed against the Estate by the U.S. Trustee and due pursuant to section 1930 of title 28 of the United States Code.

"**Voting Deadline**" means the date set by the Court for timely submitting a Ballot in connection with confirmation of the Plan.

**Section 2.2.    Rules of Interpretation.**

a.    The rules of construction in Bankruptcy Code section 102 apply to the Plan.

b.    Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a) applies when determining any time period under the Plan.

c.    A term that is used in the Plan and that is not defined in the Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

d.    The definition given to any term or provision in the Plan supersedes and controls over any different meaning that may be given to that term or provision in the Disclosure Statement.  In the event of any conflict or inconsistency between the Plan and the Disclosure Statement, the Plan shall control.  In the event of any conflict or inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.  For the sake of clarity, the hierarchy of controlling documents in the event of a conflict shall be: (i) the Confirmation Order; (ii) the Plan; and (iii) the Disclosure Statement.

e.    Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

f.    Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or substantially on those terms.  Any reference to an existing document means the document as it has been, or may be, amended, modified, or supplemented.

EXHIBIT 1    - 12 -    Page 12 of 50

g.    Unless otherwise indicated, the phrase "to the extent provided in the Plan" and similar words or phrases refer to the Plan in its entirety rather than to only a portion of the Plan.

h.    Unless otherwise specified, all references to sections and exhibits are references to sections and exhibits of the Plan.

i.    Captions and headings in the Plan are used only as convenient references and do not affect the meaning of the Plan.

## III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.    Classification of Claims

**Section 3.1.    Classification Generally.**  The Plan classifies Claims and Interests, except for Administrative Claims and Priority Tax Claims, which are not classified, for all purposes, including voting on, confirmation of, and Distributions under the Plan.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the Class description.  To the extent that part of the Claim or Interest falls within a different Class description, that portion of the Claim or Interest is classified in that different Class.  The Plan states whether each Class of Claims or Interests is Impaired and provides for treatment that each Class will receive.  The treatment in the Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each Person holding a Claim, or an Interest may have in or against the Debtor or its property.  This treatment supersedes and replaces any agreements or rights those entities have in or against the Debtor or its property.  NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM OR INTEREST THAT IS NOT AN ALLOWED CLAIM OR ALLOWED INTEREST.

**Section 3.2.    Classes of Claims and Interests**.  Claims and Interests are classified as follows:

| Class | Description | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| Class 1 | Liquid Funds LLC | No | No, subject to bona fide dispute in State Court Lawsuit and Unimpaired |

EXHIBIT 1 - 13 -                Page 13 of 50

| Class | Description | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| Class 2 | Aminam, LLC | No | No, subject to bona fide dispute in State Court Lawsuit and Unimpaired |
| Class 3 | Barry Hildebrandt | Yes | Yes |
| Class 4 | General Unsecured Creditors | Yes | Yes |
| Class 5 | Interests | No | Deemed to Accept |

### B.   Unclassified Claims

**Section 3.3.   Administrative Claims and Priority Tax Claims.**  Administrative Claims and Priority Tax Claims are not placed into Classes that are not entitled to vote to accept or reject the Plan; instead, such Claims are unclassified.  Such Claims are not considered Impaired, and they do not vote on the Plan because they are entitled to specific treatment under the Bankruptcy Code.  Accordingly, the Plan does not place these Claims in Classes.  The treatment for these Claims is provided in Sections 3.4 and 3.9.  Holders of Allowed Administrative Claims not paid from the Administrative Claims Reserve and Allowed Priority Tax Claims shall be deemed to hold Claims against the Debtor in the amount of their Allowed Administrative Claims and Allowed Priority Tax Claims and shall receive payments on such Claims pursuant to the provisions of the Plan.

**Section 3.4.   Administrative Claims.**  Except to the extent that the Holder of an Allowed Administrative Claim agrees to less favorable treatment or unless otherwise ordered by the Court, each Holder of an Allowed Administrative Claim shall receive in full satisfaction, discharge, exchange, and release thereof, Cash from the Administrative Claims Reserve, or Cash from the Remaining Assets, if the Administrative Claims Reserve has been exhausted, in an aggregate amount equal to the amount of such Allowed Administrative Claim on the later of: (a) the Effective Date; and (b) the fifteenth (15th) Business Day after such Administrative Claim becomes an Allowed Administrative Claim, or, in either case, as soon thereafter as is practicable. Debtor does not know of any Administrative Claims that are not Professional Fee Claims.

EXHIBIT 1   - 14 -                    Page 14 of 50

**Section 3.5.    Administrative Claim Bar Date.**  All requests for payment of an Administrative Claim, except for U.S. Trustee Fees and Professional Fees, shall be filed with the Court no later than the Administrative Claim Bar Date or be forever barred; provided, however, that nothing in the Plan shall extend or otherwise affect any applicable bar date set forth by an order of the Court entered prior to the Effective Date.  Within five (5) business days after the Effective Date, Debtor shall serve notice of the Effective Date, the Administrative Claim Bar Date, and the Administrative Claim Objection Deadline on all Creditors and parties in interest.

**Section 3.6.    Administrative Claim Objection Deadline.**  All objections to the allowance of Administrative Claims, must be filed by parties in interest no later than one hundred twenty (120) days after the Administrative Claim Bar Date (the "Administrative Claim Objection Deadline"), or according to the deadlines set forth in the Bankruptcy Rules, or such other date as may be fixed by the Court, in the event that the Holder of an Administrative Claim files a motion with the Court to have such Administrative Claim become an Allowed Administrative Claim.  The Administrative Claim Objection Deadline may be extended for a one-time ninety (90) day period by the Debtor by filing a notice of the extended Administrative Claim Objection Deadline with the Court and giving notice of such extension to all Creditors and parties in interest.  Thereafter, the Administrative Claim Objection Deadline may be further extended only by an Order of the Court. If no objection to such Administrative Claim is filed on or before the Administrative Claim Objection Deadline, such Administrative Claim shall be deemed an Allowed Administrative Claim as of that date.

**Section 3.7.    U.S. Trustee Fees.**  U.S. Trustee Fees shall be paid prior to and after the Effective Date by the Debtor, when due in accordance with applicable law.  The Debtor shall continue to file reports to show the calculation of such fees for the Estate until the Effective Date; after the Effective Date, Debtor shall file such reports until the Case is closed under Bankruptcy Code section 350.

**Section 3.8.    Professional Fee Claims.**  Each Holder of a Professional Fee Claim seeking an award by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date shall file such Holder's interim (if

EXHIBIT 1    - 15 -                         Page 15 of 50

applicable) and final applications for the allowance of compensation for services rendered and the reimbursement of expenses incurred through the Effective Date by such date as may be fixed by the Court. All objections to the allowance of Professional Fee Claims through the Effective Date shall be filed in accordance with applicable Bankruptcy Rules, or such other date as may be fixed by Order of the Court. To the extent granted by the Court, such Claims shall be paid, in full satisfaction, discharge, exchange, and release of such Claims, by Cash from the Administrative Claims Reserve, or Cash from the Remaining Assets, if the Administrative Claims Reserve has been exhausted, in such amounts as are allowed by the Court on the date such Professional Fee Claim becomes an Allowed Claim, or as soon thereafter as is practicable. Below are the estimated Professional Fee Claims of the Debtor as of the Effective Date:

| Claimant | Approximate Amount Owed as of Effective Date | Treatment |
|---|---|---|
| GFH | TBD | Paid in full on the Effective Date or as otherwise agreed to by professional. |
| CLC | TBD | Paid in full on the Effective Date or as otherwise agreed to by professional. |
| Clerk's Office Fees | Estimated to be $0 on Effective Date. | Paid in full on the Effective Date. |
| U.S. Trustee Fees | Estimated to be $0 on Effective Date. | Paid in full on the Effective Date. |

The Court must first approve all Administrative Claims listed in the above chart before they are owed by the Debtor, except the fees owed to the Clerk's Office and the Office of the U.S. Trustee. See 11 U.S.C. 503(b). Only the amount of fees and expenses allowed by the Court will be owed and required to be paid under this Plan.

**Section 3.9.    Priority Tax Claims.** Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive in full satisfaction, discharge, exchange, and release thereof cash from the Debtor in an aggregate amount equal to such Allowed Priority Tax Claim on the later of the Effective Date, or the fifteenth (15th) Business Day after such Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in either case, as soon thereafter as is practicable.

EXHIBIT 1    - 16 -    Page 16 of 50

| Claimant | Amount Owed | Treatment |
|---|---|---|
| Franchise Tax Board | $2,617.69 (Priority portion of Claim No. 1) | To be paid in full on Effective Date. |

### C.   Classified Claims and Interests

The treatment of Classified Claims and Interests is as set forth below.

### Section 3.10.   Secured Claims.

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 1 | Creditor Name: Liquid Funds LLC<br><br>Basis for Security Interest: Recorded Deed of Trust Dated March 31, 2022 Document No. 2022-0155985 against the Beaumont Property.<br><br>Collateral:<br><br>The Property located in the County of Riverside and bearing Assessor's Parcel Numbers 424-060-001; portion of 424-060-002 (ingress and egress easement only); 424-060-006; 424-060-007; 424-060-008; 424-060-009<br><br>Disputed Claim Amount: $14,812,045.24 pursuant to Claim No. 2 | N | The Secured Claim in this Class is subject to bona fide dispute and is the subject of the State Court Lawsuit. The Holder of the Class 1 Claim will be paid in full on its Allowed Claim within 30 days of entry of an order/judgment of a court determining the amount of the Allowed Claim, if any, and final on appeal(s). |
| 2 | Creditor Name: Aminam, LLC<br><br>Basis for Security Interest: Recorded Deed of Trust Dated March 31, 2022 Document No. 2022-0155986 against the Beaumont Property.<br><br>Collateral:<br><br>Certain parcels of the Property located in the County of Riverside and bearing Assessor's Parcel Numbers 424-060-001; portion of 424-060-002 (ingress and egress | N | The Secured Claim in this Class is subject to bona fide dispute and is the subject of the State Court Lawsuit. The Holder of the Class 2 Claim will be paid in full on its Allowed Claim within 30 days of entry of an order/judgment of a court determining the amount of the Allowed Claim, if any, and final on appeal(s). |

EXHIBIT 1 - 17 -                                             Page 17 of 50

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | easement only); 424-060-006; 424-060-007; 424-060-008; 424-060-009.<br><br>Disputed Claim Amount:<br><br>$14,231,205.48 (pursuant to Claim No. 3, although no funds were ever advanced to Debtor) | | |
| 3 | Creditor Name: Barry Hildebrandt<br><br>Basis for Security Interest: Land Sale Contract with respect to 4191 Brockton, Riverside, California 92501.<br><br>Collateral:<br><br>4191 Brockton, Riverside, California 92501.<br><br>Claim Amount:<br><br>$320,000.00 (estimated as of Effective Date and as scheduled) | Y | The Secured Claim in this Class will be paid as follows and the claimant will retain its interest in the collateral.<br>The current monthly payment requirement under the Land Sale Contract will increase from $1,760.00 to $1,850.00.<br>The maturity date will be extended to January 31, 2030.<br>All other terms and conditions of the Land Sale Contract will remain unchanged. |

### Section 3.11   General Unsecured Claims.

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 4 | All Allowed General Unsecured Claims that are not Administrative Claims or Priority Claims. | Y | Allowed General Unsecured Claims will be paid in full on their Allowed Claims as described herein.<br><br>If a Class 4 Claim is a timely filed Proof of Claim which is subject to an objection to claim that has not yet been resolved by the Effective Date, then pending resolution of the dispute by a Final Order, the Debtor will reserve sufficient funds to pay the Disputed Claim pursuant to the terms of the Plan into the Disputed Claims Reserve. Once the dispute is resolved by a Final Order, the Debtor will make a Distribution out of the Disputed |

EXHIBIT 1   - 18 -                                        Page 18 of 50

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | Claims Reserve on account of the Allowed Class 4 Claim in accordance with the treatment described below.<br><br>The holders of Allowed Claims in this Class will share pro-rata in payments of the total Allowed General Unsecured Claim.  An initial distribution of cash will be made in the amount of $151,400.00 out of the funds available for that purpose from sales, refinancing, joint venture, DIP loan or capital contribution.<br><br>In addition, there will be future cash distributions sufficient from sales, refinancing, joint venture, DIP loan or capital contribution. This class shall receive a minimum of $25,000 in quarterly payments for up to five (5) years with this obligation all due and payable five (5) years after the Effective Date.<br><br>Payments could commence earlier depending upon the results of the State Court Lawsuit. |

**Section 3.12.   Interest Holders.**

Interest Holders comprise Class 5 of the Plan and are the parties who hold ownership interests (i.e., equity interests) in the Debtor which shall be retained and are Unimpaired.

**IV.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**Section 4.1.    Rejection.**  Effective upon the Effective Date, the Debtor hereby rejects all contracts and leases subject to Bankruptcy Code section 365(a) in the Case which have not previously been rejected, except the Debtor does not reject those contracts and leases which have been or will be assumed, or assumed and assigned, with the approval of the Court by separate

EXHIBIT 1        Page 19 of 50
- 19 -

proceeding in the Case, which approval has been or will be set forth in an Order entered prior to the Effective Date.

**Section 4.2. Rejection Claims.** All Allowed Claims arising from the rejection of contracts or leases, whether under the Plan or by separate proceeding, shall be treated as General Unsecured Claims.

a. If the rejection of a contract or lease by the Plan results in damages to the counterparty to such contract or lease, then a Claim for damages or any other amounts related in any way to such contract or lease shall be forever barred and shall not be enforceable against the Estate, the Debtor, or their property, unless a proof of claim is filed with the Court and served on the Debtor within thirty (30) days after the Effective Date.

b. The Rejection Claim Bar Date for contracts and leases rejected by Order entered prior to the Claims Bar Date shall be the later of : (a) the date(s), if any, set forth in the applicable Order(s) approving or authorizing rejection of such contract or lease; or (b) the Claims Bar Date.

c. The Rejection Claim Bar Date for contracts and leases rejected by Order entered after the Claims Bar Date shall be the earlier of: (a) the date(s), if any, set forth in the applicable Order(s) approving or authorizing rejection of such contract or lease; or (b) thirty (30) days after the Effective Date.

**Section 4.3. Assumption**

Debtor reserves the right to supplement the Plan for the assumption of any contracts.

**V.** **PLAN IMPLEMENTATION**

**A.** **General Implementation Provisions**

**Section 5.1. Conditions to Plan Effectiveness.** This Section is intended to explain how the Debtor intends to effectuate the Plan, and how the Debtor intends to fund the obligations to Creditors and Interest Holders undertaken in the Plan after the occurrence of the Effective Date. This Section provides information regarding funding sources for the Plan obligations and other material issues bearing upon performance of the Plan.

\\\

EXHIBIT 1 - 20 - Page 20 of 50

**Section 5.2.    Actions on the Effective Date.**  To the extent not previously completed, on the Effective Date all actions, documents, and agreements necessary to implement the Plan shall be effectuated or executed.

**Section 5.3.    Corporate Action.**  On the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects (subject to the provisions of this Plan) by virtue of the entry of the Confirmation Order, in accordance with the Bankruptcy Code and applicable state law and without any requirement of further action by the Debtor, the stockholders, officers or directors of the Debtor.  All matters provided for under the Plan involving the corporate structure of the Debtor and any corporate action required by the Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect pursuant to the Bankruptcy Code, without any requirement of further action by the Debtor, shareholders, officers or directors of the Debtor.  On the Effective Date, the Reorganized Debtor is authorized and directed to implement the provisions by the Plan and any other agreements, documents and instruments contemplated by the Plan.

**Section 5.4.    Vesting of Assets and Funding for the Plan.**  On the Effective Date, all Assets of the Debtor and the Estate will be vested in the Debtor, including all of the Debtor's and the Estate's right, title, and interest in and to the Assets.  As of the Effective Date, the Assets of the Debtor shall be free and clear of all Liens, Claims, and interests of Holders of Claims and Interests, pursuant to Sections 363(f), 1123, 1141 and 1146(c) of the Bankruptcy Code, except as otherwise provided in the Plan.  Funding for the Plan shall come from the Debtor's sale, refinance or the joint venture of the Beaumont Property and from collection on the Litigation Claims.  The Distributions to creditors under the Plan will be funded primarily from the following sources: (a) the Debtor's cash on hand on the Effective Date, (b) the net proceeds from the collection on the Litigation Claims, if any; (3) and the net proceeds from the sale, refinance or the joint venture of the Beaumont Property.  Debtor reserves its rights to seek new financing secured by all or part of the Beaumont Property.

\\\

EXHIBIT 1 - 21 -                    Page 21 of 50

**Section 5.5.    Post Effective Date Management.**

**(a)    Continuation of Management by Debtor**

On the Effective Date, the Debtor will continue to operate under its current management and Debtor will be vested with the duties set forth below and in the Plan Confirmation Order.  To the extent that the Debtor's operating agreement is inconsistent with the Plan, the Plan shall control.

**(b)    Powers and Authority of the Debtor**

On and after the Effective Date and except as otherwise set forth in the Plan and notwithstanding anything to the contrary in the operating agreement, the powers and authority of the Debtor shall include, but not be limited to, liquidating, abandoning or otherwise administering the Estate assets, taking any action, filing or causing to be filed any proceeding, instituting and prosecuting any litigation, executing any document, entering into any compromise or settlement, or taking any such other actions consistent with the Plan in connection with or related to:

(i)    the Plan;

(ii)    monitoring the Debtor's performance under the Plan and making distributions required under the Plan from Available Cash;

(iii)    determining the allowability, classification, and priority of Claims and Interests;

(iv)    construing or administering or enforcing the terms of the Plan, the Confirmation Order, or any order of the Court;

(v)    the opening or closing of any account that Debtor determines is reasonable, necessary, or required under the Plan, and making any withdrawals or deposits in connection therewith;

(vi)    reviewing, approving or opposing any applications or requests for compensation and reimbursement of the expenses of any Professionals that are filed or served after the Effective Date;

(vii)    filing, prosecuting, compromising or settling any Causes of Action;

(viii)    any applications, motions, adversary proceeding, contested matters, and any other litigated matters instituted before, on, or after the Effective Date;

EXHIBIT 1 - 22 -                                    Page 22 of 50

(iv)    modifying the Plan under Bankruptcy Code § 1127 in order to remedy any apparent defect or omission in the Plan, or to reconcile an inconsistency in the Plan so as to carry out its intent and purpose;

(x)    the seeking of an injunction, judgment or order or taking any other action as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order;

(xi)    aiding in consummation of the Plan or the Confirmation Order;

(xii)    administration of the Case and the Plan, including retaining, hiring, or terminating any employee, agent, staff, outside contractor, or professional;

(xiii)    the preparation, execution and filing of any tax return on behalf of the Debtor, including final tax returns; and

(ix)    liquidating assets and obtaining a final decree and in his sole discretion dissolving the Debtor.

In addition, on and after the Effective Date, as the case may be, Debtor shall be authorized to execute, do and perform, in the name of and on behalf of the Debtor, such acts and to prepare, execute, acknowledge, verify, file, deliver, and cause to be published such certificates, agreements, notices, reports, applications, declarations, instruments and documents as Debtor may deem necessary and appropriate in his discretion in order to carry into effect the decisions of the Debtor and the terms and provisions of the Plan.  Debtor 's performance of any such actions and execution and delivery of any such documents shall constitute conclusive evidence of such authority.

**Section 5.6.    Funding of Post Effective Date Expenses**.  All post Effective Date Expenses shall be expenses of the Debtor and Debtor shall disburse funds from the Available Cash for the purpose of paying such expenses.  Debtor shall be authorized to retain professionals post-confirmation and pay all post-confirmation fees from any Cash and/or the operations and/or the sale, cash-out refinance or joint venture of the Property.

**Section 5.7.    Operating Reserve.**  Payments of all Post Effective Date Expenses shall be made from the Operating Reserve.  On or as soon as practicable after the Effective Date, the Operating Reserve shall be established by Debtor and funded by Cash to pay for all projected

EXHIBIT 1    - 23 -    Page 23 of 50

Post Effective Date Expenses.  Debtor shall continue to fund the Operating Reserve as needed from Remaining Assets.  Any Cash remaining in the Operating Reserve that Debtor believes is not necessary to fund Post Effective Date Expenses of the Debtor shall be released from the Operating Reserve and used as Remaining Assets in accordance with the Plan.

**Section 5.8.   Abandonment.**  If, in Debtor's reasonable judgment, any Remaining Assets cannot be sold or distributed in a commercially reasonable manner or Debtor believes in good faith that such property has inconsequential value to the Debtor or determines it to be too impractical to distribute such property to the Beneficiaries, Debtor may abandon or otherwise dispose of such property, including by donation of such property to a charity.

**Section 5.9.   Dissolution of Debtor.** The Debtor may be, but is not required to be, dissolved.  Debtor shall have full authority to take any action necessary, to wind up the affairs, and dissolve and terminate the existence, of the Debtor under applicable state laws and in accordance with the rights, powers and responsibilities conferred by the Bankruptcy Code, this Plan and any order of the Court.

**B.       Provisions Governing Distributions**

**Section 5.10.   Estimation**.  In order to establish reserves under this Plan and avoid undue delay in the administration of this Case, the Debtor shall have the right to seek an order of the Court pursuant to Section 502(c) of the Bankruptcy Code estimating the amount of any Claim.  All estimations hereunder shall be on notice to the Holder of such Claim, and such estimated amount: (i) shall be used in calculating reserves for such Claim; and (ii) shall set the maximum allowed amount of such Claim for purposes of Distributions on account thereof.

**Section 5.11.   Distributions on Account of Allowed Claims**.  Except as otherwise provided herein, a Final Order, or as agreed by the relevant parties, distributions on account of Allowed Claims shall be made by Debtor at such periodic intervals as Debtor determines to be reasonably prudent.

**Section 5.12.   Distributions on Account of Disputed Claims and Estimated Claims.**  Except as otherwise provided herein, a Final Order, or as agreed by the relevant parties, distributions on account of Disputed Claims and Estimated Claims that become Allowed Claims

EXHIBIT 1   - 24 -                                    Page 24 of 50

shall be made by Debtor at such periodic intervals as Debtor determines to be reasonably prudent.

**Section 5.13.   No Distributions Pending Allowance**.  Notwithstanding any other Plan provision: (i) Distributions to Holders of Claims will be made only to the extent that, such Holders hold Allowed Claims; and (ii) unless otherwise agreed by Debtor, if any portion of a Claim is a Disputed Claim, the entire Claim shall be treated as a Disputed Claim and no Distribution to the Holder of such Claim shall be made on account of such Claim unless and until no portion of the Claim is a Disputed Claim.

**Section 5.14.   Disputed and Estimated Claims Reserve**.  On and after the Effective Date, Debtor shall maintain in reserve such Cash as it estimates to be necessary to satisfy the distributions required to be made under the Plan if each Disputed Claim and Estimated Claim against the Debtor becomes an Allowed Claim.

**Section 5.15.   Reduced or Disallowed Secured Claims**.  To the extent that a Disputed Claim for which Cash has been deposited into the Disputed Reserve is not Allowed or becomes an Allowed Claim in an amount less than the amount retained in the Disputed Reserve with respect to such Claim, the amount that was retained in the Disputed Reserve on account of such Claim, or the excess of the amount that was retained on account of such Claim over the amount actually distributed on account of such Claim, shall be released from the Disputed Reserve and used as Available Cash in accordance with the Plan.

**Section 5.16.   Reserve Amounts for Disputed and Estimated Claims.**  For purposes of establishing reserves for Disputed and Estimated Claims, the amount of such Claim shall be the agreed amount of such Claim, unless such amount is estimated by Order of the Court.

**Section 5.17.   Reservation of Rights to Object to Claims**.  Unless a Claim is expressly described as an Allowed Claim pursuant to or under this Plan, or otherwise becomes an Allowed Claim prior to or after the Effective Date, Debtor shall retain the right to object and shall be deemed to have reserved any and all objections to any and all Claims and motions or requests for the payment of Claims, whether an Administrative Expense, Priority Tax Claim, Secured Claim or General Unsecured Claim, including, without limitation, any and all objections to the validity or amount of any and all alleged Claims and security interests, whether under the

EXHIBIT 1   - 25 -                              Page 25 of 50

Bankruptcy Code, other applicable law or contract.  The Debtor's failure to object to any Claim in the Case shall be without prejudice to Debtor's rights to contest or otherwise defend against such Claim in the Court when and if such Claim is sought to be enforced by the holder of such Claim.

**Section 5.18.  Settling Disputed Claims.**  Debtor shall be authorized to settle, or withdraw any objections to, any Disputed Claims following the Effective Date.

**Section 5.19.  Cash Distributions**.  The sources of all Distributions and payments under the Plan are and will be Cash.  Cash Distributions made pursuant to the Plan shall be in United States funds, by check drawn on a domestic bank, or, by wire transfer from a domestic bank.

**Section 5.20.  Setoff and Recoupment.**  Notwithstanding anything to the contrary in the Plan, Debtor may set off, recoup, or withhold against the Distributions to be made on account of any Allowed Claim that the Debtor, the Estate, or Debtor may have against the Holder of the Allowed Claim.  The Debtor and the Estate will not waive or release any claim against those Holders by failing to effect such a setoff or recoupment, by allowing any Claim against the Debtor or the Estate, or by making a Distribution on account of an Allowed Claim.

**Section 5.21.  No De Minimis Distributions.**  Notwithstanding anything to the contrary in the Plan, no Distribution of less than $10.00 will be made to any Holder of an Allowed Claim or on account thereof.  No consideration will be provided in lieu of the *de minimis* Distributions that are not made under this Section.

**Section 5.22.  Fractional Cents.**  When any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of less than $0.005 and rounding up in the case of $0.005 or more); provided, however, that, in no event, shall a Distribution of less than $10.00 be made to any Holder of an Allowed Claim.

**Section 5.23.  Undeliverable or Unclaimed Distributions.**

i.      Distributions to Holders of Allowed Claims (except Administrative Claims) will be made by mail as follows:

EXHIBIT 1      - 26 -                                Page 26 of 50

(a)    Distributions will be sent to the address, if any, set forth on a filed proof of claim as amended by any written notice of address change that is received by Debtor no later than ten (10) Business Days prior to the date of any Distribution; or

(b)    If no such address is available, Distributions will be sent to the address set forth on the Bankruptcy Schedules.

ii.    Distributions to Holders of Allowed Administrative Claims shall be made by mail to the address set forth in such Holder's request for payment, fee application, or transactional documents, as applicable.

iii.    If no address is available on a proof of claim, the Bankruptcy Schedules, request for payment, fee application, or transactional documents, as applicable, the Distribution will be deemed to be undeliverable.  If a Distribution is actually returned to Debtor or is deemed to be an undeliverable Distribution under the prior sentence, Debtor will make no further Distributions to the Holder to which such undeliverable Distribution was made unless and until Debtor is timely notified in writing of that Person's current address.  Subject to Section 5.25(d) of the Plan, until they become deliverable, Debtor shall deposit such undeliverable Distributions (whether returned or not made) into the Undeliverable Distributions Reserve for the benefit of the Persons entitled to such Distributions.  Holders of Claims subject to undeliverable Distributions will not be entitled to any interest on account of the undeliverable Distributions.

iv.    Any Person that is otherwise entitled to an undeliverable Distribution and that does not, within 120 days after a Distribution is deemed undeliverable or returned as undeliverable, provide Debtor with a written notice asserting its claim to or interest in that undeliverable Distribution and setting forth a current, deliverable address: (i) will be deemed to waive any claim to or interest in that undeliverable Distribution; (ii) will be forever barred from receiving that undeliverable Distribution or asserting any claim with respect thereto against the Debtor and the Estate, or their property; and (iii) to the extent applicable, will have the Allowed Claim relating to such undeliverable Distribution reduced on account of such undeliverable Distribution.  Any undeliverable Distributions that are not claimed timely under Section 5.23 of the Plan will be

EXHIBIT 1   - 27 -                              Page 27 of 50

withdrawn from the Undeliverable Distribution Reserve and treated as Assets of the Debtor. Nothing in the Plan requires the Debtor or Debtor to attempt to locate any Person holding an Allowed Claim and whose Distribution is undeliverable.

Section 5.24. **Undeliverable Distributions Reserve.** On or as soon as practicable after the Effective Date, Debtor shall establish an Undeliverable Distributions Reserve into which undeliverable Distributions shall be deposited and withdrawn as provided in Section 5.23 of the Plan.

Section 5.25. **Negotiation of Checks.** Checks issued in respect of Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Subject to Section 5.23 of the Plan, requests for reissuance of any check shall be made to Debtor by the Holder of the Allowed Claim to whom such check originally was issued and must be made on or before ninety (90) days after the expiration of the ninety (90) day period following the date of issuance of such check. Thereafter, the funds represented by such voided check shall irrevocably revert to the Debtor and the Holder of the Claim relating to such voided check: (i) will be deemed to waive any Claim to or interest in that voided check and the funds related thereto; (ii) will be forever barred from receiving the funds represented by the voided check or asserting any Claim with respect thereto against the Debtor, the Estate, or their property; and (iii) to the extent applicable, will have the Allowed Claim relating to such funds and voided check reduced on account of such funds. Debtor in its sole discretion may waive or modify any requirement in Section 5.23, 5.24 or 5.25 of the Plan.

Section 5.26. **Record Date.** The record date for purposes of Distributions under this Plan shall be the Effective Date. The Debtor will rely on the register of proofs of claim filed in the Case except to the extent a notice of transfer of a Claim or Interest has been filed with the Court prior to the Effective Date pursuant to Bankruptcy Rule 3001.

Section 5.27. **Postpetition Interest.** Except as otherwise provided in the Plan or by Final Court Order, interest accruing Postpetition or otherwise relating to the Postpetition period will not be paid on account of any Claims.

EXHIBIT 1 - 28 - Page 28 of 50

**Section 5.28.  Sequence of Payments.**  Notwithstanding any other provision of the Plan, Distributions shall be made from the Debtor in the following order:

a) all outstanding and projected Post Effective Date Expenses until they are paid in full or are fully reserved for;

b) all Allowed Administrative Claims until they are paid in full, to the extent such claims are not paid by the Debtor from the Administrative Claims Reserve;

c) all Allowed Secured Claims until they are paid in full or are reserved for;

d) all Allowed Priority Tax Claims until they are paid in full or are reserved for;

e) all Allowed General Unsecured Claims until they are paid in full or are reserved for; and

f) All Allowed Interests.

**Section 5.29.  Withholding and Reporting Requirements.**  In connection with the Distributions under the Plan, Debtor shall comply with all applicable withholding and reporting requirements imposed by any Governmental Authority, and all Distributions shall be subject to any such withholding or reporting requirements.  All such amounts withheld and paid to the appropriate Governmental Authority shall be treated as distributed to such Holders.  Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed by any Governmental Authority, including income, withholding, and other Tax obligations, on account of such Distribution.  Debtor has the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to Debtor for payment of any such Tax obligations.  Debtor may require, as a condition to receipt of a Distribution, that the Holder of an Allowed Claim provide a completed Form W-8, W-9, and/or other Tax information deemed necessary in the sole discretion of Debtor.  If Debtor makes such a request and the Holder fails to comply before the date that is ninety (90) days after the request is made:

EXHIBIT 1        Page 29 of 50
- 29 -

(a) the amount of such Distribution shall irrevocably revert to the Debtor; (b) the Holder of the claim relating to such Distribution will be deemed to waive any claim to or interest in that Distribution and the funds related thereto;  (c) the Claim(s) of such Holder shall be deemed to be disallowed and terminated and be entitled to no Distributions; and (d) the Holder will be forever barred from receiving the funds represented by that Distribution or any Distributions on such disallowed and terminated Claims, or asserting any Claim with respect thereto against the Debtor, the Estate, or their property.

Section 5.30.  Claims Transfer.  Debtor shall not recognize any transfer of a Claim made after the Effective Date, except to a legal heir or successor on the death or incapacity of the Holder of the Claim.  Except as otherwise provided in the Plan, any transfer of a Claim shall not affect or alter the classification and treatment of such Claim under the Plan and any such transferred Claim shall be subject to classification, allowance, or treatment under the Plan as if such Claim was held by the transferor.

Section 5.31.  Maximum Amount of Distributions.  In no event shall a Holder of an Allowed Claim be entitled to receive in the aggregate on account of such Allowed Claim from the Debtor or any other source, more than the total amount of such Allowed Claim.

Section 5.32.  After: (i) all Claims have been resolved; (ii) all Allowed Claims except General Unsecured Claims have been paid or satisfied as provided in the Plan; (iii) all material Assets have been converted to Cash; and (iv) the Operating Reserve has been adequately funded, Debtor shall distribute all Cash to holders of Allowed Class 4 Claims pursuant to the provisions of the Plan and up to the amount of such Allowed Class 4 Claims and taking into account any prior Distributions that have been made on account of such Allowed Class 4 Claims. After all Allowed Class 4 Claims have been paid in full, Debtor shall distribute all Cash to the holder of Allowed Class 5 Interests pursuant to the provisions of the Plan.

## VI.    LITIGATION AND CLAIM OBJECTIONS

Section 6.1.    Preservation of Causes of Action.

a.    As of the Effective Date, Debtor shall hold and retain all rights and privileges on behalf of the Debtor and the Estate to commence, pursue, and settle, as appropriate, any and all

EXHIBIT 1 - 30 -                                    Page 30 of 50

Causes of Action and Defenses (including, without limitation, Avoidance Actions), whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, adversary proceeding(s) filed in the Case, including but not limited to the State Court Lawsuit.  The failure to explicitly list any Causes of Action and other potential or existing claims of the Debtor or Estate is not intended to and shall not limit the rights of the Debtor to pursue any Causes of Action and Defenses and claims not so identified.  Notwithstanding any otherwise applicable principle of law or equity, including any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, analyze, or refer to any Cause of Action, or potential Cause of Action, in the Plan, the Disclosure Statement, or any other document filed with the Court shall in no manner waive, eliminate, modify, release, or alter the Debtor's, or the Estate's right to commence, prosecute, defend against, settle, and realize upon any Cause of Action that the Debtor or the Estate has or may have as of the Confirmation Date.  Debtor may commence, prosecute, defend against, recover on account of, and settle all Causes of Action in Debtor's sole discretion in accordance with what is in the best interests, and for the benefit, of the Debtor.

a.      Unless a Cause of Action and Defense is expressly waived, relinquished, released, compromised, or settled by Final Order, the Debtor and the Estate expressly reserve such Causes of Action for later adjudication (including, without limitation, Causes of Action of which the Debtor or the Estate may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor or the Estate at this time, or facts or circumstances which may change or be different from those which the Debtor or the Estate now believes to exist) and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to Causes of Action and Defenses upon, or after, the Confirmation Date or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such Causes of Action have been expressly released by Final Order.

c.      Any Person with respect to which the Debtor has incurred an obligation (whether on account of services, purchase or sale of property, or otherwise), or which has received services

EXHIBIT 1 - 31 -                                Page 31 of 50

from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, or leased property from or to the Debtor should assume that such obligation, transfer, or transaction may be reviewed by Debtor, on behalf of the Debtor and Estate subsequent to the Effective Date and may, if appropriate, be the subject of an action after the Effective Date, whether or not: (a) such Person has filed a proof of claim against the Debtor; (b) such Person's proof of claim has been objected to by the Debtor or any other Person; (c) such Person's Claim was included in the Bankruptcy Schedules; or (d) such Person's scheduled Claims have been objected to by the Debtor or any other Person, or has been identified as disputed, contingent, or unliquidated

**Section 6.2.    Objections to and Resolution of Disputed Claims.**  Except as otherwise provided in the Plan or Confirmation Order, on and after the Effective Date, Debtor shall have the exclusive right to make and file objections to Claims and to prosecute, settle, and/or withdraw such objections.  Debtor shall have the authority to compromise, settle, withdraw, or otherwise resolve any objections to any Claim without approval of the Court; provided, however, that the Debtor may in its discretion seek relief before the Court with respect to any Disputed Claim.  Debtor shall file and serve all objections to Claims (other than Administrative Claims that are subject to Sections 3.3, 3.4, 3.5 and 3.6) upon the Holder of the Claim as to which the objection is made by the Claims Objection Deadline.  Debtor may extend the Claims Objection Deadline for no more than two (2) one-hundred eighty (180) day periods by filing a notice of the extended deadline with the Court; provided, however, that nothing herein shall modify the statute of limitations for any affirmative Cause of Action that Debtor may assert.  Thereafter, the Claims Objection Deadline may be further extended only by an Order of the Court.  The filing of a motion to extend the Claims Objection Deadline shall automatically extend the Claims Objection Deadline until a Final Order is entered on such motion.  In the event that such motion is denied by the Court, or approved by the Court and reversed on appeal, the Claims Objection Deadline shall be the later of the then current Claims Objection Deadline (as previously extended, if applicable) or thirty (30) days after entry of a Final Order denying the motion to extend the Claims Objection Deadline or reversing the Order approving the motion

EXHIBIT 1    - 32 -    Page 32 of 50

## VII. OTHER PLAN PROVISIONS

**Section 7.1. Recourse for Claims**. All Holders of Claims and Interests are bound by the Plan and the Confirmation Order. No Holder of a Claim may receive any payment from, or seek recourse against, any Assets that are to be distributed under the Plan other than Assets required to be distributed to that Holder pursuant to the Plan. As of the Confirmation Date, all Persons are enjoined from asserting against any property that is to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or interests related thereto based upon any act, omission, transaction, or other activity that occurred before the Confirmation Date except as expressly provided in the Plan or the Confirmation Order. As of the Effective Date, notes, contracts, judgments, and any other evidence of Claims will represent only the right to receive the Distributions contemplated under the Plan.

**Section 7.2. Exculpation and Release of Debtor and Professionals.**

The Debtor, GFH, CLC, and their respective representatives shall have all the benefits and protections afforded under Section 1125(e) of the Bankruptcy Code and applicable law. As specified in Section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer issuance, sale, or purchase of securities.

The Debor will request in its motion seeking confirmation of the Plan that the Confirmation Order contain the following exculpation language:

Except to the extent arising from fraud, willful misconduct, gross negligence, or legal malpractice, none of the Debtor, GFH, CLC, and their respective representatives ("Exculpated Parties"), will have or incur any liability as set forth in 11 U.S.C §1125(e) to any holder of a Claim or Interest or any other entity for any act or omission in connection with, from any Cause of Action for any claim related to any act or omission arising on or after the Petition Date and through the Effective Date in connection with, relating to, or arising out of, the Bankruptcy

EXHIBIT 1
- 33 -
Page 33 of 50

Case, the formulation, preparation, dissemination, negotiation, filing, or pursuit of approval of the Disclosure Statement or the Plan, or the solicitation of votes for or confirmation of the Plan , the Sale, or any transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the filing of the Bankruptcy Case (the "Chapter 11 Process").  The Exculpated Parties have, and upon the Confirmation Date will be deemed to have, participated in good faith and in compliance with applicable laws with regard to the Chapter 11 Process  and, therefore, will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the Chapter 11 Process.

**Section 7.3.    Good Faith.**

Confirmation of this Plan shall constitute a finding that the Plan was proposed, and that acceptances of the Plan were solicited, in good faith and in compliance with applicable provisions of the Bankruptcy Code.

**Section 7.4.    Injunction Enjoining Holders of Claims.**

a.        The Plan is the sole means for resolving, paying, or otherwise dealing with Claims and Interests with respect to the Estate, the Debtor, and their assets.  To that end, except as expressly provided herein, at all times on and after the Effective Date, all Persons who have been, are, or may be Holders of Claims or Interests arising prior to the Effective Date shall be permanently enjoined from taking any of the following actions on account of any such Claims or Interests, against the Estate, the Debtor, or their property (other than actions brought to enforce any rights or obligations under the Plan and any claim, contested matters, or adversary proceedings pending in the Case as of the Effective Date):

(1)        commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Estate, the Debtor, or the Professionals, their successors, or their respective property or assets (including, without limitation, all suits, actions, and proceedings that are pending, other than before the Court or by explicit provision of the Court, as of the Effective Date, which shall be deemed to be withdrawn or dismissed with prejudice);

EXHIBIT 1
- 34 -                                    Page 34 of 50

(2)　enforcing, levying, attaching, executing, collecting, or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree, or Order against the Estate, the Debtor, or the Professionals, their successors, or their respective property;

(3)　creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien against the Estate, the Debtor, or the Professionals, their successors, or their respective property; and

(4)　proceeding in any place whatsoever against the Estate, the Debtor, or the Professionals, their successors, or their respective property, in any manner that does not conform to or comply with the provisions of the Plan.

b.　No suit, action, or other proceeding may be commenced, conducted, or continued in any manner, directly or indirectly, by a Holder of a Claim or Interest on account of such Claim or Interest against the Debtor without the written consent of Debtor or Order of the Court acquired by motion on notice to Debtor.  If the Holder of a Claim violates this provision, in addition to any other recourse or damages to which the Debtor may be entitled, the Claims of such Holder shall be disallowed, and any Distributions made on account of such Claims shall be repaid by such Holder to the Debtor.

**Section 7.5.   Injunctions or Stays.**  Unless otherwise provided by Court Order, all injunctions or stays arising under or entered during the Case under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**Section 7.6.   Exemption from Stamp, Transfer, and Other Taxes; Exemption from Securities Laws.**  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of assets under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar Tax.  The interests of Holders of Claims against the Estate or Debtor, if any, will constitute neither

EXHIBIT 1 - 35 -                    Page 35 of 50

"securities" under the Securities Act of 1933, as amended nor "equity securities" under Section 12(g) of the Securities Exchange Act of 1934, as amended (the "Exchange Act").  Even if such interests were, or were deemed, to constitute securities, the exemptions from registration provided by section 1145 of the Bankruptcy Code and by other applicable law apply to their issuance under the Plan.  Pursuant to Bankruptcy Code sections 1125 and 1145, the Debtor shall not be required to comply with the registration and, to the fullest extent possible under law, reporting requirements of the Securities Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended.  Further, because the assets of the Debtor will not be $10 million or more, even if such interests were, or were deemed, to constitute, equity securities within the meaning of Section 12(g) of the Exchange Act, no registration or reporting requirements under the Exchange Act would attach.

**Section 7.7.   No Admissions.**  Except as specifically provided in the Plan, nothing contained in the Plan shall be deemed or construed in any way as an admission by the Debtor or the Estate with respect to any matter set forth in the Plan, including the amount or allowability of any Claim, or the value of any property of the Estate.  Notwithstanding anything to the contrary in the Plan, if the Plan is revoked or withdrawn or is not confirmed, the Plan will be null and void, and nothing contained in the Plan will: (a) be deemed to be an admission by the Debtor or the Estate with respect to any matter discussed in the Plan, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgement, or release of any Claims, Interests, or any claims held by the Debtor or the Estate; or (c) prejudice in any manner the rights of the Debtor or the Estate in any further proceedings.

**Section 7.8.   Severability of Plan Provisions.**  If, before entry of the Confirmation Order, the Court holds that any Plan term or provision is invalid, void, or unenforceable, the Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision.  That term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or

EXHIBIT 1 - 36 -                    Page 36 of 50

invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section, is valid and enforceable under its terms.

Section 7.9.    **Governing Law.** The rights and obligations arising under the Plan and any agreements, contracts, documents, or instruments executed in connection with the Plan will be governed by, and construed and enforced in accordance with, California law without giving effect to California law's conflict of law principles, unless a rule of law or procedure is supplied by: (a) federal law (including the Bankruptcy Code and the Bankruptcy Rules); or (b) an express choice-of-law provision in any document provided for, or executed under or in connection with, the Plan.

Section 7.10.    **Successors and Assigns.** The rights, benefits, and obligations of any Person referred to in the Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assignee of that Person.

Section 7.11.    **Nonconsensual Confirmation.** In the event that any of the Classes entitled to vote to accept or reject the Plan fails to accept the Plan in accordance with Bankruptcy Code section 1129(a)(8): (a) the Debtor reserves the right to modify the Plan in accordance with Bankruptcy Code section 1127; and (b) with respect to any Classes of Claims that do not accept the Plan or are deemed not to accept the Plan, the Debtor seeks confirmation under section 1129(b) of the Bankruptcy Code. Notwithstanding any other provision of the Plan, the Debtor reserves the right to modify the Plan.

Section 7.12.    **Revocation of the Plan.** The Debtor reserves the right to revoke or withdraw the Plan before the Effective Date.

Section 7.13.    **Amendment or Modification of the Plan.** The Debtor may modify the Plan at any time before Confirmation. However, the Court may under certain circumstances require a new disclosure statement and/or revoting on the Plan if the Debtor modifies the Plan prior to its Confirmation. After Confirmation, modification of the Plan may occur in accordance with the provisions of Bankruptcy Code section 1127(b). In accordance with section 1127 of the Bankruptcy Code, the Debtor reserves the right to alter, amend, or modify the

EXHIBIT 1 - 37 -                    Page 37 of 50

Plan, including amending or modifying it to satisfy the requirements of the Bankruptcy Code.

**Section 7.14.  Saturday, Sunday, or Legal Holiday.**  If any payment or act under the Plan should be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**Section 7.15.  Post-Effective Date Status Reports.**  Debtor shall file status reports regarding the implementation of the Plan and the review, prosecution, and resolution of Causes of Action, respectively, every one-hundred twenty (120) days following the Effective Date through entry of a final decree closing the Case, or as otherwise ordered by the Court.

**Section 7.16.  Post-Effective Date Notice.**  From and after the Effective Date, any Person who desires notice of any matter as to which the Bankruptcy Code requires notice to be provided shall file a request for post-Effective Date notice and shall serve the request on Debtor and counsel for Debtor; provided, however, that the U.S. Trustee and the Debtor shall be deemed to have requested post-Effective Date notice.

**Section 7.17.  Maintenance and Disposition of Trust Records.**  Debtor shall continue to maintain the books and records of account relating to any assets and liabilities of the Debtor. Debtor may destroy the books and records of the Debtor when its final decree is obtained, or it is dissolved under applicable law.

**Section 7.18.  Retention of Jurisdiction.**  The Court will retain and have such jurisdiction regarding the Case, proceedings in the Case and the Plan, as such jurisdiction existed before the Effective Date, including with respect to the following:

    (a)    the resolution of any disputes regarding the interpretation, enforcement, breach, performance and/or a default under this Plan and the Confirmation Order;

    (b)    the entry of such Orders as may be necessary or appropriate to implement, execute or consummate the provisions of the Plan, including, without limitations, the Confirmation Order, any appropriate Orders to affect the provisions of this Plan and to protect the Debtor and the Exculpated Parties

EXHIBIT 1  - 38 -                    Page 38 of 50

from Creditors' actions and all contracts, instruments, releases, modification of this Plan pursuant to Section 1127, and other agreements or documents created in connection with the Plan, and rights, title, or interest of the Estate, as modified, or specified under the Plan, in any property , including to determine the extent, validity and priority of any lien asserted against property of the Estate;

(c)    the determination of any and all motions, objections to Claims, adversary proceedings, applications, and contested or litigated matters that may be pending before the Court on the Effective Date or that, pursuant to the Plan, may be instituted by Debtor after the Effective Date;

(d)    ensuring that Distributions to Holders of Allowed Claims and Interests are accomplished as provided in the Plan;

(e)    hearing and determining any objections to Administrative Claims or Proofs of Claim, both before and after the Confirmation Date, including any objections to the classification of any Claim and to allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim, in whole or in part;

(f)    the entry and implementation of such Orders as may be appropriate in the event that the Confirmation Order is, for any reason, stayed, revoked, modified, reversed, or vacated;

(g)    the issuance of such Orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(h)    consideration of any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any Order of the Court, including the Confirmation Order;

(i)    determination of requests for payment of Claims entitled to priority under Section 507 including all applications of professionals for awards of compensation for services rendered and reimbursement of expenses

EXHIBIT 1 - 39 -    Page 39 of 50

incurred prior to the Effective Date;

(j)    hearing and determining disputes arising in connection with, or relating to, the Plan or the interpretation, implementation, or enforcement of the Plan, or the extent of any Person's obligations incurred in connection with or released or exculpated under the Plan;

(k)    the recovery of all Assets of the Debtor and property of the Estate, wherever located, and the prosecution of all Causes of Action;

(l)    the issuance of injunctions or other Orders as may be necessary or appropriate to restrain interference by any Person with consummation, implementation, or enforcement of the Plan;

(m)    the determination of any other matters that may arise in connection with, or are related to, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan;

(n)    hearing and determining matters concerning state, local, and federal Taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)    hearing any other matter that is not inconsistent with the Bankruptcy Code;

(p)    hearing and determining, to the fullest extent authorized by applicable law, any issue or dispute directly or indirectly arising from or related to the Debtor, the Plan or the Assets;

(q)    hearing and determining any other matter deemed relevant to the consummation of the Plan or the administration of the Case;

(r)    interpreting and enforcing Orders entered by the Court; and

(s)    entry of a final decree closing the Case.

**Section 7.19.   Entry of a Final Decree.**  Promptly following the disposition of all Assets, including the Litigation Claims, and distribution of all Assets pursuant to the Plan, the Debtor will file a motion with the Court to obtain entry of a final decree closing the Case.

EXHIBIT 1 - 40 -                                        Page 40 of 50

## VIII.   <u>TAX CONSEQUENCES OF THE PLAN</u>

**CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS**.

The following disclosure of possible tax consequences is intended solely for the purpose of alerting Creditors about possible tax issues the Plan may present to the Debtor.  The Plan Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all of the tax implications of any action.

### <u>Federal Income Tax Consequences in General</u>

The following summary addresses certain material federal income tax consequences of the Plan to the holders of Allowed Claims.  The summary is based upon the Internal Revenue Code, applicable Treasury Regulations, judicial authority and current administrative rulings and pronouncements of the IRS, all of which are subject to change, possibly with retroactive effect. Due to the differences in the nature of the various holders of Allowed Claims, their taxpayer status, residence and methods of accounting and prior actions taken by such Holders with respect to their Allowed Claims, the tax consequences described below are general in nature and are subject to significant considerations applicable to each holder of an Allowed Claim.

This discussion of the federal income tax consequences is not binding on the IRS, and the Debtor has not and does not intend to request an administrative ruling from the IRS with respect to any of the federal income tax aspects of the Plan.  No opinion of counsel has either been sought or obtained with respect to the federal, state, local or foreign tax aspects of the Plan.  Legislative, judicial or administrative changes or interpretations may be forthcoming that could alter or modify the statements and conclusions set forth herein.  Additionally, changes in the facts or circumstances relating to the consummation or operation of the Plan or other changes in circumstances could likewise affect the tax consequences to such parties.  The federal income tax consequences of the Plan and distributions are complex and subject to significant uncertainties. This summary does not address foreign, state or local tax consequences of the Plan except to the

EXHIBIT 1       Page 41 of 50
- 41 -

extent noted herein, nor does it purport to address all of the federal income tax consequences of the Plan.  This summary also does not purport to address the federal income tax consequences of the Plan to Holders of Claims subject to special treatment under the federal income tax laws, such as broker-dealers, tax-exempt entities, financial institutions, insurance companies, limited liability companies, small business investment companies, mutual funds, regulated investment companies, foreign corporations, and foreign persons.

**The Debtor CANNOT and DOES NOT represent that the tax consequences below are the only tax consequences of the Plan because the Internal Revenue Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action on the Debtor's tax liability or the tax implications to holders of Allowed Claims and Interests.  Holders of Allowed Claims and Interests are urged to consult with their tax advisors about the state, local and foreign tax consequences of the transactions contemplated under or in connection with the Plan.**

A distribution paid to a Holder of an Allowed Claim that is attributable to accrued but unpaid interest should be treated as ordinary income. Although not free from doubt, the intent is to treat payments as applied first to principal, and if the principal amount is paid in full, then any interest portion of the Allowed Claim.

**Importance of Obtaining Professional Tax Assistance.**

**The foregoing is intended as a summary only and is not a substitute for careful tax planning with a tax professional.  The U.S. federal, foreign, state and local income and other tax consequences of the Plan are complex and, in some cases, uncertain.  Such consequences may also vary based on the particular circumstances of each holder of an Allowed Claim. Accordingly, each holder of an Allowed Claim is strongly urged to consult with his, her or its own tax advisor regarding the federal, foreign, state and local income and other tax consequences under the Plan.**

**To ensure compliance with requirements imposed by the Internal Revenue Service, acting on behalf of the United States Treasury, you must be informed that any tax information contained in this Disclosure Statement is not intended or written to be used, and**

EXHIBIT 1
- 42 -                                                    Page 42 of 50

**cannot be used, by any taxpayer for the purpose of avoiding tax-related penalties under any applicable law or regulation.  The tax information contained in this Disclosure Statement was written to support the promotion of the transactions described in this Disclosure Statement.**

**IX.    EFFECT OF CONFIRMATION OF THE PLAN**

**A.    Revesting Of Property In Debtor**

All property of the Estate shall be revested in the Reorganized Debtor on the Effective Date.

**B.    Property Free and Clear of Claims**

Except as provided herein to the contrary, all property of the Estate distributed under the Plan shall be distributed free and clear of all Claims asserted by any Claimants, Interest Holders, parties in interest and other entities.

**C.    Limitation of Liability**

Except to the extent arising from fraud, willful misconduct, gross negligence, or legal malpractice, none of the Debtor, GFH, CLC, and their respective representatives ("Exculpated Parties"), will have or incur any liability as set forth in 11 U.S.C §1125(e) to any holder of a Claim or Interest or any other entity for any act or omission in connection with, from any Cause of Action for any claim related to any act or omission arising on or after the Petition Date and through the Effective Date in connection with, relating to, or arising out of, the Bankruptcy Case, the formulation, preparation, dissemination, negotiation, filing, or pursuit of approval of the Disclosure Statement or the Plan, or the solicitation of votes for or confirmation of the Plan , the Sale, or any transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the Sale, or the Plan, the filing of the Bankruptcy Case (the "Chapter 11 Process").  The Exculpated Parties have, and upon the Confirmation Date will be deemed to have, participated in good faith and in compliance with applicable laws with regard to the Chapter 11 Process  and, therefore, will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the Chapter 11 Process.

EXHIBIT 1    - 43 -    Page 43 of 50

**D.    No Liability for Solicitation or Participation**

As specified in Section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law,  rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer issuance, sale, or purchase of securities.

**E.    Corporate Actions**

On the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects (subject to the provisions of this Plan) by virtue of the entry of the Confirmation Order, in accordance with the Bankruptcy Code and applicable state law and without any requirement of further action by the Debtor, the stockholders, officers or directors of the Debtor.  All matters provided for under the Plan involving the corporate structure of the Debtor and any corporate action required by the Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect pursuant to the Bankruptcy Code, without any requirement of further action by the Debtor, shareholders, officers or directors of the Debtor.  On the Effective Date, the Reorganized Debtor is authorized and directed to implement the provisions by the Plan and any other agreements, documents and instruments contemplated by the Plan.

**F.    Post-Confirmation Injunction**

The Plan is the sole means for resolving, paying, or otherwise dealing with Claims and Interests with respect to the Estate, the Debtor, and their Assets.  To that end, except as expressly provided herein, at all times on and after the Effective Date, all Persons who have been, are, or may be Holders of Claims or Interests arising prior to the Effective Date shall be permanently enjoined from taking any of the following actions on account of any such Claims or Interests, against the Estate, the Debtor, or their Assets (other than actions brought to enforce any rights or obligations under the Plan and any Claim, contested matters, or adversary proceedings pending in the Case as of the Effective Date):

EXHIBIT 1 - 44 -    Page 44 of 50

1. Commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Estate, the Debtor, or the Professionals, their successors, or their respective property or assets (including, without limitation, all suits, actions, and proceedings that are pending, other than before the Bankruptcy Court or by explicit provision of the Bankruptcy Court, as of the Effective Date);

2. Enforcing, levying, attaching, executing, collecting, or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree, or Order against the Estate, the Debtor, or the Professionals, their successors, or their respective property;

3. Creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien against the Estate, the Debtor, or the Professionals, their successors, or their respective Assets; and

4. Proceeding in any place whatsoever against the Estate, the Debtor, or the Professionals, their successors, or their respective Assets, in any manner that does not conform to or comply with the provisions of the Plan.

5. No suit, action, or other proceeding may be commenced, conducted, or continued in any manner, directly or indirectly, by a Holder of a Claim or Interest on account of such Claim or Interest against the Debtor without the written consent of Debtor or Order of the Bankruptcy Court acquired by motion on notice to Debtor.  If the Holder of a Claim violates this provision, in addition to any other recourse or damages to which the Debtor may be entitled, the Claims of such Holder shall be disallowed, and any Distributions made on account of such Claims shall be repaid by such Holder to the Debtor.

**G.** **Modification of Plan**

The Debtor may modify the Plan at any time before the Confirmation Hearing Date. However, the Bankruptcy Court may under certain circumstances require a new disclosure statement and/or revoting on the Debtor modifies the Plan prior to confirmation of the Plan.  After confirmation, modification of the Plan may occur in accordance with the provisions of Bankruptcy Code section 1127(b).

EXHIBIT 1 - 45 -                    Page 45 of 50

**H.** **Post-Confirmation Status Report**

Within 120 days of the entry of the Confirmation Order, the Debtor shall file a status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee and those parties who have requested post-Effective Date notice in accordance with Section 7.15 of the Plan. Further status reports shall be filed every 120 days and served on the same entities.

**I.** **Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of entry of the Confirmation Order shall be paid to the United States Trustee on or before the effective date of the plan. Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after the Confirmation Order shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree.

**J.** **Post-Confirmation / Pre-Effective Date**

During the period between the Confirmation Hearing Date—provided that the Bankruptcy Court confirms the Plan—and the occurrence of the Effective Date, the Debtor will continue to manage the business and affairs of the Debtor as a debtor and debtor in possession under the Bankruptcy Code.

**K.** **Post-Confirmation Conversion/Dismissal**

A Creditor or party in interest may bring a motion to convert or dismiss the Case under Bankruptcy Code section 1112(b), after the Plan is confirmed.  If the Bankruptcy Court orders the Case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the Estate, and that has not been disbursed pursuant to the Plan, will revest in the chapter 7 estate, and the automatic stay will be reimposed upon the revested property.

**L.** **Final Decree**

Once the Estate has been fully administered as referred to in Rule 3022 of the Federal Rules of Bankruptcy Procedure, Debtor shall file a motion with the Bankruptcy Court to obtain a final decree to close the Case.

**M.** **Exemption from Stamp, Transfer and Other Taxes**

Pursuant to Section 1146(c), the issuance, transfer, or exchange of assets under the Plan by

EXHIBIT 1 - 46 -                    Page 46 of 50

the Debtor, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**N.     Headings**

Headings are used in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

**O.     Binding Effect**

The Plan shall be binding upon and inure to the benefit of the Estate, Claimholders, Holders of Interests, and their respective successors or assign.

**P.     Governing Law**

Unless a rule of law or procedure is supplied by (1) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (2) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, this Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California without giving effect to the principles of conflict of laws thereof.

**Q.     Other Documents and Actions**

The Debtor may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under this Plan.

**R.     Inconsistencies**

In the event that any provisions of this Plan are inconsistent with the provisions of the Disclosure Statement, the provisions of this Plan shall control.

**S.     Effectiveness of Court Orders**

All orders and judgments, including injunctions, entered by the Bankruptcy Court during the Bankruptcy Case, and in existence on the Confirmation Date, shall remain in full force and

EXHIBIT 1   - 47 -                    Page 47 of 50

effect from and after the Effective Date, to the extent not inconsistent with the provisions of this Plan or the Confirmation Orde

**X.      RECOMMENDATION AND CONCLUSION**

The Debtor believes that Plan confirmation and implementation are preferable to any feasible alternative. **Accordingly, the Debtor urges Persons who hold Allowed Claims entitled to vote to accept the Plan by checking the box marked "Accept" on their Ballots and then returning the Ballots as directed in the Disclosure Statement.**

Dated: March 7, 2025

Respectfully submitted by
**GOE FORSYTHE & HODGES LLP**

By: /s/Robert P. Goe
     Robert P. Goe
     Attorneys for American Open Space
     Remedies, LLC, a California limited
     liability company, Debtor and Debtor in
     Possession

EXHIBIT 1   - 48 -                    Page 48 of 50

## DECLARATION OF SCOTT KRENTEL

I, Scott Krentel, declare and state,

I am the authorized representative of Beaumont 1600, LLC, the Manager of American Open Space Remedies, LLC, the debtor and debtor in possession in the instant bankruptcy case ("Debtor") to make this declaration in support of *Debtor's Chapter 11 Plan of Reorganization Dated March 7, 2025* ("Plan"). I have personal knowledge of the facts stated herein, and if called upon to testify, I could and would competently and truthfully testify thereto. Capitalized terms set forth herein shall have the same meaning set forth in the Disclosure Statement.

1.      Debtor's voluntary Chapter 11 petition commencing this Case was filed on November 8, 2024 ("Petition Date").

2.      I have reviewed the Plan.

3.      All statements and representations made in the Plan are truthful and accurate and I support approval of the same.

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

EXECUTED this 7th day of March 2025 in California.

_____
Scott Krentel

EXHIBIT 149    Page 49 of 50

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 17701 Cowan, Lobby D, Suite 210, Irvine, CA 92614.

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION DATED MARCH 7, 2025; DECLARATION OF SCOTT KRENTEL IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 7, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Keith Patrick Banner    kbanner@greenbergglusker.com, calendar@greenbergglusker.com;cmillerwatkins@greenbergglusker.com**
- **Reem J Bello    rbello@goeforlaw.com, kmurphy@goeforlaw.com**
- **Jeffrey W Broker    jbroker@brokerlaw.biz**
- **Brian L. Davidoff    bdavidoff@greenbergglusker.com, calendar@greenbergglusker.com;jking@greenbergglusker.com;cmillerwatkins@greenbergglusker.com**
- **Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com**
- **Kenneth Misken    Kenneth.M.Misken@usdoj.gov**
- **Cole F. Nicholas    cnicholas@greenbergglusker.com, calendar@greenbergglusker.com;cmillerwatkins@greenbergglusker.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

☐     Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL**:
On (*date*) March 7, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows: Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐     Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:
(state the method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) March 7, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- The Honorable Scott Clarkson, USBC, 411 West Fourth Street, Suite 5130, Santa Ana, CA 92701

☐     Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 7, 2025 | Susan C. Stein | /s/Susan C. Stein |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

EXHIBIT 1
- 50 -                                                   Page 50 of 50

# EXHIBIT 2

# EXHIBIT 2



EXHIBIT 2

LEGACY HIGHLANDS
CITY OF BEAUMONT
COUNTY OF RIVERSIDE, CALIFORNIA

SITE PLAN

# EXHIBIT 3

# EXHIBIT 3



**LEGEND:**

PROPOSED URBAN ARTERIAL HIGHWAY POTRERO BLVD. (152' R.O.W.)

PROPOSED URBAN ARTERIAL HIGHWAY POTRERO BLVD. (110' R.O.W.)

PROPOSED INDUSTRIAL COLLECTOR SPORTS ST. (80' R.O.W.)

PROPOSED PRIVATE LOOP RD.

PROPOSED COLLECTOR STREET (88' R.O.W.)

PROPOSED FIRE ACCESS RD. (24')

**OFFSITE LETTER LOT:**

LETTER LOT "B" (POTRERO BOULEVARD OFFSITE) A= 3.3 AC

LETTER LOT "C" (POTRERO BOULEVARD OFFSITE) A= 1.7 AC

LETTER LOT "E" (INDUSTRIAL COLLECTOR OFFSITE) SPORTS STREET A= 4.22 AC

POTRERO BOULEVARD OFFSITE EAST A= 3.7 AC

VEILE AVENUE A= 0.9 AC

EXHIBIT 3

**LEGACY HIGHLANDS**

CITY OF BEAUMONT
COUNTY OF RIVERSIDE, CALIFORNIA

**SITE PLAN**

# EXHIBIT 4

# EXHIBIT 4

EXHIBIT 4

APPRAISAL OF A PORTION OF LEGACY HIGHLANDS SPECIFIC PLAN
±663.87 ACRES OF UNDEVELOPED LAND
LOCATED SOUTH OF 4TH STREET AT POTRERO BOULEVARD
BEAUMONT, CALIFORNIA 92223


Prepared For:

AMERICAN OPEN SPACE REMEDIES, LLC
C/O BEAUMONT 1600, LLC
SCOTT KRENTEL, MANAGER
AUTHORIZED REPRESENTATIVE
P.O. BOX 55317
RIVERSIDE, CALIFORNIA 92517


Prepared By:

MICHAEL FRAUENTHAL & ASSOCIATES, INC.
24662 DEL PRADO, 2ND FLOOR
DANA POINT, CALIFORNIA 92629


MFA #24-028


MARCH 5, 2025

# MICHAEL FRAUENTHAL & ASSOCIATES, INC.

Real Estate Appraisers • Consultants

March 5, 2025

American Open Space Remedies, LLC
C/O Beaumont 1600, LLC
Mr. Scott Krentel, Manager
Authorized Representative
P.O. Box 55317
Riverside, California 92517

> **RE:   APPRAISAL OF A PORTION OF LEGACY HIGHLANDS SPECIFIC PLAN,**
> **±663.87 ACRES OF UNDEVELOPED LAND**
> **LOCATED SOUTH OF  4TH STREET AT POTRERO BOULEVARD,**
> **BEAUMONT, CALIFORNIA 92223**
> **MFA #24-028**

Dear Mr. Krentel:

At your request, we have inspected and appraised the above-referenced property. The purpose of the appraisal is to estimate the aggregate of retail values of the 12 planned individual subject building parcels in their current unentitled, unimproved condition and the aggregate of retail values of the 12 subject building pads based on the hypothetical condition the land is entitled and improved for development with ±12 industrial buildings totaling ±12 million square feet of leasable area. The appraisal is based on existing and forecasted market conditions as of March 13, 2024, and is subject to the definitions, assumptions & limiting conditions, and certification contained in the attached report. The interest appraised is the fee simple estate.

The property being appraised is comprised of ±663.87 acres of undeveloped land. The property is situated south side of 4th Street and east of the proposed extension of Potrero Boulevard. The property is in an unincorporated area of Riverside County within the sphere of influence of the city of Beaumont. Entitlements are being processed through the city with the intention of the property being annexed into the city upon final approval. American Open Space Remedies intends to develop the site with backbone infrastructure for development with 12 industrial building pad sites allowing accommodating one million square foot buildings, each. A complete description of the property appraised, and explanations of the appraisal procedures followed are presented in the body of the report.

24662 Del Prado 2nd Floor, Dana Point, CA 92629 • (949) 496-1676 • FAX (949) 489-1745

EXHIBIT 4

EXHIBIT 4

Mr. Scott Krentel, Manager
March 5, 2025
Page Two

This appraisal conforms to the requirements of the 2024 Uniform Standards of Professional Appraisal Practice (USPAP) adopted by the Appraisal Foundation and the Appraisal Institute Code of Ethics. This appraisal is not intended for use in connection with a federally-related transaction, as defined in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA). The accompanying appraisal report is intended to comply with USPAP Standards Rule 2-2(a).

Based on the data and analysis presented in the attached report, it is our opinion that the market values for the subject property are as follows:

- The aggregate of retail values of the 12 planned individual subject building parcels in their current unentitled, unimproved condition, as of March 13, 2024, is:

**$580,000,000***
**FIVE HUNDRED EIGHTY MILLION DOLLARS**
*\*The aggregate of retail values does equal the value of the property as a whole*

- The aggregate of retail values of the 12 subject building pads based on the hypothetical condition the land is entitled and improved for development with ±12 industrial buildings totaling ±12 million square feet of leasable area, as of March 13, 2024, is:

**$925,000,000***
**NINE HUNDRED TWENTY-FIVE MILLION DOLLARS**
*\*The aggregate of retail values does equal the value of the property as a whole*

The following report contains the data and analysis the value opinions are based on. Definitions of market value and other terms used in the appraisal report can be found in the Addenda. The estimated reasonable exposure period is 12 months.

Respectfully submitted,

MICHAEL FRAUENTHAL & ASSOCIATES, INC.

Michael F. Frauenthal, MAI
California State Cert. No. AG002952
Expiration Date: February 25, 2026
MikeF@Frauenthal.com

Nick Walker, Associate
California State Cert. No. AG008430
Expiration Date: March 9, 2026
NickW@Frauenthal.com

24662 Del Prado 2nd Floor, Dana Point, CA 92629 • (949) 496-1676 • FAX (949) 489-1745

EXHIBIT 4

# SUMMARY OF SALIENT FACTS & CONCLUSIONS

## PROPERTY DESCRIPTION

The property being appraised is comprised of ±663.87 acres of undeveloped land. The property is situated south side of 4th Street and east of the proposed extension of Potrero Boulevard. The property is in an unincorporated area of Riverside County within the sphere of influence of the city of Beaumont. Entitlements are being processed through the city with the intention of the property being annexed into the city upon final approval. American Open Space Remedies intends to develop the site with backbone infrastructure for development with 12 industrial building pad sites allowing accommodating one million square foot buildings, each.

## ZIP CODE

92223 (Beaumont)

## CENSUS TRACT

438.22 / 1

## LEGAL DESCRIPTION

We have not been provided with a preliminary title report or legal description for the subject property.

## ASSESSOR'S PARCEL NUMBERS

The subject property is identified by the Riverside County assessor as parcel numbers 424-060-001 & 006 thru 009; 424-070-002; and 424-100-002, 003, 005, 006 & 008.

## LAND AREA

The subject property is a portion of 11 parcels containing a total gross area of ±1,312 acres, as summarized.

| APN | Area (Acres) | APN | Area (Acres) |
|---|---|---|---|
| 424-060-001 | 92.73 | 424-100-002 | 120.00 |
| 424-060-006 | 46.28 | 424-100-003 | 160.00 |
| 424-060-007 | 34.58 | 424-100-005 | 20.00 |
| 424-060-008 | 20.70 | 424-100-006 | 20.00 |
| 424-060-009 | 39.48 | 424-100-008 | 128.00 |
| 424-070-002 | 630.00 | | |
| **Total Area** | | | **1,311.77** |

The 11 parcels are in the process of being entitled with a specific plan allowing the property to be developed with 12 building pads containing net site areas ranging from ±25.36 to ±87.71 acres containing ±663.87 net acres, as summarized.

| Site | Area (Acres) | Site | Area (Acres) |
|---|---|---|---|
| Tract 8 | 25.36 | Tract 14 | 51.41 |
| Tract 9 | 75.05 | Tract 15 | 31.52 |
| Tract 10 | 64.56 | Tract 16 | 67.18 |
| Tract 11 | 29.56 | Tract 17 | 31.71 |
| Tract 12 | 87.71 | Tract 18 | 67.18 |
| Tract 13 | 84.36 | Tract 19 | 48.27 |
| **Total Net Area** | | | **663.87** |

## OWNERSHIP HISTORY

According to information obtained from RealQuest.com, the subject property is owned by American Open Space

*i*

# SUMMARY OF SALIENT FACTS & CONCLUSIONS

EXHIBIT 4

Remedies. American Open Space Remedies reportedly acquired title via a grant deed on March 31, 2022 (document number 22-0155984) from Scott Krentel. It's our understanding, American Open Space Remedies is an affiliate entity of Scott Krentel. Scott Krentel acquired the property in November 2002 as The Preserve, LLC. The November 2002 purchase has not been provided.

Since acquiring the property in 2002, the owners commenced drafting civil engineering for a specific plan providing ±3,000 residences, ±2 million square feet of big box industrial space and ±100,000 square feet of retail space identified as Legacy Highlands.

In 2008, the processing of the specific plan was shelved due to the downturn in the economy. The Legacy Highlands specific plan was reinstated on December 20, 2017. Since, the 1,600-acre specific plan has shifted to primarily industrial development including ±15 million square feet of big box warehouse buildings and a ±12.5-acre retail center.

The property is intended to be annexed into the city of Beaumont. The EIR and Legacy Highlands Industrial Specific Plan documents have been submitted to the city with the third review comments from the city currently being addressed. Final approval of the specific plan is expected within the next six (6) months.

Development of 4th Street & Potrero Boulevard has been completed by Caltrans north of the subject property. The subject property owner previously made a capital contribution of $385,000 as well as dedicating ±20 acres of land for the construction of the freeway overpass which has been completed and related on and off-ramps, anticipated to be started within the next six (6) months.

There have been no arms-length transactions involving the subject property within the three years prior to the effective date of value. To the best of our knowledge, the subject property is not listed for sale nor is a sale pending.

## ZONING & ENTITLEMENTS

The subject property is zoned W-2 (controlled development) under the jurisdiction of Riverside County. The existing zoning permits one-family dwellings on lots of not less than 20,000 square feet and agricultural crops. Horses are permitted up to two per 20,000 square feet.

According to Carol Kendrick, the community development director with the city of Beaumont, the EIR and Legacy Highlands specific plan continues to be reviewed by the city staff with concerns/ conditions being communicated with the ownership group and project engineers. At the completion of review, a planning commission hearing will be scheduled for final specific plan approval.

According to David Golkar, the project engineer, completion of the specific plan and EIR documents is anticipated within the next 60 days with specific plan entitlements by September 30, 2024.

The 1,600-acre specific plan intends for development with ±15 million square feet of light industrial and logistic buildings and a ±12.5-acre commercial parcel; however, a specific timeframe is not guaranteed. No permits will be

# SUMMARY OF SALIENT FACTS & CONCLUSIONS

issued until the specific plan is approved and the property is annexed into the city.

The subject ±663.87 acres is intended for entitlement with 12 building pads accommodating buildings ranging in size from ±100,000 to ±2.5 million square feet.

## ENTITLEMENT TIMING

David Golkar, the project engineer, has reported that approval of the Legacy Highlands Industrial specific plan and annexation of the property into the city should occur by September 30, 2024, with an outside estimate of March 31, 2025.

The city of Beaumont community development director, Carol Kendrick, has reported an entitlement timeframe of two years.

## FLOOD HAZARD

The site lies within Flood Zone X, per Community Panel Map Number 060245 - 06065C0795H, with an effective date of August 18, 2014. Zone X are areas determined to be outside the 100 and 500-year floodplains. Flood insurance is not required with Zone X designations.

## EARTHQUAKE HAZARD

According to the Department of Conservation, the subject property does not lie within one of the special study earthquake areas designated in the Alquist-Priolo Special Studies Act of 1972.

## CURRENT CONDITION

As of the date of inspection, the property was in an unimproved condition with offsites to the north, including paved roadways, 4th Street and Potrero Boulevard, and all utilities. Caltrans is intending to construct freeway on and off ramps along Potrero Boulevard approximately one-half mile north of the property.

## PROJECT STRENGTHS & WEAKNESSES

Strengths
- Good central location for distribution with good freeway access;
- Finalizing entitlements;
- Offsite complete with future freeway on and off-ramps just north of the property; and
- Good area workforce.

Weaknesses
- Unimproved land requiring clearing and grading and backbone infrastructure through the property; and
- Large multi-site property in stabilizing market.

## HIGHEST & BEST USE

Complete backbone infrastructure and develop the ±663.87 net acres with multiple large logistics facilities over the next several years, if not sold to one or more purchasers in bulk.

## PROPERTY RIGHTS

Fee simple interest

EXHIBIT 4

Page 6 of 7

iii

# SUMMARY OF SALIENT FACTS & CONCLUSIONS

## APPRAISAL PURPOSE

The purpose of the appraisal is to estimate the aggregate of retail values of the 12 planned individual subject building parcels in their current unentitled, unimproved condition and the aggregate of retail values of the 12 subject building pads based on the hypothetical condition the land is entitled and improved for development with ±12 industrial buildings totaling ±12 million square feet of leasable area.

## VALUE ESTIMATES

- The aggregate of retail values of the 12 planned individual subject building parcels in their current unentitled, unimproved condition, as of March 13, 2024, is:

  **$580,000,000**
  **FIVE HUNDRED EIGHTY MILLION DOLLARS**

  *The aggregate of retail values does equal the value of the property as a whole.*

- The aggregate of retail values of the 12 subject building pads based on the hypothetical condition the land is entitled and improved for development with ±12 industrial buildings totaling ±12 million square feet of leasable area, as of March 13, 2024, is:

  **$925,000,000**
  **NINE HUNDRED TWENTY-FIVE MILLION DOLLARS**

  *The aggregate of retail values does equal the value of the property as a whole.*

## REASONABLE EXPOSURE PERIOD

12 months the individual parcels, likely to exceed five years to sell all 12 parcels. To sell the property in bulk would likely require a discount.

EXHIBIT 4

*iv*

# EXHIBIT 5




# EXHIBIT 5

Kenneth J. Catanzarite (SBN 113570)
kcatanzarite@catanzarite.com
CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544
Fax: (714) 520-0680

Attorneys for Plaintiff American Open
Space Remedies, LLC

**IN THE SUPERIOR COURT OF CALIFORNIA**

**FOR THE COUNTY OF RIVERSIDE**

| | |
|---|---|
| AMERICAN OPEN SPACE REMEDIES, LLC, a California limited liability company, | Case No. _____ |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **1. Violations of California Constitution Article XV, Section One and Civil Code Section 1916-3** |
| AMINAM, LLC, a California limited liability company; LIQUID FUNDS LLC, a Delaware limited liability company; EZRI NAMVAR an individual; MOUSA NAMVAR an individual; SHATAR CAPITAL, INC., a California corporation; DANIEL NAMVAR an individual; and Does 1-100, inclusive, | **2. Declaratory Relief Aminam Note, Liquid Note, Trust Deeds & Guaranties Is/Are Void/Voidable** |
| | **3. Declaratory Relief Liquid Note, Liquid TD and Liquid Guaranty Is/Are Void/Voidable** |
| Defendants. | **4. Fraud** |
| | **5. Conversion** |
| | **6. Declaratory Relief Liquid Note, Liquid TD and Liquid Guaranty Are Void/Voidable** |
| | **7. Slander of Title** |
| | **8. Wrongful Foreclosure** |
| | **9. Negligent Misrepresentation** |
| | **10. Negligence** |
| | **11. Breach of Contract** |
| | **12. Cancellation of Instruments** |
| | **13. Violation of the California Financing Law - Making Regulated Commercial Loans without a License** |
| | **14. Restitution Based on Quasi - Contract/Unjust Enrichment under California Common Law** |
| | **15. Violation of Business and Professions Code Section 17200, Et. Seq.** |
| | **JURY TRIAL DEMANDED** |

Plaintiff AMERICAN OPEN SPACE REMEDIES, LLC brings this Complaint against defendants and Does 1-100 alleging as follows:

**I.**

**PARTIES**

1.      Plaintiff AMERICAN OPEN SPACE REMEDIES, LLC ("Plaintiff and sometimes "AOSR") is a California limited liability company organized February 11, 2022, assigned California Secretary of State Number 202204510729 doing business in California from offices in the City of Riverside in Riverside County. AOSR commenced a Chapter 11 Bankruptcy proceeding in the United States Bankruptcy Court Central District of California Santa Ana Division assigned Case 8:24-bk-12885-SC and operates as Debtor and Debtor-in-Possession.

2.      Defendant AMINAM, LLC ("AMINAM") is a California limited liability company organized August 23, 2018, assigned California Secretary of State Number 201824010008 and doing business in Riverside County California for times relevant from offices located at 12121 Wilshire Boulevard, Suite 555, Los Angeles CA 90025.

3.      Defendant LIQUID FUNDS LLC ("LIQUID") is a Delaware limited liability company organized March 22, 2022 and first registered and qualified to do business in California as an Out-Of-State Limited Liability Company on April 22, 2022, assigned California Secretary of State Number 201824010008 and doing business in Riverside County for times relevant from offices located at 12121 Wilshire Boulevard, Suite 555, Los Angeles CA 90025.

4.      Defendant EZRI NAMVAR ("EZRI") an individual, upon information and belief conducts business in Riverside County for times relevant from offices located at 12121 Wilshire Boulevard, Suite 555, Los Angeles CA 90025 and is believed to be the controlling member and manager of AMINAM. EZRI is the brother of MOUSA.

5.      Defendant MOUSA NAMVAR ("MOUSA") an individual, upon information and belief conducts business in Riverside County for times relevant from offices located at 12121 Wilshire Boulevard, Suite 555, Los Angeles CA 90025 and is believed to be the controlling member and manager of LIQUID.  MOUSA is the brother of EZRI.

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

1.

**Complaint**

EXHIBIT 5                    Page 2 of 144

6.      Defendant SHATAR CAPITAL, INC. ("SHATAR") is a California corporation organized on April 22, 2016, assigned California Secretary of State Number 3899548 and doing business in Riverside County California for times relevant from offices located at 12121 Wilshire Boulevard, Suite 555, Los Angeles CA 90025. SHATAR as reported on the California Secretary of State website is Franchise Tax Board suspended and upon information and belief, that suspension was effective April 1, 2021 such that it was suspended during the execution of the operative documents in this case in late March 2022. SHATAR is a Corporate Licensee with the Department of Real Estate as a broker with License Number 02021122 and the Designated Officer of which is DANIEL as described below.

7.      Defendant DANIEL NAMVAR ("DANIEL") an individual, upon information and belief conducts business in Riverside County for times relevant from offices located at 12121 Wilshire Boulevard, Suite 555, Los Angeles CA 90025 and is believed to be the controlling shareholder, director and Designated Officer of SHATAR. DANIEL holds a Department of Real Estate broker License Number 01990085 which he has used to become the Designated Officer of SHATAR. Plaintiff alleges upon information and belief that DANIEL in late March 2022 provided brokerage services through SHATAR.

8.      Plaintiff is informed and believes, and based thereon alleges, that: (a) there existed and now exists a unity of interest, ownership, and operation between AMINAM, EZRI and Does 1-10, LIQUID, MOUSA and Does 11-20, SHATAR, DANIEL and Does 21-30 respectively such that the individuality and separateness of them has ceased or never existed; and, (b) the failure to disregard the separate corporate entity would sanction a fraud or promote injustice. Plaintiff is further informed and believes, and based thereon alleges, that recognition of the privilege of separate existence of AMINAM, LIQUID, SHATAR and the respective Does 1-30 would promote injustice because EZRI, MOUSA, DANIEL and the respective Does 1-30, and each of them, in bad faith dominated and controlled AMINAM, LIQUID and SHATAR as follows:

a.      They have been and/or are now a mere shell and naked framework which they have used as a conduit for the conduct of their business, property, and affairs;

//

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

2.

**Complaint**

EXHIBIT 5                    Page 3 of 144

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

b.      They commingled funds and other assets of each other with their own funds and other assets for their own convenience and to assist in evading obligations;

c.      They used funds for something other than corporate uses;

d.      They purported to, and did, work through each other during the negotiations and performance, and interpretation, of the contract and services set forth herein;

e.      They used each other as mere shells, instrumentalities and/or conduits for their own actions, and negotiated the terms of the subject contracts and/or individually changed and/or breached the contracts for their own benefits and/or diverted funds, customers, and other assets of each other for other than corporate uses and/or to defraud Plaintiff and others;

f.      They treated the assets of each other as their own;

g.      They failed to maintain minutes and/or adequate corporate records of each other, created confusion of the records of the separate entities, and/or failed to maintain other corporate formalities;

h.      They failed to maintain arm's length relationships among each other;

i.      They used each other to procure labor, services, or merchandise for the other;

j.      They used the same directors and officers, and managers of each other;

k.      They used the same office or business location;

l.      They employed the same employees, agents, and/or attorneys; and,

m.      Other representations, acts, or omissions subject to proof.

9.      Plaintiff is informed and believes, and based thereon alleges, that at all times relevant hereto, AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and the respective Does 1-30, acted for each other in connection with the conduct hereinafter alleged and that each of them performed the acts complained of herein as agents of each other and each is therefore fully liable for the acts of the other.

//

3.
**Complaint**
EXHIBIT 5                                    Page 4 of 144

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

10.    Plaintiff is informed and believes, and based thereon alleges, that each of the AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and the respective Does 1-30 are responsible in some manner for the occurrences herein alleged, and Plaintiff's damages as herein asserted were proximately caused by AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and the respective Does 1-30 jointly and severally.

11.    Plaintiff reasonably believed the serial promises by AMINAM, LIQUID, EZRI, MOUSA and the respective Does 1-20 and his/its/their agents, joint venture partners, co-conspirators and aiders and abettors as described herein. Plaintiff had no contact whatsoever with SHATAR, DANIEL and Does 31-40.

12.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1 through 100, inclusive, and therefore, sues these defendants by such fictitious names. Plaintiff will request leave of court to amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and based thereon alleges, that Does 1 through 100, inclusive, are in some way responsible for the events, injuries, and damages alleged in this Complaint.

13.    Plaintiff is informed and believes and based thereon alleges that at all times mentioned herein, each of AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-50 was an agent, principal, employee, servant, representative of each of the remaining AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 and at all times alleged herein was acting within the course and scope of said agency and employment.

14.    Plaintiff's reference to "Defendants" unless otherwise described herein shall mean AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100.

15.    Plaintiff's reference to Does 51-100 unless otherwise described herein, shall mean to be named defendants each of whom participated in the promissory notes described herein by purchasing a share thereof, all of whom shall be identified during the course of discovery and added by way of amendment.

16.    In the event future discovery establishes that one or more lawyers or law firms conspired with and/or aided or abetted the Defendants and therefore should be named in the place

4.

**Complaint**

EXHIBIT 5                                    Page 5 of 144

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

of any of the foregoing Doe Defendants, then to the extent applicable, if at all, Plaintiff will comply with its obligations under *California Civil Code* § 1714.10 by bringing a motion seeking advance Court approval for any such substitution and will, in the context of such motion, present evidence establishing a reasonable probability that he/she/it/they will prevail on the merits of its claims against such lawyers and/or law firms.

**II.**

**VENUE AND JURISDICTION**

17.     Venue and jurisdiction in this matter is proper as the subject purported lending agreements including the promissory notes, trust deeds and related documents were entered into, by and among the parties to the agreements regarding the subject property and escrow related thereto closed at the offices of Stewart Title of California, Inc. ("Stewart") in Redlands California, and real property which is located in the County of Riverside, State of California, within the jurisdiction of the instant Court.

**III.**

**FACTUAL AND GENERAL ALLEGATIONS**

**A.     CALIFORNIA USURY LAWS**

18.     This is an action arising out of illegal and void promissory notes and deeds of trust as well as notices of default  recorded against Plaintiff's property. The purported notes, trust deeds, and notices of default and the actions taken by Defendants are the product of without limitation fraud, illegal conduct, unfair business and predatory lending practices.

19.     Article XV, section 1 of the California Constitution sets the maximum interest rate lenders can charge on non-personal loans at "the higher of 10 percent or 5 percent plus the Federal Reserve Bank of San Francisco's rate on the 25th day of the month preceding the date the agreement was contracted." In this case, that rate was .5% on March 25, 2022. Therefore the 10% rate is the maximum rate that could have been charged on the notes between Plaintiff and LIQUID and AMINAM when signed on March 29, 2022.

20.     A loan is exempt from the usury law only if the loan is "made or arranged by any person licensed as a real estate broker by the State of California and secured in whole or in part

5.

**Complaint**

EXHIBIT 5                                      Page 6 of 144

by liens on real property .... " (California Constitution, Article XV, § 1.)

21. Broker "arranged" loans are those in which the broker acts as an intermediary and causes a loan to be obtained or procured such as by structuring the loan as the agent for the lender, setting the interest rate and points to be paid, reviewing the loan and forbearance documents, conducting title searches, or drafting the terms of the loan. Licensed real estate brokers may be either individuals or corporations; the California Department of Real Estate ("DRE") issues licenses to both. When a license is issued to a corporation, it is through the license of a designated officer of the corporation. (Business & Professions Code, § 10211.) If there is no licensed officer, no licensed activities may be performed for or in the name of the corporation. (California Code Regulations, title 10, § 2740.) When there is a designated officer, only the designated officer may conduct licensed activities on the corporation's behalf. Other officers may act under the corporation's license only if the corporation procures additional licenses to employ each additional officer. (Business & Professions Code, 26 §§ 10158, 10211.)

**B. DEFENDANTS' SCHEME OF ARRANGING NON-EXEMPT USURIOUS LOANS BETWEEN LIQUID AND AMINAM AND AOSR UNDER SHATAR'S REAL ESTATE LICENSE WITH ABSENT LICENSEE DANIEL**

22. Defendants engaged in usurious lending practices by making loans to AOSR which charged in excess of the lawful amount of interest permitted under law. Plaintiff is informed and believes that LIQUID and AMINAM are non-exempt lenders each of which engaged in usurious lending practices as part of the custom, habit and practice of a lending business and that such usury constitutes wrongful conduct including without limitation an unlawful business practice prohibited under California Business and Professions Code § 17200.

23. Plaintiff is informed, believes, and based thereon alleges that AMINAM, LIQUID, EZRI, MOUSA and Does 51-100 are in the business of originating, arranging, and servicing hard money loans under terms which violate California's Usury Laws (hereinafter referred to as the "Hard Money Loans").

//

Catanzarite Law Corporation
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

6.
**Complaint**

EXHIBIT 5 Page 7 of 144

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

24.     Plaintiff is informed, believes, and based thereon alleges SHATAR, DANIEL and Does 31-40 are/were licensed real estate brokers and the registered and authorized Designated Officer for SHATAR and while they could have arranged loans on behalf of AMINAM, LIQUID, EZRI, MOUSA and Does 51-100, if SHATAR had not been suspended at the time, they did not in fact arrange the subject loans at all. SHATAR and DANIEL were part of the scheme and scam lending name only to the loan process but not as required by law arranging said loans (hereinafter referred to as the "Scheme").

25.     Plaintiff is informed, believes, and based thereon alleges that EZRI and MOUSA are not licensed real estate salespersons or brokers and, therefore, cannot originate, arrange, and/or service loans that provide for interest in violation of California's Usury Laws. Furthermore, neither EZRI nor MOUSA are endorsed by the California Department of Real Estate to arrange loans under SHATAR's real estate license.

26.     Plaintiff is informed, believes, and based thereon alleges that, at a minimum, for times relevant to this Complaint SHATAR, DANIEL and Does 31-40 improperly allowed AMINAM, LIQUID, EZRI, MOUSA and Does 1-20 and 51-100 to solely originate and arrange loans on behalf of AMINAM, LIQUID, EZRI, MOUSA and Does 1-20 and 51-100 under the guise of SHATAR, DANIEL and Does 31-40's real estate license in violation of California law. At all times relevant SHATAR, DANIEL and Does 31-40 knew that loans in violation of California Usury Laws were being originated and arranged by AMINAM, LIQUID, EZRI, MOUSA and Does 1-20 and 51-100 and borrower AOSR which loans SHATAR, DANIEL and Does 31-40 did not have the necessary level of involvement in as required by California Usury Laws and SHATAR, DANIEL and Does 31-40 acquiesced to the same and concealed their respective misconduct herein the Scheme.

27.     Plaintiff is informed, believes, and based thereon alleges that AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-20 and 51-100 and profited from the Scheme by originating and arranging Hard Money Loans that provided for interest in violation of California's Usury Laws.

//

7.
**Complaint**

EXHIBIT 5                                    Page 8 of 144

28.     Plaintiff is informed, believes, and based thereon alleges that AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 each profited from the SCHEME by receiving fees for originating, arranging, and servicing the Hard Money Loans.

29.     AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 knew about, participated in, and ratified the actions in furtherance of the Scheme including, but not limited to EZRI and MOUSA solely and without SHATAR, DANIEL and Does 31-40's involvement, originating, arranging, and servicing loans between borrower AOSR and lenders AMINAM, LIQUID, EZRI, MOUSA, and Does 1-20 and 51-100 which loan terms violated California's usury laws and were not exempt.

**C.     AOSR LOANS - USURIOUS DISCOUNT PROMISSORY NOTES SECURED BY TRUST DEEDS AGAINST THE DISPUTED IN SCOPE COLLATERAL**

30.     During the time period March 2022 to present AOSR obtained Hard Money Loans arranged by EZRI and MOUSA who acted as the principals and brokers between AOSR and LIQUID, AMINAM and Does 51-100 for the specific loans described herein. Plaintiff further contends that these loans were not exempt from California's Usury Law because the loans were arranged solely by EZRI and MOUSA who did not possess valid real estate licenses issued by the California Department of Real Estate. Without these licenses, neither EZRI nor MOUSA were permitted to originate, arrange, and/or service loans individually, collectively or on behalf of LIQUID, AMINAM and Does 51-100 that provided for interest in violation of California's Usury Laws.

31.     Plaintiff is informed and believes, and based upon such information and belief alleges, that at all times relevant SHATAR was a Franchise Tax Board suspended California corporation prohibited from contracting as of April 1, 2021, the designated officer of which was DANIEL. Further, DANIEL while he had valid real estate broker license and was a registered and authorized broker to arrange loans had placed his license with SHATAR.

32.     Plaintiff is informed and believes, and based upon such information and belief alleges, that the loan transactions, described herein, were performed and arranged solely by EZRI

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

8.

**Complaint**

EXHIBIT 5                    Page 9 of 144

Catanzarite Law Corporation
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

and MOUSA, two unlicensed persons, and not by DANIEL. As such, the loan transactions, described herein, were at all times governed by the Usury provisions of the California Constitution, Article XV § 1 (see Section III.A. re California Usury Laws, *supra*).

33.    Plaintiff is informed and believes, and based upon such information and belief alleges, that SHATAR, DANIEL and Does 31-40 knew that loans in violation of California Usury Laws were being arranged by LIQUID, AMINAM, EZRI, MOUSA and Does 1-20 and 51-100 in which it/she/he/they did not have the necessary involvement in said loans, as required by California Law and SHATAR, DANIEL and Does 31-40 acquiesced in and concealed the same.

### D.    THE AOSR LENDING TRANSACTION AND DOCUMENTS

34.    On or about March 2022 AOSR as buyer sought $6,600,000 to acquire approximately 1,311 acres of vacant land in Riverside County, California, which has been referred to as the "Legacy Highlands Property" (herein the "Property") to be acquired from John Menchaca solely in his capacity as the Trustee for the estate of The Preserve, LLC under U.S. Bankruptcy Court case no. 2:10-bk-18429-BB, as seller ("Menchaca").

35.    Plaintiff is informed and believes, and based upon such information and belief alleges, that sometime in or about early March 2022, AOSR contacted EZRI about a purported need for a "hard money loan" that would be secured by a part of the Property.

36.    Plaintiff is informed and believes, and based upon such information and belief alleges, that EZRI, on behalf of LIQUID, AMINAM and MOUSA, met with AOSR in or about March 2022, with the intent of arranging, as a broker, a Hard Money Loan secured by the Property.

37.    Plaintiff is informed and believes, and based upon such information and belief alleges, that neither EZRI nor MOUSA were licensed real estate brokers registered to arrange loans on behalf LIQUID and AMINAM and therefore any loans brokered by EZRI and MOUSA were not exempt from California's Usury Laws.

38.    Plaintiff is informed and believes, and based upon such information and belief alleges, that EZRI and MOUSA, on behalf of LIQUID and AMINAM, exclusively negotiated and arranged for Hard Money Loans between LIQUID, AMINAM and Does 1-20 and 51-100 and

9.

**Complaint**

EXHIBIT 5                                    Page 10 of 144

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

borrower, AOSR, that was secured by a portion of the Property.

39.     On March 31, 2022 AOSR closed on combined and conditioned upon one another loans from LIQUID and AMINAM which funds were used to acquire the Property from Menchaca. The loans as agreed with AOSR, were to be secured by deeds of trust encumbering 194.29 of the approximate 1,311 acres as the "Collateral" with Stewart as trustee. The Final Buyer's Closing Statement is attached hereto as Exhibit "1" (the "Closing").

40.     On March 29, 2022 AOSR by its Manager Beaumont 1600, LLC a California limited liability company the Manager of which is Scott H. Krental ("Krental") signed a series of documents including those described below:

a.     A "Discount" Promissory Note in the amount of $13,000,000 payable By AOSR as borrower to LIQUID as lender at a stated interest rate of 10% per annum all due March 31, 2022 whereby $2,600,000 was withheld from funds advanced to AOSR. As a result AOSR received effectively $10,400,000 at Closing, a copy of which is attached hereto as Exhibit "2" (the "Liquid Note").

b.     A Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing by AOSR as Trustor with Stewart as Trustee for the benefit of LIQUID, to secure the Liquid Note effective as of March 29, 2022 recorded on March 31, 2022 as Instrument No. 2022-0155985 in the official records in the Office of the Recorder of Riverside County, California, a copy of which is attached hereto as Exhibit "3" secured by six parcels APNs: 424-060-001; Portion of 424-060-002; 424-060-006; 424-060-007; 424-060-008; 424-060-009, the Legal Description of which is attached as Exhibit "A" thereto (the "Liquid TD" and the APNs designating the "Misstated Collateral"). The six parcels overstated the scope of the agreed upon Collateral by roughly 39 acres and impacted access rights to the remainder of the Property.

c.     A Continuing Guaranty signed by Scott H. Krentel ("Krentel) guarantying the obligations of AOSR to pay LIQUID on the Liquid Note in the amount of $13,000,000, a copy of which is attached hereto as Exhibit "4" (the "Liquid Guaranty").

//

10.

**Complaint**

EXHIBIT 5                                        Page 11 of 144

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

d.      A Promissory Note in the amount of $13,000,000 payable by AOSR as borrower to AMINAM as lender at an interest rate of 10% per annum all due March 31, 2022 payable on amounts requested by AOSR and advanced by AMINAM, subordinate to the Liquid Note, a copy of which is attached hereto as Exhibit "5" (the "Aminam Note"). The understanding of AOSR when it signed the Aminam Note was that like the Liquid Note it would be able to borrow up to $10,400,000 as may be required.

e.      A Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing by AOSR as Trustor with Stewart as Trustee for the benefit of AMINAM to secure the Aminam Note effective as of March 29, 2022 recorded on March 31, 2022 as Instrument No. 2022-0155986, in the official records in the Office of the Recorder of Riverside County, California, a copy of which is attached as Exhibit "6" secured by the same six parcels APNs: 424-060-001; Portion of 424-060-002; 424-060-006; 424-060-007; 424-060-008; 424-060-009, the Legal Description of which is attached as Exhibit "A" thereto  (the "Aminam TD" and the APNs the "Misstated Collateral"). The Misstated Collateral for both the Liquid TD and the Aminam TD are identical.

f.      A Continuing Guaranty signed by Scott H. Krentel ("Krentel) guarantying the obligations of AOSR to pay AMINAM on the Aminam Note in the amount of up to $13,000,000, a copy of which is attached hereto as Exhibit "7" (the "Aminam Guaranty").

41.     Without the written approval of or notice to AOSR, LIQUID substituted Mortgage Lender Services, Inc. ("MLS") as trustee under the Liquid TD for Stewart. MLS thereafter recorded a Notice of Default and Election to Sell Under Deed of Trust ("Liquid NOD") as follows: On May 7, 2024 MLS as Trustee under the Liquid TD recorded as DOC#2024-0132700 in the Official Records County of Riverside Trustee Sale No.: 132568-1 regarding APN 424-060-001; APN 424-060-006; APN 424-060-007; APN 424-060-009, a copy of which is attached hereto as Exhibit "8". The Liquid NOD recorded the default against four of six parcels described in its trust deed over the correct Collateral scope.

42.     Without the written approval of or notice to AOSR LIQUID substituted the Law Offices of Richard G. Witkin APC ("Witkin") as trustee under the Aminam TD for Stewart.

11.
**Complaint**
EXHIBIT 5                                                    Page 12 of 144

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

Witkin thereafter recorded a Notice of Default and Election to Sell Under Deed of Trust ("Aminam NOD") as follows: On June 25, 2024 MLS as Trustee under the Aminam TD recorded as DOC#2024-0182968 in the Official Records County of Riverside Trustee Sale No.: 24-0142 regarding APN 424-060-001; Portion of 424-060-002; 424-060-006; 424-060-007;424-060-008; 424-060-009, a copy of which is attached hereto as Exhibit "9". The Aminam NOD recorded the default against all six parcels described in its trust deed covering the Misstated Collateral.

43.     The actual interest rate on the Liquid Note, where funds were advanced of $10,400,000 is 12.5% per annum. Because this is a discount note, the effective interest rate is calculated pursuant to the following formula:  To calculate the effective interest rate , you use the formula interest/proceeds * 360 days to maturity, here $2,600,000/$10,400,000 * 360/720 = 12.5% per annum.

44.     Plaintiff is informed and believes, and based upon such information and belief alleges, that the terms of all of the loans described above at paragraphs 39-40 inclusive, each violated California Usury Laws because these were discount loans arranged solely by EZRI and MOUSA who did not possess valid real estate licenses issued by the California Department of Real Estate and as such could not and were prohibited from acting on behalf of LIQUID, AMINAM and Does 51-100 regarding usurious loan terms.

45.     Without real estate licenses, neither EZRI nor MOUSA were permitted to originate, arrange, and/or service loans that provided for interest in violation of California's Usury Laws such as was the case pursuant to the Liquid Note and the Aminam Note.

46.     Plaintiff is informed and believes, and based upon such information and belief alleges, that SHATAR, DANIEL and Does 31-40 never performed any services on behalf of LIQUID, AMINAM and Does 51-100 relating to the AOSR loans described above at paragraphs 39-40 inclusive. Moreover, at the time neither SHATAR nor DANIEL held the appropriate real estate license.

47.     Plaintiff has paid LIQUID, AMINAM and Does 51-100 in excess of $2,600,000 as interest with not less than $2,600,000 paid effective as of March 31, 2024. Such payment was

12.

**Complaint**

EXHIBIT 5                                        Page 13 of 144

within the twelve month period prior to the filing of this Complaint.

**IV.**

**CLAIMS**

48.    Each and every claim asserted herein against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 respectively are asserted jointly and severally as to the respective AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 Defendants on authority of "An obligation imposed upon several persons, or a right created in favor of several persons, is presumed to be joint, and not several, ..." *Civil Code,* §1431.

**FIRST CLAIM**

**FIRST CAUSE OF ACTION**

**Violations of California Constitution Article XV, Section One**

**and Civil Code Section 1916-3**

**Against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100**

49.    Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

50.    Plaintiff asserts this claim against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100.

51.    Article XV of the California Constitution sets limitations on the amount of interest that may be charged a borrower. Specifically, Article XV, Section 1, Subsection 2 of the state Constitution provides the maximum amount of interest that may be charged on a loan secured by a piece or parcel of real property is either 10% or 5% per annum plus the prevailing rate on the date of making loan established by the Federal Reserve Bank of San Francisco, whichever is greater. As of March 29, 2022 when the Liquid Note, Liquid TD, Liquid Guaranty, Aminam Note, Aminam TD, and Aminam Guaranty were signed the maximum interest rate was 10% under the California Constitution.

52.    On information and belief, in the time period ranging between March 29, 2022 through current date, the dates on which the loans described in paragraphs 39-40 inclusive were originated, the discount rate set by the Federal Reserve Bank of San Francisco was approximately

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

13.

**Complaint**

EXHIBIT 5                                    Page 14 of 144

.50%. Thus, the maximum interest rate that could have been charged AOSR was 10%.

53.    However, AOSR signed the Liquid and Aminam Notes secured by the Liquid TD and the Aminam TD respectively that contained rates of not less than 12.5%. A true and correct copy of the notes and trust deeds are summarized in paragraphs 39-40 inclusive and Exhibits "2"-"7" inclusive, and incorporated herein by reference.

54.    Thus, the interest rate offered by AMINAM, LIQUID, EZRI, MOUSA and Does 1-100 violated Article XV, Section 1 of the California Constitution and were usurious.

55.    SHATAR and DANIEL, as the brokers who purported to arrange the loans did not act in accordance with the requirements of a broker in that EZRI and MOUSA, unlicensed persons were in full charge of AMINAM and LIQUID and were not licensed real estate salespersons at the time the loans were arranged, that is negotiated, executed, extended and modified at the time the related trust deeds were signed, amended and recorded.

56.    AOSR never spoke with any individuals other than EZRI and MOUSA in connection with obtaining the loans at issue.

57.    The loans and related trust deeds at issue and described at paragraphs 39-40 inclusive are thus not subject to the broker-arranged exemption provided by Civil Code Section 1916.1 as more particularly described above.

58.    AOSR is entitled to treble damages for AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 demanding the usurious interest rate, as well as preliminary and permanent injunctive relief enjoining the foreclosure sale on said basis.

**SECOND CAUSE OF ACTION**

**Declaratory Relief Aminam Note, Liquid Note,**

**Trust Deeds & Guaranties Is/Are Void/Voidable**

**Against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100**

59.    Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

60.    Plaintiff asserts this claim against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100.

14.

**Complaint**

EXHIBIT 5                    Page 15 of 144

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

61.     This is an alternative cause of action presented based upon what is understood to be AMINAM, LIQUID, EZRI, MOUSA and Does 1-20 and 51-100's collective position, disputed by Plaintiff, that the entire $13,000,000 purportedly due on the Aminam Note is for prior real estate acquisition and finance services as recited at page 1 of the Aminam Note:

> "... many discussions and negotiations regarding joint venture, various kinds of financing and other forms of affiliation.... Borrower and Lender's settlement negotiations and discussion have resulted in the Borrower, with Lender and its affiliates and their predecessors in interest's assistance, concurrently acquiring property including that certain 194.29 acres of land in Riverside ... legally described in the [Aminam TD]. The obligations evidenced by the [Aminam] Note, which have not been paid prior to the execution hereof as initially contemplated by the parties, are referred to here as the "Loan". "

See, Exhibit "5".

62.     While Plaintiff rejects the Aminam contention at paragraph 61 as false, AOSR asks this court to find separately that such a contention, even if true which Plaintiff states it is not, such activity would be compensation for arranging a real estate sale or lending transaction for which AMINAM, LIQUID, EZRI, MOUSA and Does 1-20 and 51-100, for times relevant, did not have a real estate license and as concerns SHATAR, DANIEL and does 31-40 it/he/they did not make arrangements that would entitle them to claim compensation and further were unable to transact business as a FTB suspended real estate broker corporation..

63.     Plaintiff alleges separately that a $13,000,000 commission on a $5,350,000 purchase, see Exhibit "1" "Sales/Price Contract sales price $5,350,000" would be unlawful and unconscionable.

64.     Plaintiff further alleges that such an agreement for $13,000,000 compensation would violate the statute of frauds and also be barred by applicable statutes of limitation.

65.     Plaintiff also alleges that there is no written real estate listing agreement with Plaintiff nor any of the Defendants entitling he/it/them or any of them to compensation at all.

66.     Further, any agreement employing an unlicensed person to act as a broker is illegal, void and unenforceable. *Estate of Prieto* (1966) 246 Cal.App.2d 79, 85-86 (the Court may not "lend its assistance to consummation or encouragement of what public policy forbids"). The illegality bar cannot be avoided through a theory of estoppel. See, *Del Rey Realty Co. v. Foulr* (1941) 44 Cal.App.2d 399, 403 (Court will not enforce agreement to compensate for unlicensed

15.

**Complaint**

EXHIBIT 5                                    Page 16 of 144

services irrespective of the fact that the party against whom relief is sought may be benefitted); *Wise v. Radis* (1925) 74 Cal.App. 765, 775-76 (Court will not aid unlicensed broker "whatever his claim in justice may be upon the defendant").

67. Plaintiff prays that this Court determine the Aminam Note, Liquid Note and related trust deeds and guaranties all of which were part of the common Scheme are void *ab initio.* See *Smith v. Bach* (1920) 183 Cal. 259, 262, 191 P. 14, for the " 'general rule ... that where a statute prohibits or attaches a penalty to the doing of an act, the act is void.' " *Dale v. Palmer, supra,* at p. 667, 235 P.2d 650. *Emphasis added.*

68. *Cal Civ. Proc. § 1060* allows any person "interested under a written instrument, ... or under a contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property,...may bring an original action... in the superior court for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract".

69. Plaintiff alleges that it is entitled to a determination that the Aminam Note, Liquid Note and related trust deeds and guaranties are void including a determination that it/they are void ab initio.

70. An actual controversy has arisen and now exists between Plaintiff and Defendants concerning his/its/their respective rights and obligations with respect to the Aminam Note, Liquid Note and related trust deeds and guaranties.

71. Plaintiff seeks a judicial determination of its rights, status, or other equitable and legal relations with respect to the Aminam Note, Liquid Note and related trust deeds and guaranties.

72. The declaratory relief sought concerns a present, ascertained or ascertainable state of facts or present controversy as to a state of facts as to whether or not the Plaintiff has the right to a determination that the Aminam Note, Liquid Note and related trust deeds and guaranties are void as above alleged.

//

//

Catanzarite Law Corporation
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544 • Fax: (714) 520-0680

16.
**Complaint**

EXHIBIT 5 Page 17 of 144

**THIRD CAUSE OF ACTION**

**Declaratory Relief Liquid Note, Liquid TD and Liquid Guaranty Is/Are Void/Voidable**

**Against LIQUID, MOUSA and Does 21-30**

73. Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

74. Plaintiff asserts this claim against LIQUID, MOUSA and Does 21-30.

75. This is an alternative cause of action for declaratory relief presented based upon LIQUID's having failed to qualify to do business in California as an Out-Of-State Limited Liability Company until first qualified with the Secretary of State on April 22, 2022.

76. As above, when the Liquid Note, Liquid TD and Liquid Guaranty were tendered to AOSR and signed by its principal Krentel on March 29, 2022, LIQUID was not qualified to transact business in the State of California.

77. Again, as above described when the lending transaction between AOSR and LIQUID closed on March 31, 2022 and the loan funded LIQUID was not qualified to transact business in the State of California, See Exhibit "1" Stewart Closing Statement

78. *Cal Civ. Proc. § 1060* allows any person "interested under a written instrument, ..., or under a contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property,...may bring an original action... in the superior court for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract".

79. Plaintiff alleges that it is entitled to a determination that the Liquid Note, Liquid TD and Liquid Guaranty are void at AOSR's option hereby exercised, including a determination that it/they are void ab initio. LIQUID attempted to do business with and enter into transactions with Plaintiff herein in the period March 29, 2022 through March 31, 2022, in California, but because said limited liability company failed to qualify to do business in California, all such transactions are voidable by Plaintiff to the extent they are otherwise enforceable at all. As such, Plaintiff seeks to void all such attempted transactions to the extent they are otherwise enforceable against Plaintiff.

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

17.

**Complaint**

EXHIBIT 5 Page 18 of 144

80. An actual controversy has arisen and now exists between Plaintiff and Defendants concerning his/its/their respective rights and obligations with respect to Liquid Note, Liquid TD and Liquid Guaranty.

81. Plaintiff seeks a judicial determination of its rights, status, or other equitable and legal relations with respect to the Liquid Note, Liquid TD and Liquid Guaranty.

82. The declaratory relief sought concerns a present, ascertained or ascertainable state of facts or present controversy as to a state of facts as to whether or not the Plaintiff has the right to a determination that the Liquid Note, Liquid TD and Liquid Guaranty are void as above alleged.

## FOURTH CAUSE OF ACTION

### Fraud

### Against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100

83. Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

84. Plaintiff asserts this claim against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100.

85. In March 2022, EZRI and MOUSA engaged in telephone, in person, and electronic communications with AOSR's principal Krentel to discuss how AMINAM and LIQUID would be able to fulfill AOSR's need for funding its acquisition of the Property from Menchaca with a closing date of March 31, 2022.

86. Plaintiff alleges that EZRI and MOUSA promised that their AMINAM and LIQUID would provide the required $6,600,000 to close the Property purchase with additional funds to pay for further pursuit of entitlements and development under the Legacy Highlands Specific Plan.

87. EZRI and MOUSA, on behalf of AMINAM and LIQUID agreed with Krental of AOSR that the loans would be secured by Collateral comprised of only 194.29 acres of the approximate 1,311 acres of the Property acquired from Menchaca.

//

18.

**Complaint**

EXHIBIT 5 Page 19 of 144

88. Further, EZRI and MOUSA, on behalf of AMINAM agreed that AMINAM would make available up to $10,400,000 of the $13,000,000 of funds as may be needed by AOSR for entitlement, development and contingencies for the Property.

89. Plaintiff relied upon the scope of the Collateral at 194.29 acres and the promise to fund up to an added $10,400,000 from AMINAM and on that basis the signed the Liquid Note, Liquid TD, Liquid Guaranty, Aminam Note, Aminam TD and Aminam Guaranty.

90. Plaintiff has learned since the time the Notices of Default were recorded that SHATAR, DANIEL and Does 31-40 were referred to in the loan documents solely for purposes of providing a false cover story as a part of the Scheme and that he/ it/they as licensed real estate brokers, had not arranged the two $13,000,000 loans. In fact they were not at all involved in the lending transactions.

**Count One - Deceit by False Promise - Promise Made Without Intention to Perform**

91. At the time AMINAM, LIQUID, EZRI and MOUSA made the above-mentioned promises to AOSR, AMINAM, LIQUID, EZRI and MOUSA did not intend to perform these promises when they were made.

92. AMINAM, LIQUID, EZRI and MOUSA wrongfully caused the Aminam TD and the Liquid TD to encumber not just the 194.29 acres of Collateral as agreed but to include added parcels bringing the total parcels to six and 233 acres and to encumber access rights to the remainder of AOSR's 1,311 acres of the Property, herein the Misstated Collateral.

93. AMINAM, LIQUID, EZRI and MOUSA have refused to advance any of the up to $10,400,000 on the Aminam Note, now asserting that the total $13,000,000 is due to AMINAM, LIQUID, EZRI and MOUSA purportedly for prior real estate services, as described at paragraphs 61-65 above, which Plaintiff rejects as false.

94. AMINAM, LIQUID, EZRI and MOUSA intended that AOSR rely on AMINAM, LIQUID, EZRI and MOUSA's promises as described in paragraphs 85-89 such that AOSR would be able to acquire the Property, retaining access to the entire 1,311 acres and have up to $10,400,000 available for entitlements, development and contingencies.

//

19.

**Complaint**

EXHIBIT 5                                    Page 20 of 144

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

95. In reasonable reliance upon the AMINAM, LIQUID, EZRI and MOUSA's promises, AOSR signed the loan documents including those identified at paragraph 40.

96. AOSR reasonably and justifiably believed AMINAM, LIQUID, EZRI and MOUSA's promises when made and at the time AOSR took the action herein alleged, was ignorant of the secret intention of AMINAM, LIQUID, EZRI and MOUSA's not to perform the promise described at paragraphs 85-89, and AOSR could not in the exercise of reasonable diligence have discovered that secret intention. AOSR relied on the promises described above in entering into the loan documents including the Liquid Note, Liquid TD, Liquid Guaranty, Aminam Note, Aminam TD and Aminam Guaranty in order to Close the Property purchase from Mechacha.

97. In March of 2024 the Liquid Note became due with an amount of slightly less than $13,000,000 due. AOSR's Krental stated that it would draw on the up to $13,000,000 Aminam Note to pay the Liquid Note and secure a reconveyance of the Liquid TD.

98. To Plaintiff's surprise even though $0 had been drawn on the Aminam Note, meaning the entire $13,000,000 was understood by AOSR to be available, AMINAM, LIQUID, EZRI and MOUSA refused any funds asserting the false claim that the entire $13,000,000 was compensation to Aminam for prior real estate services as described at paragraphs 61-65, disputed by AOSR.

99. At no time before AOSR's discovery of the true facts in May 2024 prior to the recording of the Liquid NOD, was AOSR aware that AMINAM, LIQUID, EZRI and MOUSA and Does 1-20 and 51-100's representations as described above were false. Had AOSR known of the falsity of the representations, it would not have signed the loan documents described at Paragraph 40.

100. All the while during the period from March 29, 2023 through April 2024, AOSR continued to reasonably rely on AMINAM, LIQUID, EZRI and MOUSA's promises at paragraphs 85-89 and had no reason to believe otherwise.

101. As a result of AMINAM, LIQUID, EZRI and MOUSA's failure to perform its/his/their promise, AOSR was harmed in that it was deprived of the agreed upon terms of the

20.

**Complaint**

EXHIBIT 5                    Page 21 of 144

<div style="margin">CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680</div>

scope of the Collateral limited to 194.27 and up to the $10,400,000 Aminam loan, and AOSR's reliance on AMINAM, LIQUID, EZRI and MOUSA's false promise was a substantial factor in causing the harm.

102.    SHATAR, DANIEL and Does 31-40 aided and abetted by providing substantial assistance to and conspired with AMINAM, LIQUID, EZRI and MOUSA, including by falsley lending his/its/their names and purportedly effective licenses in order to try insulate the loans from a usury claim when he/it/they were unlicensed and/or did not arrange the loans.

103.    As a proximate result of AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100's false representations and the aiding and abetting thereof, and the conspiratorial objective, AOSR was injured in its business and property, including Notices of Default against the Property, heightened risk of loss of access to the balance of the Property and loss of relied upon funding to pay the Liquid Note obligation, all according to proof at the time of trial. In determining allowable damages AOSR is also entitled to disgorgement from AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 both restitutionary and for unjust enrichment.

104.    During the acts herein alleged, AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100's acted maliciously, fraudulently, and with a guilty or wanton disregard of the rights of AOSR, and by reasons thereof, AOSR is entitled to exemplary and punitive damages against  AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100.

**Count Two - Intentional Misrepresentation**

105.    AOSR incorporates by this reference the preceding paragraphs of this complaint herein.

106.    At the time AMINAM, LIQUID, EZRI and MOUSA made the above-mentioned promises at paragraphs 85-89 inclusive to AOSR, AMINAM, LIQUID, EZRI and MOUSA knew the representations were false or recklessly made the representations without any reasonable basis therefor.

107.    Consistent with the misrepresentations and in furtherance thereof AMINAM, LIQUID, EZRI and MOUSA caused the Aminam TD and the Liquid TD to encumber not just the

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

21.

**Complaint**

EXHIBIT 5                    Page 22 of 144

194.29 acres of Collateral as agreed but to include added parcels, the Misstated Collateral bringing the total to 233 acres and to encumber access rights to the remainder of AOSR's 1,311 acres of the Property.

108.    AMINAM, LIQUID, EZRI and MOUSA have refused to advance any of the up to $10,400,000 on the Aminam Note, now asserting that the total $13,000,000 is due to AMINAM, LIQUID, EZRI and MOUSA for prior real estate services, as described at paragraphs 61-65 above, which Plaintiff rejects as false.

109.    AMINAM, LIQUID, EZRI and MOUSA intended that AOSR rely on AMINAM, LIQUID, EZRI and MOUSA's promises as described in paragraphs 85-89 such that AOSR would be able to acquire the Property, retaining access to the entire 1,311 acres and have up to $13,000,000 available for entitlements and development.

110.    In reasonable reliance upon the AMINAM, LIQUID, EZRI and MOUSA's promises, AOSR signed the loan documents including those identified at paragraph 40.

111.    AOSR reasonably and justifiably believed AMINAM, LIQUID, EZRI and MOUSA's promises when made and at the time AOSR took the action herein alleged, was ignorant of the true facts expecting AMINAM, LIQUID, EZRI and MOUSA's would act consistent with the promises described at paragraphs 85-89, and AOSR could not in the exercise of reasonable diligence have discovered that the true facts. AOSR relied on the promises described above in entering into the loan documents including the Liquid Note, Liquid TD, Liquid Guaranty, Aminam Note, Aminam TD and Aminam Guaranty in order to Close the Property purchase from Mechacha.

112.    In March of 2024 the Liquid Note matured with an amount of slightly less than $13,000,000 due. AOSR's Krental stated that it would draw on the up to $10,400,000 Aminam Note and use personal funds to pay the Liquid Note and secure a reconveyance of the Liquid TD.

113.    To Plaintiff's surprise even though $0 had been drawn on the Aminam Note, meaning the entire $10,400,000 was understood by AOSR to be available, AMINAM, LIQUID, EZRI and MOUSA refused any funds asserting the false claim that the entire $13,000,000 was compensation to Aminam for prior real estate services as described at paragraphs 61-65, disputed

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

22.
**Complaint**

EXHIBIT 5                    Page 23 of 144

by AOSR.

114. At no time before AOSR's discovery of the true facts in May 2024 prior to the recording of the Liquid NOD, was AOSR aware that AMINAM, LIQUID, EZRI and MOUSA and Does 1-20 and 51-100's representations as described above were false. Had AOSR known of the falsity of the representations, it would not have signed the loan documents described at Paragraph 40.

115. All the while during the period from March 29, 2023 through April 2024, AOSR continued to reasonably rely on AMINAM, LIQUID, EZRI and MOUSA's promises and had no reason to believe otherwise.

116. As a result of AMINAM, LIQUID, EZRI and MOUSA's misprepresentatoins, AOSR was harmed in that it was deprived of the agreed upon terms of the scope of the Collateral limited to 194.27 and up to the $10,400,000 Aminam loan, and AOSR's reliance on AMINAM, LIQUID, EZRI and MOUSA's false promise was a substantial factor in causing the harm.

117. SHATAR, DANIEL and Does 31-40 aided and abetted by providing substantial assistance, as well as conspired with AMINAM, LIQUID, EZRI and MOUSA including by falsley lending his/its/their names and purported licenses in order to try insulate the loans from a usury claim when he/it/they were unlicensed and/or did not arrange the loans.

118. AMINAM, LIQUID, EZRI and MOUSA knowingly made these false representations with full and complete knowledge that AOSR would sign the two promissory notes, trust deeds and guaranties.

119. AOSR would not have signed the two promissory notes, trust deeds and guaranties had it known the true facts described specifically at paragraphs 85-89 and 107-114 above and in this claim.

120. As a proximate result of AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100's false representations and the aiding and abetting thereof, as well as conspiracy, AOSR was injured in its business and property, including Notices of Default against the Misstated Collateral, heightened risk of loss of access to the balance of the Property and loss of relied upon funding to pay the Liquid Note obligation, all according to proof at the time of

23.

**Complaint**

EXHIBIT 5 Page 24 of 144

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

trial. In determining allowable damages AOSR is also entitled to disgorgement from AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 both restitutionary and for unjust enrichment.

121.    During the acts herein alleged, AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100's acted maliciously, fraudulently, and with a guilty or wanton disregard of the rights of AOSR, and by reasons thereof, AOSR is entitled to exemplary and punitive damages against  AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100.

**Count Three - Nondisclosure of Known Facts**

122.    AOSR incorporates by this reference the preceding paragraphs inclusive of this complaint herein.

123.    Upon information and belief, at the time AOSR was induced to sign the two promissory notes, trust deeds and guaranties, AMINAM, LIQUID, EZRI and MOUSA were in the process of selling participating interests in the promissory notes to others after promising not to do so, concealing that the Misstated Collateral involved more acreage than agreed, could potentially land-lock AOSR and concealing that AMINAM would not fund AOSR any of the up to $10,400,000 that was agreed upon, all with the intent of maximizing profits and cash flow so that their profits would be materially higher, garnering for themselves more return on their investment.

124.    AOSR reasonably and justifiably believed AMINAM, LIQUID, EZRI and MOUSA's serial misrepresentations and was unaware of its/his/their having concealed such true intent. AMINAM, LIQUID, EZRI and MOUSA had exclusive knowledge and intentionally concealed and failed to disclose said material information as it/he/they solely controlled the dissemination of the true facts. AOSR would not have signed the two promissory notes, trust deeds and guarantees had it known the true facts described specifically at  paragraphs 85-89, 107, 114 and 123 above.

125.    Based upon AMINAM, LIQUID, EZRI and MOUSA's nondisclosure of known material facts, AOSR signed the two promissory notes, trust deeds and guarantees.

//

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

24.
**Complaint**
EXHIBIT 5                    Page 25 of 144

126.     As a proximate result of AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100's false representations, the aiding and abetting thereof and conspiratorial conduct, AOSR was injured in its business and property, including Notices of Default against the Property, heightened risk of loss of access to the balance of the Property and loss of relied upon funding to pay the Liquid Note obligation, all according to proof at the time of trial. In determining allowable damages AOSR is also entitled to disgorgement from AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 both restitutionary and for unjust enrichment.

127.     During the acts herein alleged, AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100's acted maliciously, fraudulently, and with a guilty or wanton disregard of the rights of AOSR, and by reasons thereof, AOSR is entitled to exemplary and punitive damages against  AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100.

**Count Four - Active Concealment and Suppression of Known Facts**

128.     AOSR incorporates by this reference the preceding paragraphs inclusive of this complaint herein.

129.     Upon information and belief, at the time AOSR was induced to sign the two promissory notes, trust deeds and guaranties, AMINAM, LIQUID, EZRI and MOUSA were in the process of selling participating interests in the promissory notes to others after promising not to do so, concealing that the Collateral involved more acreage than agreed upon and could potentially land-lock AOSR, and concealing that AMINAM would not fund AOSR any of the up to $10,400,000 that was agreed upon, all with the intent of maximizing profits and cash flow so that their profits would be materially higher, garnering for themselves more return on their investment.

130.     AMINAM, LIQUID, EZRI and MOUSA openly discussed with AOSR the selling of participating interests in the promissory notes to others indicating he/it/they had no such intention, discussed the scope of the Collateral involved at 194.29 acres agreed upon yet said nothing all about the scope increase to 233 acres with the added knowledge a foreclosure could potentially land-lock AOSR, the Misstated Collateral, and discussing AMINAM's funding to

25.
**Complaint**
EXHIBIT 5                                                                                 Page 26 of 144

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

AOSR of up to $10,400,000 when AMINAM had the intention of claiming that the entire $13,000,000 was its fee for real estate services.

131. AOSR reasonably and justifiably believed AMINAM, LIQUID, EZRI and MOUSA's serial misrepresentations and was unaware of its/his/their concealed true intent. AMINAM, LIQUID, EZRI and MOUSA had exclusive knowledge and intentionally concealed and failed to disclose said material information as it/he/they solely controlled the dissemination of the true facts. AOSR would not have signed the two promissory notes, trust deeds and guarantees had it known the true facts described specifically at  paragraphs 85-89, 107-114, 123 and 129-130 above.

132. Based upon AMINAM, LIQUID, EZRI and MOUSA's suppresion of known material facts, AOSR signed the two promissory notes, trust deeds and guarantees.

133. As a proximate result of AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100's false representations, the aiding and abetting thereof, and conspiratorial conduct, AOSR was injured in its business and property, including Notices of Default against the Property, heightened risk of loss of access to the balance of the Property and loss of relied upon funding to pay the Liquid Note obligation, all according to proof at the time of trial. In determining allowable damages AOSR is also entitled to disgorgement from AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 both restitutionary and for unjust enrichment.

134. During the acts herein alleged, AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100's acted maliciously, fraudulently, and with a guilty or wanton disregard of the rights of AOSR, and by reasons thereof, AOSR is entitled to exemplary and punitive damages against  AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100.

**FIFTH CAUSE OF ACTION**

**Conversion**

**Against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100**

135. Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

26.

**Complaint**

EXHIBIT 5                    Page 27 of 144

136.    Plaintiff asserts this claim against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100.

137.    On or about March 29, 2022, AOSR was induced by AMINAM, LIQUID, EZRI and MOUSA, to sign the Liquid Note, Liquid TD, Liquid Guaranty, Aminam Note, Aminam TD, Aminam Guaranty, to Close the loan and pay the agreed upon not less than 12.5% interest on the discount notes. The transaction closed through Stewart on March 31, 2022 and the two trust deeds were recorded.

138.    AOSR upon signing the Liquid TD and the Aminam TD, understood throughout the negotiation that the Collateral therefore would be limited to 194.27 acres while maintaining clear access rights to the entire balance of the 1,311 acres if there was to be a foreclosure sale not a loss of access and roughly 39 acres more to a total of 233 acres, the Misstated Collateral.

139.    AMINAM, LIQUID, EZRI and MOUSA did not disclose that they or their counsel had changed the scope of the Collateral from the agreed upon 194.27 acres to the Misstated Collateral nor did they disclose that in the event of a foreclosure AOSR would be cutoff from access to the balance of the 1,311.77 acres.

140.    AOSR signed the Liquid TD and the Aminam TD with the agreement, expectation and understanding that the scope of the Collateral was the agreed amount of 194.27 acres with no potential for blocking assess of AOSR to the remainder of the 1,311 acres in the event of a foreclosure sale.

141.    Upon signing the Liquid TD and the Aminam TD, AOSR was unaware that AMINAM, LIQUID, EZRI and MOUSA had changed the scope of the Collateral description for both deeds of trust, adding APN 424-060-009 with 39.48 acres increasing the area to 233 acres and adding APN 424-060-002 a portion thereof, an easement, and thereby cutting off access to the balance of the 1,311 acres if a foreclosure were to occur, the Misstated Collateral.

142.    Upon information and belief, AMINAM, LIQUID, EZRI and MOUSA knowingly and without notice took as collateral APN 424-060-009 with 39.48 acres and added APN 424-060-002 to capture the access easement, when he/it/they knew they were not entitled to said security interests materially altering the Collateral to the Misstated Collateral to their benefit

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

27.
**Complaint**

EXHIBIT 5                         Page 28 of 144

without disclosure, consent or agreement of AOSR who received no consideration therefore.

143.    SHATAR, DANIEL and Does 31-40 aided and abetted, as well as conspired with AMINAM, LIQUID, EZRI and MOUSA by providing substantial assistance including by falsely lending his/its/their names and purported licenses in order to try insulate the loans from a usury claim when he/it/they were unlicensed and/or did not arrange the loans.

144.    AMINAM, LIQUID, EZRI and MOUSA and Does 1-20 and 51-100's unlawful conversion of AOSR's property rights caused damages to AOSR in an amount to be proven at trial.

145.    AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100's conduct as above alleged was with their malicious intention to trick and deceive AOSR to induce AOSR to agree to provide the Misstated Collateral of additional acreage and access rights as security, taking and converting AOSR's property rights, and thereby depriving Plaintiff of property, legal rights, and/or otherwise causing injury, which was despicable conduct that subjected and continues to subject Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights for which AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 should be held liable for reasonable exemplary, or punitive damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

**Declaratory Relief Liquid Note, Liquid TD and Liquid Guaranty Are Void/Voidable Against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100**

146.    Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

147.    Plaintiff asserts this claim against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100.

148.    Pursuant to Code of Civil Procedure Section 1060, any person interested under a written instrument or a contract who desires a declaration of her/his/its/their rights or duties with respect to another or in respect to property may, in the case of an actual controversy relating to the legal rights and duties of the parties, bring an original action in the court for a declaration of

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

28.

**Complaint**

EXHIBIT 5                                                     Page 29 of 144

their rights or duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract, with the declaration having the force and effect of a final judgment and which be had before there has been any breach of the obligation in respect to which the declaration is sought.

149.    Plaintiff's complaint is within the meaning and intent of Code of Civil Procedure Section 1060. There is an actual controversy, as AMINAM and LIQUID aided and abetted by EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 are attempting to foreclose on Plaintiff's real property when the deeds of trust are based on a contracts, the promissory notes with usurious interest rates. Plaintiff thereby seeks a declaratory judgment as to its obligations if any, under the Liquid Note, Liquid TD, Liquid Guaranty, Aminam Note, Aminam TD and Aminam Guaranty.

<div align="center">

**SEVENTH CAUSE OF ACTION**

**Slander of Title**

**Against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100**

</div>

150.    Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

151.    Plaintiff asserts this claim against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100.

152.    On May 7, 2024 MLS as Trustee under the Liquid TD recorded the Liquid NOD as DOC#2024-0132700 in the Official Records County of Riverside Trustee Sale No.: 132568-1 regarding APN 424-060-001; 424-060-006; 424-060-007; 424-060-009, a copy of which is attached hereto as Exhibit "8". The Liquid NOD recorded the default against four of six parcels described in its trust deed.

153.    On June 25, 2024 Witkin as trustee under the Aminam TD recorded the Aminam NOD as DOC#2024-0182968 in the Official Records County of Riverside Trustee Sale No.: 24-0142 regarding APN 424-060-001; Portion of 424-060-002; 424-060-006; 424-060-007; 424-060-008; 424-060-009, a copy of which is attached hereto as Exhibit "9". The Aminam NOD recorded the default against all six parcels described in its trust deed.

//

<div align="left">

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

</div>

<div align="center">

29.

**Complaint**

</div>

EXHIBIT 5                                    Page 30 of 144

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

154. The Liquid NOD and the Aminam NOD shall be collectively referred to as the Notices of Default.

155. The recording of the Notices of Default constitutes a publication.

156. Because the Notices of Default demand usurious interest, each was published without privilege or justification.

157. Because the Notices of Default demand usurious interest, each are false.

158. The Notices of Default have caused AOSR direct and immediate pecuniary loss because the Notices of Default demand usurious interest, remain on the Property's record, and decrease AOSR's ability to sell or refinance the Property and demand AOSR pay sums that AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 are without limitation prohibited by the California Constitution or otherwise from demanding.

159. Plaintiff is entitled to damages, including without limitation, those as set out in *Seeley v. Seymour* (1987) 190 Cal.App.3d 844, 859 as follows:

"(1) the expense of legal proceedings necessary to remove the doubt cast by the disparagement, (2) financial loss resulting from the impairment of vendibility of the Property, and (3) general damages for the time and inconvenience suffered by plaintiff in removing the doubt cast upon his Property. [Citations.]" *Seeley, supra*, 190 Cal.App.3d. at p. 865.

160. Thus, AOSR is entitled to preliminary and permanent injunctive relief, as well as the damages Plaintiff has suffered by virtue of the Notices of Default and demand of this unlawful and improper interest.

161. Plaintiff is also entitled to an award of general damages according to proof at time of trial, and such other and further relief as may be permitted, including cancellation of the trust deeds attached hereto as Exhibits "3" and "6" and any other recorded instruments which secure the usurious promissory notes.

162. Defendants acts alleged above were willful, wanton, malicious, and oppressive and justify the awarding of exemplary and punitive damages to punish and make an example of AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100, and to deter such wrongful conduct in the future.

//

30.
**Complaint**

EXHIBIT 5                                    Page 31 of 144

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

**EIGHTH CAUSE OF ACTION**

**Wrongful Foreclosure**

**Against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100**

163.    Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

164.    Plaintiff asserts this claim against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100.

165.    By initiating the foreclosure through the recording of the Notices of Default and demanding AOSR  pay usurious interest in order to stop said foreclosures, AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 have violated California laws permitting a party to reinstate a loan and pay off a deed of trust based on a non-usurious interest rate. The foreclosure proceedings are thus illegal, fraudulent, or willfully oppressive.

166.    AOSR has been prejudiced or harmed because the Notices of Default demand usurious interest, remain on the Property's record, and decrease AOSR's ability to sell or refinance the Property, and demand AOSR pay sums that AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 are prohibited by the California Constitution from demanding.

167.    AOSR is excused from tendering the amount in the Notices of Default because the Notices of Default demand usurious interest.

168.    Thus, AOSR is entitled to preliminary and permanent injunctive relief to stop the unlawful foreclosure, as well as all damages arising therefrom.

**NINTH CAUSE OF ACTION**

**Negligent Misrepresentation**

**Against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100**

169.    Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

170.    Plaintiff asserts this claim against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100.

31.

**Complaint**

EXHIBIT 5                                            Page 32 of 144

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

171. As an alternative to the FOURTH CAUSE OF ACTION, Plaintiff alleges that at the time AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 made, aided and abetted, conspired with and ratified the representations and promises to Plaintiff as set out above, including without limitation at paragraphs 61-65, 85-89, 107-114, 123 and 129-130 incorporated by reference herein full, AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 had no reasonable ground to believe the same to be true. AMINAM, LIQUID, EZRI, MOUSA and Does 1-20 made these representations and promises to induce AOSR to act in reliance on their representations and promises in the manner herein alleged or with the expectation that Plaintiff would so act.

172. At the time AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 made, aided and abetted, conspired with and ratified these representations and promises and at the time that Plaintiff took the actions herein alleged, Plaintiff was ignorant of the falsity of AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 made, aided and abetted, conspired with and ratified representations and promises, and believed them to be true.

173. In justifiable reliance upon AMINAM, LIQUID, EZRI, MOUSA, and Does 1-40's verbal representations and promises by its agents EZRI and MOUSA on its/their behalves, Plaintiff agreed to provide the Collateral and then tricked into signing the trust deeds providing for the Misstated Collateral as described above. Had Plaintiff known the true facts, Plaintiff would not have signed the Liquid Note, Aminam Note, Liquid TD, Aminam TD, Liquid Guaranty and Aminam Guaranty including the Collateral.

174. As a direct and proximate result of AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100's conduct, and each of them, Plaintiff has suffered damages in an amount in excess of the minimum jurisdiction of this Court according to proof.

**TENTH CAUSE OF ACTION**

**Negligence**

**Against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100**

175. Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

32.

**Complaint**

EXHIBIT 5                    Page 33 of 144

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

176. Plaintiff asserts this claim against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100.

177. Plaintiff alleges that AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 each owed Plaintiff a duty of care to not charge and demand usurious interest, claim rights to the Misstated Collateral that exceeded the agreed upon scope of Collateral, claim unwarranted Notices of Default, raising rights to unwarranted rights to compensation for such AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100's actions described above were negligent in failing to meet that standard of care in the undertaking and acting in the manner above described causing loss, injury and damage to Plaintiff in an amount to be determined according to proof at the time of trial.

178. As a result of AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100's negligent acts, Plaintiff was harmed according to proof at the time of trial..

179. Plaintiff's harm was the proximate result of AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100's negligent conduct described above.

## ELEVENTH CAUSE OF ACTION

### Breach of Contract

### Against AMINAM, LIQUID and Does 1-30

180. Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

181. Plaintiff asserts this claim against AMINAM, LIQUID and Does 1-30.

182. AOSR entered into a contract with AMINAM and LIQUID as set out in the Aminam Note and the Liquid Note, as further supported by the related trust deeds. Plaintiff will amend this complaint and add any additional contracts and related security instruments obtained during the course of discovery.

183. The promissory note contract terms required AOSR to pay not less than 12.5% interest per annum on disputed debt totals of $10,400,000 for each instrument. Such interest rates are a direct violation of Article XV, Section 2 of the California Constitution and are usurious.

//

33.
**Complaint**

EXHIBIT 5                                   Page 34 of 144

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

184.    Plaintiff made payments the precise amount to be determined at the time of trial but believed to be in excess of $2,600,000 all in usurious interest as of March 31, 2024, even though Plaintiff had no legal obligation to do so. AOSR was excused from performing the terms of these contacts because each required Plaintiff to pay the interest beyond the rate permitted under the California Constitution. Thereafter, AMINAM, LIQUID and Does 1-20 breached the contracts commencing in May 2024 by demanding AOSR pay this usurious interest to AMINAM and LIQUID, even though such a term in the contract is wholly void.

185.    As a result of this breach, AOSR has been damaged because it is in danger of losing title to the property described as the Collateral, which has substantial equity once the Notices of Default are removed and access to all of the remaining 1,311 acres is restored, and because the breach decreases AOSR's ability to sell or refinance the over all Property.

186.    AOSR fully performed all of its obligations, to the extent not excused as a result of the conduct of AMINAM and/or LIQUID or otherwise unenforceable, under the contract with AMINAM and LIQUID by signing the discount Liquid Note and Aminam Note although the discounts of $2,600,000 each include usurious rates of interest which are unenforceable.

187.    However, as AOSR now knows, EZRI and MOUSA are not brokers or licensed salespersons with the Department of Real Estate. Thus AMINAM and LIQUID breached its/their contracts with AOSR.

188.    AOSR has been harmed by AMINAM, LIQUID and Does 1-20 and 51-100's breach because it paid usurious interest and is in danger of losing title to the Misstated Collateral and access to the 1,311 acres of Property, all of which have substantial equity.

**TWELFTH CAUSE OF ACTION**

**Cancellation of Instruments**

**Against AMINAM, LIQUID and Does 1-20**

189.    Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

190.    Plaintiff asserts this claim against AMINAM, LIQUID and Does 1-20.

//

34.
**Complaint**

EXHIBIT 5                                    Page 35 of 144

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

191. Plaintiff is informed and believes, and based thereon alleges, that the 12.5% interest charged on the loans described at paragraphs 39-40 and secured by trust deeds described at paragraphs 41-42 inclusive which are based upon usurious interest charged and improperly compounded and other improper fees and costs subject to proof at the time of trial.

192. Plaintiff is entitled to a declaration from the Court: that the Liquid Note, Liquid TD, Liquid Guaranty, Aminam Note, Aminam TD and Aminam Guaranty signed by AOSR and Krentel are void as a matter of public policy.

193. Plaintiff is entitled to recover all money paid in excess of the maximum legal rate of interest allowed by the California Constitution, Article XV, Section I and Section 2, and Plaintiff is entitled to recover treble the amount paid pursuant to Section 3(a) of the Statutes of 1919, page lxxxiii, as amended by Section 1 of Chapter 784 of the Statutes of 1970.

194. The contracts signed by AOSR contain an attorneys' fee provision entitling the prevailing party to attorneys' fees and costs.

### THIRTEENTH CAUSE OF ACTION

### Violation of the California Financing Law -

### Making Regulated Commercial Loans without a License

195. Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

196. Plaintiff asserts this claim against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100.

197. Plaintiff is informed and believes, and based thereon alleges, that AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100's actions in offering and then entering the Liquid Note and Aminam Note (Exhibits 2 and 5 respectively) qualifies as action constituting a "Finance Lender" withing the meaning of Cal. Fin. Code § 22009 in that AMINAM and LIQUID are engaged in the business of making commercial loans or providing working capital within the meaning of Cal. Fin. Code § 22502.

198. Plaintiff is informed and believes, and based thereon alleges, that AMINAM and LIQUID are not licensed to engage in this business and are thus in violation of Cal. Fin. Code §

35.

**Complaint**

EXHIBIT 5                    Page 36 of 144

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

22100.

199.    Plaintiff is informed and believes, and based thereon allege, that AMINAM and LIQUID's violation of Cal. Fin. Code § 22100 is and has been intentional and willful.

200.    Plaintiff therefore prays that the Liquid Note and Aminam Note are both void and that Plaintiff be afforded all appropriate relief prescribed by the California Financing Law.

### FOURTEENTH CAUSE OF ACTION

### Restitution Based on Quasi-Contract/Unjust Enrichment

### under California Common Law

### Against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100

201.    Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

202.    Plaintiff asserts this claim against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100.

203.    In the event it is determined that there is no contract between the parties on one or more claims then this is an alternative cause of action to the Breach of Contract claim.

204.    California law recognizes a cause of action for restitution (synonymous with unjust enrichment), a quasi-contractual claim. *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App.4th 221 (2014).

205.    California law permits claims based on unjust enrichment, in which restitution may be awarded "(1) in lieu of breach of contract damages, where an asserted contract is found to be unenforceable or ineffective." *Oracle Corp. v. SAP AG*, No. C 07-1658 PJH, 2008 WL 5234260, at *8 (N.D.Cal. Dec. 15, 2008) (citing *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 388).

206.    Restitution is required if failure to do so would result in unjust enrichment. *Chapman v. Skype Inc.* (2013) 220 Cal. App.4th 217, 162.

207.    The elements of an unjust enrichment claim are (1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another. *Lectrodryer v. Seoul Bank* (2000) 77 Cal.App.4th 723, 726.

36.

**Complaint**

EXHIBIT 5                                    Page 37 of 144

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

208.    In the unlikely event it is determined AOSR does not have a contract or related claim with AMINAM and/or LIQUID because of AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100's misconduct as alleged herein then this claim shall apply.

209.    Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

210.    As concerns AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100's misconduct as alleged herein, Plaintiff alleges that he/it/they received a benefit at Plaintiff's expense by:

a.    Charging usurious interest on the promissory notes;

b.    Refusing to loan money agreed upon;

c.    Alternatively, trying to charge unconscionable fees and costs as well as commissions for real estate services and loans without a broker's license;

d.    LIQUID's engaging in business in California before qualifying to do so;

e.    Claiming wrongfully that DANIEL and SHATAR had arranged both the LIQUID and AMINAM loans herein described which was a falsehood;

f.    Changing the scope of the Collateral on the Aminam TD and the Liquid TD to the Misstated Collateral in order to gain an unfair and illegal advantage against AOSR threatening not only loss of valuable property but also access rights to adjacent property;

g.    Refusing to advance funds agreed upon; and

h.    Conspiring with the one another as described herein.

211.    After receiving the benefit of AOSR's written documents, the signed promissory notes, trust deeds and guaranties, charging usurious interest and unwarranted real estate service fees and commissions.

212.    Therefore, AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 have been unjustly enriched, creating a quasi-contractual obligation to restore to AOSR the benefit AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 received pursuant to the wrongful use of AOSR property, security and actions as alleged above.

37.
**Complaint**
EXHIBIT 5                                    Page 38 of 144

213. AOSR's cause of action for restitution under the unjust enrichment doctrine is timely.

214. AOSR's unjust enrichment claim accrued May 2024 because that was the first point in time when AOSR had reason to suspect that AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100's retention of the AOSR's property, assets, expenditures and actions including the Collateral security scope was unjust.

215. Accordingly, AOSR is entitled to restitution from AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 in the amount of not less than $2,600,000 according to proof at the time of trial.

**FIFTEENTH CAUSE OF ACTION**

**Violation of Business and Professions Code Section 17200, Et. Seq.**

**Against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100**

216. Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

217. Plaintiff asserts this claim against AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100.

218. Section 17200 prohibits any unlawful, unfair, or fraudulent business practice. "Because Business and Professions Code Section 17200 is written in the disjunctive, it establishes three varieties of unfair competition - acts or practices which are unlawful, or unfair, or fraudulent." *Schwartz V. Budget Group*, 81 Cal. App. 4th 1153, 1159 (2000) (quoting *Podolsky V. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (1996)).

219. AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 committed acts of unfair, unlawful, or fraudulent business practice in obtaining loans with usurious rates of interest, broadening the scope of the Collateral security to the Misstated Collateral without notice and in issuing and recording Notices of Default seeking to collect usurious interest.

220. AMINAM, LIQUID, EZRI, MOUSA, SHATAR, DANIEL and Does 1-100 committed acts of unfair, unlawful, or fraudulent business practices in purporting to act as

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

38.

**Complaint**

EXHIBIT 5                    Page 39 of 144

lenders able to make the real estate loans described herein and documented by the Liquid Note, Liquid TD, Aminam Note and Aminam Note through qualifying licensed real estate brokers, helping AMINAM, LIQUID, EZRI, MOUSA and Does 51-100 procure loans with a usurious rate of interest, and in collecting a broker's fee in connection therewith.

## V.

## JURY TRIAL DEMAND

221.    Plaintiff hereby respectfully demands a trial by jury for all claims so triable.

## VI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.    That the Liquid Note is void, voidable and/or otherwise unenforceable, and cancelled.

2.    That the Liquid TD is void, voidable and/or otherwise unenforceable, and cancelled.

3.    That the Liquid Guaranty is void, voidable and/or otherwise unenforceable, and cancelled.

4.    That the Aminam Note is void, voidable and/or otherwise unenforceable, and cancelled.

5.    That the Aminam TD is void, voidable and/or otherwise unenforceable, and cancelled.

6.    That the Aminam Guaranty is void, voidable and/or otherwise unenforceable, and cancelled.

7.    That the Liquid TD, Liquid Guaranty, Aminam Note, Aminam TD and Aminam Guaranty are declared and adjudged to be cancelled.

8.    That the Liquid NOD, the Notice of Default recorded on May 7, 2024 described above and any Notices of Trustee Sale, if any to follow be declared invalid.

9.    That the Aminam NOD, the Notice of Default recorded on June 25, 2024 described above and any Notices of Trustee Sale, if any to follow be declared invalid.

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

39.

**Complaint**

EXHIBIT 5                                                    Page 40 of 144

10. That any future Trustees' Sales be enjoined.

11. For a declaration that Plaintiff is the prevailing party.

12. The court take jurisdiction of this claim and issue an order and decree that:

13. The Notices of Default and Notices of Trustee's Sale are invalid documents/instruments; and

14. That Defendants have no legal right to institute foreclosure proceedings at present time.

15. For general and special damages according to proof.

16. For punitive and exemplary damages.

17. For treble damages for the unlawful usurious interest that Plaintiff paid.

18. For costs of suit.

19. For reasonable attorney's fees incurred herein, according to contract.

20. An Award for treble damages and an order directing AMINAM and LIQUID to pay the sum of $7,800,000, treble or three times the $2,600,000 of interest paid, to Plaintiffs in accordance with California Civil Code § 1916-3 in connection with usurious interest already paid by Plaintiffs on the Loan Agreement.

21. For statutory attorneys fees and costs as appropriate under *Corporations Code*, § 25501.5 and *Code of Civil Procedure*, § 1029.8. Plaintiffs also allege they are entitled to the remedy afforded by *Code of Civil Procedure*, § *1029.8* which provides that where an unlicensed person, took the real estate commission, cause injury or damage to another person(s) as a result of providing services for which such license is required defendants, jointly and severally, "...shall be liable to the injured person for treble the amount of damages assessed in a civil action in any court having proper jurisdiction." with such additional damages not to exceed $10,000. In addition the Court may "in its discretion award all costs and attorney's fees to the injured person if that person prevails in the action." See *Civil Code*, § *1029.8 (a)*.

22. For compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures suffered or incurred under the "tort of another" doctrine as required to act in the protection of Plaintiffs' interests by bringing this action in accordance with *Prentice v. North*

40.

**Complaint**

EXHIBIT 5 Page 41 of 144

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

*Am. Title Guaranty Corp., Alameda Division* (1963) 59 Cal.2d 618; *Electrical Electronic Control, Inc. v. Los Angeles Unified School Dist.* (2005) 126 Cal.App.4th 601.

     23.    For an accounting; and

     24.    For such other relief as the Court may deem just and proper.

Dated: February 26, 2025.       CATANZARITE LAW CORPORATION

By: _____
Kenneth J. Catanzarite
Attorney for Plaintiff

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

41.

**Complaint**

**Exhibit 1**

EXHIBIT 5                                            Page 43 of 144

File 01180-204591                                                                4/1/2022 1:28 PM

# Final Buyer's Closing Statement

**Stewart Title of California, Inc., Stewart Title of California, Inc.**

1200 California Street, Suite 120, Redlands, CA 92374, (909) 335-9868

| | |
|---|---|
| **Buyer(s)** | Scott Krentel, P.O. Box 55317, Riverside, CA 92517 |
| **Seller(s)** | John Menchaca solely in his capacity as the Trustee for the estate of The Preserve, LLC under U.S. Bankruptcy Court case no. 2:10-bk-18429-BB |
| **Lender(s)** | Liquid Funds LLC<br>Aminam LLC<br>12121 Wilshire Blvd Suite 555<br>Los Angeles, CA 90025 |
| **Property** | Vacant Land Beaumont, California |

424-060-001
424-060-006
424-060-007
424-060-008
424-060-009
424-070-002
424-100-002
424-100-003

| **Closing Date** 3/31/2022 | **Disbursement Date** 3/31/2022 | **Proration Date** 3/31/2022 |
|---|---|---|

| | Debit | Credit |
|---|---|---|
| **Sales/Price** | | |
| Contract sales price | $5,350,000.00 | |
| **New Loan** | | |
| Principal amount of new loan(s) | | $13,000,000.00 |
| **Deposits** | | |
| Deposit or earnest money | | $1,000,000.00 |
| **Additional Credits** | | |
| Additional deposit from Buyers/Borrowers (All) | | $500,000.00 |
| Additional Deposit from Buyers/Borrowers (All) | | $750,000.00 |
| Second Loan from Aminam, LLC | | $13,000,000.00 |
| Borrowers Deposit at Lender from Liquid Funds LLC | | $27,500.00 |
| Credit to buyer towards unpaid property taxes | | $300,000.00 |
| **New Loan Charges** | | |
| Funds held on 2nd to Aminam, LLC | $13,000,000.00 | |
| Funds held on 1st to To Be Determined Lender | $3,792,876.71 | |
| Loan Processing Fee to Liquid Funds LLC | $12,500.00 | |
| Reserve Holdback to Liquid Funds LLC | $2,600,000.00 | |
| Legal Fees and Costs to Epport, Richman & Robbins, LLP | $14,000.00 | |
| Lender's Legal fees and costs to Stephen Biegenzahn | $1,000.00 | |
| **Interest Charges** | | |
| Interest from 3/30/2022 to 4/1/2022 @ $3,561.64383562/day | $7,123.29 | |
| **Title Charges** | | |
| Settlement or closing fee to Stewart Title of California, Inc | $7,000.00 | |
| Document preparation to Stewart Title of California, Inc | $50.00 | |
| Notary fees to Albert Ensign | $400.00 | |
| Title Insurance to STCA-AR | | |
| Lender's coverage $25,350.00 | $25,350.00 | |
| Owner's coverage $5,350,000.00 $10,501.00 + binder | $1,750.00 | |
| Loan Tie In to Stewart Title of California, Inc | $345.00 | |
| Overnight to Stewart Title of California, Inc | $180.00 | |
| 100.29 Owners Endorsement to STCA-AR | $2,100.00 | |
| 1st loan 3-06 endorsement to STCA-AR | $3,168.00 | |
| 1st loan 8.1-06 endorsement to STCA-AR | $25.00 | |
| 1st loan 18.01-06 endorsement to STCA-AR | $100.00 | |
| 1st loan 26-06 endorsement to STCA-AR | $1,268.00 | |
| Inspection to STCA-AR | $300.00 | |
| 2nd loan 3-06 endorsement to STCA-AR | $3,168.00 | |
| 2nd loan 8.1-06 endorsement to STCA-AR | $25.00 | |
| 2nd loan 18.1-06 endorsement to STCA-AR | $100.00 | |

Page 1

EXHIBIT 5                                Page 44 of 144

File 01180-204591                                                                                          4/1/2022 1:28 PM

## Final Buyer's Closing Statement

| | Debit | Credit |
|---|---|---|
| **Title Charges (continued)** | | |
| 2nd loan 26-06 endorsement to STCA-AR | $1,268.00 | |
| **Recording Fees/Transfer Charges** | | |
| Recording fees: Deed $108.00; Mortgage $238.00; Release $20.00; Other $275.00 | $586.00 | |
| **Additional Charges** | | |
| 21-22 property taxes plus late APN# 424-060-001 to Riverside County Tax Collector | $13,924.78 | |
| 21-22 property taxes plus late APN# 424-060-006 to Riverside County Tax Collector | $6,543.23 | |
| 21-22 property taxes plus late APN# 424-060-007 to Riverside County Tax Collector | $4,905.03 | |
| 21-22 property taxes plus late APN# 424-060-008 to Riverside County Tax Collector | $2,961.65 | |
| 21-22  property taxes plus late APN# 424-060-009 to Riverside County Tax Collector | $5,591.14 | |
| 21-22 property taxes plus late  APN#424-070-002 to Riverside County Tax Collector | $60,638.30 | |
| 21-22 property taxes plus late APN# 424-100-002 to Riverside County Tax Collector | $11,751.59 | |
| 21-22 property taxes plus late APN# 424-100-003 to Riverside County Tax Collector | $15,668.85 | |
| 21-22 property taxes plus late APN# 424-100-006 to Riverside County Tax Collector | $2,088.93 | |
| 21-22 property taxes plus late APN# 424-100-008 to Riverside County Tax Collector | $12,868.64 | |
| 21-22  property taxes plus late APN#424-100-013 to Riverside County Tax Collector | $1,533.92 | |
| Tax Default APN# 424-060-001 to Riverside County Tax Collector | $220,190.24 | |
| Tax Default APN# 424-060-006 to Riverside County Tax Collector | $103,624.54 | |
| Tax Default APN# 424-060-007 to Riverside County Tax Collector | $77,754.83 | |
| Tax Default APN# 424-060-008 to Riverside County Tax Collector | $47,066.10 | |
| Tax Default APN# 424-060-009 to Riverside County Tax Collector | $88,589.56 | |
| Tax Default APN# 424-070-002 to Riverside County Tax Collector | $912,589.87 | |
| Tax Default APN# 424-100-002 to Riverside County Tax Collector | $174,132.43 | |
| Tax Default APN# 424-100-003 to Riverside County Tax Collector | $232,050.33 | |
| Tax Default APN #424-100-005 to Riverside County Tax Collector | $32,026.09 | |
| Tax Default APN# 424-100-006 to Riverside County Tax Collector | $32,026.09 | |
| Tax Default APN# 424-100-008 to Riverside County Tax Collector | $193,969.43 | |
| Tax Default APN# 424-100-013 to Riverside County Tax Collector | $22,988.42 | |
| 21-22 property taxes plus late 424-100-005 to Riverside County Tax Collector | $2,088.93 | |
| First Extension Funds to John Menchaca solely in his capacity as the Trustee for the estate of The Preserve, LLC under U.S. Bankruptcy Court case no. 2:10-bk-18429-BB | $500,000.00 | |
| Second Extension Funds to John Menchaca solely in his capacity as the Trustee for the estate of The Preserve, LLC under U.S. Bankruptcy Court case no. 2:10-bk-18429-BB | $750,000.00 | |
| Law Fees for loan to Paradise Law Group | $5,000.00 | |
| Outstanding Invoices to Broker & Associates | $8,297.00 | |
| Insurance Premium to INM Insurance Services, Inc. | $4,607.07 | |
| **Subtotal:** | **$28,370,159.99** | **$28,577,500.00** |
| Balance due to Buyer: | $207,340.01 | |
| **Totals:** | **$28,577,500.00** | **$28,577,500.00** |

Escrow Agent has deposited the earnest money that it has received in a demand deposit account that is federally insured to the maximum extent permitted by law. Demand deposit accounts are non interest-bearing pursuant to federal law, but offer immediately available funds for withdrawal after a check has cleared.

Escrow Agent may receive other benefits from the financial institution where the funds are deposited. Based upon the deposit of escrow funds in demand deposit accounts and other relationships with the financial institution, Escrow Agent is eligible to participate in a program whereby it may (i) receive favorable loan terms and earn income from the investment of loan proceeds and (ii) receive other benefits offered by the financial institution.

Buyer and Seller (Transferee and Transferor) understand the Closer or Escrow Agent on behalf of Stewart Title of California, Inc. - Stewart Title of California, Inc. has assembled this information representing the transaction from the best information available from other sources and cannot guarantee the accuracy thereof. Any real estate agent or lender involved may be furnished a copy of this statement. Buyer and Seller (Transferee and Transferor) understand that tax and insurance prorations and reserves were based on figures for the preceding year or supplied by others, or based on estimated figures for current year, and, in the event of any change for current year, all necessary adjustments must be made between Buyer and Seller (Transferee and Transferor) directly. The undersigned hereby authorizes Stewart Title of California, Inc. - Stewart Title of California, Inc. to make expenditures and disbursements as shown above and approve the same for payment. The undersigned also acknowledge receipt of proceeds as applicable, and receipt of a copy of this Statement.

_____
Scott Krentel

Page 2

EXHIBIT 5                                           Page 45 of 144

**Exhibit 2**

EXHIBIT 5                                    Page 46 of 144

## PROMISSORY NOTE

$13,000,000.00             LOS ANGELES, CALIFORNIA             March 29, 2022

FOR VALUE RECEIVED, American Open Space Remedies LLC, a California limited liability company (the "Borrower"), promises to pay to Liquid Funds LLC, a Delaware limited liability company (including any subsequent holder hereof, the "Lender"), or its order, at 12121 Wilshire Boulevard, Suite 555, Los Angeles, California 90025, or at such other place as the holder hereof may designate, in lawful money of the United States of America, the principal sum of Thirteen Million and 00/100 Dollars ($13,000,000.00), together with interest which accrues on the outstanding principal balance from time to time, until paid in full in accordance with the terms, conditions and provisions as hereinafter set forth in this Promissory Note (this "Note"). The loan evidenced by the Note is referred to herein as the "Loan".

**INTEREST RATE.** Interest on the outstanding principal balance of this Note shall be computed and calculated based upon a three hundred sixty (360) day year and actual days elapsed and shall accrue at the rate of ten percent (10%) per annum (the "Note Rate"), on the unpaid principal balance of this Note from time to time.

**PRINCIPAL AND INTEREST PAYMENTS.** Interest only payments in the sum of One Hundred Eight Thousand Three Hundred Thirty Three and 33/100 Dollars ($108,333.33) per month shall be payable and compounded monthly, in arrears, on the first day of each calendar month beginning May 1, 2022, without notice, grace, demand, deduction or offset, until the Maturity or payoff date whichever occurs sooner, as that term is defined below, on which date, the principal amount hereof, together with all accrued and unpaid interest and other charges payable hereunder, shall be all due and payable. The interest payable for the period between the day the loan funds are disbursed and March 31, 2022, shall be paid by Borrower to Holder concurrently with the execution of this Note.

All payments due hereunder, including payments of principal and interest, shall be made to Lender in United States Dollars and shall be in the form of immediately available funds acceptable to the holder of this Note. Payments for any month which is not a full calendar month shall be prorated on the basis of a thirty (30) day month, based on the actual number of days elapsed.

**HOLDBACK FOR SOFT COSTS AND INTEREST RESERVE.** Notwithstanding anything herein to the contrary, there shall be a holdback in the amount of all net loan proceeds in excess of the purchase price for the Property (defined below) and outstanding property taxes (approximately $7,700,000.00 in the aggregate), and amount required to pay all third party fees, including but not limited to appraisal, environmental, legal, title and escrow, and all other fees, costs and expenses of Lender in connection with this transaction payable hereunder, from the funding of this Note ("Holdback Funds") which shall be used as described in **Exhibit A** attached hereto and incorporated herein by this reference, including $2,600,000.00 which shall be held by Lender as an interest reserve to be used by Lender to pay the monthly interest payments required hereunder as they accrue. The parties agree that **Exhibit A** shall be updated following the closing of the Loan in order to reconcile all final closing charges within two (2) business days of the receipt of all final fees and costs. The Holdback Funds will be released upon submission of invoices and lien releases, if appliable, to the Lender, subject to Lender's review and approval for compliance with **Exhibit A**, and provided there are no current loan defaults, and in such event such released Holdback Funds shall be deemed funded under this Note on the date they are disbursed.

**PAYMENT OF FEES.** As a condition precedent to the making of the loan evidenced by this Note and any advances thereunder, Borrower shall pay to Lender all fees and costs associated with the origination, documentation and maintenance of this Note, including but not limited to, escrow costs, title insurance

12161A Note(4).doc                        Page 1 of 9

EXHIBIT 5                        Page 47 of 144

costs, and all legal fees associated with the documentation of the loan. Without limitation, Borrower shall pay a loan origination fee of $0.00, a Processing Fee of $12,500, due at closing. Any additional commercially reasonable costs or fees incurred by Lender after execution of the Note must be paid by Borrower upon description and demand by Lender.

**MATURITY DATE.** On **March 31, 2024** (the "Maturity Date"), the entire unpaid principal balance of this Note, and all unpaid accrued interest thereon, and all other charges outstanding under this Note and/or the other Loan Documents, shall be due and payable without demand or notice. In the event that Borrower does not pay this Note in full on the Maturity Date then, as of the Maturity Date and thereafter until paid in full, the interest accruing on the outstanding principal balance hereunder shall be computed, calculated and accrued on a daily basis at the Default Rate, as defined below.

**APPLICATION OF PAYMENTS.** All payments received by Lender from, or for the account of Borrower, due hereunder shall be applied by Lender, in its sole and absolute discretion, in the following manner, or in any other order or manner as Lender chooses:

      a.   First. To pay any and all interest due, owing and accrued under this Note;

      b.   Second. To pay any and all costs, advances, expenses or fees due, owing and payable to Lender, or paid or incurred by Lender, arising from or out of this Note, and the other Loan Documents; and

      c.   Third. Payment of the outstanding principal balance on this Note.

All records of payments received by Lender shall be maintained at Lender's office, and the records of Lender shall, absent manifest error, be binding and conclusive upon Borrower. The failure of Lender to record any payment or expense shall not limit or otherwise affect the obligations of Borrower under this Note.

**LATE CHARGES.** Time is of the essence for all payments and other obligations due under this Note. Borrower acknowledges that if any payment required under this Note is not received by Lender within five (5) days after the same becomes due and payable, Lender will incur extra administrative expenses (i.e., in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment. Because, from the nature of the case, the actual damages suffered by Lender by reason of such administrative expenses and loss of the use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that ten percent (10%) of the amount of the delinquent payment, together with interest accruing on the entire principal balance of this Note at the Default Rate, as provided above, shall be the amount of damages which Lender is entitled to receive upon such breach, in compensation therefor. Therefore, Borrower shall, in such event, without further demand or notice, pay to Lender, as Lender's monetary recovery for such extra administrative expenses and loss of use of funds, liquidated damages in the amount of ten percent (10%) of the amount of the delinquent payment (in addition to interest at the Default Rate). The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of Borrower to make timely payments hereunder. Nothing in this Note shall be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise. The right of Lender to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of Lender to collect such delinquent payments and any other amounts provided to be paid hereunder or under any of the Loan Documents, or to declare a default hereunder or under any of the Loan Documents.

**HOLIDAY**. Whenever any payment to be made under this Note shall be due on a day other than a day on which Lender is open for business ("Business Day"), including Saturdays, Sundays and legal holidays generally recognized by banks doing business in California, then the due date for such payment shall be automatically extended to the next succeeding Business Day, and such extension of time shall in such cases be included in the computation of the interest portion of any payment due hereunder.

**DEFAULT**. Any one or more of the following events or occurrences shall constitute a default under this Note (hereinafter "Default"):

(i)    Lender does not receive a payment in the amount and within the time and manner as set forth herein; or

(ii)    There shall be a default or event of default under any of the Loan Documents (including, without limitation, the Deed of Trust, as defined below), which default or event of default is not remedied during any applicable cure period; or

(iii)    Any representation, warranty, statement, certificate, schedule or report (collectively, "Representation") furnished by Borrower in connection with the Loan, whether given in this Note or any other Loan Document, shall be false or misleading in any material respect as of the time made or furnished and the appropriate party fails to correct the condition in the Representation or fails to correct the Representation in a manner acceptable to Lender within thirty (30) days after notice from Lender to Borrower; or

(iv)    Any Loan Document, at any time after its execution and delivery and for any reason other than the agreement of Lender or satisfaction in full of all obligations, ceases to be in full force and effect or is declared to be null and void by a court of competent jurisdiction; or the validity, priority or enforceability thereof is contested in a judicial proceeding by Borrower, or Borrower denies that it has any further liability or obligation under any Loan Document; or any lien or security interest created by the Deed of Trust or other collateral agreement, at any time after execution and delivery of that Loan Document, and for any reason other than satisfaction in full of all obligations and termination of Lender's obligations to make advances, ceases or fails to constitute a valid and subsisting first priority lien or first priority perfected security interest in and to the Property; or

(v)    If Borrower is enjoined, restrained or in any way prevented by court order from conducting all or a substantial part of its business affairs, and such proceedings or injunction have not been dismissed or stayed within sixty (60) days from the date of filing of such proceeding or entry of such injunction; or

(vi)    The dissolution of Borrower or the appointment of a receiver, trustee, or liquidator of Borrower, the Property, any portion thereof, or any other property of any of them and, in the case of a receiver, such receiver is not finally dismissed within 30 days after appointment; or

(vii)    A filing by Borrower of (i) a voluntary petition in bankruptcy, seeking reorganization or rearrangement or taking advantage of any debtor relief laws, or (ii) an answer admitting the material allegations of a petition filed against Borrower in any bankruptcy, reorganization, insolvency, conservatorship or similar proceeding, or (iii) an admission in writing confirming the inability to pay its debts as they become due; or

(viii)    The entry of an order, judgment or decree by any court of competent jurisdiction adjudicating Borrower as bankrupt or insolvent, or approving a petition seeking reorganization of

EXHIBIT 5                    Page 49 of 144

Borrower or an arrangement of the debts of any of them, or appointing a receiver, trustee, or liquidator of Borrower or any portion of the Property or any other property of any of them; or

(ix)    Action by any governmental authority seeking forfeiture of the Property, whether or not court proceedings have actually commenced; or

(x)    The entry of judgment that deems or determines that Borrower's use constitutes a public or private nuisance; or

(xi)    The commencement of an action under any federal, state or local law or regulation seeking remediation of the Property or any portion thereof as a result of a violation by Borrower of any mandate pertaining to environmental sensitivity or commission of waste or violation of law with regard to hazardous substances, irrespective of Borrower's intent and course of action following its commencement; or

(xii)    Borrower's inability to comply with any requirement set forth under all applicable permits and business licenses; or

(xiii)    Any notice from any lender, governmental authority or quasi-governmental authority, insurance company or association with jurisdiction over the Property specifying that the Property or Borrower's use thereof violates applicable requirements or any agreement or document to which the Lender is bound; or

(xiv)    Any event which (a) requires closure of the Property for more than sixty (60) consecutive days due to remediation caused by Borrower's use of the Property, or for more than one-hundred and eighty (180) nonconsecutive calendar days within a three-hundred and sixty (360) consecutive day period, or (b) causes Lender's insurer to cancel or limit all coverage on the Property; or

(xv)    Any change in any law or enforcement policy or a change in practices by any law enforcement agency relating to the Borrower's use of the Property; or

(xvi)    Commencement of a criminal proceeding involving Borrower's use of the Property, including the opening of an investigation by any governmental entity; or

(xvii)    Lender is subjected to any liability, fine, expense, penalty, or prosecution (including the threat thereof) by any government agency as a result of Borrower's use of the Property; or

(xviii)    At the option of Lender, a material, adverse change in the financial condition of the Borrower or the guarantor, if any.

Lender retains sole discretion and judgment to determine whether sufficient grounds exist to declare a Default under the above Sections (ix) through (xvii), inclusive, and such decision shall not be challenged by Borrower. In the event of a Default under any of the above Sections (ix) through (xvii), inclusive, Borrower will immediately cease and desist its use of the Property, and any and all other activities that may be a violation of the law.

Upon the occurrence of a Default hereunder, Lender may, in its sole and absolute discretion, declare the entire unpaid principal balance, together with all accrued and unpaid interest thereon, and all other amounts and payments due hereunder, immediately due and payable, without notice or demand.

**DEFAULT RATE.** From and after the occurrence of any Default in this Note whether by non-payment, maturity, acceleration, non-performance or otherwise, and until such Default has been cured, all outstanding amounts under this Note (including, but not limited to, interest, costs and late charges) shall bear interest at a per annum rate ("Default Rate") equal to the lesser of ten percent (10%) per annum, or the highest rate allowed by applicable law.

**UNPAID INTEREST, CHARGES AND COSTS.** Interest, late charges, costs or expenses that are not received by Lender within five (5) calendar days from the date such interest, late charges, costs, or expenses become due, shall, at the sole discretion of Lender, be added to the principal balance and shall from the date due bear interest at the Default Rate until paid.

**PREPAYMENT.** The principal amount of this Note may be prepaid in whole or in part during the term of this Note without premium or penalty.

**SECURITY AND ACCELERATION.** This Note is secured by, among other things, a certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing of even date herewith (the "Deed of Trust"), which encumbers the real property more particularly described therein (the "Property"). The Deed of Trust contains, among other provisions, provisions for the immediate acceleration of this Note upon the occurrence of any Default, any event of default under the Deed of Trust, or any sale, transfer, conveyance, encumbrance or alienation of Borrower's right, title or interest (or any portion thereof) in the Property (except to the extent expressly permitted under the Deed of Trust). Reference is made to the Deed of Trust for the specific provisions thereof.

**NO OFFSETS OR DEDUCTIONS.** Except as expressly permitted by this Note, all payments under this Note shall be made by Borrower without any offset, decrease, reduction or deduction of any kind or nature whatsoever, including, but not limited to, any decrease, reduction or deduction for, or on account of, any offset, present or future taxes, present or future reserves, imposts or duties of any kind or nature, that are imposed or levied by or on behalf of any government or taxing agency, body or authority by or for any municipality, state or country. If at any time, present or future, Lender shall be compelled, by any Law, rule, regulation or any other such requirement which on its face or by its application requires or establishes reserves, or payment, deduction or withholding of taxes, imposts or duties, to act such that it causes or results in a decrease, reduction or deduction (as described above) in payment received by Lender under this Note, then Borrower shall pay to Lender such additional amounts, as Lender shall deem necessary and appropriate, such that every payment received under this Note, after such decrease, reserve, reduction, deduction, payment or required withholding, shall not be reduced in any manner whatsoever. (However, the foregoing shall not be applicable to the income taxes of Lender or other taxes imposed on the revenues of lenders generally.)

**COSTS AND EXPENSES.** Borrower hereby agrees to pay any and all costs or expenses paid or incurred by Lender by reason of, as a result of, or in connection with the enforcement of this Note, the Deed of Trust, or any other Loan Documents, including, but not limited to, any and all attorney's fees and related costs when such costs or expenses are paid or incurred in connection with the enforcement of this Note, the Deed of Trust, and the other Loan Documents, or any of them, the protection or preservation of the collateral or security for this Note, or any other rights, remedies or interests of Lender, whether or not suit is filed. Borrower's agreement to pay any and all such costs and expenses includes, but is not limited to, costs and expenses incurred in or in connection with any bankruptcy proceeding, in enforcing any judgment obtained by Lender and in connection with any and all appeals therefrom, and in connection with the monitoring of any bankruptcy proceeding and its effect on Lender's rights and claims for recovery of the amounts due hereunder, any proceeding concerning relief from the automatic stay, use of cash collateral, proofs of claim, approval of a disclosure statement or confirmation of, or objections to

EXHIBIT 5                Page 51 of 144

confirmation of, any plan of reorganization. All such costs and expenses are immediately due and payable to Lender by Borrower upon demand therefor by Lender.

**WAIVERS**. Borrower hereby waives grace, diligence, presentment, demand, notice of demand, dishonor, notice of dishonor, protest, notice of protest, any and all exemption rights against the indebtedness evidenced by this Note and the right to plead any statute of limitations as a defense to the repayment of all or any portion of this Note, and interest thereon, to the fullest extent allowed by law, and all compensation of cross-demands pursuant to California Code of Civil Procedure Section 431.70. No delay, omission or failure on the part of Lender in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or any other right or remedy of Lender.

**BUSINESS PURPOSES**.   The proceeds of the loan evidenced by this Note will be used solely for business purposes.

**MAXIMUM LEGAL RATE**.   This loan transaction has been arranged by a license real estate broker (Daniel Namvar, License No. 01990085), and is exempt from usury limitations.  However, if fulfillment of any provision hereof or of the other Loan Documents shall be deemed by a court of competent and final jurisdiction to violate any applicable usury restrictions, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and any amount received in excess of such limit shall be applied to reduce the unpaid principal balance hereof and not to the payment of interest, it being understood that in no event shall interest or any other amount paid or agreed to be paid to Holder for the use, forbearance or detention of money to be advanced hereunder or pursuant to the other Loan Documents exceed the highest lawful rate permissible under applicable usury laws. If, by the terms of this Note, Borrower is, at any time, required or obligated to pay interest on the principal balance at a rate in excess of such maximum rate, then the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate and interest payable hereunder shall be computed at such maximum rate and any portion of all prior interest payments in excess of such maximum rate shall be applied, or shall retroactively be deemed to have been payments made, in reduction of the principal balance, as the case may be.

**AMENDMENT; GOVERNING LAW**. This Note may be amended, changed, modified, terminated or canceled only by a written agreement signed by the party against whom enforcement is sought for any such action. This Note shall be governed by, and construed under, the laws of the State of California.

**CHANGE IN USE**.   The parties acknowledge that from time to time the permitted uses for the Property may change by federal, state or local law, and that any such change does not constitute force majeure.

**FORCE MAJEURE**.   Borrower acknowledges that the process to obtain all mandatory governmental permits, approvals, and licenses necessary for its use of the Property is time-intensive and involves extensive notification requirements to neighbors of the Property, may require public hearings, improvements and modifications to the Property, and that any failure of Borrower to obtain all mandatory governmental permits, approvals, and licenses, or the change of any law preventing Borrower from using the Property for its intended use, does not constitute force majeure and is not a basis for Borrower to terminate the Loan or otherwise fail to pay its obligations hereunder.

**AUTHORITY**. Borrower, and each person executing this Note on Borrower's behalf, hereby represents and warrants to Lender that, by its execution below, Borrower has the full power, authority and legal right to execute and deliver this Note and that the indebtedness evidenced hereby constitutes a valid and binding obligation of Borrower without exception or limitation. In the event that this Note is executed by more than one person or entity, the liability hereunder shall be joint and several. Any married person who

is obligated on this Note, directly or indirectly, agrees that recourse may be had to such person's separate property in addition to any and all community property of such person.

**LENDER'S RIGHT TO TRANSFER**. Borrower acknowledges and agrees that Lender has the right to transfer, assign or hypothecate all or any part of the Note, to sell participations therein, and to substitute one or more new loans for all or any part of this Note in favor of Lender, and/or to otherwise take such other action as Lender may deem appropriate or desirable in connection with this Note; provided, however, that such transfer, assignment, hypothecation or participation shall be at no material expense to Borrower, and the principal amount and interest rate of this Note shall not be increased, nor shall the term hereof be shortened, without Borrower's consent. Borrower agrees that it shall cooperate fully with Lender in connection with this paragraph and shall execute, and where appropriate, acknowledge, such documents as Lender or its assignee may require in connection therewith.

**LENDER'S RIGHT TO CURE**. Lender shall have the full right to cure any default under, or to pay any interest under or otherwise satisfy, any obligations under or with respect to this Note and the other Loan Documents, and/or the Property, and if Lender pays any amounts in connection therewith or cures any default thereunder, or makes any other advance to or for the benefit of Borrower and/or the Property, whether under this Note, under any of the Loan Documents, or otherwise, Lender may add any amounts so paid or advanced to the amounts evidenced by this Note and secured by the Loan Documents, and any and all such amounts shall be paid by Borrower to Lender upon demand, shall bear interest at the same rate specified to be paid on outstanding indebtedness under this Note, compounded monthly, until paid, and all such amounts shall be secured by the Loan Documents.

**ENTIRE AGREEMENT**. This Note and any documents referred to herein or executed contemporaneously herewith constitute the parties' entire agreement with respect to the subject matter referred to herein and supersede all agreements, representations, warranties, statements, promises, and understandings, whether oral or written, pertaining to the subject matter referred to herein. There are no other agreements, written or oral, between the parties hereto respecting the subject loan or loan documents, and all prior negotiations of the parties on such subject are merged herein.

**ADVICE OF COUNSEL**. The Borrower has been advised to seek independent legal counsel in entering into this Note and the transaction described herein. In the event a party chooses not to seek independent legal counsel, that party does so freely and knowingly and waives any such rights to counsel.

**NOTIFICATION OF INACCURATE INFORMATION**. Please notify Lender if it reports any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address:

PRIOR TO SIGNING THIS NOTE, BORROWER HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE. BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

IN WITNESS WHEREOF, Borrower has executed this Note as of the day and year first above written.


**BORROWER:**

American Open Space Remedies LLC,
a California limited liability company

By:    Beaumont 1600, LLC,
        a California limited liability company
Its:    Manager

        By:    _____
                Scott H. Krentel
        Its:    Manager

Exhibit A

Holdback Funds

| | |
|---|---|
| Already disbursed at closing | $6,600,000.00 |
| Interest reserve | $2,600,000.00 |
| Property tax and contingency impound | $400,000.00 |
| Remaining to be drawn | $3,400,000.00 |

17161A-Exhibit A Note.doc

EXHIBIT 5                    Page 55 of 144

**Exhibit 3**

EXHIBIT 5                    Page 56 of 144

DOC #2022-0155985
03/31/2022 04:32 PM Fees: $119.00
Page 1 of 22
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: JACQUELINE #2386

Recording requested by
Stewart Title of California, Inc

RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:

Liquid Funds LLC
12121 Wilshire Blvd, Suite 555
Los Angeles, CA 90025

_0180-204591_

APNs:  424-060-001; Portion of 424-060-002; 424-060-006;
424-060-007; 424-060-008; 424-060-009

## DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("Deed of Trust") is made to be effective as of March 29, 2022, by American Open Space Remedies LLC, a California limited liability company (the "Trustor"), whose address is 18022 Cowan, Suite 103, Irvine, California 92614 to Stewart Title Company, as Trustee ("Trustee"), for the benefit of LIQUID FUNDS LLC, a Delaware limited liability company, as Beneficiary (including its assignees, "Lender").

THIS DEED OF TRUST ALSO CONSTITUTES A FIXTURE FILING UNDER DIVISION 9 OF THE CALIFORNIA UNIFORM COMMERCIAL CODE AND COVERS GOODS WHICH ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF. TRUSTOR IS A RECORD OWNER OF AN INTEREST IN SAID REAL PROPERTY.

**GRANT IN TRUST:**

Trustor irrevocably grants, transfers and assigns to Trustee, in trust, for the benefit of Lender, with power of sale, all of Trustor's interest in that certain real property located in the County of Riverside, California, described as:

[SEE EXHIBIT "A" ATTACHED HERETO AND
INCORPORATED HEREIN BY THIS REFERENCE]

TOGETHER WITH:    All right, title and interest which Trustor now has or may later acquire in such real property and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Trustor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water and water rights, and all sewers, pipes, conduits, wires and other facilities furnishing utility or services to the real property (collectively, the "Land");

TOGETHER WITH:    All right, title and interest which Trustor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected on the Land, including, without limitation, all plant equipment, apparatus, machinery and fixtures of every kind and nature whatsoever now or hereafter located on and affixed to said buildings, structures and improvements (collectively, the "Improvements"; the Land and Improvements being hereinafter sometimes collectively referred to as the "Premises");

Exempt from fee per GC 27388.1 (a)
(2): recorded concurrently in connection
with a transfer subject to the imposition
of documentary transfer tax

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Premises;

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Trustor and all subsequent owners of the Property (as defined below) which may be made with respect to the Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Property, which said award or awards are hereby assigned to Lender;

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Property;

TOGETHER WITH: Any and all claims or demands which Trustor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Property;

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in any and all claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to the Property, now or hereafter, whether or not such policies name Lender as an insured and whether or not such policies are required by Lender, and whether or not such claims thereunder are characterized as personal claims;

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in any and all instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights, and transferable development rights; all of Trustor's right, title, and interest in and to any awards, remunerations, settlements, or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices, or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and all licenses and privileges obtained by Trustor from non-governmental sources;

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in any and all leases of the Premises, Fixtures (as defined below), or any part thereof, now or hereafter entered into and all right, title and interest of Trustor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Trustor now or hereafter existing pertaining to the use and enjoyment of the Premises; and all right, title and interest of Trustor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Property;

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in any and all permits, plans, specifications, subdivision rights, security interests, contracts, contract rights, public

utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property;

TOGETHER WITH:    All right, title and interest which Trustor now has or may later acquire in any and all rents, income, issues and profits (subject, however, to the rights given in this Deed of Trust to Lender to collect and apply same), including, without limitation, prepaid municipal and utility fees, bonds, revenues, income, and other benefits to which Trustor may now or hereafter be entitled to, or which are derived from, the Premises or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered hereby, and not exclusive or all inclusive. It is the intent of Trustor to encumber hereby all real property located or to be located upon the above-described real property in which Trustor now has or may later acquire an interest. Said real property (or the leasehold estate if this Deed of Trust encumbers a leasehold estate), Premises, buildings, Improvements, appurtenances, Fixtures, additions, accretions, and other property are hereinafter referred to as the "Property." As used herein, the term "Fixtures" shall include all articles of personal property hereinabove described (in which Trustor now has or may later acquire an interest), now or hereafter affixed to the Property, but shall not include trade fixtures. As used herein, the term "Property" shall include all affixed furniture, furnishings, equipment, machinery, goods, contract rights, general intangibles, revenues, equipment leases, vehicles, money, deposit accounts, instruments, accounts, chattel paper and other personal property (in which Trustor now has or may later acquire an interest) of any kind or character now existing or hereafter arising or acquired in connection with Trustor's business operations at the Property, and all products and proceeds thereof.

Trustor makes the foregoing grant to Trustee, and to Lender, as applicable, to hold the Property in trust for the benefit of Lender and for the purposes and upon the terms and conditions hereinafter set forth.

Upon recordation of this Deed of Trust, this Deed of Trust will create a valid first priority lien, in, on and to the Property, which shall be free and clear of all liens and encumbrances, except for any matters or exceptions expressly approved in writing by Lender, provided that a junior lien of even date herewith in the amount of $13,000,000.00 in favor of Aminam, LLC, a California limited liability company, shall be permitted, subordinate to the lien of this Deed of Trust; and all action required to perfect fully the lien created by this Deed of Trust will have been taken and completed.

**FOR THE PURPOSE OF SECURING:**

(1)    Payment of the sum of **$13,000,000.00** together with interest thereon and certain additional costs and expenses related to or incurred in connection with or as provided in that certain Promissory Note of even date herewith, executed by Trustor, payable to Lender, or order, and all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of the Note at a different rate of interest or on different terms) (collectively, the "Note");

(2)    Payment of all other sums, with interest, advanced, paid, or incurred by Lender or Trustee under the terms of this Deed of Trust to protect the Property or Lender's security interest therein;

(3)    Payment of such additional sums, with interest, as the then record owner of the Property may later borrow from Lender, in those instances in which the later obligations are evidenced by a promissory note or notes reciting that it or they are so secured (which additional obligations shall be referred to as "future advances" in this Deed of Trust); and

(4)    Trustor's performance of each agreement in this Deed of Trust, and in all other agreements and instruments made by Trustor in favor of Lender in connection with the Note.

**TRUSTOR AND LENDER AGREE AS FOLLOWS:**

**RIGHTS AND DUTIES OF THE PARTIES:**

(1)   PAYMENT AND PERFORMANCE BY TRUSTOR; TITLE: Trustor represents and warrants to and for the benefit of Lender and Trustee that Trustor holds good and marketable title of record to the Land and Improvements in fee simple.  Trustor shall promptly: (a) pay when due all sums payable under the Note and all future advances; and (b) perform each and every term, covenant and condition of this Deed of Trust and any other obligation secured by this Deed of Trust.

(2)   PAYMENT BY TRUSTOR OF TAXES AND OTHER IMPOSITIONS:   The term "Taxes" shall mean all taxes, bonds and assessments, both general and special, affecting or levied upon the Property or any part thereof, assessments on water company stock, if any, all taxes or excises levied or assessed against Trustor, the Property, or any part thereof, in addition to or as a substitution in whole or in part for any real estate taxes or assessments, all taxes or excises measured by or based in whole or in part upon the rents, operating income, or any other factor relating to the Property, or any part thereof, and all license fees, taxes and excises imposed upon Lender (but not any federal or state income taxes imposed upon Lender) and measured by or based in whole or in part upon the obligations secured hereby.  The term "Other Impositions" shall mean any fine, fee, charge, or other imposition in connection with the Property or Trustor, payment of which Lender shall deem to be necessary to protect, preserve, and defend Lender's interests hereunder.  Trustor shall pay all Taxes, insurance premiums, and Other Impositions attributable to the Property, at least five (5) days before delinquency directly to the payee thereof, or in such other manner as Lender may designate in writing.  Trustor shall promptly furnish to Lender all notices of amounts due under this paragraph, and if Trustor shall make payment directly, Trustor shall furnish to Lender receipts evidencing payments of Taxes before delinquency and shall promptly deliver to Lender receipts evidencing all other payments above required.

Subsequent to a default hereunder, at the request of Lender, made at any time, or as provided by applicable law, Trustor shall pay to Lender, on each day on which monthly installments of principal and/or interest are payable under the Note, until the Note is paid in full, an amount equal to one-twelfth (1/12) of the sum of the estimated annual Taxes and Other Impositions, together with annual insurance premiums on all policies of insurance required by this Deed of Trust, plus additional amounts reasonably estimated by Lender for the purpose of paying future installments of Taxes, Other Impositions, and insurance premiums.  In such event, Trustor further agrees to cause all bills, statements, or other documents relating to Taxes, Other Impositions, and insurance premiums to be sent or mailed directly to Lender.  Upon receipt of such bills, statements, or other documents, and provided Trustor has deposited sufficient funds with Lender pursuant to this paragraph (2), Lender shall pay such amounts as may be due thereunder out of the funds so deposited with Lender for that purpose, subject to Lender's rights to seize and apply said funds to satisfy, in whole or in part, any default by Trustor.  If at any time and for any reason the funds deposited with Lender are or will be insufficient to pay such amounts as may then or subsequently be due, Lender shall notify Trustor and Trustor shall immediately deposit an amount equal to such deficiency with Lender.  Notwithstanding the foregoing, nothing contained herein shall cause Lender to be deemed a trustee of said funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Lender pursuant to this paragraph (2).  Lender shall not be obligated to pay or allow any interest on any sums held by Lender pending disbursement or application hereunder, and Lender may impound or reserve for future payment of Taxes, Other Impositions, and insurance such portion of such payments as Lender may in his absolute discretion deem proper, applying the balance on the principal of or interest on the obligations secured hereby.  Should Trustor fail to deposit with Lender (exclusive of that portion of said payments which has been applied by Lender on principal of or interest on the indebtedness secured hereby) sums sufficient to fully pay such Taxes, Other Impositions, or insurance premiums, at least fifteen (15) days before delinquency thereof, Lender may, at Lender's

election, but without any obligation so to do, advance any amounts required to make up the deficiency, which advances, if any, shall be secured hereby and shall be repayable to Lender as herein elsewhere provided, or at the option of Lender the latter may, without making any advance whatever, apply any sums held by it upon any obligation of Trustor secured hereby.  Shall any default occur or exist on the part of Trustor in the payment or performance of any of Trustor's and/or any guarantor's obligation in connection with the above Note, Lender may, at Lender's option, apply any sums or amounts in his possession or under his control, received pursuant hereto or as rents or income of the Property or otherwise, upon any indebtedness or obligation of Trustor secured hereby in such manner and order as Lender may elect.  The receipt, use or application of any such sums paid by Trustor to Lender hereunder shall not be construed to affect the maturity of any indebtedness secured by this Deed of Trust or any of the rights or powers of Lender or said Trustee under this Deed of Trust or any other obligation secured hereby.

In the event of the passage, after the date of this Deed of Trust, of any law or judicial decision deducting from the value of the Property for the purposes of taxation any lien thereon, or changing in any way the laws now in force for the taxation of deeds of trust or obligations secured by deeds of trust, or the manner of operation of any such Taxes so as to adversely affect the interest of Lender, or imposing payment of the whole or any portion of any Taxes upon Lender, then and in such event, Trustor shall bear and pay the full amount of such Taxes; provided that if for any reason payment by Trustor of any such new or additional Taxes would be unlawful or if the payment thereof would constitute usury or render the Note, or other indebtedness secured hereby, wholly or partially usurious under any of the terms or provisions of the Note, or this Deed of Trust, or otherwise, Lender may, at his option, upon thirty (30) days' written notice to Trustor, or (i) pay that amount or portion of such Taxes as render the Note, or other indebtedness secured hereby, unlawful or usurious, in which event Trustor shall concurrently therewith pay the remaining lawful nonusurious portion or balance of such Taxes, or (ii) in the event that Lender is prohibited from collecting such payment as provided in (i) declare the whole indebtedness secured by this Deed of Trust, together with accrued interest thereon, to be immediately due and payable.

(3)    TRUSTOR TO PAY GROUND RENTS AND OBLIGATIONS THAT COULD RESULT IN LIENS ON THE PROPERTY:  Trustor shall fully and faithfully pay and perform each and every obligation, and otherwise satisfy all conditions and covenants, which are or may be secured by any deed of trust upon the Property, or any portion thereof, existing of record as of the date this Deed of Trust is recorded.  Trustor shall pay at or prior to the due date, or, if applicable, at maturity, any and all ground rents and any liens, charges and encumbrances that are, later become, claim to be or appear to Lender to be prior or superior to the lien of this Deed of Trust, including, without limiting the generality of the foregoing, any and all claims for (a) work or labor performed, (b) materials and services supplied in connection with any work of demolition, alteration, improvement of or construction upon the Property, and (c) fees, charges and liens for utilities provided to the Property.

(4)    TRUSTOR TO MAINTAIN INSURANCE:    (a) Trustor shall maintain insurance covering the Property against loss or damage by fire, and other risks as shall from time to time be reasonably required by Lender as necessary to protect the security interest of Lender in the Property.  The insurance shall be maintained with such companies, in such amounts, for such terms, and in form and content satisfactory to Lender, in Lender's reasonable opinion and judgment.  Lender shall be named as loss payee and Mortgagee/additional insured, if possible, under all of the insurance policies, and Trustor shall assure that Lender receive a certificate from each insurance company that acknowledges Lender's position as loss payee and that states that the insurance policy cannot be terminated as to Lender except upon thirty (30) days' prior written notice to Lender.  Such policies of insurance shall include, without limitation, the following: (i) insurance against loss or damage to the Property (including contents) by fire or other risk embraced by coverage of the type known as the broad form or extended coverage (or special extended coverage) in the amount required by Lender, but in no event less than one hundred percent (100%) of the full replacement cost of the Improvements and Fixtures included within the Property

without deduction for depreciation of any kind or the unpaid balance of the Note, whichever is greater, (ii) insurance against the loss of rental value of the Property on a "rented or vacant basis," including business interruption insurance, arising out of the perils insured against pursuant to clause (i) above in the amount not less than one (1) year's gross rental income and other revenues from the Property, and (iii) commercial general liability insurance against claims for personal injury, death, or property damage occurring on, in, or about the Property, or arising from or connected with the use, conduct, or operation of Trustor's business in the amount from time to time reasonably required by Lender, (b) If such insurance, together with written evidence of the premium having been paid, are not delivered to Lender at least five (5) days prior to the expiration of such insurance, Lender shall have the right, but without obligation to do so, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, to obtain such insurance or like insurance through or from any insurance agency or company acceptable to it, pay the premium for such insurance, and add the amount of the premium to the loan secured by this Deed of Trust, and this amount shall bear interest at the applicable rate of interest set forth in the Note. Neither the Trustee nor Lender shall be responsible for such insurance or for the collection of any insurance monies, or for any insolvency of any insurer or insurance underwriter. (c) In the event that the Property is sold to Lender at any trustee's sale under this Deed of Trust (see paragraph (17), below), Trustor hereby assigns to Lender all unearned premiums on all policies of insurance covering the Property and agrees that any and all unexpired insurance covering the Property shall inure to the benefit of and pass to Lender at the time of such Trustee's sale.

(5) INSURANCE PROCEEDS, CONDEMNATION PROCEEDS AND OTHER RECOVERIES: (a) All settlements, awards, damages and proceeds received by Trustor or any other person under any fire, earthquake or other hazard insurance policy, for losses existing as of or occurring after the effective date of this Deed of Trust, or in connection with any condemnation for public use of or injury to the Property (or any part of or interest in the Property) are assigned to Lender and may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph (5). (b) All right, title and interest which Trustor now has or may later acquire in and to all causes of action, whether accrued before or after the date of this Deed of Trust, of any type for any damage or injury to the Property (or any portion of or interest in the Property), or adversely affecting the value of the Property (or any portion of or interest in the Property), including causes of action arising in tort or contract and causes of action in fraud or concealment of a material fact, are assigned to Lender, and the proceeds of any such causes of action may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph (5). Subsequent to a default hereunder, which is not remedied during any applicable cure period, Lender may, at his option, appear in and prosecute in his own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of any such action or proceeding. Trustor agrees to execute such further assignments of any settlements, awards, damages and causes of action as Lender from time to time may reasonably request. (c) Subject to the further provisions of this paragraph (5), settlements, awards, proceeds and damages (collectively, "Awards") received by Lender under the provisions of section (a) and section (b) of this paragraph (5), at the option of Lender, may (i) be applied by Lender to the outstanding balance due on the Note, or any other obligation secured by this Deed of Trust, in such order as Lender may determine; (ii) be used by Lender, without reducing the principal balance of the Note or any other obligation secured by this Deed of Trust, to replace, restore or reconstruct the Property to its condition just prior to the loss, as determined by Lender; or (iii) any such amount may be divided in any manner among any such application, use or release. No such application, use or release of the Award shall cure or waive any default or invalidate any act done pursuant to any notice of such default, except to the extent such default is actually cured.

Trustor agrees to endorse in favor of Lender any Award which is made payable to Trustor or to Lender and Trustor and deliver same to Lender immediately upon receipt. Notwithstanding anything herein to the contrary, the amount collected under any fire or other insurance policy may be applied by Lender, first, to reimbursement of all costs of collection of the proceeds. Thereafter, the proceeds shall be applied to repair, replace, restore or construct the Property (hereafter collectively referred to as "Repair")

to its physical condition immediately prior to the act or occurrence that caused the loss, damage or destruction, as the case may be, but only if (a) no default has occurred hereunder and is continuing <u>and</u> (b) the insurance proceeds (together with such additional funds as are required to be paid by Trustor pursuant to this paragraph), are sufficient for the Repair. Otherwise, at the election of Lender, in Lender's reasonable opinion and judgment, the proceeds may be applied to reduce the principal balance of the Note or any obligation secured hereby in such order as Lender may determine, whether or not then due, unless such application is prohibited by applicable law, or be released to Trustor. Such application or release shall not cure or waive any default, except to the extent such default is actually cured, invalidate any act done pursuant to any notice of such default or extend due dates of payments or modify any obligations of Trustor.

Should insurance proceeds be used for Repair, Lender may condition such application upon (a) evidence satisfactory to Lender, in Lender's discretion, that Trustor has sufficient additional funds on hand from their own financial resources as Lender reasonably determines are necessary to pay all costs of Repair; (b) delivery of plans and specifications, executed construction contracts, and cost breakdowns satisfactory to Lender, in his reasonable opinion and judgment; (c) establishment of a procedure satisfactory to Lender for lien waivers and disbursement of funds, disbursement being conditioned upon Lender having sufficient proceeds to pay the cost of Repair free of liens; and (d) evidence acceptable to Lender that the Property after completion will be in at least the same condition as existed prior to the damage, destruction or loss, as the case may be, and that there has been no material adverse change in the financial condition of Trustor since the date of this Deed of Trust. In the event Trustor does not comply with the foregoing conditions within sixty (60) days of the casualty, Lender may, at his option, use the proceeds to reduce the principal balance of the Note or pay any other obligation secured by this Deed of Trust.

(6)    MAINTENANCE AND PRESERVATION OF THE PROPERTY:

(a)    Trustor shall: (i) keep the Property, and every portion thereof, in good condition and repair and replace from time to time, or at any time, any Fixtures, or other items comprising the Property which may become obsolete or worn out, with Fixtures, or other items of at least the same utility, quality and value, each such replacement to be free of any liens or security interests of any kind or character other than the lien of this Deed of Trust, or any other document or instrument securing the indebtedness hereunder; (ii) not remove or demolish the Property, or any part thereof, except as part of alterations to the Property permitted hereunder; (iii) complete or restore promptly and in good and workmanlike manner the Property, or any part thereof, which may be damaged or destroyed; (iv) comply with and not suffer violations of (A) any and all laws, ordinances, rules, regulations, standards and orders, including, without limitation, making any alterations or additions required to be made to, or safety appliances and devices required to be installed or maintained in or about, the Property, or any portion thereof, under any such laws, ordinances, rules, regulations, standards or orders now or hereafter adopted, enacted or made applicable to the Property, or any portion thereof, and payment of any fees, charges or assessments arising out of or in any way related to treatment of the Property, or any portion thereof, as a source of air pollution, traffic, storm water runoff, or other adverse environmental impacts or effects, and (B) any and all covenants, conditions, restrictions, equitable servitudes and easements, whether public or private, of every kind and character, and (C) any and all requirements of insurance companies and any bureau or agency which establishes standards of insurability, which laws, covenants or requirements affect the Property and/or pertain to acts committed or conditions existing thereon, or the use, management, operation or occupancy thereof by Trustor and anyone holding under Trustor, including (but without limitation) such work of alteration, improvement or demolition as such laws, covenants or requirements mandate; (v) not commit or permit waste of the Property, or any portion thereof; (vi) do all other acts which from the character or use of the Property may be reasonably necessary to maintain, preserve and enhance its value, including, without limitation, keeping all plants, lawns and other landscaping in a good and thriving condition, and otherwise performing such appropriate upkeep and

maintenance to the Property to insure that the Property, and each part thereof, is maintained in the manner and retains at all times the same appearance and condition, as exists as of the date of this Deed of Trust, reasonable wear and tear excepted, such upkeep to include, without limitation, appropriate measures to protect wood, stucco and concrete surfaces from weathering, deterioration and aging, and to protect from and immediately remove graffiti or other defacement from such surfaces; (vii) perform all obligations required to be performed in leases or conditional sales or like agreements affecting the Property or the operation, occupation or use thereof (and, if not previously assigned, in the event of default, all right, title and interest of Trustor under any such leases, conditional sales or like agreements shall be automatically assigned to Lender hereunder, together with any deposits made in connection therewith); (viii) make payment of any and all charges, assessments or fees imposed in connection with the delivery, installation or maintenance of any utility services or installations on, to or for the Property, or any portion thereof; (ix) not create any deed of trust, liens or encumbrances upon the Property subsequent hereto, the parties hereby having specifically bargained in contemplation of the fact that any subsequent encumbrance upon the Property would adversely affect Lender's reasonable security interests hereunder; (x) make no further assignment of rents of the Property; and (xi) execute and, where appropriate, acknowledge and deliver such further documents or instruments as Lender or Trustee deem necessary or appropriate to preserve, continue, perfect and enjoy the security provided for herein, including (but without limitation) assignments of Trustor's interest in leases of the Property.

(b)      Trustor shall not undertake or suffer to be made pursuant to section (a) of this paragraph (6), any material alterations, additions, repairs, expansions, relocations, remodeling or demolition of, or structural or other material changes in, any Improvements or Fixtures comprising the Property that would materially diminish the value of the Property except as permitted pursuant to the written consent of Lender, which consent shall not be unreasonably withheld.  All such work shall be performed promptly and in good and workmanlike manner, using first quality materials in conformity with plans and specifications approved in advance by Lender, and shall be diligently prosecuted to completion free of liens and encumbrances, other than this Deed of Trust and any other document or instrument evidencing or securing the indebtedness secured hereby.

(c)      Without limiting the generality of this paragraph (6), Trustor hereby warrants, represents and covenants to Lender that Trustor, and to the best of Seller's knowledge, the Property, presently comply with, and will in the future comply fully with, all applicable federal, state and local laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, affecting Trustor's qualification to do business, the construction of any improvements to be located upon the Property, the sale, operation, leasing or financing of the Property and the intended occupancy, use and enjoyment thereof, including, but not limited to, all applicable subdivision laws, licenses and permits, building codes, zoning ordinances, environmental protection laws, flood disaster laws, and all laws pertaining to industrial hygiene and the environmental conditions on, under or about the Property, including, but not limited to, soil and groundwater condition.  Trustor further warrants, represents and covenants that Trustor does not presently, and will not in the future, use, store, manufacture, generate, transport to or from, or dispose of any toxic substances, hazardous wastes, radioactive materials, flammable explosives or related material on or in connection with the Property or the business of Trustor on the Property; except as are expressly described in Exhibit "B" attached hereto and incorporated herein, and which are used, stored or maintained in full and complete compliance with all such laws ("Permitted Toxic Materials").  Trustor further warrants, represents and covenants to Lender that Trustor does not presently, and will not, permit any lessee or other user of the Property to use, store, manufacture, generate, transport to or from, release or dispose of any toxic substances, hazardous materials, hazardous wastes, radioactive materials, flammable explosives or related materials on or in connection with the Property or the business of said lessee or other user of the Property, except as are permitted pursuant to Exhibit "B." Trustor further warrants, represents and covenants to Lender that as to the Permitted Toxic Materials, Trustor or their lessee shall obtain and continue to maintain all necessary permits and approvals for the Permitted Toxic Materials, and comply with all laws, ordinances, rules and regulations, and all

permits and approvals issued thereunder, pertaining thereto. ("Toxic substances," "hazardous materials" and "hazardous wastes" shall include, but not be limited to, such substances, materials and wastes which are or become regulated under applicable federal, state or local laws, ordinances, rules or regulations.) Without the prior written consent of Lender, Trustor shall not seek, make or consent to any change in the zoning, conditions of use, or any other applicable land use permits, approvals or regulations pertaining to the Property, or any portion thereof, which would constitute a violation of the warranties, representations and covenants herein contained, or would otherwise impair the ability of Trustor to complete construction of any improvements now underway or to be constructed, constituting the Property, or would change the nature of the use or occupancy of the Property. Within five (5) days of (i) any contact from any federal, state, or local governmental agency concerning any environmental protection laws, including, but not limited to, any notice of any proceeding or inquiry with respect to the presence of any hazardous wastes, toxic substances or hazardous materials on the Property or the migration thereof from or to other property, (ii) any and all claims made or threatened by any third party against or relating to the Property concerning any loss or injury resulting from toxic substances, hazardous wastes, or hazardous materials, or (iii) Trustor's discovery of any occurrence or condition on any property adjoining or in the vicinity of the Property that could cause the Property, or any part thereof, to be subject to any restrictions on the ownership, occupancy, transferability, or loss of the Property under any federal, state, or local laws, ordinances, rules, or regulations, Trustor shall deliver to Lender a report regarding such contact and setting forth in detail and describing any action which Trustor proposes to take with respect thereto, signed by Trustor.

(d)     If Trustor has executed any unsecured agreement regarding hazardous materials containing any warranties and/or indemnities by Trustor in favor of Lender pertaining to the presence or release of hazardous and/or toxic materials or other similar substances upon, within or from the Property (hereinafter "Hazardous Substances Indemnity"), then the covenants, duties, and liabilities of Trustor, and the rights and remedies of Lender with respect to the subject of hazardous and/or toxic materials, shall be governed by the provisions of the Hazardous Substances Indemnity in addition to the provisions of this Deed of Trust; provided, however, that the provisions of the Hazardous Substances Indemnity shall prevail and exclusively govern the subject matter to the extent of any duplication, conflict or inconsistency between such provisions and the provisions of this Deed of Trust, and payment or performance of Trustor's obligations under said Hazardous Substances Indemnity shall not be secured by this Deed of Trust but shall be and remain unsecured obligations of Trustor, unless expressly otherwise therein provided.

(e)     Trustor shall deliver to Lender such affidavits, reports, certificates or other written instruments as may be requested by Lender, in Lender's sole and absolute opinion and judgment, pertaining to Trustor's compliance with this paragraph (6). Lender may conclusively assume that the statements, facts, information and representations contained herein and/or in any affidavits, orders, receipts or other written instruments that are filed with Lender or exhibited to it, are true and correct. Lender may rely thereon without any investigation or inquiry. By accepting or approving anything required to be observed, performed, fulfilled, or given to Lender pursuant to this paragraph (6), Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, or of Trustor's compliance with the terms of this Deed of Trust, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

(7)     LEGAL ACTIONS AND PAYMENT OF RELATED COSTS:  Trustor shall appear in and defend any action or proceeding that may, in Lender's judgment, affect Lender's security interest under this Deed of Trust or any of the rights or powers of Lender or Trustee under this Deed of Trust. Whether or not Trustor so appears or defends, Trustor shall pay all costs and expenses, including, without

limitation, cost of evidence of title and reasonable attorneys' fees, that are incurred by Trustor, Lender or Trustee in any such action or proceeding in which Lender or Trustee may appear, by virtue of being made a party defendant or otherwise, and irrespective of whether the interest of Lender or Trustee in the Property is directly questioned by such action or proceeding or whether Lender's rights or interests are otherwise adversely affected thereby, or whether Lender is or shall become a party, including by way of intervention. Trustor promises and agrees to give Lender notice in writing of the pendency of any such action or proceeding promptly, but in any event no later than five (5) days, after Trustor first obtains knowledge of the pendency of such action or proceeding. Trustor shall cooperate with Lender in any action that is brought by Lender to protect his security interest under this Deed of Trust. Trustor will, upon demand by Lender, commence any action or proceeding reasonably required to protect or facilitate Lender's recovery of Awards under paragraph (5) of this Deed of Trust. If Trustor fails to bring any such action or proceeding, then Lender may, but need not, do so, and Trustor shall pay to Lender all costs, expenses and reasonable attorneys' fees that are incurred by Lender in doing so. Whenever, under this Deed of Trust, or any other document or instrument evidencing or securing the indebtedness secured hereby, Trustor is obligated to appear in and defend Lender or defend or prosecute any action or proceeding, Lender shall have the right of full participation in any such action or proceeding, with counsel of Lender's choice, and all costs and expenses incurred by Lender in connection with such participation (including, without limitation, reasonable attorneys' fees) shall be reimbursed by Trustor to Lender immediately upon demand. In addition, Lender shall have the right to approve any counsel retained by Trustor in connection with the prosecution or defense of any such action or proceeding by Trustor, which approval shall not be unreasonably withheld. All costs or expenses required to be reimbursed by Trustor to Lender hereunder shall, if not paid upon demand by Lender, thereafter bear interest at the applicable rate of interest set forth in the Note. As used herein, "proceeding" shall include litigation (whether by way of complaint, answer, cross-complaint, counter claim or third party claim), arbitration and administrative hearings or proceedings, and shall include commencement of any case or the filing of any petition for relief or other action under any Chapter of the U.S. Bankruptcy Code.

(8) LENDER'S RIGHTS TO INSPECT THE PROPERTY: Subject to the rights of tenants occupying all or any portion of the Property, Lender and his agents, employees and contractors, may enter upon the Property at any reasonable time to inspect the Property for any purpose relating to Lender's rights and interests under the terms of this Deed of Trust, including, but not limited to, Trustor's compliance with the terms of paragraph (6).

(9) SUBSTITUTION OF TRUSTEE: From time to time, by an instrument signed and acknowledged by Lender, and recorded in the Office of the Recorder of the County in which the Property is located, Lender may appoint a substitute trustee or trustees in place of the Trustee. Such instrument shall refer to this Deed of Trust and shall set forth the date and instrument number or book and page of its recordation. Upon recordation of such instrument, the Trustee shall be discharged and the new trustee so appointed shall be substituted as Trustee under this Deed of Trust with the same effect as if originally named Trustee in this Deed of Trust. An instrument recorded pursuant to the provisions of this paragraph (9) shall be conclusive proof of the proper substitution of such new Trustee.

(10) MISCELLANEOUS POWERS OF LENDER AND TRUSTEE: In addition to any other powers granted in this Deed of Trust to the Trustee, from time to time, upon the written request of Lender and upon the presentation of this Deed of Trust and any obligation secured by this Deed of Trust for endorsement, and without affecting any obligation secured by this Deed of Trust or the performance of the obligations set forth in this Deed of Trust, the Trustee may, without liability and without notice to any person: reconvey all or any part of the Property to Trustor, consent to the making of any map or plat of the Property, join in granting any easement on the Property, join in any agreement subordinating the lien of this Deed of Trust, release any obligation secured by this Deed of Trust, in whole or in part, with regard to any Trustor, extend or renew the Note or any other obligation secured by this Deed of Trust,

accept or release any additional security under this Deed of Trust, or accept and release the guaranty of any additional person or any obligation secured by this Deed of Trust.

(11)   ASSIGNMENT AND COLLECTION OF RENTS: (a) Trustor hereby assigns absolutely to Lender the rents of the Property, with a revocable license to collect such rents as they become due and payable, prior to any default by Trustor under paragraph (14) of this Deed of Trust, being retained by Trustor. (b) Upon any default by Trustor under paragraph (14) of this Deed of Trust which default is not remedied during any applicable cure period, such license will, automatically, be deemed revoked without the necessity for any act or notice by Lender, and Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and may collect the rents of the Property, and, after so taking possession, shall be entitled to collect any rents that are past due. Lender has, however, no duty to produce rents from the Property nor any responsibility for pursuing or collecting claims or rights of Trustor. If Trustor, at or immediately prior to such taking of possession by or on behalf of Lender, has operated a business upon the Property other than the rental thereof, the authority granted herein to so take possession of the Property shall also include the authority and power to take possession of the receipts of such business and, if appropriate, to operate such business, and the receipts thereof shall be deemed herein to be a form of rents. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and of collection of rents, including, but not limited to, costs and expenses of any receivership and reasonable attorneys' fees incurred by Lender in connection with the receivership, and then to the Note and any other obligations secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received. (c) At any time, subsequent to a default hereunder, which default is not remedied during any applicable cure period, Trustor shall, on demand, deliver to Lender from time to time all security deposits made by lessees to Trustor under the terms of any lease of all or part of the Property. These funds shall be held by Lender without interest payable to Trustor and as a part of and commingled with Lender's general funds. These funds, however, will be repayable to lessees pursuant to the provisions of the leases under which security deposits are made. In the event of any conflict between the provisions of this paragraph (11) and the provisions of a specific separate assignment of rents and/or assignment of lease(s), the provisions of the specific assignment(s) shall be deemed to govern over the provisions of this paragraph.

(12)   RECONVEYANCE OF THE PROPERTY: Upon the written request of Lender stating that the Note and all other obligations secured by this Deed of Trust have been discharged, and upon surrender of this Deed of Trust, the Note or any other notes or instruments evidencing such other obligations to the Trustee, and upon payment of the Trustee's fees, the Trustee shall reconvey, without warranty, the Property or that portion of the Property then held by the Trustee under this Deed of Trust. The recitals in any such reconveyance of any matters or facts shall be conclusive proof of the truthfulness of such matters or facts. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." When the Property has been fully reconveyed, the last such reconveyance shall operate as a reassignment of all of the rents of the Property to the person or persons legally entitled to such rents. Five (5) years after issuance of such full reconveyance, the Trustee may destroy this Deed of Trust and any such notes, unless directed in such request to retain them.

(13)   CHANGE OF LENDER'S RECORDS: In the event Trustor requests Lender to change any of his records relating to the Property, the Note or this Deed of Trust (including, but not limited to, changes in mailing address or ownership of the Property), Trustor shall pay a reasonable fee prescribed by Lender to so change his records.

**ACCELERATION AND DEFAULT:**

(14)   CONDITIONS UNDER WHICH LENDER MAY DECLARE A DEFAULT BY TRUSTOR: A default under this Deed of Trust shall occur in the event that: (a) Trustor fails to pay

when due: (i) any sum payable under the Note (subject to any express grace period under the Note); or (ii) any sum the payment of which is required or secured by this Deed of Trust; (b) Trustor fails to perform any other obligation required to be performed by Trustor under this Deed of Trust or secured by this Deed of Trust; (c) the Property is or becomes subject to any proceedings for abatement of a public nuisance, and such proceedings are not dismissed within thirty (30) days of the date of commencement thereof; (d) any material information given to Lender by Trustor, intended to or which does, in fact, induce the granting of any loan secured by this Deed of Trust, was not true in any respect when given, or any material information requested or required by Lender is withheld or concealed by Trustor; (e) there is an event of default under any other agreement, document or instrument which further evidences or secures the loan evidenced by the Note, or which encumbers the Property; and/or (f) there is an event of default under any other agreement, document or instrument which further evidences or secures the loan secured by this Deed of Trust.

(15)    LENDER'S RIGHT TO REQUIRE IMMEDIATE PAYMENT IN FULL: In the event: (a) of a default under this Deed of Trust, or (b) Trustor sells, transfers, grants, hypothecates, conveys, encumbers, alienates, or assigns (voluntarily, involuntarily, or by operation of law), enters into a contract of sale of, or leases (other than in the ordinary course of business on commercially reasonable terms and conditions), the Property, or any portion of the Property or any interest therein, or any interest in Trustor (each or all of the foregoing, a "Transfer"), Lender may, at his option and without further notice to any person, declare the entire principal balance and any other obligations under the Note and/or any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable. Trustor shall provide to Lender a complete and exact duplicate copy of any contract providing for the transfer of any interest in the Property, or any deed of trust or similar instrument creating a lien or encumbrance on the Property, immediately upon the execution of any such contract, deed of trust, or other instrument. No waiver of Lender's right to accelerate shall be effective unless it is in writing.

(16)    LENDER'S RIGHT TO PERFORM ACTS TRUSTOR FAILS TO PERFORM AND INDEMNIFICATION:

(a)    If Trustor fails to make any payment when due or to do any act required to be made or performed under this Deed of Trust, which failure is not remedied during any applicable express cure period, then Lender or Trustee, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, may, but are not required to, make or do the same in such manner and to such extent as either may deem necessary or desirable to protect the security of this Deed of Trust. Lender and Trustee are authorized to (i) enter upon the Property for such purposes; (ii) appear in and defend any action or proceeding purporting to affect the security of this Deed of Trust or the rights or powers of Lender or Trustee; and (iii) pay, purchase, contest or compromise any encumbrance, charge, lien or claim of lien, in whole, in part and/or in installments, which in the judgment of either Lender or Trustee appears to be prior or superior to the lien of this Deed of Trust, and/or is of such nature that a default thereunder could adversely impact Lender or this Deed of Trust, the judgment of Lender or Trustee being conclusive of the matter as among the parties to this Deed of Trust. In exercising the above powers, Lender or Trustee may pay necessary costs and expenses, employ counsel, consultants, any other agents or independent contractors, and pay reasonable fees, compensation, and costs thereof. Trustor promises and agrees to pay immediately upon demand all amounts so expended by Lender or Trustee (including all such costs, expenses and attorneys' fees) under this paragraph (16), together with any fees charged by Lender in regard to such activity by Lender and interest from the date of expenditure at the applicable rate of interest set forth in the Note, with payment of such amounts being secured by this Deed of Trust.

(b)    Trustor hereby indemnifies and agrees to hold harmless Lender and Trustee and their directors, officers, shareholders, agents and employees (individually and collectively the "Indemnitees") from and against: (i) any and all claims, demands, actions, liabilities, or causes of action

that are asserted against any Indemnitee by any person or entity if the claim, demand, action, liability, or cause of action, directly or indirectly, relates to a claim, demand, action, liability, or cause of action that the person or entity has or asserts based upon, arising out of, or in connection with, the Property, the conduct of Trustor, or any action or non-action by Trustor in connection with the Property or this Deed of Trust; and (ii) any and all claims, liabilities, losses, costs, or expenses (including court costs and attorneys' fees) that any Indemnitee suffers or incurs as a result of the assertion of any such claim, demand, action, liability or cause of action. The foregoing indemnity shall survive the release of this Deed of Trust, whether such release is as a result of payment of the indebtedness secured hereby, foreclosure, acceptance of a deed in lieu of foreclosure, other action, or otherwise.

(17)   TRUSTEE'S RIGHTS AND DUTIES TO SELL THE PROPERTY: (a) In the event of a default under this Deed of Trust by Trustor, which default is not remedied during any applicable cure period, Lender may then or thereafter execute or cause the Trustee to execute a written notice of such default and of their election to have the Property sold to satisfy the obligations secured by this Deed of Trust. Such notice shall be recorded in the office of the Recorder of the County where the Property is located. (b) When the minimum period of time required by law following recordation of such notice of default has elapsed, and notice of sale having been given as then required by law, the Trustee, without demand upon Trustor, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as Lender may determine, at public auction to the highest bidder for cash or a cash equivalent acceptable to Trustee, in lawful money of the United States, payable at time of sale. Lender shall have the right, at his option, to offset Lender's bid(s) to the extent of the total amount due Lender, including but not limited to all Trustee's fees, costs, expenses (including, without limitation, premiums for guarantees or other evidence of title), and other amounts secured by this Deed of Trust. The Trustee may postpone the sale of all or any portion of the Property by public notice at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Additionally, Lender, from time to time before any Trustee's sale, may rescind or cause to be rescinded any notice of default and election to sell or notice of sale by executing and delivering to Trustee a written notice of such rescission, which notice, when recorded, shall also constitute a cancellation of any prior declaration of default and demand for sale. The exercise by Lender of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Lender to execute and deliver to Trustee, as above provided, other declarations or notices of default and demand for sale of the Property to satisfy the obligations hereof, nor otherwise affect any provision, covenant or condition of the Note or any of the rights, obligations or remedies of Trustee to Lender. (c) The Trustee shall deliver to the purchaser at such sale its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. (d) Any person, including Trustor, Lender or Trustee may purchase at such sale. After deducting all costs, fees and expenses of the Trustee and of this Trust, including, without limitation, cost of evidence of title and attorneys' fees in connection with the sale, the Trustee shall apply the proceeds of the sale to the payment of: first, all sums expended under the terms of this Deed of Trust not then repaid, with interest at the applicable rate of interest set forth in the Note; second, the payment of all other sums then secured by this Deed of Trust; and third, the remainder, if any, to the person or persons legally entitled to such proceeds.

(18)   OTHER REMEDIES IF TRUSTOR DEFAULTS: (a) All of the remedies of Lender and Trustee set forth in this Deed of Trust are intended to be in addition to and not in substitution for any other remedies available to Lender or Trustee at law or in equity. It is expressly understood and agreed that Lender or Trustee, or both, may bring suit in any court of competent jurisdiction to foreclose this Deed of Trust by judicial action or to obtain specific performance of the assignment of rents contained in this Deed of Trust. In connection with any such action, Lender or Trustee may apply to the court for the appointment of a receiver to take possession of the Property, operate the business of Trustor being conducted on the Property, utilize and enforce all agreements of Trustor in respect of the operation of

such business, the utilization of any such agreement being at the election of Lender or the receiver, to be exercised at any time after declaration of a default hereunder, receive the rents of the Property and apply the same to the obligations of Trustor under this Deed of Trust and under the Note and any other obligations secured by this Deed of Trust.  (b) Neither the acceptance of this Deed of Trust nor its enforcement in any manner shall prejudice the right of Lender or Trustee to realize upon or enforce any other security now or later held by Lender or Trustee.  Trustor promises and agrees that the rights of Lender and Trustee under this Deed of Trust, and with respect to any other security now or later held by Lender, may be enforced in such order and manner as Lender and Trustee, or either of them, may determine in their sole and absolute discretion.

(19)   TRUSTOR'S OBLIGATIONS AND LENDER'S RIGHTS NOT WAIVED:   By accepting payment of any sum secured by this Deed of Trust after its due date, or by accepting late performance of any obligation secured by this Deed of Trust, or by making any payment or performing any act on behalf of Trustor that Trustor was obligated to make or perform under this Deed of Trust but failed to make or perform, or by adding any payment so made by Lender to the Note secured by this Deed of Trust, Lender does not waive his right either to require prompt payment when due of all other sums so secured or to declare a default for failure to make any such prompt payment or to perform any such act. No failure or delay on the part of Lender, Trustee, or any holder of the Note or this Deed of Trust in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof.  No single or partial exercise of any such power, right or privilege shall preclude any other or further exercise thereof or of any other right, power or privilege.  No exercise of any right or remedy of Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.  All rights and remedies existing under this Deed of Trust are cumulative to, and not exclusive of, any rights or remedies otherwise available.

(20)   SUCCESSORS IN INTEREST:  The terms, agreements, and conditions contained in this Deed of Trust shall apply to, be binding upon and inure to the benefit of, all of the parties to this Deed of Trust, their heirs, personal representatives, successors and assigns.

(21)   STATEMENTS CONCERNING THE STATUS OF THE LOAN:  From time to time as required by law, Lender shall furnish to Trustor such statements as may be required concerning the status of the obligations secured by this Deed of Trust.  Trustor promises and agrees to pay upon demand for such statements the maximum amount permitted by law.

(22)   TRUSTEE'S OBLIGATIONS:  The Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.  The Trustee is not obligated to notify any party to this Deed of Trust of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Lender or Trustee is a party unless such action is brought by the Trustee.  The Trustee shall not be obligated to perform any act required of it under this Deed of Trust unless the performance of such act is requested in writing and the Trustee is reasonably indemnified against loss, costs, liability and expense.

(23)   OBLIGATIONS OF TRUSTOR ARE JOINT AND SEVERAL; GENDER AND NUMBER:  If more than one person has executed this Deed of Trust as "Trustor," the obligations of all such persons under this Deed of Trust shall be joint and several.  In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(24)   NO OFFSETS:  No offset or claims which Trustor now or in the future may have against Lender shall relieve Trustor from making payments or performing any other obligations contained in or secured by this Deed of Trust.  Despite any right or option that may be granted to Lender or Trustee by this Deed of Trust or in the evidence of any obligations secured by this Deed of Trust or document

ancillary to this Deed of Trust to receive, collect, accept deposit of, use, apply or in any other manner obtain or dispose of any funds or property, the same shall not be deemed to constitute any credit against or to satisfy any obligation secured by this Deed of Trust, in whole or in part, unless and until such funds or property shall be both so obtained and expressly so applied by Lender or Trustee to such satisfaction of such obligation and then only in the manner and to the extent of such application.

(25)   GOVERNING LAW:  The loan secured by this Deed of Trust is made pursuant to the laws of the State of California, and the rules and regulations promulgated thereunder.  The loan contracts between the parties, including this Deed of Trust, shall be construed and governed by such laws, rules, and regulations.

(26)   AGREEMENT CHANGED ONLY BY WRITING:   This Deed of Trust cannot be changed except by agreement in writing signed by Trustor and Lender.

(27)   TIME:  Time is of the essence in connection with all of Trustor's obligations under this Deed of Trust.

(28)   NOTICE:  Except for any notice required under applicable law to be given in another manner:  (a) any notice to Trustor provided for in this Deed of Trust shall be addressed to Trustor at the address of Trustor set forth above, or to such other address as Trustor may designate by notice to Lender pursuant to the terms of paragraph (28)(c), and (b) any notice to Lender provided for in this Deed of Trust shall be addressed to Lender at his address shown on the top of the first page of this Deed of Trust, and/or to such other address as Lender may designate by notice to Trustor, pursuant to the terms of paragraph (28)(c).

(c)   Except as otherwise provided by law, all notices, requests, demands, directions, and other communications provided for in this Deed of Trust must be in writing mailed, telegraphed, delivered, or sent by telex, facsimile, cable or other form of electronic written communication to the appropriate party at its respective address.  Any notice given by telegram, telex, facsimile, cable or other form of electronic written communication must be confirmed within forty-eight (48) hours by letter mailed or delivered to the appropriate party at its respective address.  If any notice is given by mail it will be effective when deposited in the mails with first-class or airmail postage prepaid; if given by telegraph or cable, when delivered to the telegraph company with charges prepaid; if given by telex, facsimile or other form of electronic written communication, when sent; or if given by personal delivery, when delivered.

(29)   TITLES, CAPTIONS, AND HEADINGS:   The titles, captions, and headings to paragraphs contained in this Deed of Trust are for assistance in identification only and are not to be considered part of the substance of the provisions of this Deed of Trust.

(30)   SEVERABILITY OF PROVISIONS:  If any paragraph, clause or provision of this Deed of Trust is construed or interpreted by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those paragraphs, clauses or provisions so construed or interpreted and shall not affect the remaining paragraphs, clauses and provisions of this Deed of Trust.

(31)   ACKNOWLEDGMENT OF TRUSTOR'S UNDERSTANDING OF DEED OF TRUST: The foregoing terms, provisions and conditions of this Deed of Trust have been read and are understood by Trustor.  Trustor hereby acknowledges receipt of a copy of this Deed of Trust.

(32)   LENDER'S RELIANCE:  The financial accommodations made or to be made by Lender to Trustor are being made, renewed or extended, as applicable, by Lender to Trustor at the request and urging of Trustor and this Deed of Trust is being given in consideration of such financial

accommodations, and Lender may rely upon the validity and enforceability of this Deed of Trust in making such financial accommodations.

(33)    SECURITY AGREEMENT:

(a)    Security Interest and Fixture Filing.  This Deed of Trust shall also constitute and serve as a security agreement and financing statement for Fixtures, and any of the Property in which a security interest can be perfected under and within the meaning of Division 9 of the California Uniform Commercial Code, and shall grant to Lender, until the obligations secured hereby shall be satisfied, a first priority security interest, including but not limited to a fixture filing, pursuant to Division 9 of the California Uniform Commercial Code with respect to the Fixtures.  To this end, Trustor shall and hereby does grant to Lender, a first priority security interest in, under and to the Fixtures, and any of the Property in which a security interest can be perfected under Division 9 of the California Uniform Commercial Code.

(b)    Financing Statements.  Trustor shall deliver to Lender, in form and substance satisfactory to Lender, such financing statements and further assurances as Lender may, from time to time, require to create, perfect, and preserve Lender's security interest herein granted, and Lender may cause such financing statements and assurances to be recorded and filed at such times and places as may be required or permitted by law to so create, perfect and preserve such security interest.

(c)    Remedies on Default.  Upon default, Lender may, at his option: (i) exercise any remedy permitted by law or in equity, including without limitation, all the rights and remedies of a secured party under the California Uniform Commercial Code in any jurisdiction where enforcement is sought, whether in California or elsewhere;  (ii) notify any parties obligated on any of the Fixtures to make payment to Lender and enforce collection thereof; (iii) apply any sums received or collected from or on account of any Fixtures, including the proceeds of any sales thereof, to the payment of any indebtedness of Trustor to Lender in any order, including the costs and expenses incurred in preserving and enforcing the rights of Lender and attorneys' fees, in such order and manner as Lender in Lender's sole discretion determines.  All of Lender's rights and remedies shall be cumulative and not exclusive.

(d)    This Deed of Trust shall constitute a fixture filing under the California Uniform Commercial Code.  Lender's address from which information concerning Lender's security interest can be obtained is set forth in paragraph (28) above, subject to change as therein provided.

(34)    SALE OF INTEREST:  Trustor acknowledges and accepts that Lender may, at any time, in Lender's sole discretion sell all or any portion of Lender's interest in the Note and this Deed of Trust to one or more third parties.  The sale of all or any part of Lender's interest in the Note or Deed of Trust shall not relieve Trustor of any of Trustor's obligations hereunder.

(35)    SEPARATE PROPERTY:  Any married person executing this Deed of Trust in an individual capacity agrees that recourse may be had to his or her separate property for satisfaction of all sums secured under this Deed of Trust.

(36)    BOOKS AND RECORDS:  Trustor shall keep and maintain at all times at Trustor's address stated above, or at such other place as Lender may approve in writing from time to time, complete and accurate books or accounts and records adequate to reflect correctly the results of the operation of the Property and copies of all written contracts, leases, rental agreements, concessions, licenses, and other documents and instruments which affect the Property, or any portion thereof or interest therein.  Such books, records, contracts, leases, documents, and other instruments shall be subject to examination and inspection by Lender, or Lender's agents or designated auditors, at any reasonable time and from time to time.  Promptly upon request, Trustor shall furnish a rent schedule for the Property, certified by Trustor,

showing the name of each tenant and, for each tenant, the space occupied, the expiration date of the lease or rental agreement, the rent payable and the rent paid, the security deposit held, and such other information regarding the leasing of the Property as Lender shall require.

(37)    INSPECTION, APPRAISAL, AND ASSESSMENTS:  Lender may, at any time and from time to time and as and when Lender deems it to be appropriate, whether or not Trustor is then in default, (a) enter upon the Premises, directly or through one or more agents or independent contractors, to inspect any and all Property which is security for the obligations herein described, subject to the rights of tenants occupying all or any portion of the Property,  and (b) cause to be performed and prepared one or more appraisals and/or preliminary or other environmental assessments of the Property, or any portion thereof, in form and content satisfactory to Lender and meeting all requirements or standards of applicable laws, regulations, ordinances, orders, and generally recognized industry standards relating thereto; provided, however, environmental assessments shall only be performed subject to the Environmental Indemnity.  All costs and expenses incurred by Lender or Trustee in connection with any such inspection, appraisal, or assessment, shall be payable by Trustor upon demand and shall be secured by this Deed of Trust.  All reports and other evidence and work papers relating to such inspections, appraisals, and assessments, shall be and remain the sole property of Lender, and Trustor hereby waives any right which Trustor may have by agreement or by operation of law to receive an original or duplicate thereof.  Any appraisal or assessment may, at Lender's sole election, be relied upon by Lender in taking any action Lender deems to be necessary or appropriate in connection with the enforcement of his rights and exercise of remedies under or by virtue of this Deed of Trust, or under any obligation secured hereby, or under any separate obligation pertaining to the Property, or in connection with the protection, maintenance, preservation, remediation, restoration, or repair of the Property.  Unless Lender otherwise expressly declares in writing, neither said appraisal nor assessment shall constitute conclusive evidence of the value or condition of the Property or as a representation or warranty by Lender as to the value or condition of the Property, and may not be used or relied upon by Trustor for any purpose.

THE UNDERSIGNED TRUSTOR REQUESTS THAT A COPY OF ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE HEREUNDER BE MAILED TO TRUSTOR AT TRUSTOR'S ADDRESS SET FORTH ABOVE.

**"TRUSTOR"**

American Open Space Remedies LLC,
a California limited liability company

By:    Beaumont 1600, LLC,
       a California limited liability company
Its:   Manager

       By:    _____
              Scott H. Krentel
       Its:   Manager

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                        )
County of _Riverside_____     )

On _March 30 2022_____, before me, _____A W Ensign_____, a Notary Public, personally appeared **Scott H. Krentel**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____



A. W. ENSIGN
COMM. #2236881
NOTARY PUBLIC - CALIFORNIA
RIVERSIDE COUNTY
My Comm. Expires May 2, 2022

A. W. ENSIGN
COMM. #2236881
NOTARY PUBLIC - CALIFORNIA
RIVERSIDE COUNTY
My Comm. Expires May 2, 2022

# GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL
ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED
READS AS FOLLOWS:

NAME OF NOTARY: A W. Ensign

COMMISSION NO: 2236881

PLACE OF EXECUTION: Riverside, CA

DATE COMMISSION EXPIRES: 5/2/2022

COUNTY OF COMMISSION: Riverside

MANUFACTURER/VENDER NO: RSE1

SIGNATURE: Crystal Brown

_____DATE: 3/31/2022
Stewart Title-Riverside

EXHIBIT 5                                    Page 75 of 144

DOC #2022-0155985 Page 20 of 22

## EXHIBIT "A"

## LEGAL DESCRIPTION

The land referred to herein is situated in the State of California, County of Riverside Unincorporated Area and described as follows:

Parcel 1:

Lots 6, 7 and 8 in Section 8, Township 3 South, Range 1 West, San Bernardino Base and Meridian, in an unincorporated area of the County of Riverside, State of California, according to the official government plat thereof.

Excepting therefrom, that portion of Lots 7 and 8, conveyed to Archie C. Johnson and Evelyn D. Johnson, in deed recorded January 22, 1963 as Instrument No. 63-7083 of Official Records, described as follows:

Beginning at the northeast corner of said Lot 8; thence Westerly on the north line of said Lot 8, 400.00 feet; thence Southerly, at right angles to said northerly line, 900.00 feet; thence Easterly, parallel with the northerly line of said Lots 7 and 8, 1000.00 feet to a point in said Lot 7; thence Northerly, at right angles, 900.00 feet to a point on the north line of said Lot 7; thence Westerly on said north line 600.00 feet to the point of beginning.

Also excepting from Lot 7, an undivided 1/20 interest in all oil and mineral rights and deposits, as reserved by Ed C. Martin, Birdie F. Martin and James E. Thompson, in deed recorded June 15, 1946 in Book 756, Page 217 of Official Records.

(APN: 424-060-006; -007 and -009)

Parcel 2:

Intentionally Deleted.

Parcel 3:

Intentionally Deleted.

Parcel 4:

Intentionally Deleted.

Parcel 5:

Intentionally Deleted.

Parcel 6:

Intentionally Deleted.

Parcel 6A:

Intentionally Deleted.

Parcel 7:

That portion of Government Lots 7 and 8 of Fractional Section 8, Township 3 South, Range 1 West, San Bernardino Base and Meridian, in an unincorporated area of the County of Riverside, State of California, according to the official government plat thereof, described as follows:

Beginning at the northeast corner of said Lot 8; thence Westerly 400.00 feet on the northerly line of said Government Lot 8; thence Southerly 900.00 feet at right angles to said northerly line; thence Easterly 1000.00 feet, parallel with the northerly line of said Lots, to a point in said Lot 7; thence Northerly 900.00 feet, at right angles, to a point on the northerly line of said Lot 7; thence Westerly 600.00 feet on said northerly line, to the point of beginning.

Also excepting from Lot 7, an undivided 1/20 interest in all oil and mineral rights and deposits, as reserved by Ed C. Martin, Birdie F. Martin and James E. Thompson, in deed recorded June 15, 1946 in Book 756, Page 217 of Official Records.

(APN: 424-060-008)

Parcel 8:

Lots 1 and 2 in Section 8, Township 3 South, Range 1 West, San Bernardino Base and Meridian, in an unincorporated area of the County of Riverside, State of California, according to the official government plat thereof.

Excepting therefrom, that portion included in a public highway on the North.

(APN: 424-060-001)

Parcel 8A:

An easement for ingress and egress over and across the Northerly 40.00 feet of Government Lot 3, Section 8, Township 3 South, San Bernardino Base and Meridian, in an unincorporated area of the County of Riverside, State of California, according to the official government plat thereof, as reserved in document recorded October 23, 1970 as Instrument No. 106752 of Official Records.

(APN: Portion of 424-060-002)

## EXHIBIT "B"
### (Permitted Toxic Materials)

Trustor shall not permit there to be any hazardous and/or toxic materials at, on, in, around and/or under the Property and improvements, other than those as used in the regular course of business and for which Trustor (or the user) has licenses from the proper authority (if required by applicable law), such as a government agency or regulatory body, and further, notwithstanding the foregoing, Trustor hereby expressly covenants, represents and warrants to Lender that all such materials shall be used or stored in strict compliance with the provisions as set forth in paragraph (6)(c) of the Deed of Trust for compliance with all state and federal laws, rules, regulations, relating to or governing the use, storage and/or presence of toxic and/or Hazardous Substances Indemnity (as defined below).

Notwithstanding any provisions to the contrary contained in this Exhibit "B" and paragraph (6)(c) of the Deed of Trust, in the event Trustor has executed any unsecured Hazardous Substances Indemnity Agreement ("Hazardous Substances Indemnity") in favor of Lender pertaining to the presence or release of hazardous and/or toxic materials or other similar substances upon, within or from the Property, then the covenants, duties and liabilities of Trustor, and the rights and remedies of Lender with respect to the subject of hazardous and/or toxic materials, shall be governed by the provisions of the Hazardous Substances Indemnity in addition to the provisions of the Deed of Trust; provided, however, that the provisions of said Hazardous Substances Indemnity shall prevail and exclusively govern the subject matter to the extent of any duplication, conflict or inconsistency between such provisions and the provisions of this Deed of Trust, and payment or performance of Trustor's obligations under said Hazardous Substances Indemnity shall not be secured by this Deed of Trust, but shall be and remain unsecured obligations of Trustor.

**Exhibit 4**

EXHIBIT 5                                    Page 79 of 144

## CONTINUING GUARANTY

The undersigned, SCOTT H. KRENTEL ("Guarantor"), at the solicitation of American Open Space Remedies LLC, a California limited liability company ("Borrower"), in the outstanding principal amount of Thirteen Million and xx/100 Dollars ($13,000,000.00) (the "Loan"), requests that LIQUID FUNDS LLC, a Delaware limited liability company ("Lender"), extend Credit (as such term is defined below) to Borrower. In order to induce Lender to extend Credit to Borrower and in consideration of Credit heretofore, now or hereafter granted to Borrower by Lender, Guarantor agrees as follows:

1.      The term "Credit" is used throughout this Continuing Guaranty ("Guaranty") in its most comprehensive sense and means and includes, without limitation, any and all loans, advances, debts, obligations and liabilities of any kind or nature owed by Borrower to Lender, heretofore, now, or hereafter made, incurred or created, arising from the Loan Documents, as defined in the Promissory Note of even date herewith, made by Borrower in favor of Lender, in the principal amount of Thirteen Million and 00/100 Dollars ($13,000,000.00) ("Note"), whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, secured or unsecured, whether on original, renewed, extended or revised terms (including, without limitation, those evidenced by new or additional instruments or agreements or those changing the applicable rate of interest or which release any obligor with respect thereto), whether principal, interest, fees, or expenses, whether Borrower may be liable individually or jointly with others, whether recovery upon such indebtedness may be or hereafter becomes barred by any statute of limitations, and whether such indebtedness may be or hereafter becomes invalid or otherwise unenforceable. In the event a petition under the United States Bankruptcy Code is filed by or against Borrower, the term "Borrower" shall also mean and include Borrower in its status as a debtor, debtor-in-possession and/or reorganized debtor under the United States Bankruptcy Code.

2.      This Guaranty is unsecured and is not collateralized by the Property (as defined in the Deed of Trust securing the Note) or any other property.

3.      If there is more than a single entity or person included in the terms "Guarantor" or "Borrower," respectively, each reference herein to such terms shall mean any and all, and one or more of such entities and persons both jointly and severally, and (b) if more than one person or entity executes this Guaranty, the obligations and liabilities hereunder of Guarantors are and shall be both joint and several. If Borrower is a corporation, partnership, limited liability company or association, each reference herein to the term "Borrower" shall include any successor entity to Borrower. If there is more than one guaranty of the obligations of Borrower, the liabilities of all Guarantors are joint and several. As used in this Guaranty, neuter terms include the masculine and feminine, and vice versa.

4.      Guarantor unconditionally guarantees and agrees to pay to Lender, subsequent to an Event of Default under the Note (as defined therein), on demand, in lawful money of the United States of America, all amounts now and/or hereafter owed by Borrower to Lender in connection with the Credit, under the Note or otherwise. In addition to such liability, Guarantor agrees to bear and be liable to Lender for the interest and expenses enumerated in Paragraph 20 hereof. This Guaranty is a guaranty of payment and not of collection.

5.      Either before or after revocation hereof, Guarantor authorizes Lender at its sole discretion, with or without notice, and without affecting Guarantor's continuing liability hereunder, from time to time to (a) change the time or manner of payment of any Credit by modification, renewal, extension, acceleration or otherwise, (b) amend or change any other provision of any Credit including the rate of interest thereon, (c) accept partial payment on any Credit, (d) accept new or additional instruments, agreements or documents relative to any Credit, (e) release, substitute or add one or more endorsers,

cosigners or guarantors for any Credit, (f) enter into forbearances with Borrower even though the result of such forbearance is to increase the amount of accrued and unpaid interest, cost, fees and/or expenses attributable to the Credit, (g) amend or modify the terms of any guaranty executed by a co-guarantor, including the maximum liability thereunder, (h) obtain collateral for the payment of any Credit and/or any guaranty thereof, (i) waive, release, exchange, substitute, or modify, in whole or in part, existing, after-acquired or later acquired collateral securing payment of the Credit or any guaranty therefor on such terms as Lender at its sole discretion shall determine, (j) subordinate payment of all or any part of the Credit to other creditors of Borrower or other persons on such terms as Lender deems appropriate, (k) apply any sums received from Borrower, any other guarantor, endorser or cosigner or from the sale or collection of collateral or its proceeds to any indebtedness whatsoever in any order and regardless of whether or not such indebtedness is guaranteed hereby, is secured by collateral, or is due and payable, (l) without limiting the foregoing, apply any sums received from Guarantor or from the sale of collateral granted by Guarantor to any, all, or any portion of the Credit in any order regardless of whether or not the Credit is secured by collateral or is due and payable, and (m) exercise any right or remedy it may have with respect to any Credit or any collateral securing any Credit, this Guaranty or any other guaranty, including, without limitation, bidding and purchasing at any sale of any such collateral, and compromising, collecting or otherwise liquidating any collateral or any Credit.

6.   Guarantor acknowledges that Guarantor may have certain rights under applicable law which, if not waived by Guarantor, might provide Guarantor with defenses against Guarantors' liability under this Guaranty.   Among those rights, are certain rights of subrogation, reimbursement, indemnification and contribution, and rights provided in Sections 2787 to 2855, inclusive, of the California Civil Code.   Guarantor waives all of Guarantor's rights of subrogation, reimbursement, indemnification, and contribution, and any other rights and defenses that are or may become available to Guarantor by reason of any or all of California Civil Code sections 2787 to 2855, inclusive, including, without limitation, Guarantor's rights:

(a)   To require Lender to notify Guarantor of any default by Borrower, provide Guarantor with notice of any sale or other disposition of security for any Credit, disclose information with respect to the Credit, Borrower, or any other guarantor, co-signer or endorser, or with respect to any collateral;

(b)   That Guarantor's obligation under this Guaranty must be commensurate with that of Borrower;

(c)   To be discharged based upon the absence of any liability of Borrower, at any time, by virtue of operation of law, or otherwise, or due to any other disability or defense of Borrower or any other guarantor, endorser or co-signer;

(d)   To be discharged if any of the terms, conditions or provisions of the Credit are altered in any respect;

(e)   To be discharged upon acceptance by Lender of anything in partial satisfaction of the Credit, and/or if Lender designates the portion of the Credit to be satisfied;

(f)   To be discharged upon any modification of the Credit or the release by Lender of Borrower or any other guarantor, endorser or co-signer;

(g)   To require Lender to proceed against Borrower, or any other guarantor, endorser, co-signer, or other person, or to pursue or refrain from pursuing any other remedy in Lender's power;

2

EXHIBIT 5   Page 81 of 144

(h) To receive the benefit of or participate in any and all security for repayment and/or performance of the Credit;

(i) To have any security for the Credit first applied to satisfy or discharge the Credit;

(j) That any arbitration award rendered against Borrower not constitute an award against Guarantor;

(k) To be discharged based upon any failure by Lender to perfect or continue perfection of any lien, use due diligence to collect all or any part of any Credit, or if recovery against Borrower becomes barred by any statute of limitations, or if Borrower is not liable for any deficiency after Lender realizes upon any collateral; and

(l) To be discharged due to the release or discharge of any collateral for any Credit or guaranty, or relating to the validity, value or enforceability of any collateral.

7. Guarantor also waives all rights and defenses that Guarantor may have because the Borrower's debt is secured by real property, and/or arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the principal, including without limitation, (i) any defense to the recovery by Lender against Guarantor of any deficiency or otherwise to the enforcement of this Guaranty or any security for this Guaranty based upon Lender's election of any remedy against Guarantor or Borrower, including the defense to enforcement of this Guaranty (the so-called "Gradsky" defense) which, absent this waiver, Guarantor would have by virtue of an election by Lender to conduct a non-judicial foreclosure sale (also known as a "trustee's sale") of any real property security for the Credit, it being understood by Guarantor that any such non-judicial foreclosure sale will destroy, by operation of California Code of Civil Procedure ("CCP") section 580d or otherwise, all rights of any party to a deficiency judgment against Borrower and, as a consequence, will destroy all rights that Guarantor would otherwise have (including the right of subrogation, the right of reimbursement, and the right of contribution) to proceed against Borrower; (ii) any defense or benefits that may be derived from CCP sections 580a, 580b, 580d or 726, or comparable provisions of the laws of any other jurisdiction and all other anti-deficiency and one form of action defenses under the laws of California and any other jurisdiction; and (iii) any right to a fair value hearing under CCP section 580a, or any other similar law, to determine the size of any deficiency owing (for which Guarantor would be liable hereunder) following a non-judicial foreclosure sale. This means, among other things: (1) Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged or assigned by Borrower; (2) If Lender forecloses on any real property collateral pledged by the Borrower: (A) The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, (B) Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses directly or indirectly based upon Section 580a, 580b, 580d, or 726 of the CCP.

8. Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance, notices of the existence, creation or increase of any new or additional credit, notice of sale in regard to judicial or non-judicial foreclosure of real or personal property collateral and all other notices and demands of any kind or nature whatsoever except as expressly set forth herein.

9.     Notwithstanding any foreclosure of the lien of any security agreements, deeds of trust, mortgages or other security instruments, with respect to the Credit or any other guaranty, whether by the exercise of the power of sale contained therein, by any action for judicial foreclosure, or by any acceptance of a deed or other transfer in lieu of foreclosure, whether or not such method of foreclosure or transfer in lieu of foreclosure was for a consideration equal to or greater than the fair market value of the security property, Guarantor shall remain bound under this Guaranty for the obligations of Borrower to Lender and shall be liable to Lender for any and all of the Credit remaining unpaid after any such foreclosure.

10.     Guarantor represents and warrants to Lender that: (a) Lender has made no representation to Guarantor in regard to Borrower, the Credit or any matters pertaining thereto, upon which Guarantor is relying in giving this Guaranty; and (b) Guarantor has established adequate means and assumes the responsibility for being and keeping informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of nonpayment of the credit which diligent inquiry would reveal, and Lender shall have no duty to advise Guarantor of information known to Lender regarding such condition or any such circumstance.

11.     In addition to all liens upon and rights of setoff against the money, securities or other property of Guarantor given to Lender by law or otherwise as security for this Guaranty, Guarantor hereby pledges to Lender and grants to Lender a security interest in, and Lender shall have a right of setoff against, all money, securities and other property of Guarantor now or hereafter in the possession of or on deposit with Lender, whether held in a general or special account or deposit or for safekeeping or otherwise; and each such security interest or right of setoff may be exercised without demand upon, or notice to, Guarantor. No action or lack of action by Lender with respect to any security interest or right of setoff or otherwise shall be deemed a waiver thereof, and every right of setoff or security interest or otherwise shall continue in full force and effect until specifically released by Lender in writing. The security interests created hereby shall secure all of Guarantor's obligations to Lender under this Guaranty or any subsequent guaranty executed by Guarantor.

12.     Any and all indebtedness of Borrower now or hereafter owed to Guarantor and all claims of Guarantor against Borrower, whenever arising, are hereby subordinated to the Credit and assigned to Lender as additional collateral. If Lender so requests, any note or other instrument evidencing such indebtedness and all claims of Guarantor against Borrower shall be delivered to Lender, and such indebtedness and all claims of Guarantor against Borrower shall be collected, enforced and received by Guarantor as trustee for Lender and be paid over to Lender on account of the Credit but without reducing or affecting in any manner the liability of Guarantor hereunder. Should Guarantor fail to collect proceeds of debt owed to it by Borrower and pay the proceeds to Lender, Lender, as Guarantor's attorney-in-fact may do such acts and sign such documents in Guarantor's name as Lender considers necessary, at its discretion, to effect such collection, and Guarantor hereby irrevocably appoints Lender as Guarantor's attorney-in-fact for such purposes. If Borrower is a corporation, limited liability company or partnership, Guarantor will not withdraw or accept, without Lender's prior written consent, any return of any capital invested or equity interest in Borrower.

13.     Guarantor agrees that to the extent Borrower makes a payment or payments or is credited for any payment or payments made for the account of or on behalf of Borrower to Lender, which payment or payments, or any part thereof, are subsequently invalidated, determined to be fraudulent or preferential, voided, set aside and/or required to be repaid to any trustee, receiver, assignee or any other party whether under any Bankruptcy, State or Federal Law, common law or equitable cause or otherwise, then to the extent thereof, the obligation or part thereof intended to be satisfied thereby, together with the guaranty thereof hereunder, shall be revived, reinstated and continued in full force and effect as if said payment or payments had not originally been made by or for the account of or on behalf of Borrower.

12161A-Guaranty.doc

4

EXHIBIT 5                     Page 83 of 144

14.     Guarantor agrees that to the extent Guarantor makes a payment or payments or is credited for any payment or payments made for the account of or on behalf of Guarantor to Lender, which payment or payments, or any part thereof, are subsequently invalidated, determined to be fraudulent or preferential, voided, set aside and/or required to be repaid to any trustee, receiver, assignee or any other party whether under any Bankruptcy, State or Federal Law, common law or equitable cause or otherwise, then to the extent thereof, the obligation or part thereof intended to be satisfied thereby, shall be revived, reinstated and continued in full force and effect as if said payment or payments had not originally been made by or for the account of or on behalf of Guarantor.

15.     Guarantor's obligations hereunder are not contingent upon and are independent of the obligations of Borrower, or any other guarantor or surety of the Credit. This Guaranty is not made in consideration of the liability of any other guarantor or surety of the Credit. The release or death of any guarantor of the Credit or the revocation of any guaranty shall not release or otherwise affect the liability of any other non-revoking guarantor. A separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or any other guarantor or whether Borrower or any other guarantor be joined in any such action or actions.

16.     To the maximum extent permitted by law, Guarantor specifically waives the benefit of the statute of limitations affecting its liability hereunder or the enforcement hereof, or the collection of any Credit, including, without limiting the foregoing, any and all special statutes of limitations arising out of CCP sections 580a or 726(b). Any partial payment by Borrower which operates to toll any statute of limitations as to Borrower shall likewise toll the statute of limitations as to Guarantor.

17.     Any married person who signs this Guaranty expressly agrees that recourse may be had against his/her separate property as well as all community property over which that person has a power of management and control, for all of his/her obligations hereunder.

18.     Should any one or more provisions of this Guaranty be determined to be illegal or unenforceable, all other provisions shall remain effective.

19.     Lender may, with or without notice, assign this Guaranty in whole or in part. This Guaranty shall inure to the benefit of Lender, its successors and assigns, and shall bind Guarantor and Guarantor's heirs, executors, administrators, representatives, successors and assigns.

20.     Guarantor agrees to pay to Lender, on demand, reasonable attorneys' fees and all other costs and expenses which may be incurred by Lender in the collection or attempted collection from Borrower of any Credit and/or in the interpretation, enforcement or attempted enforcement by Lender of this Guaranty or any collateral therefor, including, but not limited to, proceedings in any bankruptcy or other insolvency case or other proceedings touching the Credit or this Guaranty, or both, in any manner, whether or not legal proceedings or suit are instituted, together with interest thereon at the rate applicable to the Credit and including, without limitation, all attorneys' fees and related costs of enforcement of any and all judgments and awards and upon any appeal relating thereto.

21.     Guarantor warrants and represents to Lender that:

(a)     All financial statements and other financial information furnished or to be furnished to Lender by Guarantor are or will be true and correct and do and will fairly represent the financial condition of Guarantor (including all contingent liabilities) as of the dates thereof; and

(b)    There has been no material adverse change in Guarantor's financial condition since the dates of the financial statements and other information furnished to Lender, except as previously disclosed to Lender in writing.

22.    Lender may declare Guarantor in default under this Guaranty upon the occurrence of any of the following events:

(a)    Guarantor fails to pay or perform any of Guarantor's obligations under this Guaranty when due; or

(b)    Any representation or warranty made or given by Guarantor to Lender proves to be false or misleading in any material respect; or

(c)    A petition or action for relief shall be filed by or against Guarantor, pursuant to the Federal Bankruptcy Code (Title 11, U.S. Codes) in effect from time to time, or under any other law relating to bankruptcy, insolvency, reorganization, moratorium, creditor composition, arrangement or other relief from debts; the appointment of a receiver, trustee, custodian or liquidator of or for any property of Guarantor; or upon the death, incapacity or insolvency of Guarantor, provided, however, that in the event Guarantor dies, Lender shall not declare a default hereunder if, within thirty (30) days of Guarantor's death, Borrower provides Lender a new guarantor to obligate itself under this Guaranty (although such new guarantor shall not preclude or prohibit Lender from filing a claim in any probate estate of the deceased Guarantor or seeking to enforce this Guaranty against the estate of such deceased Guarantor), which new guarantor meets the financial and other credit standards for a guarantor of the type of credit guaranteed hereunder, and executes such documents and agreements as Lender may request to assume the obligations of such deceased Guarantor hereunder; or

(d)    Guarantor revokes or attempts to revoke this Guaranty.

In the event Guarantor is in default under this Guaranty, Lender may, in its sole and absolute discretion, declare the entire amount guaranteed hereunder, and all other amounts and payments due hereunder, immediately due and payable, without further notice or demand.

23.    If Borrower is a corporation, limited liability company or partnership, Lender need not inquire into the power of Borrower or the authority of its officers, directors, partners, agents, members or managers acting or purporting to act in its behalf, and any Credit granted in reliance upon the purported exercise of such power or authority is guaranteed hereunder.

24.    Receipt of a true copy of this Guaranty is hereby acknowledged by each Guarantor. Guarantor understands and agrees that Lender's acceptance of this Guaranty shall not constitute a commitment of any nature whatsoever by Lender to extend, renew or hereafter extend credit to Borrower. Guarantor agrees that this Guaranty shall be effective with or without notice from Lender of its acceptance of this Guaranty.

25.    If Guarantor has executed more than one Guaranty of any or all indebtedness of Borrower owed to Lender, any limits of liability thereunder and hereunder shall be cumulative, and a subsequent guaranty executed by Guarantor shall not supersede or replace this Guaranty unless such subsequent guaranty so provides.

26.    Any controversy, dispute or claim between the Lender and undersigned based upon, arising out of, or in any way relating to: (i) this Guaranty or any supplement or amendment thereto; or (ii) any other present or future Instrument or agreement between the parties hereto; or (iii) any breach,

12161A-Guaranty.doc                                    6

EXHIBIT 5                                    Page 85 of 144

conduct, acts or omissions of any of the parties hereto or any of their respective directors, officers, employees, agents, attorneys or any other person affiliated with or representing any of the parties hereto; in each of the foregoing cases, whether sounding in contract or tort or otherwise (a "Dispute") shall be resolved exclusively by a judicial reference in accordance with Sections 638 et seq. of the CCP and Rules 3.900 - 3.910 of the California Rules of Court ("CRC"), subject to the following terms and conditions. (All references in this Section to provisions of the CCP and CRC shall be deemed to include any and all successor provisions.)

(a)    The reference shall be a consensual general reference pursuant to CCP sections 638 and 644(a). Unless the parties otherwise agree in writing, the reference shall be to a single referee. The referee shall be a retired Judge of the Los Angeles County Superior Court or a retired Justice of the California Court of Appeals or California Supreme Court. Notwithstanding anything to the contrary herein, nothing in this Agreement shall be construed to limit the right of a party, pending appointment of the referee, to seek and obtain writ of attachment, writ of possession, appointment of a receiver, temporary restraining order and/or preliminary injunction, or similar provisional remedy.

(b)    Within fifteen (15) days after a party gives written notice to all other parties to a Dispute that the Dispute exists, all parties to the Dispute shall attempt to agree on the individual to be appointed as referee. If the parties are unable to agree on the individual to be appointed as referee, the referee shall be appointed, upon noticed motion or ex parte application by any party, by the Los Angeles County Superior Court ("Superior Court") in accordance with the CCP section 640, subject to all rights of the parties to challenge or object to the appointment, including without limitation the right to peremptory challenge under CCP section 170.6. If the referee (or any successor referee) appointed by the Superior Court is unable, or at any time becomes unable, to serve as referee in the Dispute, the Superior Court shall appoint a new referee as agreed to by the parties or, if the parties cannot agree, in accordance with CCP section 640, which new referee shall then have the same powers, and be subject to the same terms and conditions, as the predecessor referee.

(c)    Venue for all proceedings before the referee, and for any Superior Court proceeding for the appointment of the referee, shall be exclusively within the County of Los Angeles, State of California. The referee shall have the exclusive power to determine whether a Dispute is subject to judicial reference pursuant to this section. Trial, and all proceedings and hearings on dispositive motions, conducted before the referee shall be conducted in the presence of, and shall be transcribed by, a court reporter, unless otherwise agreed to in writing by all parties to the proceeding. The referee shall issue a written statement of decision, which shall be subject to objections of the parties pursuant to CRC Rule 3.1590 as if the statement of decision were issued by the Superior Court. The referee's powers include, in addition to those set forth in CCP sections 638, et seq., and CRC Rules 3.900 - 3.910, (i) the power to grant provisional relief, including without limitation writ of attachment, writ of possession, appointment of a receiver, temporary restraining order and/or preliminary injunction, and (ii) the power to hear and resolve all post-trial matters in connection with the Dispute that would otherwise be determined by the Superior Court, including without limitation motions for new trial, reconsideration, to vacate judgment, to stay execution or enforcement, to tax costs, and/or for attorneys' fees. The parties shall, subject to the referee's power to award attorneys' fees and costs to the prevailing party, bear equally the costs of the referenced proceeding, including without limitation the fees and costs of the referee and the court reporter.

(d)    The parties acknowledge that (i) the referee alone shall determine all issues of fact and/or law in the Dispute, without jury, (ii) the referee does not have the power to empanel a jury, (iii) the Superior Court shall enter judgment on the decision of the referee pursuant to CCP section 644(a) as if the decision were issued by the Superior Court, (iv) the decision of the referee shall not be subject to review by the Superior Court, and (v) the decision of the referee, once entered as a judgment by the

Superior Court, shall be binding, final and conclusive, shall have the full force and effect of a judgment of the Superior Court, and shall be subject to appeal to the same extent as a judgment of the Superior Court.

EACH PARTY HEREBY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY ACTION, CLAIM, LAWSUIT OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO: (i) THIS GUARANTY OR ANY SUPPLEMENT OR AMENDMENT THERETO; OR (ii) ANY OTHER PRESENT OR FUTURE INSTRUMENT OR AGREEMENT BETWEEN ANY OF THE PARTIES HERETO; (iii) ANY BREACH, CONDUCT, ACTS OR OMISSIONS OF ANY OF THE PARTIES HERETO OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, ATTORNEYS OR ANY OTHER PERSON AFFILIATED WITH OR REPRESENTING ANY OF THE PARTIES HERETO; IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE.

27.     Guarantor waives all rights to interpose any setoffs or counterclaims of any nature in any action or proceeding instituted by Lender with respect to this Guaranty, the collateral therefor, or any matter arising therefrom or relating thereto and the posting of any bond which may otherwise be required, and waives any and all benefits of cross-demands pursuant to Section 431.70 of the CCP.

28.     Guarantor hereby irrevocably submits and consents to the jurisdiction of any federal or state court of competent jurisdiction within California in connection with any action or proceeding arising out of or relating to this Guaranty. In any such litigation, Guarantor consents to service of process by any means authorized by California or federal law or as otherwise agreed in writing between Lender and Guarantor.

29.     All rights, remedies, powers and benefits granted to Lender under this Guaranty, the Credit, any oral or other written agreement or applicable law whether expressly granted or implied in law or otherwise, are cumulative and not exclusive, and are enforceable alternatively, successively, or concurrently on any one or more occasions at Lender's discretion.

30.     Lender shall not, by any act, delay, omission or otherwise be deemed to have expressly or impliedly waived any security interest granted to Lender hereunder or Lender's rights, powers and/or remedies hereunder (including any right of setoff) unless such waiver shall be in writing and signed by an authorized officer of Lender. Any such waiver shall be enforceable only to the extent specifically set forth therein. A waiver by Lender of any default, right, power and/or remedy on any one occasion shall not be construed as a bar to or waiver of any such default, right, power and/or remedy which Lender would otherwise have on any future occasion whether similar in kind or otherwise. Any failure by Lender to file or enforce a claim against the estate (whether in administration, bankruptcy, probate or other proceeding) of Borrower or of any others, shall not affect Guarantor's liability hereunder.

31.     Neither this Guaranty nor any related agreement, document or instrument nor any provision hereof or thereof shall be amended, modified or discharged orally or by course of conduct, but only by a written agreement signed by an authorized officer of Lender expressly referring to this Guaranty and to the provisions so amended, modified or discharged.

32.     Lender's books and records showing the account(s) between Lender and Borrower shall be admissible in evidence in any action or proceeding as prima facie proof of the items set forth therein. Lender's statements rendered to Borrower, to the extent to which no objection is made within thirty (30) days after date thereof, shall be deemed conclusively correct and constitute an account stated absent manifest error, which shall be binding on Guarantor whether or not Guarantor receives a copy of any such statement or notice thereof.

12161A-Guaranty.doc                                8

EXHIBIT 5                        Page 87 of 144

33. This is a continuing guaranty of the Credit, including those arising after any repayment and reborrowing and under any successive and future transactions which may increase, renew or continue the original Credit, and, to the greatest extent of applicable law, may not be revoked.

34. The provisions of this Guaranty shall be construed and interpreted and all rights and obligations hereunder determined in accordance with the laws of the State of California.

35. GUARANTOR ACKNOWLEDGES THAT LENDER HAS OR MAY IN THE FUTURE EXTEND CREDIT TO BORROWER IN RELIANCE ON GUARANTOR'S UNCONDITIONAL PROMISE TO REPAY ANY AND ALL CREDIT AND LENDER IS RELYING ON THE WAIVERS, WARRANTIES AND PROMISES MADE BY GUARANTOR IN THIS GUARANTY. GUARANTOR AGREES THAT EACH OF THE WAIVERS, WARRANTIES AND PROMISES SET FORTH IN THIS GUARANTY IS MADE WITH GUARANTOR'S UNDERSTANDING OF THEIR SIGNIFICANCE AND CONSEQUENCES AND THAT THEY ARE REASONABLE. IF ANY WAIVERS, WARRANTIES AND PROMISES ARE DETERMINED TO BE CONTRARY TO ANY APPLICABLE LAW OR PUBLIC POLICY, SUCH WAIVERS, WARRANTIES AND PROMISES SHALL BE EFFECTIVE TO THE MAXIMUM EXTENT PERMITTED BY LAW. BEFORE SIGNING THE GUARANTY, GUARANTOR HAS EITHER SOUGHT THE ADVICE OF COUNSEL TO EXPLAIN THE WAIVERS OF ITS RIGHTS AND DEFENSES AS STATED HEREIN AND THE EFFECT THEREOF, OR HAS HAD THE OPPORTUNITY TO SEEK SUCH COUNSEL, AND IN ANY EVENT, INTENDS THIS GUARANTY TO BE AS UNRESTRICTED AS POSSIBLE. GUARANTOR THEREFORE HAS CONSCIOUSLY AND INTENTIONALLY WAIVED ALL DEFENSES OF GUARANTOR AND RIGHTS WHICH COULD EXONERATE GUARANTOR HEREUNDER TO THE FULL EXTENT PERMITTED BY THE LAWS OF THE STATE OF CALIFORNIA, WHETHER OR NOT EACH AND EVERY DEFENSE, RIGHT OR WAIVER IS EXPLAINED OR DESCRIBED IN DETAIL IN THIS GUARANTY.

36. GUARANTOR ACKNOWLEDGES THAT NEITHER LENDER NOR ANY OF LENDER'S OFFICERS OR EMPLOYEES HAVE MADE ANY PROMISE OR REPRESENTATION NOT INCORPORATED HEREIN, WHETHER ORAL, WRITTEN OR IMPLIED, TO CAUSE GUARANTOR TO SIGN THIS GUARANTY. GUARANTOR IS NOT SIGNING THIS GUARANTY IN RELIANCE ON ANY PROMISE, CONDITION OR THE ANTICIPATION OF THE OCCURRENCE OF ANY EVENT, AND THERE ARE NO ORAL UNDERSTANDINGS, STATEMENTS OR AGREEMENTS WHICH HAVE NOT BEEN INCLUDED IN THIS GUARANTY. GUARANTOR UNDERSTANDS THAT LENDER HAS THE RIGHT TO ENFORCE PAYMENT OF THE CREDIT AGAINST BORROWER OR GUARANTOR IN ANY ORDER AND LENDER IS NOT OBLIGATED TO OBTAIN ANY OTHER OR ADDITIONAL GUARANTORS OF THE CREDIT OR TO TAKE ANY OTHER COURSE OF ACTION.

EXHIBIT 5                                    Page 88 of 144

37.     This Guaranty constitutes the entire agreement between the parties with respect to the subject matter of this Guaranty, and any and all previous or contemporaneous correspondence, statements, or agreements by or between the parties hereto with respect to the subject matter of this Guaranty (but not previous or other guarantees given to Lender by Guarantor) are superseded hereby.  This Guaranty may be modified only by a written instrument signed by Guarantor and Lender.

Dated as of March 29, 2022                          GUARANTOR:

                                          _____
                                          SCOTT H. KRENTEL

12161A-Guaranty.doc                         10

EXHIBIT 5                                    Page 89 of 144

**Exhibit 5**

EXHIBIT 5                                    Page 90 of 144

## SETTLEMENT PROMISSORY NOTE

$13,000,000.00                    LOS ANGELES, CALIFORNIA                    March 29, 2022

FOR VALUE RECEIVED, **American Open Space Remedies LLC**, a California limited liability company (the "Borrower"), promises to pay to **Aminam, LLC**, a California limited liability company (including any subsequent holder hereof, the "Lender"), or its order, at 12121 Wilshire Boulevard, Suite 555, Los Angeles, California 90025, or at such other place as the holder hereof may designate, in lawful money of the United States of America, the principal sum of Thirteen Million and 00/100 Dollars ($13,000,000.00) in accordance with the terms, conditions and provisions as hereinafter set forth in this Promissory Note (this "Note").

Since 2020, the principals of Borrower and Lender, and its affiliates and predecessors in interest, have had many discussions and negotiations regarding joint venture, various kinds of financing and other forms of affiliation. Borrower promised Lender and its predecessors in interest compensation for consulting services provided and a shared participation interest, but such payment has been delayed. Following much time and effort from all parties, Borrower and Lender's settlement negotiations and discussions have resulted in the Borrower, with Lender and its affiliates and their predecessors in interest's assistance, concurrently acquiring property including that certain 194.29 acres of land in Beaumont, Riverside County, California, legally described in the Deed of Trust defined below (the "Property"), with the loan being concurrently obtained by Borrower evidenced by that certain Promissory Note of even date herewith in favor of Liquid Funds LLC, a Delaware limited liability company, in the amount of $13,000,000.00 ("Senior Note"). This Note reflects the full and complete settlement of Lender's claims, on behalf of itself and its affiliates and predecessors in interest, and once paid in full, shall discharge all of Borrower's obligations to Lender with respect to the Property. The obligations evidenced by the Note, which have not been paid prior to the execution hereof as initially contemplated by the parties, are referred to herein as the "Loan".

**PRINCIPAL AND INTEREST PAYMENTS.** On the earlier of: (i) March 31, 2024, or (ii) the date on which the Senior Note is paid in full (the "Maturity Date"), the entire unpaid principal balance of this Note, and all other charges outstanding under this Note and/or the other Loan Documents, shall be due and payable without demand or notice. In the event that Borrower does not pay this Note in full on the Maturity Date then, as of the Maturity Date and thereafter until paid in full, interest accruing on the outstanding principal balance hereunder shall be computed, calculated and accrued on a daily basis at the Default Rate, as defined below.

All payments due hereunder, including payments of principal and interest, shall be made to Lender in United States Dollars and shall be in the form of immediately available funds acceptable to the holder of this Note. Payments for any month which is not a full calendar month shall be prorated on the basis of a thirty (30) day month, based on the actual number of days elapsed.

**APPLICATION OF PAYMENTS.** All payments received by Lender from, or for the account of Borrower, due hereunder shall be applied by Lender, in its sole and absolute discretion, in the following manner, or in any other order or manner as Lender chooses:

      a.  First. To pay any and all interest due, owing and accrued under this Note;

      b.  Second. To pay any and all costs, advances, expenses or fees due, owing and payable to Lender, or paid or incurred by Lender, arising from or out of this Note, and the other Loan Documents; and

EXHIBIT 5                    Page 91 of 144

c.    Third. Payment of the outstanding principal balance on this Note.

All records of payments received by Lender shall be maintained at Lender's office, and the records of Lender shall, absent manifest error, be binding and conclusive upon Borrower. The failure of Lender to record any payment or expense shall not limit or otherwise affect the obligations of Borrower under this Note.

**HOLIDAY**. Whenever any payment to be made under this Note shall be due on a day other than a day on which Lender is open for business ("Business Day"), including Saturdays, Sundays and legal holidays generally recognized by banks doing business in California, then the due date for such payment shall be automatically extended to the next succeeding Business Day, and such extension of time shall in such cases be included in the computation of the interest portion of any payment due hereunder.

**DEFAULT**. Any one or more of the following events or occurrences shall constitute a default under this Note (hereinafter "Default"):

(i)    Lender does not receive a payment in the amount and within the time and manner as set forth herein; or

(ii)    There shall be a default or event of default under any of the Loan Documents (including, without limitation, the Deed of Trust, as defined below), which default or event of default is not remedied during any applicable cure period; or

(iii)    Any representation, warranty, statement, certificate, schedule or report (collectively, "Representation") furnished by Borrower in connection with the Loan, whether given in this Note or any other Loan Document, shall be false or misleading in any material respect as of the time made or furnished and the appropriate party fails to correct the condition in the Representation or fails to correct the Representation in a manner acceptable to Lender within thirty (30) days after notice from Lender to Borrower; or

(iv)    Any Loan Document, at any time after its execution and delivery and for any reason other than the agreement of Lender or satisfaction in full of all obligations, ceases to be in full force and effect or is declared to be null and void by a court of competent jurisdiction; or the validity, priority or enforceability thereof is contested in a judicial proceeding by Borrower, or Borrower denies that it has any further liability or obligation under any Loan Document; or any lien or security interest created by the Deed of Trust or other collateral agreement, at any time after execution and delivery of that Loan Document, and for any reason other than satisfaction in full of all obligations and termination of Lender's obligations to make advances, ceases or fails to constitute a valid and subsisting first priority lien or first priority perfected security interest in and to the Property; or

(v)    If Borrower is enjoined, restrained or in any way prevented by court order from conducting all or a substantial part of its business affairs, and such proceedings or injunction have not been dismissed or stayed within sixty (60) days from the date of filing of such proceeding or entry of such injunction; or

(vi)    The dissolution of Borrower or the appointment of a receiver, trustee, or liquidator of Borrower, the Property, any portion thereof, or any other property of any of them and, in the case of a receiver, such receiver is not finally dismissed within 30 days after appointment; or

(vii)    A filing by Borrower of (i) a voluntary petition in bankruptcy, seeking reorganization or rearrangement or taking advantage of any debtor relief laws, or (ii) an answer admitting

EXHIBIT 5                    Page 92 of 144

the material allegations of a petition filed against Borrower in any bankruptcy, reorganization, insolvency, conservatorship or similar proceeding, or (iii) an admission in writing confirming the inability to pay its debts as they become due; or

(viii)    The entry of an order, judgment or decree by any court of competent jurisdiction adjudicating Borrower as bankrupt or insolvent, or approving a petition seeking reorganization of Borrower or an arrangement of the debts of any of them, or appointing a receiver, trustee, or liquidator of Borrower or any portion of the Property or any other property of any of them; or

(ix)    Action by any governmental authority seeking forfeiture of the Property, whether or not court proceedings have actually commenced; or

(x)    The entry of judgment that deems or determines that Borrower's use constitutes a public or private nuisance; or

(xi)    The commencement of an action under any federal, state or local law or regulation seeking remediation of the Property or any portion thereof as a result of a violation by Borrower of any mandate pertaining to environmental sensitivity or commission of waste or violation of law with regard to hazardous substances, irrespective of Borrower's intent and course of action following its commencement; or

(xii)    Borrower's inability to comply with any requirement set forth under all applicable permits and business licenses; or

(xiii)    Any notice from any lender, governmental authority or quasi-governmental authority, insurance company or association with jurisdiction over the Property specifying that the Property or Borrower's use thereof violates applicable requirements or any agreement or document to which the Lender is bound; or

(xiv)    Any event which (a) requires closure of the Property for more than sixty (60) consecutive days due to remediation caused by Borrower's use of the Property, or for more than one-hundred and eighty (180) nonconsecutive calendar days within a three-hundred and sixty (360) consecutive day period, or (b) causes Lender's insurer to cancel or limit all coverage on the Property, or

(xv)    Any change in any law or enforcement policy or a change in practices by any law enforcement agency relating to the Borrower's use of the Property; or

(xvi)    Commencement of a criminal proceeding involving Borrower's use of the Property, including the opening of an investigation by any governmental entity; or

(xvii)    Lender is subjected to any liability, fine, expense, penalty, or prosecution (including the threat thereof) by any government agency as a result of Borrower's use of the Property; or

(xviii)    At the option of Lender, a material, adverse change in the financial condition of the Borrower or the guarantor, if any.

Lender retains sole discretion and judgment to determine whether sufficient grounds exist to declare a Default under the above Sections (ix) through (xvii), inclusive, and such decision shall not be challenged by Borrower. In the event of a Default under any of the above Sections (ix) through (xvii), inclusive, Borrower will immediately cease and desist its use of the Property, and any and all other activities that may be a violation of the law.

EXHIBIT 5                    Page 93 of 144

Upon the occurrence of a Default hereunder, Lender may, in its sole and absolute discretion, declare the entire unpaid principal balance, together with all accrued and unpaid interest thereon, and all other amounts and payments due hereunder, immediately due and payable, without notice or demand.

**DEFAULT RATE.** From and after the occurrence of any Default in this Note whether by non-payment, maturity, acceleration, non-performance or otherwise, and until such Default has been cured, all outstanding amounts under this Note (including, but not limited to, interest, costs and late charges) shall bear interest at a per annum rate ("Default Rate") equal to the lesser of ten percent (10%) per annum, or the highest rate allowed by applicable law.

**UNPAID INTEREST, CHARGES AND COSTS.** Interest, late charges, costs or expenses that are not received by Lender within five (5) calendar days from the date such interest, late charges, costs, or expenses become due, shall, at the sole discretion of Lender, be added to the principal balance and shall from the date due bear interest at the Default Rate until paid.

**PREPAYMENT.** The principal amount of this Note may be prepaid in whole or in part during the term of this Note without premium or penalty.

**SECURITY AND ACCELERATION.** This Note is secured by, among other things, a certain second priority Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing of even date herewith (the "Deed of Trust"), which encumbers the Property. The Deed of Trust contains, among other provisions, provisions for the immediate acceleration of this Note upon the occurrence of any Default, any event of default under the Deed of Trust, or any sale, transfer, conveyance, encumbrance or alienation of Borrower's right, title or interest (or any portion thereof) in the Property (except to the extent expressly permitted under the Deed of Trust). Reference is made to the Deed of Trust for the specific provisions thereof.

**NO OFFSETS OR DEDUCTIONS.** Except as expressly permitted by this Note, all payments under this Note shall be made by Borrower without any offset, decrease, reduction or deduction of any kind or nature whatsoever, including, but not limited to, any decrease, reduction or deduction for, or on account of, any offset, present or future taxes, present or future reserves, imposts or duties of any kind or nature, that are imposed or levied by or on behalf of any government or taxing agency, body or authority by or for any municipality, state or country. If at any time, present or future, Lender shall be compelled, by any Law, rule, regulation or any other such requirement which on its face or by its application requires or establishes reserves, or payment, deduction or withholding of taxes, imposts or duties, to act such that it causes or results in a decrease, reduction or deduction (as described above) in payment received by Lender under this Note, then Borrower shall pay to Lender such additional amounts, as Lender shall deem necessary and appropriate, such that every payment received under this Note, after such decrease, reserve, reduction, deduction, payment or required withholding, shall not be reduced in any manner whatsoever. (However, the foregoing shall not be applicable to the income taxes of Lender or other taxes imposed on the revenues of lenders generally.)

**COSTS AND EXPENSES.** Borrower hereby agrees to pay any and all costs or expenses paid or incurred by Lender by reason of, as a result of, or in connection with the enforcement of this Note, the Deed of Trust, or any other Loan Documents, including, but not limited to, any and all attorney's fees and related costs when such costs or expenses are paid or incurred in connection with the enforcement of this Note, the Deed of Trust, and the other Loan Documents, or any of them, the protection or preservation of the collateral or security for this Note, or any other rights, remedies or interests of Lender, whether or not suit is filed. Borrower's agreement to pay any and all such costs and expenses includes, but is not limited to, costs and expenses incurred in or in connection with any bankruptcy proceeding, in enforcing any judgment obtained by Lender and in connection with any and all appeals therefrom, and in connection with the monitoring of

EXHIBIT 5                    Page 94 of 144

any bankruptcy proceeding and its effect on Lender's rights and claims for recovery of the amounts due hereunder, any proceeding concerning relief from the automatic stay, use of cash collateral, proofs of claim, approval of a disclosure statement or confirmation of, or objections to confirmation of, any plan of reorganization. All such costs and expenses are immediately due and payable to Lender by Borrower upon demand therefor by Lender.

**WAIVERS**. Borrower hereby waives grace, diligence, presentment, demand, notice of demand, dishonor, notice of dishonor, protest, notice of protest, any and all exemption rights against the indebtedness evidenced by this Note and the right to plead any statute of limitations as a defense to the repayment of all or any portion of this Note, and interest thereon, to the fullest extent allowed by law, and all compensation of cross-demands pursuant to California Code of Civil Procedure Section 431.70. No delay, omission or failure on the part of Lender in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or any other right or remedy of Lender.

**MAXIMUM LEGAL RATE**. This transaction has been arranged by a license real estate broker (Daniel Namvar, License No. 01990085), and is exempt from usury limitations. However, if fulfillment of any provision hereof or of the Deed of Trust shall be deemed by a court of competent and final jurisdiction to violate any applicable usury restrictions, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and any amount received in excess of such limit shall be applied to reduce the unpaid principal balance hereof and not to the payment of interest, it being understood that in no event shall interest or any other amount paid or agreed to be paid to Holder for the use, forbearance or detention of money to be advanced hereunder or pursuant to the other Loan Documents exceed the highest lawful rate permissible under applicable usury laws. If, by the terms of this Note, Borrower is, at any time, required or obligated to pay interest on the principal balance at a rate in excess of such maximum rate, then the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate and interest payable hereunder shall be computed at such maximum rate and any portion of all prior interest payments in excess of such maximum rate shall be applied, or shall retroactively be deemed to have been payments made, in reduction of the principal balance, as the case may be.

**AMENDMENT; GOVERNING LAW**. This Note may be amended, changed, modified, terminated or canceled only by a written agreement signed by the party against whom enforcement is sought for any such action. This Note shall be governed by, and construed under, the laws of the State of California.

**CHANGE IN USE**. The parties acknowledge that from time to time the permitted uses for the Property may change by federal, state or local law, and that any such change does not constitute force majeure.

**FORCE MAJEURE**. Borrower acknowledges that the process to obtain all mandatory governmental permits, approvals, and licenses necessary for its use of the Property is time-intensive and involves extensive notification requirements to neighbors of the Property, may require public hearings, improvements and modifications to the Property, and that any failure of Borrower to obtain all mandatory governmental permits, approvals, and licenses, or the change of any law preventing Borrower from using the Property for its intended use, does not constitute force majeure and is not a basis for Borrower to terminate the Loan or otherwise fail to pay its obligations hereunder.

**AUTHORITY**. Borrower, and each person executing this Note on Borrower's behalf, hereby represents and warrants to Lender that, by its execution below, Borrower has the full power, authority and legal right to execute and deliver this Note and that the indebtedness evidenced hereby constitutes a valid and binding obligation of Borrower without exception or limitation. In the event that this Note is executed by more than one person or entity, the liability hereunder shall be joint and several. Any married person who is obligated on this Note, directly or indirectly, agrees that recourse may be had to such person's separate property in addition to any and all community property of such person.

EXHIBIT 5                                              Page 95 of 144

any bankruptcy proceeding and its effect on Lender's rights and claims for recovery of the amounts due hereunder, any proceeding concerning relief from the automatic stay, use of cash collateral, proofs of claim, approval of a disclosure statement or confirmation of, or objections to confirmation of, any plan of reorganization. All such costs and expenses are immediately due and payable to Lender by Borrower upon demand therefor by Lender.

**WAIVERS**. Borrower hereby waives grace, diligence, presentment, demand, notice of demand, dishonor, notice of dishonor, protest, notice of protest, any and all exemption rights against the indebtedness evidenced by this Note and the right to plead any statute of limitations as a defense to the repayment of all or any portion of this Note, and interest thereon, to the fullest extent allowed by law, and all compensation of cross-demands pursuant to California Code of Civil Procedure Section 431.70. No delay, omission or failure on the part of Lender in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or any other right or remedy of Lender.

**MAXIMUM LEGAL RATE**. This transaction has been arranged by a license real estate broker Shatar Capital, Inc. (CA DRE Broker # 02021122), and is exempt from usury limitations. However, if fulfillment of any provision hereof or of the Deed of Trust shall be deemed by a court of competent and final jurisdiction to violate any applicable usury restrictions, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and any amount received in excess of such limit shall be applied to reduce the unpaid principal balance hereof and not to the payment of interest, it being understood that in no event shall interest or any other amount paid or agreed to be paid to Holder for the use, forbearance or detention of money to be advanced hereunder or pursuant to the other Loan Documents exceed the highest lawful rate permissible under applicable usury laws. If, by the terms of this Note, Borrower is, at any time, required or obligated to pay interest on the principal balance at a rate in excess of such maximum rate, then the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate and interest payable hereunder shall be computed at such maximum rate and any portion of all prior interest payments in excess of such maximum rate shall be applied, or shall retroactively be deemed to have been payments made, in reduction of the principal balance, as the case may be.

**AMENDMENT; GOVERNING LAW**. This Note may be amended, changed, modified, terminated or canceled only by a written agreement signed by the party against whom enforcement is sought for any such action. This Note shall be governed by, and construed under, the laws of the State of California.

**CHANGE IN USE**. The parties acknowledge that from time to time the permitted uses for the Property may change by federal, state or local law, and that any such change does not constitute force majeure.

**FORCE MAJEURE**. Borrower acknowledges that the process to obtain all mandatory governmental permits, approvals, and licenses necessary for its use of the Property is time-intensive and involves extensive notification requirements to neighbors of the Property, may require public hearings, improvements and modifications to the Property, and that any failure of Borrower to obtain all mandatory governmental permits, approvals, and licenses, or the change of any law preventing Borrower from using the Property for its intended use, does not constitute force majeure and is not a basis for Borrower to terminate the Loan or otherwise fail to pay its obligations hereunder.

**AUTHORITY**. Borrower, and each person executing this Note on Borrower's behalf, hereby represents and warrants to Lender that, by its execution below, Borrower has the full power, authority and legal right to execute and deliver this Note and that the indebtedness evidenced hereby constitutes a valid and binding obligation of Borrower without exception or limitation. In the event that this Note is executed by more than one person or entity, the liability hereunder shall be joint and several. Any married person who is obligated on this Note, directly or indirectly, agrees that recourse may be had to such person's separate property in addition to any and all community property of such person.

EXHIBIT 5                                     Page 96 of 144

**LENDER'S RIGHT TO TRANSFER.** Borrower acknowledges and agrees that Lender has the right to transfer, assign or hypothecate all or any part of the Note, to sell participations therein, and to substitute one or more new loans for all or any part of this Note in favor of Lender, and/or to otherwise take such other action as Lender may deem appropriate or desirable in connection with this Note; provided, however, that such transfer, assignment, hypothecation or participation shall be at no material expense to Borrower, and the principal amount and interest rate of this Note shall not be increased, nor shall the term hereof be shortened, without Borrower's consent. Borrower agrees that it shall cooperate fully with Lender in connection with this paragraph and shall execute, and where appropriate, acknowledge, such documents as Lender or its assignee may require in connection therewith.

**LENDER'S RIGHT TO CURE.** Lender shall have the full right to cure any default under, or to pay any interest under or otherwise satisfy, any obligations under or with respect to this Note and the other Loan Documents, and/or the Property, and if Lender pays any amounts in connection therewith or cures any default thereunder, or makes any other advance to or for the benefit of Borrower and/or the Property, whether under this Note, under any of the Loan Documents, or otherwise, Lender may add any amounts so paid or advanced to the amounts evidenced by this Note and secured by the Loan Documents, and any and all such amounts shall be paid by Borrower to Lender upon demand, shall bear interest at the same rate specified to be paid on outstanding indebtedness under this Note, compounded monthly, until paid, and all such amounts shall be secured by the Loan Documents.

**GENERAL RELEASE.** As of the execution of this Note, Borrower hereby fully and irrevocably releases and discharges Lender and its parent companies, affiliates, subsidiaries, successors, assigns, agents, representatives, consultants, contractors, officers, directors, shareholders, attorneys, accountants, insurers, employees, and each of them, past and present (each individually referred to as a "Releasee" and collectively as the "Releasees") from any and all claims, demands, debts, obligations, and causes of action of every kind and character whatsoever, which the Borrower now has or may at any time hereafter have or claim to have against any or all the Releasees, by reason of any matter, transaction, thing or event whatsoever occurring prior to the execution of this Note. This Release includes claims of which Borrower is presently unaware or which Borrower does not presently suspect to exist in its favor which, if known by Borrower, would materially affect Borrower's release of the Releasees.

The Borrower hereby waives any and all rights under the provisions of Civil Code section 1542 which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Borrower hereby warrants and represents to the Releasees that the Borrower is the sole and lawful owners of all right, title and interest in and to all matters released herein, and that the Borrower has not heretofore assigned or transferred or purported to assign or transfer any released matter, or any part or portion thereof. The Borrower hereby indemnifies and holds harmless each party released herein from and against any claim, demand, damage, debt, liability, cost, expense, action or cause of action, including the payment of attorneys' fees and costs actually incurred (whether or not litigation be commenced), based on, in connection with or arising out of any such assignment or transfer, any purported or claimed assignment or transfer, or any purported or claimed interest in any matter released herein.

EXHIBIT 5                    Page 97 of 144

In addition, Borrower irrevocably agrees not to, and hereby waives its right to, file any lawsuit, action or proceeding against any of the Releasees and agrees not to record or file any lis pendens or notice of action pending regarding any property upon which any Lender has a deed of trust.

**INDEMNIFICATION.** The Borrower, to the fullest extent of the law, hereby agrees to and does hereby indemnifies and holds the Releasees harmless from and against any and all liabilities, claims, demands, lawsuits, damages, costs and expenses (including, without limitations, reasonable attorneys' fees and litigation expenses), actions or causes of action arising out of any loan or other financing not expressly reflected as an exception in Lender's Title Policy for the Deed of Trust, any enforcement of Lender's rights and/or remedies under the Note or Deed of Trust, any work or construction of improvements done at or for the Property, including but not limited to any breach of warranty or construction defect, or any mechanic's or materialman's lien on the Property, or any other claim, arising from any work done at or for the Property, including without limitation those done prior to the execution hereof, breach of any covenant or agreement or the incorrectness or inaccuracy of any representation and warranty of the Borrower contained in this Note, or contained in any other document delivered to Lender by the Borrower, or any person acting on behalf of the Borrower, pursuant to or as a part of this Note, the Deed of Trust, or any other loan document. Borrower represents that it is fully authorized to agree to the terms of this Note and that no third party has an interest in the Loan, Deed of Trust, or the collateral for the Loan that would require their consent to the terms of this Note.

**ENTIRE AGREEMENT.** This Note and any documents referred to herein or executed contemporaneously herewith constitute the parties' entire agreement with respect to the subject matter referred to herein and supersede all agreements, representations, warranties, statements, promises, and understandings, whether oral or written, pertaining to the subject matter referred to herein. There are no other agreements, written or oral, between the parties hereto respecting the subject loan or loan documents, and all prior negotiations of the parties on such subject are merged herein.

**ADVICE OF COUNSEL.** The Borrower has been advised to seek independent legal counsel in entering into this Note and the transaction described herein. In the event a party chooses not to seek independent legal counsel, that party does so freely and knowingly and waives any such rights to counsel.

**NOTIFICATION OF INACCURATE INFORMATION.** Please notify Lender if it reports any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address:

PRIOR TO SIGNING THIS NOTE, BORROWER HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE. BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

*[The remainder of this page intentionally left blank. Signature page to follow.]*

EXHIBIT 5                    Page 98 of 144

IN WITNESS WHEREOF, Borrower has executed this Note as of the day and year first above written.

BORROWER:

American Open Space Remedies LLC,
a California limited liability company

By:      Beaumont 1600, LLC,
         a California limited liability company
Its:     Manager


By:      _____
         Scott H. Krentel
Its:     Manager

EXHIBIT 5                    Page 99 of 144

**Exhibit 6**

EXHIBIT 5                    Page 100 of 144

DOC # 2022-0155986
03/31/2022 04:32 PM Fees: $119.00
Page 1 of 22
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: JACQUELINE #2386

Recording requested by
Stewart Title of California, Inc

RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:

Aminam LLC
12121 Wilshire Blvd, Suite 555
Los Angeles, CA 90025

*0180-204591*

APNs:  424-060-001; Portion of 424-060-002; 424-060-006;
424-060-007; 424-060-008; 424-060-009

## DEED OF TRUST, ASSIGNMENT OF RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("Deed of Trust") is made to be effective as of March 29, 2022, by American Open Space Remedies LLC, a California limited liability company (the "Trustor"), whose address is 18022 Cowan, Suite 103, Irvine, California 92614 to Stewart Title Company, as Trustee ("Trustee"), for the benefit of Aminam, LLC, a California limited liability company, as Beneficiary (including its assignees, "Lender").

THIS DEED OF TRUST ALSO CONSTITUTES A FIXTURE FILING UNDER DIVISION 9 OF THE CALIFORNIA UNIFORM COMMERCIAL CODE AND COVERS GOODS WHICH ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.  TRUSTOR IS A RECORD OWNER OF AN INTEREST IN SAID REAL PROPERTY.

**GRANT IN TRUST:**

Trustor irrevocably grants, transfers and assigns to Trustee, in trust, for the benefit of Lender, with power of sale, all of Trustor's interest in that certain real property located in the County of Riverside, California, described as:

[SEE EXHIBIT "A" ATTACHED HERETO AND
INCORPORATED HEREIN BY THIS REFERENCE]

TOGETHER WITH:    All right, title and interest which Trustor now has or may later acquire in such real property and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Trustor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water and water rights, and all sewers, pipes, conduits, wires and other facilities furnishing utility or services to the real property (collectively, the "Land");

TOGETHER WITH:    All right, title and interest which Trustor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected on the Land, including, without limitation, all plant equipment, apparatus, machinery and fixtures of every kind and nature whatsoever now or hereafter located on and affixed to said buildings, structures and improvements (collectively, the "Improvements"; the Land and Improvements being hereinafter sometimes collectively referred to as the "Premises");

12161A-Deed of Trust(Jr.).doc                                 Page 1 of 21
                                                               EXHIBIT 5

Exempt from fee per GC 27388.1 (a)
(2); recorded concurrently in connection
with a transfer subject to the imposition
of documentary transfer tax  Page 101 of 144

TOGETHER WITH:     All right, title and interest which Trustor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Premises;

TOGETHER WITH:     All right, title and interest which Trustor now has or may later acquire in any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Trustor and all subsequent owners of the Property (as defined below) which may be made with respect to the Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Property, which said award or awards are hereby assigned to Lender;

TOGETHER WITH:     All right, title and interest which Trustor now has or may later acquire in any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Property;

TOGETHER WITH:     Any and all claims or demands which Trustor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Property;

TOGETHER WITH:     All right, title and interest which Trustor now has or may later acquire in any and all claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to the Property, now or hereafter, whether or not such policies name Lender as an insured and whether or not such policies are required by Lender, and whether or not such claims thereunder are characterized as personal claims;

TOGETHER WITH:     All right, title and interest which Trustor now has or may later acquire in any and all instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights, and transferable development rights; all of Trustor's right, title, and interest in and to any awards, remunerations, settlements, or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices, or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and all licenses and privileges obtained by Trustor from non-governmental sources;

TOGETHER WITH:     All right, title and interest which Trustor now has or may later acquire in any and all leases of the Premises, Fixtures (as defined below), or any part thereof, now or hereafter entered into and all right, title and interest of Trustor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Trustor now or hereafter existing pertaining to the use and enjoyment of the Premises; and all right, title and interest of Trustor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Property;

TOGETHER WITH:     All right, title and interest which Trustor now has or may later acquire in any and all permits, plans, specifications, subdivision rights, security interests, contracts, contract rights, public

utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property;

TOGETHER WITH:     All right, title and interest which Trustor now has or may later acquire in any and all rents, income, issues and profits (subject, however, to the rights given in this Deed of Trust to Lender to collect and apply same), including, without limitation, prepaid municipal and utility fees, bonds, revenues, income, and other benefits to which Trustor may now or hereafter be entitled to, or which are derived from, the Premises or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered hereby, and not exclusive or all inclusive. It is the intent of Trustor to encumber hereby all real property located or to be located upon the above-described real property in which Trustor now has or may later acquire an interest. Said real property (or the leasehold estate if this Deed of Trust encumbers a leasehold estate), Premises, buildings, Improvements, appurtenances, Fixtures, additions, accretions, and other property are hereinafter referred to as the "Property." As used herein, the term "Fixtures" shall include all articles of personal property hereinabove described (in which Trustor now has or may later acquire an interest), now or hereafter affixed to the Property, but shall not include trade fixtures. As used herein, the term "Property" shall include all affixed furniture, furnishings, equipment, machinery, goods, contract rights, general intangibles, revenues, equipment leases, vehicles, money, deposit accounts, instruments, accounts, chattel paper and other personal property (in which Trustor now has or may later acquire an interest) of any kind or character now existing or hereafter arising or acquired in connection with Trustor's business operations at the Property, and all products and proceeds thereof.

Trustor makes the foregoing grant to Trustee, and to Lender, as applicable, to hold the Property in trust for the benefit of Lender and for the purposes and upon the terms and conditions hereinafter set forth.

Upon recordation of this Deed of Trust, this Deed of Trust will create a valid second priority lien, in, on and to the Property, which shall be free and clear of all liens and encumbrances, except for a senior lien of even date herewith in the amount of $13,000,000.00 in favor of Liquid Funds, LLC, a Delaware limited liability company, and any other matters or exceptions expressly approved in writing by Lender, subordinate to the lien of this Deed of Trust; and all action required to perfect fully the lien created by this Deed of Trust will have been taken and completed.

**FOR THE PURPOSE OF SECURING:**

(1)     Payment of the sum of **$13,000,000.00** together with interest thereon and certain additional costs and expenses related to or incurred in connection with or as provided in that certain Settlement Promissory Note of even date herewith, executed by Trustor, payable to Lender, or order, and all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of the Note at a different rate of interest or on different terms) (collectively, the "Note");

(2)     Payment of all other sums, with interest, advanced, paid, or incurred by Lender or Trustee under the terms of this Deed of Trust to protect the Property or Lender's security interest therein;

(3)     Payment of such additional sums, with interest, as the then record owner of the Property may later borrow from Lender, in those instances in which the later obligations are evidenced by a promissory note or notes reciting that it or they are so secured (which additional obligations shall be referred to as "future advances" in this Deed of Trust); and

(4)      Trustor's performance of each agreement in this Deed of Trust, and in all other agreements and instruments made by Trustor in favor of Lender in connection with the Note.

**TRUSTOR AND LENDER AGREE AS FOLLOWS:**

**RIGHTS AND DUTIES OF THE PARTIES:**

(1)      PAYMENT AND PERFORMANCE BY TRUSTOR; TITLE: Trustor represents and warrants to and for the benefit of Lender and Trustee that Trustor holds good and marketable title of record to the Land and Improvements in fee simple. Trustor shall promptly: (a) pay when due all sums payable under the Note and all future advances; and (b) perform each and every term, covenant and condition of this Deed of Trust and any other obligation secured by this Deed of Trust.

(2)      PAYMENT BY TRUSTOR OF TAXES AND OTHER IMPOSITIONS:  The term "Taxes" shall mean all taxes, bonds and assessments, both general and special, affecting or levied upon the Property or any part thereof, assessments on water company stock, if any, all taxes or excises levied or assessed against Trustor, the Property, or any part thereof, in addition to or as a substitution in whole or in part for any real estate taxes or assessments, all taxes or excises measured by or based in whole or in part upon the rents, operating income, or any other factor relating to the Property, or any part thereof, and all license fees, taxes and excises imposed upon Lender (but not any federal or state income taxes imposed upon Lender) and measured by or based in whole or in part upon the obligations secured hereby.  The term "Other Impositions" shall mean any fine, fee, charge, or other imposition in connection with the Property or Trustor, payment of which Lender shall deem to be necessary to protect, preserve, and defend Lender's interests hereunder.  Trustor shall pay all Taxes, insurance premiums, and Other Impositions attributable to the Property, at least five (5) days before delinquency directly to the payee thereof, or in such other manner as Lender may designate in writing.  Trustor shall promptly furnish to Lender all notices of amounts due under this paragraph, and if Trustor shall make payment directly, Trustor shall furnish to Lender receipts evidencing payments of Taxes before delinquency and shall promptly deliver to Lender receipts evidencing all other payments above required.

Subsequent to a default hereunder, at the request of Lender, made at any time, or as provided by applicable law, Trustor shall pay to Lender, on each day on which monthly installments of principal and/or interest are payable under the Note, until the Note is paid in full, an amount equal to one-twelfth (1/12) of the sum of the estimated annual Taxes and Other Impositions, together with annual insurance premiums on all policies of insurance required by this Deed of Trust, plus additional amounts reasonably estimated by Lender for the purpose of paying future installments of Taxes, Other Impositions, and insurance premiums.  In such event, Trustor further agrees to cause all bills, statements, or other documents relating to Taxes, Other Impositions, and insurance premiums to be sent or mailed directly to Lender.  Upon receipt of such bills, statements, or other documents, and provided Trustor has deposited sufficient funds with Lender pursuant to this paragraph (2), Lender shall pay such amounts as may be due thereunder out of the funds so deposited with Lender for that purpose, subject to Lender's rights to seize and apply said funds to satisfy, in whole or in part, any default by Trustor.  If at any time and for any reason the funds deposited with Lender are or will be insufficient to pay such amounts as may then or subsequently be due, Lender shall notify Trustor and Trustor shall immediately deposit an amount equal to such deficiency with Lender.  Notwithstanding the foregoing, nothing contained herein shall cause Lender to be deemed a trustee of said funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Lender pursuant to this paragraph (2).  Lender shall not be obligated to pay or allow any interest on any sums held by Lender pending disbursement or application hereunder, and Lender may impound or reserve for future payment of Taxes, Other Impositions, and insurance such portion of such payments as Lender may in his absolute discretion deem proper, applying the balance on the principal of or interest on the obligations secured hereby.  Should Trustor fail to deposit with Lender

(exclusive of that portion of said payments which has been applied by Lender on principal of or interest on the indebtedness secured hereby) sums sufficient to fully pay such Taxes, Other Impositions, or insurance premiums, at least fifteen (15) days before delinquency thereof, Lender may, at Lender's election, but without any obligation so to do, advance any amounts required to make up the deficiency, which advances, if any, shall be secured hereby and shall be repayable to Lender as herein elsewhere provided, or at the option of Lender the latter may, without making any advance whatever, apply any sums held by it upon any obligation of Trustor secured hereby. Shall any default occur or exist on the part of Trustor in the payment or performance of any of Trustor's and/or any guarantor's obligation in connection with the above Note, Lender may, at Lender's option, apply any sums or amounts in his possession or under his control, received pursuant hereto or as rents or income of the Property or otherwise, upon any indebtedness or obligation of Trustor secured hereby in such manner and order as Lender may elect. The receipt, use or application of any such sums paid by Trustor to Lender hereunder shall not be construed to affect the maturity of any indebtedness secured by this Deed of Trust or any of the rights or powers of Lender or said Trustee under this Deed of Trust or any other obligation secured hereby.

In the event of the passage, after the date of this Deed of Trust, of any law or judicial decision deducting from the value of the Property for the purposes of taxation any lien thereon, or changing in any way the laws now in force for the taxation of deeds of trust or obligations secured by deeds of trust, or the manner of operation of any such Taxes so as to adversely affect the interest of Lender, or imposing payment of the whole or any portion of any Taxes upon Lender, then and in such event, Trustor shall bear and pay the full amount of such Taxes; provided that if for any reason payment by Trustor of any such new or additional Taxes would be unlawful or if the payment thereof would constitute usury or render the Note, or other indebtedness secured hereby, wholly or partially usurious under any of the terms or provisions of the Note, or this Deed of Trust, or otherwise, Lender may, at his option, upon thirty (30) days' written notice to Trustor, or (i) pay that amount or portion of such Taxes as render the Note, or other indebtedness secured hereby, unlawful or usurious, in which event Trustor shall concurrently therewith pay the remaining lawful nonusurious portion or balance of such Taxes, or (ii) in the event that Lender is prohibited from collecting such payment as provided in (i) declare the whole indebtedness secured by this Deed of Trust, together with accrued interest thereon, to be immediately due and payable.

(3)   TRUSTOR TO PAY GROUND RENTS AND OBLIGATIONS THAT COULD RESULT IN LIENS ON THE PROPERTY: Trustor shall fully and faithfully pay and perform each and every obligation, and otherwise satisfy all conditions and covenants, which are or may be secured by any deed of trust upon the Property, or any portion thereof, existing of record as of the date this Deed of Trust is recorded. Trustor shall pay at or prior to the due date, or, if applicable, at maturity, any and all ground rents and any liens, charges and encumbrances that are, later become, claim to be or appear to Lender to be prior or superior to the lien of this Deed of Trust, including, without limiting the generality of the foregoing, any and all claims for (a) work or labor performed, (b) materials and services supplied in connection with any work of demolition, alteration, improvement of or construction upon the Property, and (c) fees, charges and liens for utilities provided to the Property.

(4)   TRUSTOR TO MAINTAIN INSURANCE: (a) Trustor shall maintain insurance covering the Property against loss or damage by fire, and other risks as shall from time to time be reasonably required by Lender as necessary to protect the security interest of Lender in the Property. The insurance shall be maintained with such companies, in such amounts, for such terms, and in form and content satisfactory to Lender, in Lender's reasonable opinion and judgment. Lender shall be named as loss payee and Mortgagee/additional insured, if possible, under all of the insurance policies, and Trustor shall assure that Lender receives a certificate from each insurance company that acknowledges Lender's position as loss payee and that states that the insurance policy cannot be terminated as to Lender except upon thirty (30) days' prior written notice to Lender. Such policies of insurance shall include, without limitation, the following: (i) insurance against loss or damage to the Property (including contents) by fire

or other risk embraced by coverage of the type known as the broad form or extended coverage (or special extended coverage) in the amount required by Lender, but in no event less than one hundred percent (100%) of the full replacement cost of the Improvements and Fixtures included within the Property without deduction for depreciation of any kind or the unpaid balance of the Note, whichever is greater, (ii) insurance against the loss of rental value of the Property on a "rented or vacant basis," including business interruption insurance, arising out of the perils insured against pursuant to clause (i) above in the amount not less than one (1) year's gross rental income and other revenues from the Property, and (iii) commercial general liability insurance against claims for personal injury, death, or property damage occurring on, in, or about the Property, or arising from or connected with the use, conduct, or operation of Trustor's business in the amount from time to time reasonably required by Lender, (b) If such insurance, together with written evidence of the premium having been paid, are not delivered to Lender at least five (5) days prior to the expiration of such insurance, Lender shall have the right, but without obligation to do so, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, to obtain such insurance or like insurance through or from any insurance agency or company acceptable to it, pay the premium for such insurance, and add the amount of the premium to the loan secured by this Deed of Trust, and this amount shall bear interest at the applicable rate of interest set forth in the Note.  Neither the Trustee nor Lender shall be responsible for such insurance or for the collection of any insurance monies, or for any insolvency of any insurer or insurance underwriter. (c) In the event that the Property is sold to Lender at any trustee's sale under this Deed of Trust (see paragraph (17), below), Trustor hereby assigns to Lender all unearned premiums on all policies of insurance covering the Property and agrees that any and all unexpired insurance covering the Property shall inure to the benefit of and pass to Lender at the time of such Trustee's sale.

(5)    INSURANCE PROCEEDS, CONDEMNATION PROCEEDS AND OTHER RECOVERIES:  (a) All settlements, awards, damages and proceeds received by Trustor or any other person under any fire, earthquake or other hazard insurance policy, for losses existing as of or occurring after the effective date of this Deed of Trust, or in connection with any condemnation for public use of or injury to the Property (or any part of or interest in the Property) are assigned to Lender and may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph (5).  (b) All right, title and interest which Trustor now has or may later acquire in and to all causes of action, whether accrued before or after the date of this Deed of Trust, of any type for any damage or injury to the Property (or any portion of or interest in the Property), or adversely affecting the value of the Property (or any portion of or interest in the Property), including causes of action arising in tort or contract and causes of action in fraud or concealment of a material fact, are assigned to Lender, and the proceeds of any such causes of action may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph (5). Subsequent to a default hereunder, which is not remedied during any applicable cure period, Lender may, at his option, appear in and prosecute in his own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of any such action or proceeding.  Trustor agrees to execute such further assignments of any settlements, awards, damages and causes of action as Lender from time to time may reasonably request.  (c) Subject to the further provisions of this paragraph (5), settlements, awards, proceeds and damages (collectively, "Awards") received by Lender under the provisions of section (a) and section (b) of this paragraph (5), at the option of Lender, may (i) be applied by Lender to the outstanding balance due on the Note, or any other obligation secured by this Deed of Trust, in such order as Lender may determine; (ii) be used by Lender, without reducing the principal balance of the Note or any other obligation secured by this Deed of Trust, to replace, restore or reconstruct the Property to its condition just prior to the loss, as determined by Lender; or (iii) any such amount may be divided in any manner among any such application, use or release.  No such application, use or release of the Award shall cure or waive any default or invalidate any act done pursuant to any notice of such default, except to the extent such default is actually cured.

Trustor agrees to endorse in favor of Lender any Award which is made payable to Trustor or to Lender and Trustor and deliver same to Lender immediately upon receipt.  Notwithstanding anything

herein to the contrary, the amount collected under any fire or other insurance policy may be applied by Lender, first, to reimbursement of all costs of collection of the proceeds. Thereafter, the proceeds shall be applied to repair, replace, restore or construct the Property (hereafter collectively referred to as "Repair") to its physical condition immediately prior to the act or occurrence that caused the loss, damage or destruction, as the case may be, but only if (a) no default has occurred hereunder and is continuing and (b) the insurance proceeds (together with such additional funds as are required to be paid by Trustor pursuant to this paragraph), are sufficient for the Repair.  Otherwise, at the election of Lender, in Lender's reasonable opinion and judgment, the proceeds may be applied to reduce the principal balance of the Note or any obligation secured hereby in such order as Lender may determine, whether or not then due, unless such application is prohibited by applicable law, or be released to Trustor.  Such application or release shall not cure or waive any default, except to the extent such default is actually cured, invalidate any act done pursuant to any notice of such default or extend due dates of payments or modify any obligations of Trustor.

Should insurance proceeds be used for Repair, Lender may condition such application upon (a) evidence satisfactory to Lender, in Lender's discretion, that Trustor has sufficient additional funds on hand from their own financial resources as Lender reasonably determines are necessary to pay all costs of Repair; (b) delivery of plans and specifications, executed construction contracts, and cost breakdowns satisfactory to Lender, in his reasonable opinion and judgment; (c) establishment of a procedure satisfactory to Lender for lien waivers and disbursement of funds, disbursement being conditioned upon Lender having sufficient proceeds to pay the cost of Repair free of liens; and (d) evidence acceptable to Lender that the Property after completion will be in at least the same condition as existed prior to the damage, destruction or loss, as the case may be, and that there has been no material adverse change in the financial condition of Trustor since the date of this Deed of Trust.  In the event Trustor does not comply with the foregoing conditions within sixty (60) days of the casualty, Lender may, at his option, use the proceeds to reduce the principal balance of the Note or pay any other obligation secured by this Deed of Trust.

(6)     MAINTENANCE AND PRESERVATION OF THE PROPERTY:

(a)     Trustor shall:  (i) keep the Property, and every portion thereof, in good condition and repair and replace from time to time, or at any time, any Fixtures, or other items comprising the Property which may become obsolete or worn out, with Fixtures, or other items of at least the same utility, quality and value, each such replacement to be free of any liens or security interests of any kind or character other than the lien of this Deed of Trust, or any other document or instrument securing the indebtedness hereunder; (ii) not remove or demolish the Property, or any part thereof, except as part of alterations to the Property permitted hereunder; (iii) complete or restore promptly and in good and workmanlike manner the Property, or any part thereof, which may be damaged or destroyed; (iv) comply with and not suffer violations of (A) any and all laws, ordinances, rules, regulations, standards and orders, including, without limitation, making any alterations or additions required to be made to, or safety appliances and devices required to be installed or maintained in or about, the Property, or any portion thereof, under any such laws, ordinances, rules, regulations, standards or orders now or hereafter adopted, enacted or made applicable to the Property, or any portion thereof, and payment of any fees, charges or assessments arising out of or in any way related to treatment of the Property, or any portion thereof, as a source of air pollution, traffic, storm water runoff, or other adverse environmental impacts or effects, and (B) any and all covenants, conditions, restrictions, equitable servitudes and easements, whether public or private, of every kind and character, and (C) any and all requirements of insurance companies and any bureau or agency which establishes standards of insurability, which laws, covenants or requirements affect the Property and/or pertain to acts committed or conditions existing thereon, or the use, management, operation or occupancy thereof by Trustor and anyone holding under Trustor, including (but without limitation) such work of alteration, improvement or demolition as such laws, covenants or requirements mandate; (v) not commit or permit waste of the Property, or any portion thereof; (vi) do all

other acts which from the character or use of the Property may be reasonably necessary to maintain, preserve and enhance its value, including, without limitation, keeping all plants, lawns and other landscaping in a good and thriving condition, and otherwise performing such appropriate upkeep and maintenance to the Property to insure that the Property, and each part thereof, is maintained in the manner and retains at all times the same appearance and condition, as exists as of the date of this Deed of Trust, reasonable wear and tear excepted, such upkeep to include, without limitation, appropriate measures to protect wood, stucco and concrete surfaces from weathering, deterioration and aging, and to protect from and immediately remove graffiti or other defacement from such surfaces; (vii) perform all obligations required to be performed in leases or conditional sales or like agreements affecting the Property or the operation, occupation or use thereof (and, if not previously assigned, in the event of default, all right, title and interest of Trustor under any such leases, conditional sales or like agreements shall be automatically assigned to Lender hereunder, together with any deposits made in connection therewith); (viii) make payment of any and all charges, assessments or fees imposed in connection with the delivery, installation or maintenance of any utility services or installations on, to or for the Property, or any portion thereof; (ix) not create any deed of trust, liens or encumbrances upon the Property subsequent hereto, the parties hereby having specifically bargained in contemplation of the fact that any subsequent encumbrance upon the Property would adversely affect Lender's reasonable security interests hereunder; (x) make no further assignment of rents of the Property; and (xi) execute and, where appropriate, acknowledge and deliver such further documents or instruments as Lender or Trustee deem necessary or appropriate to preserve, continue, perfect and enjoy the security provided for herein, including (but without limitation) assignments of Trustor's interest in leases of the Property.

        (b)    Trustor shall not undertake or suffer to be made pursuant to section (a) of this paragraph (6), any material alterations, additions, repairs, expansions, relocations, remodeling or demolition of, or structural or other material changes in, any Improvements or Fixtures comprising the Property that would materially diminish the value of the Property except as permitted pursuant to the written consent of Lender, which consent shall not be unreasonably withheld. All such work shall be performed promptly and in good and workmanlike manner, using first quality materials in conformity with plans and specifications approved in advance by Lender, and shall be diligently prosecuted to completion free of liens and encumbrances, other than this Deed of Trust and any other document or instrument evidencing or securing the indebtedness secured hereby.

        (c)    Without limiting the generality of this paragraph (6), Trustor hereby warrants, represents and covenants to Lender that Trustor, and to the best of Seller's knowledge, the Property, presently comply with, and will in the future comply fully with, all applicable federal, state and local laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, affecting Trustor's qualification to do business, the construction of any improvements to be located upon the Property, the sale, operation, leasing or financing of the Property and the intended occupancy, use and enjoyment thereof, including, but not limited to, all applicable subdivision laws, licenses and permits, building codes, zoning ordinances, environmental protection laws, flood disaster laws, and all laws pertaining to industrial hygiene and the environmental conditions on, under or about the Property, including, but not limited to, soil and groundwater condition. Trustor further warrants, represents and covenants that Trustor does not presently, and will not in the future, use, store, manufacture, generate, transport to or from, or dispose of any toxic substances, hazardous wastes, radioactive materials, flammable explosives or related material on or in connection with the Property or the business of Trustor on the Property; except as are expressly described in Exhibit "B" attached hereto and incorporated herein, and which are used, stored or maintained in full and complete compliance with all such laws ("Permitted Toxic Materials"). Trustor further warrants, represents and covenants to Lender that Trustor does not presently, and will not, permit any lessee or other user of the Property to use, store, manufacture, generate, transport to or from, release or dispose of any toxic substances, hazardous materials, hazardous wastes, radioactive materials, flammable explosives or related materials on or in connection with the Property or the business of said lessee or other user of the Property, except as are permitted pursuant to

Exhibit "B." Trustor further warrants, represents and covenants to Lender that as to the Permitted Toxic Materials, Trustor or their lessee shall obtain and continue to maintain all necessary permits and approvals for the Permitted Toxic Materials, and comply with all laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, pertaining thereto. ("Toxic substances," "hazardous materials" and "hazardous wastes" shall include, but not be limited to, such substances, materials and wastes which are or become regulated under applicable federal, state or local laws, ordinances, rules or regulations.) Without the prior written consent of Lender, Trustor shall not seek, make or consent to any change in the zoning, conditions of use, or any other applicable land use permits, approvals or regulations pertaining to the Property, or any portion thereof, which would constitute a violation of the warranties, representations and covenants herein contained, or would otherwise impair the ability of Trustor to complete construction of any improvements now underway or to be constructed, constituting the Property, or would change the nature of the use or occupancy of the Property. Within five (5) days of (i) any contact from any federal, state, or local governmental agency concerning any environmental protection laws, including, but not limited to, any notice of any proceeding or inquiry with respect to the presence of any hazardous wastes, toxic substances or hazardous materials on the Property or the migration thereof from or to other property, (ii) any and all claims made or threatened by any third party against or relating to the Property concerning any loss or injury resulting from toxic substances, hazardous wastes, or hazardous materials, or (iii) Trustor's discovery of any occurrence or condition on any property adjoining or in the vicinity of the Property that could cause the Property, or any part thereof, to be subject to any restrictions on the ownership, occupancy, transferability, or loss of the Property under any federal, state, or local laws, ordinances, rules, or regulations, Trustor shall deliver to Lender a report regarding such contact and setting forth in detail and describing any action which Trustor proposes to take with respect thereto, signed by Trustor.

(d)      If Trustor has executed any unsecured agreement regarding hazardous materials containing any warranties and/or indemnities by Trustor in favor of Lender pertaining to the presence or release of hazardous and/or toxic materials or other similar substances upon, within or from the Property (hereinafter "Hazardous Substances Indemnity"), then the covenants, duties, and liabilities of Trustor, and the rights and remedies of Lender with respect to the subject of hazardous and/or toxic materials, shall be governed by the provisions of the Hazardous Substances Indemnity in addition to the provisions of this Deed of Trust; provided, however, that the provisions of the Hazardous Substances Indemnity shall prevail and exclusively govern the subject matter to the extent of any duplication, conflict or inconsistency between such provisions and the provisions of this Deed of Trust, and payment or performance of Trustor's obligations under said Hazardous Substances Indemnity shall not be secured by this Deed of Trust but shall be and remain unsecured obligations of Trustor, unless expressly otherwise therein provided.

(e)      Trustor shall deliver to Lender such affidavits, reports, certificates or other written instruments as may be requested by Lender, in Lender's sole and absolute opinion and judgment, pertaining to Trustor's compliance with this paragraph (6). Lender may conclusively assume that the statements, facts, information and representations contained herein and/or in any affidavits, orders, receipts or other written instruments that are filed with Lender or exhibited to it, are true and correct. Lender may rely thereon without any investigation or inquiry. By accepting or approving anything required to be observed, performed, fulfilled, or given to Lender pursuant to this paragraph (6), Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, or of Trustor's compliance with the terms of this Deed of Trust, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

(7) LEGAL ACTIONS AND PAYMENT OF RELATED COSTS: Trustor shall appear in and defend any action or proceeding that may, in Lender's judgment, affect Lender's security interest under this Deed of Trust or any of the rights or powers of Lender or Trustee under this Deed of Trust. Whether or not Trustor so appears or defends, Trustor shall pay all costs and expenses, including, without limitation, cost of evidence of title and reasonable attorneys' fees, that are incurred by Trustor, Lender or Trustee in any such action or proceeding in which Lender or Trustee may appear, by virtue of being made a party defendant or otherwise, and irrespective of whether the interest of Lender or Trustee in the Property is directly questioned by such action or proceeding or whether Lender's rights or interests are otherwise adversely affected thereby, or whether Lender is or shall become a party, including by way of intervention. Trustor promises and agrees to give Lender notice in writing of the pendency of any such action or proceeding promptly, but in any event no later than five (5) days, after Trustor first obtains knowledge of the pendency of such action or proceeding. Trustor shall cooperate with Lender in any action that is brought by Lender to protect his security interest under this Deed of Trust. Trustor will, upon demand by Lender, commence any action or proceeding reasonably required to protect or facilitate Lender's recovery of Awards under paragraph (5) of this Deed of Trust. If Trustor fails to bring any such action or proceeding, then Lender may, but need not, do so, and Trustor shall pay to Lender all costs, expenses and reasonable attorneys' fees that are incurred by Lender in doing so. Whenever, under this Deed of Trust, or any other document or instrument evidencing or securing the indebtedness secured hereby, Trustor is obligated to appear in and defend Lender or defend or prosecute any action or proceeding, Lender shall have the right of full participation in any such action or proceeding, with counsel of Lender's choice, and all costs and expenses incurred by Lender in connection with such participation (including, without limitation, reasonable attorneys' fees) shall be reimbursed by Trustor to Lender immediately upon demand. In addition, Lender shall have the right to approve any counsel retained by Trustor in connection with the prosecution or defense of any such action or proceeding by Trustor, which approval shall not be unreasonably withheld. All costs or expenses required to be reimbursed by Trustor to Lender hereunder shall, if not paid upon demand by Lender, thereafter bear interest at the applicable rate of interest set forth in the Note. As used herein, "proceeding" shall include litigation (whether by way of complaint, answer, cross-complaint, counter claim or third party claim), arbitration and administrative hearings or proceedings, and shall include commencement of any case or the filing of any petition for relief or other action under any Chapter of the U.S. Bankruptcy Code.

(8) LENDER'S RIGHTS TO INSPECT THE PROPERTY: Subject to the rights of tenants occupying all or any portion of the Property, Lender and his agents, employees and contractors, may enter upon the Property at any reasonable time to inspect the Property for any purpose relating to Lender's rights and interests under the terms of this Deed of Trust, including, but not limited to, Trustor's compliance with the terms of paragraph (6).

(9) SUBSTITUTION OF TRUSTEE: From time to time, by an instrument signed and acknowledged by Lender, and recorded in the Office of the Recorder of the County in which the Property is located, Lender may appoint a substitute trustee or trustees in place of the Trustee. Such instrument shall refer to this Deed of Trust and shall set forth the date and instrument number or book and page of its recordation. Upon recordation of such instrument, the Trustee shall be discharged and the new trustee so appointed shall be substituted as Trustee under this Deed of Trust with the same effect as if originally named Trustee in this Deed of Trust. An instrument recorded pursuant to the provisions of this paragraph (9) shall be conclusive proof of the proper substitution of such new Trustee.

(10) MISCELLANEOUS POWERS OF LENDER AND TRUSTEE: In addition to any other powers granted in this Deed of Trust to the Trustee, from time to time, upon the written request of Lender and upon the presentation of this Deed of Trust and any obligation secured by this Deed of Trust for endorsement, and without affecting any obligation secured by this Deed of Trust or the performance of the obligations set forth in this Deed of Trust, the Trustee may, without liability and without notice to any person: reconvey all or any part of the Property to Trustor, consent to the making of any map or plat of

the Property, join in granting any easement on the Property, join in any agreement subordinating the lien of this Deed of Trust, release any obligation secured by this Deed of Trust, in whole or in part, with regard to any Trustor, extend or renew the Note or any other obligation secured by this Deed of Trust, accept or release any additional security under this Deed of Trust, or accept and release the guaranty of any additional person or any obligation secured by this Deed of Trust.

(11) ASSIGNMENT AND COLLECTION OF RENTS: (a) Trustor hereby assigns absolutely to Lender the rents of the Property, with a revocable license to collect such rents as they become due and payable, prior to any default by Trustor under paragraph (14) of this Deed of Trust, being retained by Trustor. (b) Upon any default by Trustor under paragraph (14) of this Deed of Trust which default is not remedied during any applicable cure period, such license will, automatically, be deemed revoked without the necessity for any act or notice by Lender, and Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and may collect the rents of the Property, and, after so taking possession, shall be entitled to collect any rents that are past due. Lender has, however, no duty to produce rents from the Property nor any responsibility for pursuing or collecting claims or rights of Trustor. If Trustor, at or immediately prior to such taking of possession by or on behalf of Lender, has operated a business upon the Property other than the rental thereof, the authority granted herein to so take possession of the Property shall also include the authority and power to take possession of the receipts of such business and, if appropriate, to operate such business, and the receipts thereof shall be deemed herein to be a form of rents. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and of collection of rents, including, but not limited to, costs and expenses of any receivership and reasonable attorneys' fees incurred by Lender in connection with the receivership, and then to the Note and any other obligations secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received. (c) At any time, subsequent to a default hereunder, which default is not remedied during any applicable cure period, Trustor shall, on demand, deliver to Lender from time to time all security deposits made by lessees to Trustor under the terms of any lease of all or part of the Property. These funds shall be held by Lender without interest payable to Trustor and as a part of and commingled with Lender's general funds. These funds, however, will be repayable to lessees pursuant to the provisions of the leases under which security deposits are made. In the event of any conflict between the provisions of this paragraph (11) and the provisions of a specific separate assignment of rents and/or assignment of lease(s), the provisions of the specific assignment(s) shall be deemed to govern over the provisions of this paragraph.

(12) RECONVEYANCE OF THE PROPERTY: Upon the written request of Lender stating that the Note and all other obligations secured by this Deed of Trust have been discharged, and upon surrender of this Deed of Trust, the Note or any other notes or instruments evidencing such other obligations to the Trustee, and upon payment of the Trustee's fees, the Trustee shall reconvey, without warranty, the Property or that portion of the Property then held by the Trustee under this Deed of Trust. The recitals in any such reconveyance of any matters or facts shall be conclusive proof of the truthfulness of such matters or facts. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." When the Property has been fully reconveyed, the last such reconveyance shall operate as a reassignment of all of the rents of the Property to the person or persons legally entitled to such rents. Five (5) years after issuance of such full reconveyance, the Trustee may destroy this Deed of Trust and any such notes, unless directed in such request to retain them.

(13) CHANGE OF LENDER'S RECORDS: In the event Trustor requests Lender to change any of his records relating to the Property, the Note or this Deed of Trust (including, but not limited to, changes in mailing address or ownership of the Property), Trustor shall pay a reasonable fee prescribed by Lender to so change his records.

**ACCELERATION AND DEFAULT:**

(14)     CONDITIONS UNDER WHICH LENDER MAY DECLARE A DEFAULT BY TRUSTOR: A default under this Deed of Trust shall occur in the event that: (a) Trustor fails to pay when due: (i) any sum payable under the Note (subject to any express grace period under the Note); or (ii) any sum the payment of which is required or secured by this Deed of Trust; (b) Trustor fails to perform any other obligation required to be performed by Trustor under this Deed of Trust or secured by this Deed of Trust; (c) the Property is or becomes subject to any proceedings for abatement of a public nuisance, and such proceedings are not dismissed within thirty (30) days of the date of commencement thereof; (d) any material information given to Lender by Trustor, intended to or which does, in fact, induce the granting of any loan secured by this Deed of Trust, was not true in any respect when given, or any material information requested or required by Lender is withheld or concealed by Trustor; (e) there is an event of default under any other agreement, document or instrument which further evidences or secures the loan evidenced by the Note, or which encumbers the Property; and/or (f) there is an event of default under any other agreement, document or instrument which further evidences or secures the loan secured by this Deed of Trust.

(15)     LENDER'S RIGHT TO REQUIRE IMMEDIATE PAYMENT IN FULL: In the event: (a) of a default under this Deed of Trust, or (b) Trustor sells, transfers, grants, hypothecates, conveys, encumbers, alienates, or assigns (voluntarily, involuntarily, or by operation of law), enters into a contract of sale of, or leases (other than in the ordinary course of business on commercially reasonable terms and conditions), the Property, or any portion of the Property or any interest therein, or any interest in Trustor (each or all of the foregoing, a "Transfer"), Lender may, at his option and without further notice to any person, declare the entire principal balance and any other obligations under the Note and/or any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable. Trustor shall provide to Lender a complete and exact duplicate copy of any contract providing for the transfer of any interest in the Property, or any deed of trust or similar instrument creating a lien or encumbrance on the Property, immediately upon the execution of any such contract, deed of trust, or other instrument. No waiver of Lender's right to accelerate shall be effective unless it is in writing.

(16)     LENDER'S RIGHT TO PERFORM ACTS TRUSTOR FAILS TO PERFORM AND INDEMNIFICATION:

(a)     If Trustor fails to make any payment when due or to do any act required to be made or performed under this Deed of Trust, which failure is not remedied during any applicable express cure period, then Lender or Trustee, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, may, but are not required to, make or do the same in such manner and to such extent as either may deem necessary or desirable to protect the security of this Deed of Trust. Lender and Trustee are authorized to (i) enter upon the Property for such purposes; (ii) appear in and defend any action or proceeding purporting to affect the security of this Deed of Trust or the rights or powers of Lender or Trustee; and (iii) pay, purchase, contest or compromise any encumbrance, charge, lien or claim of lien, in whole, in part and/or in installments, which in the judgment of either Lender or Trustee appears to be prior or superior to the lien of this Deed of Trust, and/or is of such nature that a default thereunder could adversely impact Lender or this Deed of Trust, the judgment of Lender or Trustee being conclusive of the matter as among the parties to this Deed of Trust. In exercising the above powers, Lender or Trustee may pay necessary costs and expenses, employ counsel, consultants, any other agents or independent contractors, and pay reasonable fees, compensation, and costs thereof. Trustor promises and agrees to pay immediately upon demand all amounts so expended by Lender or Trustee (including all such costs, expenses and attorneys' fees) under this paragraph (16), together with any fees charged by Lender in regard to such activity by Lender and interest from the date of expenditure at the applicable rate of interest set forth in the Note, with payment of such amounts being secured by this Deed of Trust.

(b)     Trustor hereby indemnifies and agrees to hold harmless Lender and Trustee and their directors, officers, shareholders, agents and employees (individually and collectively the "Indemnitees") from and against: (i) any and all claims, demands, actions, liabilities, or causes of action that are asserted against any Indemnitee by any person or entity if the claim, demand, action, liability, or cause of action, directly or indirectly, relates to a claim, demand, action, liability, or cause of action that the person or entity has or asserts based upon, arising out of, or in connection with, the Property, the conduct of Trustor, or any action or non-action by Trustor in connection with the Property or this Deed of Trust; and (ii) any and all claims, liabilities, losses, costs, or expenses (including court costs and attorneys' fees) that any Indemnitee suffers or incurs as a result of the assertion of any such claim, demand, action, liability or cause of action.  The foregoing indemnity shall survive the release of this Deed of Trust, whether such release is as a result of payment of the indebtedness secured hereby, foreclosure, acceptance of a deed in lieu of foreclosure, other action, or otherwise.

(17)     TRUSTEE'S RIGHTS AND DUTIES TO SELL THE PROPERTY: (a) In the event of a default under this Deed of Trust by Trustor, which default is not remedied during any applicable cure period, Lender may then or thereafter execute or cause the Trustee to execute a written notice of such default and of their election to have the Property sold to satisfy the obligations secured by this Deed of Trust.  Such notice shall be recorded in the office of the Recorder of the County where the Property is located.  (b) When the minimum period of time required by law following recordation of such notice of default has elapsed, and notice of sale having been given as then required by law, the Trustee, without demand upon Trustor, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as Lender may determine, at public auction to the highest bidder for cash or a cash equivalent acceptable to Trustee, in lawful money of the United States, payable at time of sale. Lender shall have the right, at his option, to offset Lender's bid(s) to the extent of the total amount due Lender, including but not limited to all Trustee's fees, costs, expenses (including, without limitation, premiums for guarantees or other evidence of title), and other amounts secured by this Deed of Trust.  The Trustee may postpone the sale of all or any portion of the Property by public notice at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement.  Additionally, Lender, from time to time before any Trustee's sale, may rescind or cause to be rescinded any notice of default and election to sell or notice of sale by executing and delivering to Trustee a written notice of such rescission, which notice, when recorded, shall also constitute a cancellation of any prior declaration of default and demand for sale.  The exercise by Lender of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Lender to execute and deliver to Trustee, as above provided, other declarations or notices of default and demand for sale of the Property to satisfy the obligations hereof, nor otherwise affect any provision, covenant or condition of the Note or any of the rights, obligations or remedies of Trustee to Lender.  (c) The Trustee shall deliver to the purchaser at such sale its deed conveying the Property so sold, but without any covenant or warranty, express or implied.  The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.  (d) Any person, including Trustor, Lender or Trustee may purchase at such sale.  After deducting all costs, fees and expenses of the Trustee and of this Trust, including, without limitation, cost of evidence of title and attorneys' fees in connection with the sale, the Trustee shall apply the proceeds of the sale to the payment of:  first, all sums expended under the terms of this Deed of Trust not then repaid, with interest at the applicable rate of interest set forth in the Note; second, the payment of all other sums then secured by this Deed of Trust; and third, the remainder, if any, to the person or persons legally entitled to such proceeds.

(18)     OTHER REMEDIES IF TRUSTOR DEFAULTS: (a) All of the remedies of Lender and Trustee set forth in this Deed of Trust are intended to be in addition to and not in substitution for any other remedies available to Lender or Trustee at law or in equity.  It is expressly understood and agreed that Lender or Trustee, or both, may bring suit in any court of competent jurisdiction to foreclose this

Deed of Trust by judicial action or to obtain specific performance of the assignment of rents contained in this Deed of Trust. In connection with any such action, Lender or Trustee may apply to the court for the appointment of a receiver to take possession of the Property, operate the business of Trustor being conducted on the Property, utilize and enforce all agreements of Trustor in respect of the operation of such business, the utilization of any such agreement being at the election of Lender or the receiver, to be exercised at any time after declaration of a default hereunder, receive the rents of the Property and apply the same to the obligations of Trustor under this Deed of Trust and under the Note and any other obligations secured by this Deed of Trust. (b) Neither the acceptance of this Deed of Trust nor its enforcement in any manner shall prejudice the right of Lender or Trustee to realize upon or enforce any other security now or later held by Lender or Trustee. Trustor promises and agrees that the rights of Lender and Trustee under this Deed of Trust, and with respect to any other security now or later held by Lender, may be enforced in such order and manner as Lender and Trustee, or either of them, may determine in their sole and absolute discretion.

(19)    TRUSTOR'S OBLIGATIONS AND LENDER'S RIGHTS NOT WAIVED:    By accepting payment of any sum secured by this Deed of Trust after its due date, or by accepting late performance of any obligation secured by this Deed of Trust, or by making any payment or performing any act on behalf of Trustor that Trustor was obligated to make or perform under this Deed of Trust but failed to make or perform, or by adding any payment so made by Lender to the Note secured by this Deed of Trust, Lender does not waive his right either to require prompt payment when due of all other sums so secured or to declare a default for failure to make any such prompt payment or to perform any such act. No failure or delay on the part of Lender, Trustee, or any holder of the Note or this Deed of Trust in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any such power, right or privilege shall preclude any other or further exercise thereof or of any other right, power or privilege. No exercise of any right or remedy of Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law. All rights and remedies existing under this Deed of Trust are cumulative to, and not exclusive of, any rights or remedies otherwise available.

(20)    SUCCESSORS IN INTEREST:    The terms, agreements, and conditions contained in this Deed of Trust shall apply to, be binding upon and inure to the benefit of, all of the parties to this Deed of Trust, their heirs, personal representatives, successors and assigns.

(21)    STATEMENTS CONCERNING THE STATUS OF THE LOAN:    From time to time as required by law, Lender shall furnish to Trustor such statements as may be required concerning the status of the obligations secured by this Deed of Trust. Trustor promises and agrees to pay upon demand for such statements the maximum amount permitted by law.

(22)    TRUSTEE'S OBLIGATIONS:    The Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The Trustee is not obligated to notify any party to this Deed of Trust of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Lender or Trustee is a party unless such action is brought by the Trustee. The Trustee shall not be obligated to perform any act required of it under this Deed of Trust unless the performance of such act is requested in writing and the Trustee is reasonably indemnified against loss, costs, liability and expense.

(23)    OBLIGATIONS OF TRUSTOR ARE JOINT AND SEVERAL; GENDER AND NUMBER:    If more than one person has executed this Deed of Trust as "Trustor," the obligations of all such persons under this Deed of Trust shall be joint and several. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(24)    NO OFFSETS:  No offset or claims which Trustor now or in the future may have against Lender shall relieve Trustor from making payments or performing any other obligations contained in or secured by this Deed of Trust.  Despite any right or option that may be granted to Lender or Trustee by this Deed of Trust or in the evidence of any obligations secured by this Deed of Trust or document ancillary to this Deed of Trust to receive, collect, accept deposit of, use, apply or in any other manner obtain or dispose of any funds or property, the same shall not be deemed to constitute any credit against or to satisfy any obligation secured by this Deed of Trust, in whole or in part, unless and until such funds or property shall be both so obtained and expressly so applied by Lender or Trustee to such satisfaction of such obligation and then only in the manner and to the extent of such application.

(25)    GOVERNING LAW:  The loan secured by this Deed of Trust is made pursuant to the laws of the State of California, and the rules and regulations promulgated thereunder.  The loan contracts between the parties, including this Deed of Trust, shall be construed and governed by such laws, rules, and regulations.

(26)    AGREEMENT CHANGED ONLY BY WRITING:  This Deed of Trust cannot be changed except by agreement in writing signed by Trustor and Lender.

(27)    TIME:  Time is of the essence in connection with all of Trustor's obligations under this Deed of Trust.

(28)    NOTICE:  Except for any notice required under applicable law to be given in another manner:  (a) any notice to Trustor provided for in this Deed of Trust shall be addressed to Trustor at the address of Trustor set forth above, or to such other address as Trustor may designate by notice to Lender pursuant to the terms of paragraph (28)(c), and (b) any notice to Lender provided for in this Deed of Trust shall be addressed to Lender at his address shown on the top of the first page of this Deed of Trust, and/or to such other address as Lender may designate by notice to Trustor, pursuant to the terms of paragraph (28)(c).

(c)    Except as otherwise provided by law, all notices, requests, demands, directions, and other communications provided for in this Deed of Trust must be in writing mailed, telegraphed, delivered, or sent by telex, facsimile, cable or other form of electronic written communication to the appropriate party at its respective address.  Any notice given by telegram, telex, facsimile, cable or other form of electronic written communication must be confirmed within forty-eight (48) hours by letter mailed or delivered to the appropriate party at its respective address.  If any notice is given by mail, it will be effective when deposited in the mails with first-class or airmail postage prepaid; if given by telegraph or cable, when delivered to the telegraph company with charges prepaid; if given by telex, facsimile or other form of electronic written communication, when sent; or if given by personal delivery, when delivered.

(29)    TITLES, CAPTIONS, AND HEADINGS:  The titles, captions, and headings to paragraphs contained in this Deed of Trust are for assistance in identification only and are not to be considered part of the substance of the provisions of this Deed of Trust.

(30)    SEVERABILITY OF PROVISIONS:  If any paragraph, clause or provision of this Deed of Trust is construed or interpreted by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those paragraphs, clauses or provisions so construed or interpreted and shall not affect the remaining paragraphs, clauses and provisions of this Deed of Trust.

(31)    ACKNOWLEDGMENT OF TRUSTOR'S UNDERSTANDING OF DEED OF TRUST:  The foregoing terms, provisions and conditions of this Deed of Trust have been read and are understood by Trustor.  Trustor hereby acknowledges receipt of a copy of this Deed of Trust.

(32)    LENDER'S RELIANCE:  The financial accommodations made or to be made by Lender to Trustor are being made, renewed or extended, as applicable, by Lender to Trustor at the request and urging of Trustor and this Deed of Trust is being given in consideration of such financial accommodations, and Lender may rely upon the validity and enforceability of this Deed of Trust in making such financial accommodations.

(33)    SECURITY AGREEMENT:

(a)    Security Interest and Fixture Filing.  This Deed of Trust shall also constitute and serve as a security agreement and financing statement for Fixtures, and any of the Property in which a security interest can be perfected under and within the meaning of Division 9 of the California Uniform Commercial Code, and shall grant to Lender, until the obligations secured hereby shall be satisfied, a second priority security interest, including but not limited to a fixture filing, pursuant to Division 9 of the California Uniform Commercial Code with respect to the Fixtures.  To this end, Trustor shall and hereby does grant to Lender, a second priority security interest in, under and to the Fixtures, and any of the Property in which a security interest can be perfected under Division 9 of the California Uniform Commercial Code.

(b)    Financing Statements.  Trustor shall deliver to Lender, in form and substance satisfactory to Lender, such financing statements and further assurances as Lender may, from time to time, require to create, perfect, and preserve Lender's security interest herein granted, and Lender may cause such financing statements and assurances to be recorded and filed at such times and places as may be required or permitted by law to so create, perfect and preserve such security interest.

(c)    Remedies on Default.  Upon default, Lender may, at his option: (i) exercise any remedy permitted by law or in equity, including without limitation, all the rights and remedies of a secured party under the California Uniform Commercial Code in any jurisdiction where enforcement is sought, whether in California or elsewhere;  (ii) notify any parties obligated on any of the Fixtures to make payment to Lender and enforce collection thereof; (iii) apply any sums received or collected from or on account of any Fixtures, including the proceeds of any sales thereof, to the payment of any indebtedness of Trustor to Lender in any order, including the costs and expenses incurred in preserving and enforcing the rights of Lender and attorneys' fees, in such order and manner as Lender in Lender's sole discretion determines.  All of Lender's rights and remedies shall be cumulative and not exclusive.

(d)    This Deed of Trust shall constitute a fixture filing under the California Uniform Commercial Code.  Lender's address from which information concerning Lender's security interest can be obtained is set forth in paragraph (28) above, subject to change as therein provided.

(34)    SALE OF INTEREST:  Trustor acknowledges and accepts that Lender may, at any time, in Lender's sole discretion sell all or any portion of Lender's interest in the Note and this Deed of Trust to one or more third parties.  The sale of all or any part of Lender's interest in the Note or Deed of Trust shall not relieve Trustor of any of Trustor's obligations hereunder.

(35)    SEPARATE PROPERTY:  Any married person executing this Deed of Trust in an individual capacity agrees that recourse may be had to his or her separate property for satisfaction of all sums secured under this Deed of Trust.

(36)    BOOKS AND RECORDS:  Trustor shall keep and maintain at all times at Trustor's address stated above, or at such other place as Lender may approve in writing from time to time, complete and accurate books or accounts and records adequate to reflect correctly the results of the operation of the Property and copies of all written contracts, leases, rental agreements, concessions, licenses, and other

documents and instruments which affect the Property, or any portion thereof or interest therein. Such books, records, contracts, leases, documents, and other instruments shall be subject to examination and inspection by Lender, or Lender's agents or designated auditors, at any reasonable time and from time to time. Promptly upon request, Trustor shall furnish a rent schedule for the Property, certified by Trustor, showing the name of each tenant and, for each tenant, the space occupied, the expiration date of the lease or rental agreement, the rent payable and the rent paid, the security deposit held, and such other information regarding the leasing of the Property as Lender shall require.

(37)   INSPECTION, APPRAISAL, AND ASSESSMENTS:  Lender may, at any time and from time to time and as and when Lender deems it to be appropriate, whether or not Trustor is then in default, (a) enter upon the Premises, directly or through one or more agents or independent contractors, to inspect any and all Property which is security for the obligations herein described, subject to the rights of tenants occupying all or any portion of the Property,  and (b) cause to be performed and prepared one or more appraisals and/or preliminary or other environmental assessments of the Property, or any portion thereof, in form and content satisfactory to Lender and meeting all requirements or standards of applicable laws, regulations, ordinances, orders, and generally recognized industry standards relating thereto; provided, however, environmental assessments shall only be performed subject to the Environmental Indemnity. All costs and expenses incurred by Lender or Trustee in connection with any such inspection, appraisal, or assessment, shall be payable by Trustor upon demand and shall be secured by this Deed of Trust. All reports and other evidence and work papers relating to such inspections, appraisals, and assessments, shall be and remain the sole property of Lender, and Trustor hereby waives any right which Trustor may have by agreement or by operation of law to receive an original or duplicate thereof. Any appraisal or assessment may, at Lender's sole election, be relied upon by Lender in taking any action Lender deems to be necessary or appropriate in connection with the enforcement of his rights and exercise of remedies under or by virtue of this Deed of Trust, or under any obligation secured hereby, or under any separate obligation pertaining to the Property, or in connection with the protection, maintenance, preservation, remediation, restoration, or repair of the Property. Unless Lender otherwise expressly declares in writing, neither said appraisal nor assessment shall constitute conclusive evidence of the value or condition of the Property or as a representation or warranty by Lender as to the value or condition of the Property, and may not be used or relied upon by Trustor for any purpose.

THE UNDERSIGNED TRUSTOR REQUESTS THAT A COPY OF ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE HEREUNDER BE MAILED TO TRUSTOR AT TRUSTOR'S ADDRESS SET FORTH ABOVE.

<div align="center">"TRUSTOR"</div>

American Open Space Remedies LLC,
a California limited liability company

By:    Beaumont 1600, LLC,
       a California limited liability company
Its:    Manager

By:    _____
       Scott H. Krentel
Its:    Manager

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                                  )
County of _Riverside_____            )

On _March 30, 2022_, before me, _____AW Ensign_____, a Notary Public, personally appeared **Scott H. Krentel**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

A. W. ENSIGN
COMM. #2236881
NOTARY PUBLIC - CALIFORNIA
RIVERSIDE COUNTY
My Comm. Expires May 2, 2022

## GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL
ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED
READS AS FOLLOWS:

NAME OF NOTARY: A W. Ensign

COMMISSION NO: 2236881

PLACE OF EXECUTION: Riverside, CA

DATE COMMISSION EXPIRES: 5/2/2022

COUNTY OF COMMISSION: Riverside

MANUFACTURER/VENDER NO: RSE1

SIGNATURE: Crystal Brown

_____DATE: 3/31/2022
Stewart Title-Riverside

EXHIBIT 5                           Page 119 of 144

## EXHIBIT "A"

## LEGAL DESCRIPTION

The land referred to herein is situated in the State of California, County of Riverside Unincorporated Area and described as follows:

Parcel 1:

Lots 6, 7 and 8 in Section 8, Township 3 South, Range 1 West, San Bernardino Base and Meridian, in an unincorporated area of the County of Riverside, State of California, according to the official government plat thereof.

Excepting therefrom, that portion of Lots 7 and 8, conveyed to Archie C. Johnson and Evelyn D. Johnson, in deed recorded January 22, 1963 as Instrument No. 63-7083 of Official Records, described as follows:

Beginning at the northeast corner of said Lot 8; thence Westerly on the north line of said Lot 8, 400.00 feet; thence Southerly, at right angles to said northerly line, 900.00 feet; thence Easterly, parallel with the northerly line of said Lots 7 and 8, 1000.00 feet to a point in said Lot 7; thence Northerly, at right angles, 900.00 feet to a point on the north line of said Lot 7; thence Westerly on said north line 600.00 feet to the point of beginning.

Also excepting from Lot 7, an undivided 1/20 interest in all oil and mineral rights and deposits, as reserved by Ed C. Martin, Birdie F. Martin and James E. Thompson, in deed recorded June 15, 1946 in Book 756, Page 217 of Official Records.

(APN: 424-060-006; -007 and -009)

Parcel 2:

Intentionally Deleted.

Parcel 3:

Intentionally Deleted.

Parcel 4:

Intentionally Deleted.

Parcel 5:

Intentionally Deleted.

Parcel 6:

Intentionally Deleted.

Parcel 6A:

Intentionally Deleted.

Parcel 7:

That portion of Government Lots 7 and 8 of Fractional Section 8, Township 3 South, Range 1 West, San Bernardino Base and Meridian, in an unincorporated area of the County of Riverside, State of California, according to the official government plat thereof, described as follows:

Beginning at the northeast corner of said Lot 8; thence Westerly 400.00 feet on the northerly line of said Government Lot 8; thence Southerly 900.00 feet at right angles to said northerly line; thence Easterly 1000.00 feet, parallel with the northerly line of said Lots, to a point in said Lot 7; thence Northerly 900.00 feet, at right angles, to a point on the northerly line of said Lot 7; thence Westerly 600.00 feet on said northerly line, to the point of beginning.

Also excepting from Lot 7, an undivided 1/20 interest in all oil and mineral rights and deposits, as reserved by Ed C. Martin, Birdie F. Martin and James E. Thompson, in deed recorded June 15, 1946 in Book 756, Page 217 of Official Records.

(APN: 424-060-008)

Parcel 8:

Lots 1 and 2 in Section 8, Township 3 South, Range 1 West, San Bernardino Base and Meridian, in an unincorporated area of the County of Riverside, State of California, according to the official government plat thereof.

Excepting therefrom, that portion included in a public highway on the North.

(APN: 424-060-001)

Parcel 8A:

An easement for ingress and egress over and across the Northerly 40.00 feet of Government Lot 3, Section 8, Township 3 South, San Bernardino Base and Meridian, in an unincorporated area of the County of Riverside, State of California, according to the official government plat thereof, as reserved in document recorded October 23, 1970 as Instrument No. 106752 of Official Records.

(APN: Portion of 424-060-002)

**EXHIBIT "B"**
**(Permitted Toxic Materials)**

Trustor shall not permit there to be any hazardous and/or toxic materials at, on, in, around and/or under the Property and improvements, other than those as used in the regular course of business and for which Trustor (or the user) has licenses from the proper authority (if required by applicable law), such as a government agency or regulatory body, and further, notwithstanding the foregoing, Trustor hereby expressly covenants, represents and warrants to Lender that all such materials shall be used or stored in strict compliance with the provisions as set forth in paragraph (6)(c) of the Deed of Trust for compliance with all state and federal laws, rules, regulations, relating to or governing the use, storage and/or presence of toxic and/or Hazardous Substances Indemnity (as defined below).

Notwithstanding any provisions to the contrary contained in this Exhibit "B" and paragraph (6)(c) of the Deed of Trust, in the event Trustor has executed any unsecured Hazardous Substances Indemnity Agreement ("Hazardous Substances Indemnity") in favor of Lender pertaining to the presence or release of hazardous and/or toxic materials or other similar substances upon, within or from the Property, then the covenants, duties and liabilities of Trustor, and the rights and remedies of Lender with respect to the subject of hazardous and/or toxic materials, shall be governed by the provisions of the Hazardous Substances Indemnity in addition to the provisions of the Deed of Trust; provided, however, that the provisions of said Hazardous Substances Indemnity shall prevail and exclusively govern the subject matter to the extent of any duplication, conflict or inconsistency between such provisions and the provisions of this Deed of Trust, and payment or performance of Trustor's obligations under said Hazardous Substances Indemnity shall not be secured by this Deed of Trust, but shall be and remain unsecured obligations of Trustor.

EXHIBIT 5

**Exhibit 7**

EXHIBIT 5                                          Page 123 of 144

## CONTINUING GUARANTY

The undersigned, **SCOTT H. KRENTEL** ("Guarantor"), at the solicitation of **American Open Space Remedies LLC**, a California limited liability company ("Borrower"), in the outstanding principal amount of Thirteen Million and xx/100 Dollars ($13,000,000.00) (the "Loan"), requests that **AMINAM, LLC**, a California limited liability company ("Lender"), extend Credit (as such term is defined below) to Borrower. In order to induce Lender to extend Credit to Borrower and in consideration of Credit heretofore, now or hereafter granted to Borrower by Lender, Guarantor agrees as follows:

1.      The term "Credit" is used throughout this Continuing Guaranty ("Guaranty") in its most comprehensive sense and means and includes, without limitation, any and all loans, advances, debts, obligations and liabilities of any kind or nature owed by Borrower to Lender, heretofore, now, or hereafter made, incurred or created, arising from the Settlement Promissory Note of even date herewith, made by Borrower in favor of Lender, in the principal amount of Thirteen Million and 00/100 Dollars ($13,000,000.00) ("Note"), whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, secured or unsecured, whether on original, renewed, extended or revised terms (including, without limitation, those evidenced by new or additional instruments or agreements or those changing the applicable rate of interest or which release any obligor with respect thereto), whether principal, interest, fees, or expenses, whether Borrower may be liable individually or jointly with others, whether recovery upon such indebtedness may be or hereafter becomes barred by any statute of limitations, and whether such indebtedness may be or hereafter becomes invalid or otherwise unenforceable. In the event a petition under the United States Bankruptcy Code is filed by or against Borrower, the term "Borrower" shall also mean and include Borrower in its status as a debtor, debtor-in-possession and/or reorganized debtor under the United States Bankruptcy Code.

2.      This Guaranty is unsecured and is not collateralized by the Property (as defined in the Deed of Trust securing the Note) or any other property.

3.      If there is more than a single entity or person included in the terms "Guarantor" or "Borrower," respectively, each reference herein to such terms shall mean any and all, and one or more of such entities and persons both jointly and severally, and (b) if more than one person or entity executes this Guaranty, the obligations and liabilities hereunder of Guarantors are and shall be both joint and several. If Borrower is a corporation, partnership, limited liability company or association, each reference herein to the term "Borrower" shall include any successor entity to Borrower. If there is more than one guaranty of the obligations of Borrower, the liabilities of all Guarantors are joint and several. As used in this Guaranty, neuter terms include the masculine and feminine, and vice versa.

4.      Guarantor unconditionally guarantees and agrees to pay to Lender, subsequent to an Event of Default under the Note (as defined therein), on demand, in lawful money of the United States of America, all amounts now and/or hereafter owed by Borrower to Lender in connection with the Credit, under the Note or otherwise. In addition to such liability, Guarantor agrees to bear and be liable to Lender for the interest and expenses enumerated in Paragraph 20 hereof. This Guaranty is a guaranty of payment and not of collection.

5.      Either before or after revocation hereof, Guarantor authorizes Lender at its sole discretion, with or without notice, and without affecting Guarantor's continuing liability hereunder, from time to time to (a) change the time or manner of payment of any Credit by modification, renewal, extension, acceleration or otherwise, (b) amend or change any other provision of any Credit including the rate of interest thereon, (c) accept partial payment on any Credit, (d) accept new or additional instruments, agreements or documents relative to any Credit, (e) release, substitute or add one or more endorsers,

12101A-Guaranty(Junior).dou

1

EXHIBIT 5                                    Page 124 of 144

cosigners or guarantors for any Credit, (f) enter into forbearances with Borrower even though the result of such forbearance is to increase the amount of accrued and unpaid interest, cost, fees and/or expenses attributable to the Credit, (g) amend or modify the terms of any guaranty executed by a co-guarantor, including the maximum liability thereunder, (h) obtain collateral for the payment of any Credit and/or any guaranty thereof, (i) waive, release, exchange, substitute, or modify, in whole or in part, existing, after-acquired or later acquired collateral securing payment of the Credit or any guaranty therefor on such terms as Lender at its sole discretion shall determine, (j) subordinate payment of all or any part of the Credit to other creditors of Borrower or other persons on such terms as Lender deems appropriate, (k) apply any sums received from Borrower, any other guarantor, endorser or cosigner or from the sale or collection of collateral or its proceeds to any indebtedness whatsoever in any order and regardless of whether or not such indebtedness is guaranteed hereby, is secured by collateral, or is due and payable, (l) without limiting the foregoing, apply any sums received from Guarantor or from the sale of collateral granted by Guarantor to any, all, or any portion of the Credit in any order regardless of whether or not the Credit is secured by collateral or is due and payable, and (m) exercise any right or remedy it may have with respect to any Credit or any collateral securing any Credit, this Guaranty or any other guaranty, including, without limitation, bidding and purchasing at any sale of any such collateral, and compromising, collecting or otherwise liquidating any collateral or any Credit.

6.      Guarantor acknowledges that Guarantor may have certain rights under applicable law which, if not waived by Guarantor, might provide Guarantor with defenses against Guarantors' liability under this Guaranty.    Among those rights, are certain rights of subrogation, reimbursement, indemnification and contribution, and rights provided in Sections 2787 to 2855, inclusive, of the California Civil Code.  Guarantor waives all of Guarantor's rights of subrogation, reimbursement, indemnification, and contribution, and any other rights and defenses that are or may become available to Guarantor by reason of any or all of California Civil Code sections 2787 to 2855, inclusive, including, without limitation, Guarantor's rights:

(a)      To require Lender to notify Guarantor of any default by Borrower, provide Guarantor with notice of any sale or other disposition of security for any Credit, disclose information with respect to the Credit, Borrower, or any other guarantor, co-signer or endorser, or with respect to any collateral;

(b)      That Guarantor's obligation under this Guaranty must be commensurate with that of Borrower;

(c)      To be discharged based upon the absence of any liability of Borrower, at any time, by virtue of operation of law, or otherwise, or due to any other disability or defense of Borrower or any other guarantor, endorser or co-signer;

(d)      To be discharged if any of the terms, conditions or provisions of the Credit are altered in any respect;

(e)      To be discharged upon acceptance by Lender of anything in partial satisfaction of the Credit, and/or if Lender designates the portion of the Credit to be satisfied;

(f)      To be discharged upon any modification of the Credit or the release by Lender of Borrower or any other guarantor, endorser or co-signer;

(g)      To require Lender to proceed against Borrower, or any other guarantor, endorser, co-signer, or other person, or to pursue or refrain from pursuing any other remedy in Lender's power;

(h)     To receive the benefit of or participate in any and all security for repayment and/or performance of the Credit;

(i)     To have any security for the Credit first applied to satisfy or discharge the Credit;

(j)     That any arbitration award rendered against Borrower not constitute an award against Guarantor;

(k)     To be discharged based upon any failure by Lender to perfect or continue perfection of any lien, use due diligence to collect all or any part of any Credit, or if recovery against Borrower becomes barred by any statute of limitations, or if Borrower is not liable for any deficiency after Lender realizes upon any collateral; and

(l)     To be discharged due to the release or discharge of any collateral for any Credit or guaranty, or relating to the validity, value or enforceability of any collateral.

7.     Guarantor also waives all rights and defenses that Guarantor may have because the Borrower's debt is secured by real property, and/or arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the principal, including without limitation, (i) any defense to the recovery by Lender against Guarantor of any deficiency or otherwise to the enforcement of this Guaranty or any security for this Guaranty based upon Lender's election of any remedy against Guarantor or Borrower, including the defense to enforcement of this Guaranty (the so-called "Gradsky" defense) which, absent this waiver, Guarantor would have by virtue of an election by Lender to conduct a non-judicial foreclosure sale (also known as a "trustee's sale") of any real property security for the Credit, it being understood by Guarantor that any such non-judicial foreclosure sale will destroy, by operation of California Code of Civil Procedure ("CCP") section 580d or otherwise, all rights of any party to a deficiency judgment against Borrower and, as a consequence, will destroy all rights that Guarantor would otherwise have (including the right of subrogation, the right of reimbursement, and the right of contribution) to proceed against Borrower; (ii) any defense or benefits that may be derived from CCP sections 580a, 580b, 580d or 726, or comparable provisions of the laws of any other jurisdiction and all other anti-deficiency and one form of action defenses under the laws of California and any other jurisdiction; and (iii) any right to a fair value hearing under CCP section 580a, or any other similar law, to determine the size of any deficiency owing (for which Guarantor would be liable hereunder) following a non-judicial foreclosure sale. This means, among other things: (1) Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged or assigned by Borrower; (2) If Lender forecloses on any real property collateral pledged by the Borrower: (A) The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, (B) Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses directly or indirectly based upon Section 580a, 580b, 580d, or 726 of the CCP.

8.     Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance, notices of the existence, creation or increase of any new or additional credit, notice of sale in regard to judicial or non-judicial foreclosure of real or personal property collateral and all other notices and demands of any kind or nature whatsoever except as expressly set forth herein.

EXHIBIT 5                              Page 126 of 144

9.    Notwithstanding any foreclosure of the lien of any security agreements, deeds of trust, mortgages or other security instruments, with respect to the Credit or any other guaranty, whether by the exercise of the power of sale contained therein, by any action for judicial foreclosure, or by any acceptance of a deed or other transfer in lieu of foreclosure, whether or not such method of foreclosure or transfer in lieu of foreclosure was for a consideration equal to or greater than the fair market value of the security property, Guarantor shall remain bound under this Guaranty for the obligations of Borrower to Lender and shall be liable to Lender for any and all of the Credit remaining unpaid after any such foreclosure.

10.    Guarantor represents and warrants to Lender that: (a) Lender has made no representation to Guarantor in regard to Borrower, the Credit or any matters pertaining thereto, upon which Guarantor is relying in giving this Guaranty; and (b) Guarantor has established adequate means and assumes the responsibility for being and keeping informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of nonpayment of the credit which diligent inquiry would reveal, and Lender shall have no duty to advise Guarantor of information known to Lender regarding such condition or any such circumstance.

11.    In addition to all liens upon and rights of setoff against the money, securities or other property of Guarantor given to Lender by law or otherwise as security for this Guaranty, Guarantor hereby pledges to Lender and grants to Lender a security interest in, and Lender shall have a right of setoff against, all money, securities and other property of Guarantor now or hereafter in the possession of or on deposit with Lender, whether held in a general or special account or deposit or for safekeeping or otherwise; and each such security interest or right of setoff may be exercised without demand upon, or notice to, Guarantor. No action or lack of action by Lender with respect to any security interest or right of setoff or otherwise shall be deemed a waiver thereof, and every right of setoff or security interest or otherwise shall continue in full force and effect until specifically released by Lender in writing. The security interests created hereby shall secure all of Guarantor's obligations to Lender under this Guaranty or any subsequent guaranty executed by Guarantor.

12.    Any and all indebtedness of Borrower now or hereafter owed to Guarantor and all claims of Guarantor against Borrower, whenever arising, are hereby subordinated to the Credit and assigned to Lender as additional collateral. If Lender so requests, any note or other instrument evidencing such indebtedness and all claims of Guarantor against Borrower shall be delivered to Lender, and such indebtedness and all claims of Guarantor against Borrower shall be collected, enforced and received by Guarantor as trustee for Lender and be paid over to Lender on account of the Credit but without reducing or affecting in any manner the liability of Guarantor hereunder. Should Guarantor fail to collect proceeds of debt owed to it by Borrower and pay the proceeds to Lender, Lender, as Guarantor's attorney-in-fact may do such acts and sign such documents in Guarantor's name as Lender considers necessary, at its discretion, to effect such collection, and Guarantor hereby irrevocably appoints Lender as Guarantor's attorney-in-fact for such purposes. If Borrower is a corporation, limited liability company or partnership, Guarantor will not withdraw or accept, without Lender's prior written consent, any return of any capital invested or equity interest in Borrower.

13.    Guarantor agrees that to the extent Borrower makes a payment or payments or is credited for any payment or payments made for the account of or on behalf of Borrower to Lender, which payment or payments, or any part thereof, are subsequently invalidated, determined to be fraudulent or preferential, voided, set aside and/or required to be repaid to any trustee, receiver, assignee or any other party whether under any Bankruptcy, State or Federal Law, common law or equitable cause or otherwise, then to the extent thereof, the obligation or part thereof intended to be satisfied thereby, together with the guaranty thereof hereunder, shall be revived, reinstated and continued in full force and effect as if said payment or payments had not originally been made by or for the account of or on behalf of Borrower.

14. Guarantor agrees that to the extent Guarantor makes a payment or payments or is credited for any payment or payments made for the account of or on behalf of Guarantor to Lender, which payment or payments, or any part thereof, are subsequently invalidated, determined to be fraudulent or preferential, voided, set aside and/or required to be repaid to any trustee, receiver, assignee or any other party whether under any Bankruptcy, State or Federal Law, common law or equitable cause or otherwise, then to the extent thereof, the obligation or part thereof intended to be satisfied thereby, shall be revived, reinstated and continued in full force and effect as if said payment or payments had not originally been made by or for the account of or on behalf of Guarantor.

15. Guarantor's obligations hereunder are not contingent upon and are independent of the obligations of Borrower, or any other guarantor or surety of the Credit. This Guaranty is not made in consideration of the liability of any other guarantor or surety of the Credit. The release or death of any guarantor of the Credit or the revocation of any guaranty shall not release or otherwise affect the liability of any other non-revoking guarantor. A separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or any other guarantor or whether Borrower or any other guarantor be joined in any such action or actions.

16. To the maximum extent permitted by law, Guarantor specifically waives the benefit of the statute of limitations affecting its liability hereunder or the enforcement hereof, or the collection of any Credit, including, without limiting the foregoing, any and all special statutes of limitations arising out of CCP sections 580a or 726(b). Any partial payment by Borrower which operates to toll any statute of limitations as to Borrower shall likewise toll the statute of limitations as to Guarantor.

17. Any married person who signs this Guaranty expressly agrees that recourse may be had against his/her separate property as well as all community property over which that person has a power of management and control, for all of his/her obligations hereunder.

18. Should any one or more provisions of this Guaranty be determined to be illegal or unenforceable, all other provisions shall remain effective.

19. Lender may, with or without notice, assign this Guaranty in whole or in part. This Guaranty shall inure to the benefit of Lender, its successors and assigns, and shall bind Guarantor and Guarantor's heirs, executors, administrators, representatives, successors and assigns.

20. Guarantor agrees to pay to Lender, on demand, reasonable attorneys' fees and all other costs and expenses which may be incurred by Lender in the collection or attempted collection from Borrower of any Credit and/or in the interpretation, enforcement or attempted enforcement by Lender of this Guaranty or any collateral therefor, including, but not limited to, proceedings in any bankruptcy or other insolvency case or other proceedings touching the Credit or this Guaranty, or both, in any manner, whether or not legal proceedings or suit are instituted, together with interest thereon at the rate applicable to the Credit and including, without limitation, all attorneys' fees and related costs of enforcement of any and all judgments and awards and upon any appeal relating thereto.

21. Guarantor warrants and represents to Lender that:

(a) All financial statements and other financial information furnished or to be furnished to Lender by Guarantor are or will be true and correct and do and will fairly represent the financial condition of Guarantor (including all contingent liabilities) as of the dates thereof, and

(b)    There has been no material adverse change in Guarantor's financial condition since the dates of the financial statements and other information furnished to Lender, except as previously disclosed to Lender in writing.

22.    Lender may declare Guarantor in default under this Guaranty upon the occurrence of any of the following events:

(a)    Guarantor fails to pay or perform any of Guarantor's obligations under this Guaranty when due; or

(b)    Any representation or warranty made or given by Guarantor to Lender proves to be false or misleading in any material respect; or

(c)    A petition or action for relief shall be filed by or against Guarantor, pursuant to the Federal Bankruptcy Code (Title 11, U.S. Codes) in effect from time to time, or under any other law relating to bankruptcy, insolvency, reorganization, moratorium, creditor composition, arrangement or other relief from debts; the appointment of a receiver, trustee, custodian or liquidator of or for any property of Guarantor; or upon the death, incapacity or insolvency of Guarantor, provided, however, that in the event Guarantor dies, Lender shall not declare a default hereunder if, within thirty (30) days of Guarantor's death, Borrower provides Lender a new guarantor to obligate itself under this Guaranty (although such new guarantor shall not preclude or prohibit Lender from filing a claim in any probate estate of the deceased Guarantor or seeking to enforce this Guaranty against the estate of such deceased Guarantor), which new guarantor meets the financial and other credit standards for a guarantor of the type of credit guaranteed hereunder, and executes such documents and agreements as Lender may request to assume the obligations of such deceased Guarantor hereunder; or

(d)    Guarantor revokes or attempts to revoke this Guaranty.

In the event Guarantor is in default under this Guaranty, Lender may, in its sole and absolute discretion, declare the entire amount guaranteed hereunder, and all other amounts and payments due hereunder, immediately due and payable, without further notice or demand.

23    If Borrower is a corporation, limited liability company or partnership, Lender need not inquire into the power of Borrower or the authority of its officers, directors, partners, agents, members or managers acting or purporting to act in its behalf, and any Credit granted in reliance upon the purported exercise of such power or authority is guaranteed hereunder.

24.    Receipt of a true copy of this Guaranty is hereby acknowledged by each Guarantor. Guarantor understands and agrees that Lender's acceptance of this Guaranty shall not constitute a commitment of any nature whatsoever by Lender to extend, renew or hereafter extend credit to Borrower. Guarantor agrees that this Guaranty shall be effective with or without notice from Lender of its acceptance of this Guaranty.

25.    If Guarantor has executed more than one Guaranty of any or all indebtedness of Borrower owed to Lender, any limits of liability thereunder and hereunder shall be cumulative, and a subsequent guaranty executed by Guarantor shall not supersede or replace this Guaranty unless such subsequent guaranty so provides.

26.    Any controversy, dispute or claim between the Lender and undersigned based upon, arising out of, or in any way relating to: (i) this Guaranty or any supplement or amendment thereto; or (ii) any other present or future instrument or agreement between the parties hereto; or (iii) any breach,

12161A-Guaranty(Junior).doc                           6

EXHIBIT 5                           Page 129 of 144

conduct, acts or omissions of any of the parties hereto or any of their respective directors, officers, employees, agents, attorneys or any other person affiliated with or representing any of the parties hereto; in each of the foregoing cases, whether sounding in contract or tort or otherwise (a "Dispute") shall be resolved exclusively by a judicial reference in accordance with Sections 638 et seq. of the CCP and Rules 3.900 - 3.910 of the California Rules of Court ("CRC"), subject to the following terms and conditions. (All references in this Section to provisions of the CCP and CRC shall be deemed to include any and all successor provisions.)

(a)    The reference shall be a consensual general reference pursuant to CCP sections 638 and 644(a). Unless the parties otherwise agree in writing, the reference shall be to a single referee. The referee shall be a retired Judge of the Los Angeles County Superior Court or a retired Justice of the California Court of Appeals or California Supreme Court. Notwithstanding anything to the contrary herein, nothing in this Agreement shall be construed to limit the right of a party, pending appointment of the referee, to seek and obtain writ of attachment, writ of possession, appointment of a receiver, temporary restraining order and/or preliminary injunction, or similar provisional remedy.

(b)    Within fifteen (15) days after a party gives written notice to all other parties to a Dispute that the Dispute exists, all parties to the Dispute shall attempt to agree on the individual to be appointed as referee. If the parties are unable to agree on the individual to be appointed as referee, the referee shall be appointed, upon noticed motion or ex parte application by any party, by the Los Angeles County Superior Court ("Superior Court") in accordance with the CCP section 640, subject to all rights of the parties to challenge or object to the appointment, including without limitation the right to peremptory challenge under CCP section 170.6. If the referee (or any successor referee) appointed by the Superior Court is unable, or at any time becomes unable, to serve as referee in the Dispute, the Superior Court shall appoint a new referee as agreed to by the parties or, if the parties cannot agree, in accordance with CCP section 640, which new referee shall then have the same powers, and be subject to the same terms and conditions, as the predecessor referee.

(c)    Venue for all proceedings before the referee, and for any Superior Court proceeding for the appointment of the referee, shall be exclusively within the County of Los Angeles, State of California. The referee shall have the exclusive power to determine whether a Dispute is subject to judicial reference pursuant to this section. Trial, and all proceedings and hearings on dispositive motions, conducted before the referee shall be conducted in the presence of, and shall be transcribed by, a court reporter, unless otherwise agreed to in writing by all parties to the proceeding. The referee shall issue a written statement of decision, which shall be subject to objections of the parties pursuant to CRC Rule 3.1590 as if the statement of decision were issued by the Superior Court. The referee's powers include, in addition to those set forth in CCP sections 638, et seq., and CRC Rules 3.900 - 3.910, (i) the power to grant provisional relief, including without limitation writ of attachment, writ of possession, appointment of a receiver, temporary restraining order and/or preliminary injunction, and (ii) the power to hear and resolve all post-trial matters in connection with the Dispute that would otherwise be determined by the Superior Court, including without limitation motions for new trial, reconsideration, to vacate judgment, to stay execution or enforcement, to tax costs, and/or for attorneys' fees. The parties shall, subject to the referee's power to award attorneys' fees and costs to the prevailing party, bear equally the costs of the referenced proceeding, including without limitation the fees and costs of the referee and the court reporter.

(d)    The parties acknowledge that (i) the referee alone shall determine all issues of fact and/or law in the Dispute, without jury, (ii) the referee does not have the power to empanel a jury, (iii) the Superior Court shall enter judgment on the decision of the referee pursuant to CCP section 644(a) as if the decision were issued by the Superior Court, (iv) the decision of the referee shall not be subject to review by the Superior Court, and (v) the decision of the referee, once entered as a judgment by the

Superior Court, shall be binding, final and conclusive, shall have the full force and effect of a judgment of the Superior Court, and shall be subject to appeal to the same extent as a judgment of the Superior Court.

EACH PARTY HEREBY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY ACTION, CLAIM, LAWSUIT OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO: (i) THIS GUARANTY OR ANY SUPPLEMENT OR AMENDMENT THERETO; OR (ii) ANY OTHER PRESENT OR FUTURE INSTRUMENT OR AGREEMENT BETWEEN ANY OF THE PARTIES HERETO; (iii) ANY BREACH, CONDUCT, ACTS OR OMISSIONS OF ANY OF THE PARTIES HERETO OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, ATTORNEYS OR ANY OTHER PERSON AFFILIATED WITH OR REPRESENTING ANY OF THE PARTIES HERETO; IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE.

27.    Guarantor waives all rights to interpose any setoffs or counterclaims of any nature in any action or proceeding instituted by Lender with respect to this Guaranty, the collateral therefor, or any matter arising therefrom or relating thereto and the posting of any bond which may otherwise be required, and waives any and all benefits of cross-demands pursuant to Section 431.70 of the CCP.

28.    Guarantor hereby irrevocably submits and consents to the jurisdiction of any federal or state court of competent jurisdiction within California in connection with any action or proceeding arising out of or relating to this Guaranty. In any such litigation, Guarantor consents to service of process by any means authorized by California or federal law or as otherwise agreed in writing between Lender and Guarantor.

29.    All rights, remedies, powers and benefits granted to Lender under this Guaranty, the Credit, any oral or other written agreement or applicable law whether expressly granted or implied in law or otherwise, are cumulative and not exclusive, and are enforceable alternatively, successively, or concurrently on any one or more occasions at Lender's discretion.

30.    Lender shall not, by any act, delay, omission or otherwise be deemed to have expressly or impliedly waived any security interest granted to Lender hereunder or Lender's rights, powers and/or remedies hereunder (including any right of setoff) unless such waiver shall be in writing and signed by an authorized officer of Lender. Any such waiver shall be enforceable only to the extent specifically set forth therein. A waiver by Lender of any default, right, power and/or remedy on any one occasion shall not be construed as a bar to or waiver of any such default, right, power and/or remedy which Lender would otherwise have on any future occasion whether similar in kind or otherwise. Any failure by Lender to file or enforce a claim against the estate (whether in administration, bankruptcy, probate or other proceeding) of Borrower or of any others, shall not affect Guarantor's liability hereunder.

31.    Neither this Guaranty nor any related agreement, document or instrument nor any provision hereof or thereof shall be amended, modified or discharged orally or by course of conduct, but only by a written agreement signed by an authorized officer of Lender expressly referring to this Guaranty and to the provisions so amended, modified or discharged.

32.    Lender's books and records showing the account(s) between Lender and Borrower shall be admissible in evidence in any action or proceeding as prima facie proof of the items set forth therein. Lender's statements rendered to Borrower, to the extent to which no objection is made within thirty (30) days after date thereof, shall be deemed conclusively correct and constitute an account stated absent manifest error, which shall be binding on Guarantor whether or not Guarantor receives a copy of any such statement or notice thereof.

11161A-Guaranty(Junior).doc                8

EXHIBIT 5                                    Page 131 of 144

33.     This is a continuing guaranty of the Credit, including those arising after any repayment and reborrowing and under any successive and future transactions which may increase, renew or continue the original Credit, and, to the greatest extent of applicable law, may not be revoked.

34.     The provisions of this Guaranty shall be construed and interpreted and all rights and obligations hereunder determined in accordance with the laws of the State of California.

35.     GUARANTOR ACKNOWLEDGES THAT LENDER HAS OR MAY IN THE FUTURE EXTEND CREDIT TO BORROWER IN RELIANCE ON GUARANTOR'S UNCONDITIONAL PROMISE TO REPAY ANY AND ALL CREDIT AND LENDER IS RELYING ON THE WAIVERS, WARRANTIES AND PROMISES MADE BY GUARANTOR IN THIS GUARANTY. GUARANTOR AGREES THAT EACH OF THE WAIVERS, WARRANTIES AND PROMISES SET FORTH IN THIS GUARANTY IS MADE WITH GUARANTOR'S UNDERSTANDING OF THEIR SIGNIFICANCE AND CONSEQUENCES AND THAT THEY ARE REASONABLE. IF ANY WAIVERS, WARRANTIES AND PROMISES ARE DETERMINED TO BE CONTRARY TO ANY APPLICABLE LAW OR PUBLIC POLICY, SUCH WAIVERS, WARRANTIES AND PROMISES SHALL BE EFFECTIVE TO THE MAXIMUM EXTENT PERMITTED BY LAW. BEFORE SIGNING THE GUARANTY, GUARANTOR HAS EITHER SOUGHT THE ADVICE OF COUNSEL TO EXPLAIN THE WAIVERS OF ITS RIGHTS AND DEFENSES AS STATED HEREIN AND THE EFFECT THEREOF, OR HAS HAD THE OPPORTUNITY TO SEEK SUCH COUNSEL, AND IN ANY EVENT, INTENDS THIS GUARANTY TO BE AS UNRESTRICTED AS POSSIBLE. GUARANTOR THEREFORE HAS CONSCIOUSLY AND INTENTIONALLY WAIVED ALL DEFENSES OF GUARANTOR AND RIGHTS WHICH COULD EXONERATE GUARANTOR HEREUNDER TO THE FULL EXTENT PERMITTED BY THE LAWS OF THE STATE OF CALIFORNIA, WHETHER OR NOT EACH AND EVERY DEFENSE, RIGHT OR WAIVER IS EXPLAINED OR DESCRIBED IN DETAIL IN THIS GUARANTY.

36.     GUARANTOR ACKNOWLEDGES THAT NEITHER LENDER NOR ANY OF LENDER'S OFFICERS OR EMPLOYEES HAVE MADE ANY PROMISE OR REPRESENTATION, NOT INCORPORATED HEREIN, WHETHER ORAL, WRITTEN OR IMPLIED, TO CAUSE GUARANTOR TO SIGN THIS GUARANTY. GUARANTOR IS NOT SIGNING THIS GUARANTY IN RELIANCE ON ANY PROMISE, CONDITION OR THE ANTICIPATION OF THE OCCURRENCE OF ANY EVENT, AND THERE ARE NO ORAL UNDERSTANDINGS, STATEMENTS OR AGREEMENTS WHICH HAVE NOT BEEN INCLUDED IN THIS GUARANTY. GUARANTOR UNDERSTANDS THAT LENDER HAS THE RIGHT TO ENFORCE PAYMENT OF THE CREDIT AGAINST BORROWER OR GUARANTOR IN ANY ORDER AND LENDER IS NOT OBLIGATED TO OBTAIN ANY OTHER OR ADDITIONAL GUARANTORS OF THE CREDIT OR TO TAKE ANY OTHER COURSE OF ACTION.

EXHIBIT 5                                    Page 132 of 144

37.    This Guaranty constitutes the entire agreement between the parties with respect to the subject matter of this Guaranty, and any and all previous or contemporaneous correspondence, statements, or agreements by or between the parties hereto with respect to the subject matter of this Guaranty (but not previous or other guarantees given to Lender by Guarantor) are superseded hereby.  This Guaranty may be modified only by a written instrument signed by Guarantor and Lender.

Dated as of March 29, 2022                              GUARANTOR:

                                                       SCOTT H. KRENTEL

**Exhibit 8**

EXHIBIT 5                          Page 134 of 144

P.O. Box 23159
San Diego, CA 92193-3159

.

IMPORTANT INFORMATION
ENCLOSED



(11) 969 0024 8750 0963 3

**Mailed On:** 5/13/2024          **Order Number:** 0002990-01
**ClientID:** MtgLenderSvc29 FC **Reference Number:**    132568

AMERICAN OPEN SPACE REMEDIES LLC
BEAUMONT 1600, LLC
SCOTT H. KRENTEL
18022 COWAN, SUITE 103
IRVINE, CA 92614

GenericAddressInsert.doc                                                                              Rev. 12/19/2018

EXHIBIT 5                                    Page 135 of 144

**RECORDING REQUESTED BY**

WFG National-Default Services

**AND WHEN RECORDED MAIL TO**

**MORTGAGE LENDER SERVICES, INC.**
**7844 Madison Ave., Suite 145**
**Fair Oaks, CA 95628**

Page 1 of 3
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: MARIA VICTORIA #411

---

**Trustee Sale No.: 132568-1     Loan No.: Amer Open     Title Order No. 2468782CAD**
**APN 424-060-001;-006;-007;-008;-009**

Space above this line for recorder's use only

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
# IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$12,897,401.50** as of **5/07/2024** and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).



EXHIBIT 5                    Page 136 of 144

**Trustee Sale No.: 132568-1      Loan No.: Amer Open    Title Order No. 2468782CAD**

Following the expiration of the time period referred to in this paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: Liquid Funds, LLC c/o MORTGAGE LENDER SERVICES, 7844 Madison Ave., Suite 145, Fair Oaks, CA 95628, (916) 962-3453

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION. NOTICE IS HEREBY GIVEN THAT: MORTGAGE LENDER SERVICES is either the original Trustee, the duly appointed Trustee, substituted Trustee or acting as agent for the trustee or beneficiary under a Deed of Trust dated 03/29/2022, executed by AMERICAN OPEN SPACE REMEDIES LLC, as trustor, to secure obligations in favor of Beneficiary recorded on 03/31/2022 as Document No. 2022-0155985 of official records in the Office of the Recorder of Riverside County, California, describing land therein: as more fully described on said Deed of Trust; including the note(s) for the sum of $13,000,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

THE UNPAID PRINCIPAL BALANCE OF $12,723,359.00 WHICH BECAME DUE ON 03-31-2024 PLUS ACCRUED INTEREST, LATE CHARGES, ADVANCES, ATTORNEY FEES AND FORECLOSURE FEES.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

If this loan is subject to the terms of California Civil Code Section 2923.5, the required declaration is attached hereto and incorporated herein by reference.

EXHIBIT 5                            Page 137 of 144

**Trustee Sale No.: 132568-1    Loan No.: Amer Open    Title Order No. 2468782CAD**

**DATE: May 7, 2024**

**MORTGAGE LENDER SERVICES, as Trustee**

_Marsha Townsend_

**Marsha Townsend, Executive Vice President**

**MORTGAGE LENDER SERVICES.    MAY BE A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

EXHIBIT 5    Page 138 of 144

**Exhibit 9**

EXHIBIT 5                              Page 139 of 144

P.O. Box 23159
San Diego, CA 92193-3159

IMPORTANT INFORMATION
ENCLOSED



71 96900 2484 0858 9193 1

**Mailed On:** 7/15/2024          **Order Number:** 0003677-01
**ClientID:** Witkin000260  CE      **Reference Number:**   24-0142

American  Open Space Remedies LLC, a California limited liability company
18022 Cowan, Suite 103
Irvine, CA 92614

,

GenericAddressInsert.doc                                          Rev. 12/19/2018

EXHIBIT 5                                    Page 140 of 144

06/25/2024 09:39 AM Fees: $104.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

RECORDING REQUESTED BY:

**WFG National-Default Services**

WHEN RECORDED MAIL TO:      .

**Law Offices of Richard G. Witkin APC**
**5805 Sepulveda Boulevard, Suite 670**
**Sherman Oaks, California 91411**
2491146CAD

\*\*This document was electronically submitted
to the County of Riverside for recording\*\*
Receipted by: DEYANIRA #293

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: 24-0142   Loan No.: American Open Space
APN: 424-060-001; Portion of 424-060-002; 424-060-006; 424-060-007; 424-060-008; 424-060-009

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $13,335,373.46 as of 06/24/2024, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**Aminam LLC**
**c/o Law Offices of Richard G. Witkin APC**



EXHIBIT 5                    Page 141 of 144

DOC #2024-0182968   Page 2 of 2

TS No.: 24-0142        Loan No.: American Open Space

### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

5805 Sepulveda Boulevard, Suite 670
Sherman Oaks, California 91411
Phone: (818) 845-4000

If you have any questions, you should contact a lawyer or the governmental agency that may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

**Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That Law Offices of Richard G. Witkin APC is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 03/29/2022, executed by American Open Space Remedies LLC, a California limited liability company, as Trustor, to secure certain obligations in favor of Aminam, LLC, a California limited liability company, as beneficiary, recorded 3/31/2022, as Instrument No. 2022-0155986, in Book n.a., Page n.a., of Official Records in the Office of the Recorder of Riverside County, State of California describing land therein as:

more fully described on said Deed of Trust,

including one Note(s) in the original sum of $13,000,000.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the Beneficiary of record; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

the entire outstanding balance of principal, in the amount of $13,000,000.00, all due and payable on March 31, 2024, along with interest thereon from and after said date plus advances, attorney fees and costs and trustee's fees and expenses.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

This communication may be considered as being from a debt collector. To the extent your original obligation was discharged or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party may retain rights under its security instrument, including the right to foreclose its lien.

Dated: 06/24/2024

Law Offices of Richard G. Witkin APC as Trustee and/or as
Agent for the Beneficiary

By: _____
    April Witkin, Trustee Officer

EXHIBIT 5                              Page 142 of 144

CERTIFIED MAIL

US POSTAGE
$05.54⁰

EXHIBIT 5                    Page 143 of 144



EXHIBIT 5                                      Page 144 of 144

# EXHIBIT 6

# EXHIBIT 6

# Central District of California
# Claims Register

### 8:24-bk-12885-SC American Open Space Remedies LLC

| | | |
|---|---|---|
| **Judge:** Scott C Clarkson | **Chapter:** 11 | |
| **Office:** Santa Ana | **Last Date to file claims:** | |
| **Trustee:** | **Last Date to file (Govt):** | |

| Creditor: (42290407)<br>FRANCHISE TAX BOARD<br>BANKRUPTCY SECTION MS A340<br>PO BOX 2952<br>SACRAMENTO CA 95812-2952 | **Claim No: 1**<br>*Original Filed Date*: 01/09/2025<br>*Original Entered Date*: 01/09/2025 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Rebecca Estonilo<br>*Modified:* |
|---|---|---|

Amount claimed: $3658.70

Priority claimed: $2617.69

*History:*

Details   ⚫   1-1    01/09/2025 Claim #1 filed by FRANCHISE TAX BOARD, Amount claimed: $3658.70 (Estonilo, Rebecca)

*Description:* (1-1) Claim Filed

*Remarks:*

| Creditor: (42355422)<br>Liquid Funds LLC<br>c/o Greenberg Glusker LLP<br>Brian L. Davidoff<br>2049 Century Park East, Ste. 2600<br>Los Angeles, CA 90067 | **Claim No: 2**<br>*Original Filed Date*: 02/27/2025<br>*Original Entered Date*: 02/27/2025 | *Status:*<br>*Filed by:* CR<br>*Entered by:* AUTP<br>*Modified:* |
|---|---|---|

Amount claimed: $14812045.24

Secured claimed: $14812045.24

*History:*

Details   ⚫   2-1    02/27/2025 Claim #2 filed by Liquid Funds LLC, Amount claimed: $14812045.24 (AUTP)

*Description:*

*Remarks:*

| Creditor: (42362142)<br>Aminam, LLC<br>William N. Lobel<br>Theodora Oringher PC<br>535 Anton Blvd., 9th Floor<br>Costa Mesa, CA 92626 | **Claim No: 3**<br>*Original Filed Date*: 03/03/2025<br>*Original Entered Date*: 03/03/2025 | *Status:*<br>*Filed by:* CR<br>*Entered by:* AUTP<br>*Modified:* |
|---|---|---|

Amount claimed: $14231205.48

Secured claimed: $14231205.48

*History:*

Details   ⚫   3-1    03/03/2025 Claim #3 filed by Aminam, LLC, Amount claimed: $14231205.48 (AUTP)

*Description:*

*Remarks:*

## Claims Register Summary

**Case Name:** American Open Space Remedies LLC
**Case Number:** 8:24-bk-12885-SC
**Chapter:** 11
**Date Filed:** 11/08/2024
**Total Number Of Claims:** 3

| Total Amount Claimed* | $29046909.42 |
|---|---|
| Total Amount Allowed* | |

*Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

| | Claimed | Allowed |
|---|---|---|

EXHIBIT 6            Page 1 of 2

| Secured | $29045230.72 | |
| Priority | $2617.69 | |
| Administrative | | |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/05/2025 10:43:27 | | | |
| **PACER Login:** | atty137019 | **Client Code:** | American.Open.Space-RPG |
| **Description:** | Claims Register | **Search Criteria:** | 8:24-bk-12885-SC Filed or Entered From: 1/1/2024 Filed or Entered To: 12/31/2025 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

# EXHIBIT 7

# EXHIBIT 7

**ASSETS VALUED AT CHAPTER 7 LIQUIDATION**

| CURRENT ASSETS | |
|---|---|
| a.        Cash (Based upon January 31, 2025 filed Monthly Operating Report) | $  67,026 |
| b.        Real Properties and Vacant Land (70% of $581,868,665 value as set forth on Schedule A/B) | $  407,308,060 |
| c.        Claims against Disputed Lenders | $ UNKNOWN |
| **TOTAL CURRENT ASSETS** | $  407,978,322 |

| | |
|---|---|
| Less:      Secured Claims (approximate and disputed as set forth on Schedule D and Proofs of Claim No. 2 and No. 3) | $(29,345,251) |
| Less:      Chapter 7 trustee's fees and expenses (estimated) | $(3,000,000) |
| Less:      Chapter 11 administrative expenses | $(1,000,000) |
| Less:      Priority claims, excluding administrative claims | $(2,618) |
| Less:      UST fees and clerk fees | $ UNKNOWN |
| **TOTAL DEBT** | **$(33,347,869)** |
| **(1) Balance for unsecured claims to Creditors** | **$374,630,453** |
| **(2) Total amount of unsecured claims (approximate as set forth on Schedule E/F)** | **Approx. $13,052,000** |
| **% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CHAPTER 7 LIQUIDATION:** | 100% |
| **% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THIS PLAN:** | 100% |

Explanation: Through the Plan, creditors will receive at least as much as they would receive In a chapter 7 liquidation scenario.

EXHIBIT 7

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 17701 Cowan, Lobby D, Suite 210, Irvine, CA 92614.

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S DISCLOSURE STATEMENT DESCRIBING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION DATED MARCH 7, 2025; DECLARATION OF SCOTT KRENTEL IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 7, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Keith Patrick Banner    kbanner@greenbergglusker.com, calendar@greenbergglusker.com;cmillerwatkins@greenbergglusker.com**
- **Reem J Bello    rbello@goeforlaw.com, kmurphy@goeforlaw.com**
- **Jeffrey W Broker    jbroker@brokerlaw.biz**
- **Brian L. Davidoff    bdavidoff@greenbergglusker.com, calendar@greenbergglusker.com;jking@greenbergglusker.com;cmillerwatkins@greenbergglusker.com**
- **Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com**
- **Kenneth Misken    Kenneth.M.Misken@usdoj.gov**
- **Cole F. Nicholas    cnicholas@greenbergglusker.com, calendar@greenbergglusker.com;cmillerwatkins@greenbergglusker.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

☐    Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL**:
On (*date*) March 7, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows: Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:
(state the method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) March 7, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- The Honorable Scott Clarkson, USBC, 411 West Fourth Street, Suite 5130, Santa Ana, CA 92701

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 7, 2025 | Susan C. Stein | | /s/Susan C. Stein |
| *Date* | *Printed Name* | | *Signature* |