Robert P. Goe – State Bar No. 137019
Reem J. Bello – State Bar No. 198840
**GOE FORSYTHE & HODGES LLP**
17701 Cowan, Building D, Suite 210
Irvine, CA 92614
Email: rgoe@goeforlaw.com
        rbello@goeforlaw.com
Telephone:  (949) 798-2460
Facsimile:   (949) 955-9437

Attorneys for American Open Space
Remedies, LLC

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SANTA ANA DIVISION

In re:

AMERICAN OPEN SPACE REMEDIES, LLC,

Debtor and Debtor-in-Possession.

Case No.  8:24-bk-12885-SC

Chapter 11 Proceeding

**DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION DATED MARCH 7, 2025; DECLARATION OF SCOTT KRENTEL IN SUPPORT THEREOF**

Disclosure Statement Hearing:
Date:          May 7, 2025
Time:          1:30 p.m.
Courtroom:   5C
                U. S. Bankruptcy Court
                411 West Fourth Street
                Santa Ana CA 92701

## **SUMMARY INFORMATION**

| | |
|---|---|
| Debtor: | American Open Space Remedies, LLC, a California limited liability company |
| **Recommendation:** | **The Debtor recommends that you vote in favor of the Plan.** |
| Vote Required to Accept the Plan: | Acceptance of the Plan requires an affirmative vote of two-thirds in amount and a majority in number of the Allowed Claims actually voted in each Class of Impaired Claims entitled to vote.  Entities holding Claims in Classes 3 and 4 are Impaired and entitled to vote. Classes 1 and 2 are Unimpaired and not entitled to vote.  If any of these Classes reject the Plan, however, the Bankruptcy Court nevertheless may confirm the Plan if the "cramdown" requirements of Bankruptcy Code section 1129(b) are satisfied with respect to such Class. |
| Voting Information: | If you are entitled to vote, you should have received a Ballot with this Disclosure Statement.  After completing and signing your Ballot, you should return it by mail or fax to: |

> Goe Forsythe & Hodges LLP
> Attn: Robert P. Goe
> 17701 Cowan, Suite 210
> Irvine, CA 92614
> Fax: (949) 955-9437

For your Ballot to be counted, it must be *received* not later than 5:00 p.m. Pacific Standard Time on [Date Not Yet Set].

| | |
|---|---|
| Treatment of Claims: | The treatment that Creditors will receive if the Bankruptcy Court confirms the Plan is set forth in the Plan and only summarized in this Disclosure Statement.  The terms of the Plan are controlling, and all Creditors and interested parties are urged to read the Plan in its entirety. |
| The Effective Date: | The Effective Date of the Plan shall be the date fifteen days following the entry of the Confirmation Order (which Confirmation Order shall be a Final Order) and the later of date of the close of escrow on either: (i) the sale of the Beaumont Property; (ii) refinance of the Beaumont Property; or (iii) joint venture on the Beaumont Property. |
| Questions: | All inquiries about the Plan and Disclosure Statement should be in writing and should be sent to: |

> Goe Forsythe & Hodges LLP
> Attn: Robert P. Goe
> 17701 Cowan, Suite 210
> Irvine, CA 92614

Fax: (949) 955-9437
Email: rgoe@goeforlaw.com

**IMPORTANT NOTICE:** **THE PLAN, DISCLOSURE STATEMENT, AND BALLOT CONTAIN IMPORTANT INFORMATION THAT IS NOT INCLUDED IN THIS SUMMARY. THAT INFORMATION COULD MATERIALLY AFFECT YOUR RIGHTS. YOU SHOULD THEREFORE READ THE PLAN, DISCLOSURE STATEMENT, AND BALLOT IN THEIR ENTIRETY. YOU ALSO SHOULD CONSULT WITH YOUR LEGAL AND FINANCIAL ADVISORS BEFORE VOTING ON THE PLAN.**

## I. PLAN OBJECTIVES AND OVERVIEW

**Section 1.1. General Objectives.** The Plan contemplates that the Debtor will administer its assets and distribute the proceeds and funds on hand to its Creditors and Interest Holders in accordance with the priorities set forth in the Bankruptcy Code. The Effective Date of the Plan shall be the date fifteen days following the entry of the Confirmation Order (which Confirmation Order shall be a Final Order) and the later of date of the close of escrow on either: (i) the sale of the Beaumont Property; (ii) refinance of the Beaumont Property; or (iii) joint venture on the Beaumont Property.

**Section 1.2. Disclosure Statement.** A detailed overview of the Case is set forth in the Disclosure Statement, and parties should review the Disclosure Statement carefully for an understanding of both the Case and the Plan.

## II. DEFINITIONS AND RULES OF INTERPRETATION

**Section 2.1. Definitions**. The following terms, when used in the Plan, have the meanings set forth below. Terms defined in the Disclosure Statement shall have the same meaning in the Plan.

"**Administrative Claim**" means a Claim for any expense of administration of the Chapter 11 Case under Section 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) or 507(b) of the Bankruptcy Code, including, without limitation: (a) the actual, necessary costs and expenses of preserving the Estate after the Petition Date; (b) Ordinary Course

Administrative Claims; (c) Professional Fee Claims; (d) 503(b)(9) Claims; and (d) all fees payable under 28 U.S.C. § 1930.

"**Administrative Claim Bar Date**" means, unless another date is set by the Court, the date that is thirty (30) days after the Effective Date, or, if such date is not a Business Day, the next Business Day thereafter; *provided, however*, that the Administrative Claim Bar Date does not apply to Professional Fee Claims.

"**Administrative Claim Objection Deadline**" means the deadline set forth in Section 3.6.

"**Administrative Claims Reserve**" means the reserve of Cash funded by the Debtor and maintained by the Debtor, for the benefit of Holders of Allowed Administrative Claims (exclusive of Holders of Professional Fee Claims, the reserve for which Holders shall be the Professional Fee Reserve) and Allowed Priority Tax Claims, in an amount equal to the Administrative and Priority Claims Estimate.  For the avoidance of doubt, when setting this reserve amount, the Debtor may take into consideration any amounts reserved by other parties on account of the same claims.

"**Administrative and Priority Claims Estimate**" means, as of the Effective Date, the face amount, exclusive of Professional Fee Claims, of all unpaid Claims that will be Allowed Administrative Claims and Allowed Priority Tax Claims.

"**Allowed**" or "**Allowed Claim**" means

(a)     With respect to a Claim arising prior to the Petition Date

(i)     Either: (1) a proof of Claim was timely filed; or (2) a proof of Claim is deemed timely filed either under Bankruptcy Rule 3003(b)(1)-(2) or by a Final Order; and

(ii)     Either: (1) the Claim is not a Disputed Claim; or (2) the Claim is allowed by a Final Order or under the Plan; and

(b)     With respect to a Claim arising on or after the Petition Date, a Claim allowed pursuant to Order of the Court.

Unless otherwise specified in the Plan, an Allowed Claim does not include interest on the Claim accruing after the Petition Date.  Moreover, any portion of a Claim that is satisfied, released or waived during the Case is not an Allowed Claim.

"**Assets**" means all assets of the Estate, including property of the Estate under section 541 of the Bankruptcy Code, and all rights and privileges of the Debtor and the Estate, including attorney-client and similar privileges.

"**Available Cash**" means: all Cash of the Debtor, including Cash realized from the disposition of Assets, recoveries from Causes of Action, or from any other source, and the interest earned on its funds, including on any reserves; less the amount of Cash estimated and reserved by Debtor to pay all unpaid Allowed Administrative Claims not paid from the Administrative Claims Reserve, Allowed Priority Tax Claims, Priority Non-Tax Claims, and any other costs to carry out the provisions of the Plan on and after the Effective Date.

"**Avoidance Action**" means a Cause of Action, adversary proceeding, lawsuit, or other proceeding arising under or relating to chapter 5 of the Bankruptcy Code, including without limitation sections 502(d), 506, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, or 553, or any fraudulent conveyance, fraudulent transfer, or preference laws, or any Cause of Action arising under or relating to any similar state law or federal law that constitutes, or the recoveries from which constitute, property of the Estate under Bankruptcy Code section 541, whether or not an adversary proceeding, lawsuit, or other proceeding is initiated before or after the Effective Date.

"**Ballot**" means the Ballot for accepting or rejecting the Plan.

"**Bankruptcy Code**" means title 11 of the United States Code, as applicable in the Case.

"**Bankruptcy Rules**" mean the Federal Rules of Bankruptcy Procedure, as applicable in the Case.

"**Business Day**" means any day other than a Saturday, Sunday, or a legal holiday (as defined in Bankruptcy Rule 9006(a)).

"**Case**" means the chapter 11 case of the Debtor bearing case number 8:24-bk-12885-SC.

"**Cash**" means cash or cash equivalents including but not limited to bank deposits, checks, wire transfers, readily marketable securities, instruments and obligations of the United States of America or instrumentalities thereof or other similar items.

"**Causes of Action**" means any and all claims, causes of action (including the State Court Lawsuit), cross-claims, counterclaims, third-party claims, indemnity claims, contribution claims, defenses, demands, rights, actions, debts, damages, judgments, remedies, Liens, indemnities, guarantees, suits, obligations, liabilities, accounts, offsets, recoupments, rights of subordination or subrogation, the right to object to Claims; all claims and rights pursuant to Section 362 of the Bankruptcy Code; all Avoidance Actions, powers, privileges, licenses, and franchises of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, whether arising before, on or after the Petition Date, including rights, actions, causes of action, and suits of the Debtor or the Estate, of any kind or character whatsoever, known or unknown, suspected or unsuspected, in contract or in tort, at law or in equity, or under any other theory of law.

"**Claim**" means a claim, whether or not asserted, as defined in Bankruptcy Code section 101(5) against the Debtor.

"**Claims Bar Date**" means March 5, 2025, which was the date(s) fixed for filing proofs of claim against the Estate pursuant to the Court's Order entered on January 9, 2025 [Docket No. 33].

"**Claims Objection Deadline**" means the date to be set by the Court by which objections to Claims must be filed.

"**Class(es)**" means each category or group of Holders of Claims or Equity Interests that has been designated as a class in Article III herein.

"**Confirmation Date**" means the date on which the Court enters the Confirmation Order on its docket.

"**Confirmation Hearing Date**" means the first date on which the Court holds the hearing to consider the confirmation of the Plan pursuant to Bankruptcy Code section 1128(a).

"**Confirmation Order**" means the Order of the Court confirming the Plan under Bankruptcy Code section 1129.

"**Court**" means the United States Bankruptcy Court for the Central District of California, or any other court that exercises jurisdiction over the Case.

"**Creditor**" means the Holder of a Claim against the Debtor.

"**Debtor**" means American Open Space Remedies, LLC, a California limited company, debtor and debtor in possession in the Case.

"**Disclosure Statement**" means the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Court pursuant to Bankruptcy Code section 1125.

"**Disclosure Statement Order**" means the Order to be entered by the Court approving the Disclosure Statement.

"**Disputed Claim**" means any Claim: (a) as to which a proof of claim has been filed and the dollar amount of such Claim is not specified in a fixed liquidated amount; (b) as to which a proof of claim has been timely filed and the dollar amount of such Claim is specified in a fixed liquidated amount, the extent to which the stated amount of such Claim exceeds the amount of such Claim listed in the Bankruptcy Schedules as not being disputed, contingent, or unliquidated, or is listed in the Bankruptcy Schedules with a different priority than reflected in the proof of claim; (c)  as to which a proof of claim has not been timely filed and such Claim is not included in the Bankruptcy Schedules or is listed in the Bankruptcy Schedules as contingent, disputed, or unliquidated; (d) as to which a proof of claim was required to be filed and was not timely filed; (e) as to which an objection has been filed and such objection has neither been overruled nor been denied by a Final Order and has not been withdrawn; or (f) with respect to an Administrative Claim, as to which an objection: (i) has been timely filed (or the deadline for objection to such Administrative Claim has not expired) and (ii) has neither been overruled nor been denied by a Final Order and has not been withdrawn.

"**Disputed and Estimated Claim Reserve**" shall have the meaning set forth in Section 5.14 of the Plan.

"**Disputed Reserve**" shall have the meaning set forth in Section 5.14 of the Plan.

"**Distribution**" means any transfer under the Plan of Cash or other property to Holders of Allowed Claims under the Plan.

"**Effective Date**" means the date fifteen days following the entry of the Confirmation Order (which Confirmation Order shall be a Final Order) and the later of date of the close of escrow on either: (i) the sale of the Beaumont Property; (ii) refinance of the Beaumont Property; or (iii) joint venture on the Beaumont Property.

"**Effective Date Obligations**" means all required payments for the Effective Date to occur.

"**Estate**" means the estate created in the Case under Bankruptcy Code section 541.

"**Estimated Claim**" means a Claim, the amount of which is determined for purposes of Distributions pursuant to Section 5.10 of the Plan.

"**Final Order**" means an Order of the Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any rights to appeal, petition for certiorari, or seek reargument or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor, in the event that an appeal, writ of certiorari, or reargument or rehearing has been sought or filed, such Order of the Court or other court of competent jurisdiction shall have been determined by the highest court to which such Order was appealed, or certiorari, reargument, and rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired as a result of which such Order shall have become final in accordance with Bankruptcy Rule 8002; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable law, may be filed with respect to such Order shall not cause such Order not to be a Final Order.

"**General Unsecured Claim**" means any Claim that is not an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, a Customer Claim or a Warranty Claim, or a Subordinated Claim.

"**GFH**" means Goe Forsythe & Hodges LLP, Debtor's general bankruptcy counsel.

"**Governmental Authority**" means any international, federal, state, or local government or other political subdivision, department or agency thereof, including, without limitation, any Person exercising executive, legislative, judicial, regulatory, or administrative governmental powers or functions.

"**Holder**" means the holder of a Claim against or Interest in the Debtor, the Estate or the Debtor.

"**Impaired**" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Interest**" means the interest of any Person who holds an ownership interest in the Debtor no matter how held.

"**Internal Revenue Code**" means the Internal Revenue Code of 1986 as amended.

"**IRS**" means the Internal Revenue Service.

"**Lien**" means any mortgage, pledge, lien, encumbrance, charge, security interest, or other charge against or interest in property to secure payment of a debt or performance of an obligation.

"**Operating Reserve**" means the Cash Reserve to be established by Debtor for the payment of all actual and projected Post Effective Date Expenses.

"**Order**" means any writ, judgment, decree, injunction, or order of any Governmental Authority (whether preliminary or final).

"**Ordinary Course Administrative Claim**" means a Claim for an administrative cost or expense that is allowable under Bankruptcy Code section 503(b) that is incurred in the ordinary course of the Debtor's operations or the Case, or for which payment is authorized by a Final Order of the Court.

"**Penalty Claim**" means a Claim that would be subject to Bankruptcy Code 726(a)(4) if the Case had been filed under chapter 7 of the Bankruptcy Code.

"**Person**" means an individual, a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization, any other business entity, or a Governmental Authority.

"**Petition Date**" means November 8, 2024, the date on which the Debtor filed its voluntary petition commencing the Case.

"**Plan**" means this plan of reorganization under chapter 11 of the Bankruptcy Code, including, without limitation, all exhibits, supplements, appendices, and schedules thereto.

"**Plan Proponent**" means Debtor.

"**Post Effective Date Expenses**" means all voluntary and involuntary costs, expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent, or unliquidated incurred by the Debtor after the Effective Date related to the implementation of the Plan, including:  (a) the expenses of Debtor in administering and implementing the Plan, including any Taxes incurred by the Debtor or on the Assets and accrued on or after the Effective Date; (b) all U.S. Trustee Fees which are due on or after the Effective Date; (c) the expenses of Debtor in making the Distributions as required by the Plan, including paying Taxes, filing Tax returns, and paying Professionals' fees and costs with respect to such Distributions; (d) the expenses incurred by the Debtor relating to the Plan; (e) the expenses of independent contractors and Professionals (including, without limitation, attorneys, advisors, accountants, brokers, consultants, experts, professionals, and other Persons) providing services to the Debtor relating to the Plan; and (f) the expenses related to the Debtor's indemnity obligations, the purchase of errors and omissions insurance, and/or other forms of indemnification.

"**Postpetition**" means the time after the Petition Date.

"**Priority Claims**" means Priority Non-Tax Claims and Priority Tax Claims.

"**Priority Non-Tax Claim**" means a Claim, other than an Administrative Claim or Priority Tax Claim, entitled to priority under Bankruptcy Code section 507(a).

"**Priority Tax Claim**" means a Claim entitled to priority under Bankruptcy Code section 502(i) or 507(a)(8).

"**Professional Fee Claim**" means: (a) a claim under Bankruptcy Code section 327, 328, 330, 331, 503(b), 1103, or 1106 for compensation for professional services rendered or expenses incurred prior to the Effective Date; or (b) a claim under Bankruptcy Code section 503(b)(4) for

compensation for professional services rendered or under Bankruptcy Code section 503(b)(3)(D) for expenses incurred prior to the Effective Date in making a substantial contribution in the Case.

"**Professionals**" means those Persons: (a) retained pursuant to an Order of the Court in accordance with sections 327, 1103, or 1106 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Court pursuant to sections 330 and 503(b)(2) of the Bankruptcy Code.

"**Pro Rata Share**" means, for the purpose of Distributions, a proportionate share such that the ratio of (a) the amount of consideration to be distributed on account of all such Allowed Claims to such Class; provided, however, that for purposes of determining Interim Dividends, if any, the amounts of Disputed General Unsecured Claims, if any, shall be included in the calculation of (b) above.

"**Rejection Claim Bar Date**" shall have the meaning set forth in Section 4.2 of the Plan.

"**Remaining Assets**" means any and all Cash and all other Assets, including Causes of Action, of the Debtor on the Effective Date.

"**Schedules and SOFA**" means the Schedules, Statement of Financial Affairs and related documents filed on December 5, 2024 [Dockets No. 20-21].

"**Secured Claim**" means a Claim that is secured by a valid and unavoidable Lien against property in which the Estate has an interest or that is subject to setoff under Bankruptcy Code section 553. A Claim is a Secured Claim only to the extent of the value of the Holder's interest in the collateral securing the Claim or to the extent of the amount subject to setoff, whichever is applicable, and as determined under Bankruptcy Code section 506(a).

"**Tax**" or "**Taxes**" means any federal, state, local, or foreign income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental (including taxes under Internal Revenue Code section 59A), customs duties, capital stock, franchise, profits, withholding, social security (or similar), unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or

addition thereto, whether disputed or not and including any obligations to indemnify or otherwise assume or succeed to the tax liability of any other Person.

"**Unclassified Claim**" means any Claim which is not assigned to a Class under the Plan.

"**U.S. Trustee**" means the Office of the United States Trustee for the Central District of California.

"**U.S. Trustee Fees**" means all fees and charges assessed against the Estate by the U.S. Trustee and due pursuant to section 1930 of title 28 of the United States Code.

"**Voting Deadline**" means the date set by the Court for timely submitting a Ballot in connection with confirmation of the Plan.

**Section 2.2.    Rules of Interpretation.**

a.    The rules of construction in Bankruptcy Code section 102 apply to the Plan.

b.    Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a) applies when determining any time period under the Plan.

c.    A term that is used in the Plan and that is not defined in the Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

d.    The definition given to any term or provision in the Plan supersedes and controls over any different meaning that may be given to that term or provision in the Disclosure Statement.  In the event of any conflict or inconsistency between the Plan and the Disclosure Statement, the Plan shall control.  In the event of any conflict or inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.  For the sake of clarity, the hierarchy of controlling documents in the event of a conflict shall be: (i) the Confirmation Order; (ii) the Plan; and (iii) the Disclosure Statement.

e.    Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

f.    Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or substantially on those terms.  Any reference to an existing document means the document as it has been, or may be, amended, modified, or supplemented.

g.      Unless otherwise indicated, the phrase "to the extent provided in the Plan" and similar words or phrases refer to the Plan in its entirety rather than to only a portion of the Plan.

h.      Unless otherwise specified, all references to sections and exhibits are references to sections and exhibits of the Plan.

i.      Captions and headings in the Plan are used only as convenient references and do not affect the meaning of the Plan.

## III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.    Classification of Claims

**Section 3.1.   Classification Generally.**  The Plan classifies Claims and Interests, except for Administrative Claims and Priority Tax Claims, which are not classified, for all purposes, including voting on, confirmation of, and Distributions under the Plan.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the Class description.  To the extent that part of the Claim or Interest falls within a different Class description, that portion of the Claim or Interest is classified in that different Class.  The Plan states whether each Class of Claims or Interests is Impaired and provides for treatment that each Class will receive.  The treatment in the Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each Person holding a Claim, or an Interest may have in or against the Debtor or its property.  This treatment supersedes and replaces any agreements or rights those entities have in or against the Debtor or its property.  NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM OR INTEREST THAT IS NOT AN ALLOWED CLAIM OR ALLOWED INTEREST.

**Section 3.2.   Classes of Claims and Interests**.  Claims and Interests are classified as follows:

| Class | Description | Impairment | Entitlement to Vote |
|---|---|---|---|
| Class 1 | Liquid Funds LLC | No | No, subject to bona fide dispute in State Court Lawsuit and Unimpaired |

| Class | Description | Impairment | Entitlement to Vote |
|---|---|---|---|
| Class 2 | Aminam, LLC | No | No, subject to bona fide dispute in State Court Lawsuit and Unimpaired |
| Class 3 | Barry Hildebrandt | Yes | Yes |
| Class 4 | General Unsecured Creditors | Yes | Yes |
| Class 5 | Interests | No | Deemed to Accept |

**B.     Unclassified Claims**

**Section 3.3.     Administrative Claims and Priority Tax Claims.**  Administrative Claims and Priority Tax Claims are not placed into Classes that are not entitled to vote to accept or reject the Plan; instead, such Claims are unclassified.  Such Claims are not considered Impaired, and they do not vote on the Plan because they are entitled to specific treatment under the Bankruptcy Code.  Accordingly, the Plan does not place these Claims in Classes.  The treatment for these Claims is provided in Sections 3.4 and 3.9.  Holders of Allowed Administrative Claims not paid from the Administrative Claims Reserve and Allowed Priority Tax Claims shall be deemed to hold Claims against the Debtor in the amount of their Allowed Administrative Claims and Allowed Priority Tax Claims and shall receive payments on such Claims pursuant to the provisions of the Plan.

**Section 3.4.     Administrative Claims.**  Except to the extent that the Holder of an Allowed Administrative Claim agrees to less favorable treatment or unless otherwise ordered by the Court, each Holder of an Allowed Administrative Claim shall receive in full satisfaction, discharge, exchange, and release thereof, Cash from the Administrative Claims Reserve, or Cash from the Remaining Assets, if the Administrative Claims Reserve has been exhausted, in an aggregate amount equal to the amount of such Allowed Administrative Claim on the later of: (a) the Effective Date; and (b) the fifteenth (15th) Business Day after such Administrative Claim becomes an Allowed Administrative Claim, or, in either case, as soon thereafter as is practicable. Debtor does not know of any Administrative Claims that are not Professional Fee Claims.

**Section 3.5.    Administrative Claim Bar Date.**  All requests for payment of an Administrative Claim, except for U.S. Trustee Fees and Professional Fees, shall be filed with the Court no later than the Administrative Claim Bar Date or be forever barred; provided, however, that nothing in the Plan shall extend or otherwise affect any applicable bar date set forth by an order of the Court entered prior to the Effective Date.  Within five (5) business days after the Effective Date, Debtor shall serve notice of the Effective Date, the Administrative Claim Bar Date, and the Administrative Claim Objection Deadline on all Creditors and parties in interest.

**Section 3.6.    Administrative Claim Objection Deadline.**  All objections to the allowance of Administrative Claims, must be filed by parties in interest no later than one hundred twenty (120) days after the Administrative Claim Bar Date (the "Administrative Claim Objection Deadline"), or according to the deadlines set forth in the Bankruptcy Rules, or such other date as may be fixed by the Court, in the event that the Holder of an Administrative Claim files a motion with the Court to have such Administrative Claim become an Allowed Administrative Claim.  The Administrative Claim Objection Deadline may be extended for a one-time ninety (90) day period by the Debtor by filing a notice of the extended Administrative Claim Objection Deadline with the Court and giving notice of such extension to all Creditors and parties in interest.  Thereafter, the Administrative Claim Objection Deadline may be further extended only by an Order of the Court. If no objection to such Administrative Claim is filed on or before the Administrative Claim Objection Deadline, such Administrative Claim shall be deemed an Allowed Administrative Claim as of that date.

**Section 3.7.    U.S. Trustee Fees.**  U.S. Trustee Fees shall be paid prior to and after the Effective Date by the Debtor, when due in accordance with applicable law.  The Debtor shall continue to file reports to show the calculation of such fees for the Estate until the Effective Date; after the Effective Date, Debtor shall file such reports until the Case is closed under Bankruptcy Code section 350.

**Section 3.8.    Professional Fee Claims.**  Each Holder of a Professional Fee Claim seeking an award by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date shall file such Holder's interim (if

applicable) and final applications for the allowance of compensation for services rendered and the reimbursement of expenses incurred through the Effective Date by such date as may be fixed by the Court.  All objections to the allowance of Professional Fee Claims through the Effective Date shall be filed in accordance with applicable Bankruptcy Rules, or such other date as may be fixed by Order of the Court.  To the extent granted by the Court, such Claims shall be paid, in full satisfaction, discharge, exchange, and release of such Claims, by Cash from the Administrative Claims Reserve, or Cash from the Remaining Assets, if the Administrative Claims Reserve has been exhausted, in such amounts as are allowed by the Court on the date such Professional Fee Claim becomes an Allowed Claim, or as soon thereafter as is practicable. Below are the estimated Professional Fee Claims of the Debtor as of the Effective Date:

| Claimant | Approximate Amount Owed as of Effective Date | Treatment |
| --- | --- | --- |
| GFH | TBD | Paid in full on the Effective Date or as otherwise agreed to by professional. |
| CLC | TBD | Paid in full on the Effective Date or as otherwise agreed to by professional. |
| Clerk's Office Fees | Estimated to be $0 on Effective Date. | Paid in full on the Effective Date. |
| U.S. Trustee Fees | Estimated to be $0 on Effective Date. | Paid in full on the Effective Date. |

The Court must first approve all Administrative Claims listed in the above chart before they are owed by the Debtor, except the fees owed to the Clerk's Office and the Office of the U.S. Trustee.  See 11 U.S.C. 503(b). Only the amount of fees and expenses allowed by the Court will be owed and required to be paid under this Plan.

**Section 3.9.   Priority Tax Claims.**  Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive in full satisfaction, discharge, exchange, and release thereof cash from the Debtor in an aggregate amount equal to such Allowed Priority Tax Claim on the later of the Effective Date, or the fifteenth (15th) Business Day after such Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in either case, as soon thereafter as is practicable.

| Claimant | Amount Owed | Treatment |
|---|---|---|
| Franchise Tax Board | $2,617.69 (Priority portion of Claim No. 1) | To be paid in full on Effective Date. |

### C.    Classified Claims and Interests

The treatment of Classified Claims and Interests is as set forth below.

**Section 3.10.   Secured Claims.**

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 1 | Creditor Name: Liquid Funds LLC<br><br>Basis for Security Interest: Recorded Deed of Trust Dated March 31, 2022 Document No. 2022-0155985 against the Beaumont Property.<br><br>Collateral:<br><br>The Property located in the County of Riverside and bearing Assessor's Parcel Numbers 424-060-001; portion of 424-060-002 (ingress and egress easement only); 424-060-006; 424-060-007; 424-060-008; 424-060-009<br><br>Disputed Claim Amount: $14,812,045.24 pursuant to Claim No. 2 | N | The Secured Claim in this Class is subject to bona fide dispute and is the subject of the State Court Lawsuit.<br>The Holder of the Class 1 Claim will be paid in full on its Allowed Claim within 30 days of entry of an order/judgment of a court determining the amount of the Allowed Claim, if any, and final on appeal(s). |
| 2 | Creditor Name: Aminam, LLC<br><br>Basis for Security Interest: Recorded Deed of Trust Dated March 31, 2022 Document No. 2022-0155986 against the Beaumont Property.<br><br>Collateral:<br><br>Certain parcels of the Property located in the County of Riverside and bearing Assessor's Parcel Numbers 424-060-001; portion of 424-060-002 (ingress and egress | N | The Secured Claim in this Class is subject to bona fide dispute and is the subject of the State Court Lawsuit.<br>The Holder of the Class 2 Claim will be paid in full on its Allowed Claim within 30 days of entry of an order/judgment of a court determining the amount of the Allowed Claim, if any, and final on appeal(s). |

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | easement only); 424-060-006; 424-060-007; 424-060-008; 424-060-009.<br><br>Disputed Claim Amount:<br><br>$14,231,205.48 (pursuant to Claim No. 3, although no funds were ever advanced to Debtor) | | |
| 3 | Creditor Name: Barry Hildebrandt<br><br>Basis for Security Interest: Land Sale Contract with respect to 4191 Brockton, Riverside, California 92501.<br><br>Collateral:<br><br>4191 Brockton, Riverside, California 92501.<br><br>Claim Amount:<br><br>$320,000.00 (estimated as of Effective Date and as scheduled) | Y | The Secured Claim in this Class will be paid as follows and the claimant will retain its interest in the collateral.<br>The current monthly payment requirement under the Land Sale Contract will increase from $1,760.00 to $1,850.00.<br>The maturity date will be extended to January 31, 2030.<br>All other terms and conditions of the Land Sale Contract will remain unchanged. |

**Section 3.11    General Unsecured Claims.**

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 4 | All Allowed General Unsecured Claims that are not Administrative Claims or Priority Claims. | Y | Allowed General Unsecured Claims will be paid in full on their Allowed Claims as described herein.<br><br>If a Class 4 Claim is a timely filed Proof of Claim which is subject to an objection to claim that has not yet been resolved by the Effective Date, then pending resolution of the dispute by a Final Order, the Debtor will reserve sufficient funds to pay the Disputed Claim pursuant to the terms of the Plan into the Disputed Claims Reserve. Once the dispute is resolved by a Final Order, the Debtor will make a Distribution out of the Disputed |

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | Claims Reserve on account of the Allowed Class 4 Claim in accordance with the treatment described below.<br><br>The holders of Allowed Claims in this Class will share pro-rata in payments of the total Allowed General Unsecured Claim. An initial distribution of cash will be made in the amount of $151,400.00 out of the funds available for that purpose from sales, refinancing, joint venture, DIP loan or capital contribution.<br><br>In addition, there will be future cash distributions sufficient from sales, refinancing, joint venture, DIP loan or capital contribution. This class shall receive a minimum of $25,000 in quarterly payments for up to five (5) years with this obligation all due and payable five (5) years after the Effective Date.<br><br>Payments could commence earlier depending upon the results of the State Court Lawsuit. |

**Section 3.12. Interest Holders.**

Interest Holders comprise Class 5 of the Plan and are the parties who hold ownership interests (i.e., equity interests) in the Debtor which shall be retained and are Unimpaired.

**IV.     EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**Section 4.1.    Rejection.** Effective upon the Effective Date, the Debtor hereby rejects all contracts and leases subject to Bankruptcy Code section 365(a) in the Case which have not previously been rejected, except the Debtor does not reject those contracts and leases which have been or will be assumed, or assumed and assigned, with the approval of the Court by separate

proceeding in the Case, which approval has been or will be set forth in an Order entered prior to the Effective Date.

**Section 4.2.   Rejection Claims.**  All Allowed Claims arising from the rejection of contracts or leases, whether under the Plan or by separate proceeding, shall be treated as General Unsecured Claims.

a.      If the rejection of a contract or lease by the Plan results in damages to the counterparty to such contract or lease, then a Claim for damages or any other amounts related in any way to such contract or lease shall be forever barred and shall not be enforceable against the Estate, the Debtor, or their property, unless a proof of claim is filed with the Court and served on the Debtor within thirty (30) days after the Effective Date.

b.      The Rejection Claim Bar Date for contracts and leases rejected by Order entered prior to the Claims Bar Date shall be the later of : (a) the date(s), if any, set forth in the applicable Order(s) approving or authorizing rejection of such contract or lease; or (b) the Claims Bar Date.

c.      The Rejection Claim Bar Date for contracts and leases rejected by Order entered after the Claims Bar Date shall be the earlier of: (a) the date(s), if any, set forth in the applicable Order(s) approving or authorizing rejection of such contract or lease; or (b) thirty (30) days after the Effective Date.

**Section 4.3.   Assumption**

Debtor reserves the right to supplement the Plan for the assumption of any contracts.

**V.      PLAN IMPLEMENTATION**

**A.      General Implementation Provisions**

**Section 5.1.   Conditions to Plan Effectiveness.**  This Section is intended to explain how the Debtor intends to effectuate the Plan, and how the Debtor intends to fund the obligations to Creditors and Interest Holders undertaken in the Plan after the occurrence of the Effective Date. This Section provides information regarding funding sources for the Plan obligations and other material issues bearing upon performance of the Plan.

\\\

- 20 -

**Section 5.2.    Actions on the Effective Date.**  To the extent not previously completed, on the Effective Date all actions, documents, and agreements necessary to implement the Plan shall be effectuated or executed.

**Section 5.3.    Corporate Action.**  On the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects (subject to the provisions of this Plan) by virtue of the entry of the Confirmation Order, in accordance with the Bankruptcy Code and applicable state law and without any requirement of further action by the Debtor, the stockholders, officers or directors of the Debtor.  All matters provided for under the Plan involving the corporate structure of the Debtor and any corporate action required by the Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect pursuant to the Bankruptcy Code, without any requirement of further action by the Debtor, shareholders, officers or directors of the Debtor.  On the Effective Date, the Reorganized Debtor is authorized and directed to implement the provisions by the Plan and any other agreements, documents and instruments contemplated by the Plan.

**Section 5.4.    Vesting of Assets and Funding for the Plan.**  On the Effective Date, all Assets of the Debtor and the Estate will be vested in the Debtor, including all of the Debtor's and the Estate's right, title, and interest in and to the Assets.  As of the Effective Date, the Assets of the Debtor shall be free and clear of all Liens, Claims, and interests of Holders of Claims and Interests, pursuant to Sections 363(f), 1123, 1141 and 1146(c) of the Bankruptcy Code, except as otherwise provided in the Plan.  Funding for the Plan shall come from the Debtor's sale, refinance or the joint venture of the Beaumont Property and from collection on the Litigation Claims.  The Distributions to creditors under the Plan will be funded primarily from the following sources: (a) the Debtor's cash on hand on the Effective Date, (b) the net proceeds from the collection on the Litigation Claims, if any; (3) and the net proceeds from the sale, refinance or the joint venture of the Beaumont Property.  Debtor reserves its rights to seek new financing secured by all or part of the Beaumont Property.

\\\

- 21 -

**Section 5.5.    Post Effective Date Management.**

**(a)    Continuation of Management by Debtor**

On the Effective Date, the Debtor will continue to operate under its current management and Debtor will be vested with the duties set forth below and in the Plan Confirmation Order.  To the extent that the Debtor's operating agreement is inconsistent with the Plan, the Plan shall control.

**(b)    Powers and Authority of the Debtor**

On and after the Effective Date and except as otherwise set forth in the Plan and notwithstanding anything to the contrary in the operating agreement, the powers and authority of the Debtor shall include, but not be limited to, liquidating, abandoning or otherwise administering the Estate assets, taking any action, filing or causing to be filed any proceeding, instituting and prosecuting any litigation, executing any document, entering into any compromise or settlement, or taking any such other actions consistent with the Plan in connection with or related to:

(i)    the Plan;

(ii)    monitoring the Debtor's performance under the Plan and making distributions required under the Plan from Available Cash;

(iii)    determining the allowability, classification, and priority of Claims and Interests;

(iv)    construing or administering or enforcing the terms of the Plan, the Confirmation Order, or any order of the Court;

(v)    the opening or closing of any account that Debtor determines is reasonable, necessary, or required under the Plan, and making any withdrawals or deposits in connection therewith;

(vi)    reviewing, approving or opposing any applications or requests for compensation and reimbursement of the expenses of any Professionals that are filed or served after the Effective Date;

(vii)    filing, prosecuting, compromising or settling any Causes of Action;

(viii)    any applications, motions, adversary proceeding, contested matters, and any other litigated matters instituted before, on, or after the Effective Date;

(iv)     modifying the Plan under Bankruptcy Code § 1127 in order to remedy any apparent defect or omission in the Plan, or to reconcile an inconsistency in the Plan so as to carry out its intent and purpose;

(x)     the seeking of an injunction, judgment or order or taking any other action as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order;

(xi)     aiding in consummation of the Plan or the Confirmation Order;

(xii)     administration of the Case and the Plan, including retaining, hiring, or terminating any employee, agent, staff, outside contractor, or professional;

(xiii)   the preparation, execution and filing of any tax return on behalf of the Debtor, including final tax returns; and

(ix)     liquidating assets and obtaining a final decree and in his sole discretion dissolving the Debtor.

In addition, on and after the Effective Date, as the case may be, Debtor shall be authorized to execute, do and perform, in the name of and on behalf of the Debtor, such acts and to prepare, execute, acknowledge, verify, file, deliver, and cause to be published such certificates, agreements, notices, reports, applications, declarations, instruments and documents as Debtor may deem necessary and appropriate in his discretion in order to carry into effect the decisions of the Debtor and the terms and provisions of the Plan.  Debtor 's performance of any such actions and execution and delivery of any such documents shall constitute conclusive evidence of such authority.

Section 5.6.   **Funding of Post Effective Date Expenses**.  All post Effective Date Expenses shall be expenses of the Debtor and Debtor shall disburse funds from the Available Cash for the purpose of paying such expenses.  Debtor shall be authorized to retain professionals post-confirmation and pay all post-confirmation fees from any Cash and/or the operations and/or the sale, cash-out refinance or joint venture of the Property.

Section 5.7.   **Operating Reserve.**  Payments of all Post Effective Date Expenses shall be made from the Operating Reserve.  On or as soon as practicable after the Effective Date, the Operating Reserve shall be established by Debtor and funded by Cash to pay for all projected

Post Effective Date Expenses.  Debtor shall continue to fund the Operating Reserve as needed from Remaining Assets.  Any Cash remaining in the Operating Reserve that Debtor believes is not necessary to fund Post Effective Date Expenses of the Debtor shall be released from the Operating Reserve and used as Remaining Assets in accordance with the Plan.

**Section 5.8.   Abandonment.**  If, in Debtor's reasonable judgment, any Remaining Assets cannot be sold or distributed in a commercially reasonable manner or Debtor believes in good faith that such property has inconsequential value to the Debtor or determines it to be too impractical to distribute such property to the Beneficiaries, Debtor may abandon or otherwise dispose of such property, including by donation of such property to a charity.

**Section 5.9.    Dissolution of Debtor.** The Debtor may be, but is not required to be, dissolved.  Debtor shall have full authority to take any action necessary, to wind up the affairs, and dissolve and terminate the existence, of the Debtor under applicable state laws and in accordance with the rights, powers and responsibilities conferred by the Bankruptcy Code, this Plan and any order of the Court.

**B.        Provisions Governing Distributions**

**Section 5.10.   Estimation**.  In order to establish reserves under this Plan and avoid undue delay in the administration of this Case, the Debtor shall have the right to seek an order of the Court pursuant to Section 502(c) of the Bankruptcy Code estimating the amount of any Claim. All estimations hereunder shall be on notice to the Holder of such Claim, and such estimated amount: (i) shall be used in calculating reserves for such Claim; and (ii) shall set the maximum allowed amount of such Claim for purposes of Distributions on account thereof.

**Section 5.11.   Distributions on Account of Allowed Claims**.  Except as otherwise provided herein, a Final Order, or as agreed by the relevant parties, distributions on account of Allowed Claims shall be made by Debtor at such periodic intervals as Debtor determines to be reasonably prudent.

**Section 5.12.   Distributions on Account of Disputed Claims and Estimated Claims.**  Except as otherwise provided herein, a Final Order, or as agreed by the relevant parties, distributions on account of Disputed Claims and Estimated Claims that become Allowed Claims

shall be made by Debtor at such periodic intervals as Debtor determines to be reasonably prudent.

**Section 5.13.   No Distributions Pending Allowance**.  Notwithstanding any other Plan provision: (i) Distributions to Holders of Claims will be made only to the extent that, such Holders hold Allowed Claims; and (ii) unless otherwise agreed by Debtor, if any portion of a Claim is a Disputed Claim, the entire Claim shall be treated as a Disputed Claim and no Distribution to the Holder of such Claim shall be made on account of such Claim unless and until no portion of the Claim is a Disputed Claim.

**Section 5.14.   Disputed and Estimated Claims Reserve**.  On and after the Effective Date, Debtor shall maintain in reserve such Cash as it estimates to be necessary to satisfy the distributions required to be made under the Plan if each Disputed Claim and Estimated Claim against the Debtor becomes an Allowed Claim.

**Section 5.15.   Reduced or Disallowed Secured Claims**.  To the extent that a Disputed Claim for which Cash has been deposited into the Disputed Reserve is not Allowed or becomes an Allowed Claim in an amount less than the amount retained in the Disputed Reserve with respect to such Claim, the amount that was retained in the Disputed Reserve on account of such Claim, or the excess of the amount that was retained on account of such Claim over the amount actually distributed on account of such Claim, shall be released from the Disputed Reserve and used as Available Cash in accordance with the Plan.

**Section 5.16.   Reserve Amounts for Disputed and Estimated Claims.**  For purposes of establishing reserves for Disputed and Estimated Claims, the amount of such Claim shall be the agreed amount of such Claim, unless such amount is estimated by Order of the Court.

**Section 5.17.   Reservation of Rights to Object to Claims**.  Unless a Claim is expressly described as an Allowed Claim pursuant to or under this Plan, or otherwise becomes an Allowed Claim prior to or after the Effective Date, Debtor shall retain the right to object and shall be deemed to have reserved any and all objections to any and all Claims and motions or requests for the payment of Claims, whether an Administrative Expense, Priority Tax Claim, Secured Claim or General Unsecured Claim, including, without limitation, any and all objections to the validity or amount of any and all alleged Claims and security interests, whether under the

Bankruptcy Code, other applicable law or contract.  The Debtor's failure to object to any Claim in the Case shall be without prejudice to Debtor's rights to contest or otherwise defend against such Claim in the Court when and if such Claim is sought to be enforced by the holder of such Claim.

**Section 5.18.   Settling Disputed Claims.**  Debtor shall be authorized to settle, or withdraw any objections to, any Disputed Claims following the Effective Date.

**Section 5.19.   Cash Distributions**.  The sources of all Distributions and payments under the Plan are and will be Cash.  Cash Distributions made pursuant to the Plan shall be in United States funds, by check drawn on a domestic bank, or, by wire transfer from a domestic bank.

**Section 5.20.   Setoff and Recoupment.**  Notwithstanding anything to the contrary in the Plan, Debtor may set off, recoup, or withhold against the Distributions to be made on account of any Allowed Claim that the Debtor, the Estate, or Debtor may have against the Holder of the Allowed Claim.  The Debtor and the Estate will not waive or release any claim against those Holders by failing to effect such a setoff or recoupment, by allowing any Claim against the Debtor or the Estate, or by making a Distribution on account of an Allowed Claim.

**Section 5.21.   No De Minimis Distributions.**  Notwithstanding anything to the contrary in the Plan, no Distribution of less than $10.00 will be made to any Holder of an Allowed Claim or on account thereof.  No consideration will be provided in lieu of the *de minimis* Distributions that are not made under this Section.

**Section 5.22.   Fractional Cents.**  When any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of less than $0.005 and rounding up in the case of $0.005 or more); provided, however, that, in no event, shall a Distribution of less than $10.00 be made to any Holder of an Allowed Claim.

**Section 5.23.   Undeliverable or Unclaimed Distributions.**

i.        Distributions to Holders of Allowed Claims (except Administrative Claims) will be made by mail as follows:

(a)    Distributions will be sent to the address, if any, set forth on a filed proof of claim as amended by any written notice of address change that is received by Debtor no later than ten (10) Business Days prior to the date of any Distribution; or

(b)    If no such address is available, Distributions will be sent to the address set forth on the Bankruptcy Schedules.

ii.    Distributions to Holders of Allowed Administrative Claims shall be made by mail to the address set forth in such Holder's request for payment, fee application, or transactional documents, as applicable.

iii.    If no address is available on a proof of claim, the Bankruptcy Schedules, request for payment, fee application, or transactional documents, as applicable, the Distribution will be deemed to be undeliverable.  If a Distribution is actually returned to Debtor or is deemed to be an undeliverable Distribution under the prior sentence, Debtor will make no further Distributions to the Holder to which such undeliverable Distribution was made unless and until Debtor is timely notified in writing of that Person's current address.  Subject to Section 5.25(d) of the Plan, until they become deliverable, Debtor shall deposit such undeliverable Distributions (whether returned or not made) into the Undeliverable Distributions Reserve for the benefit of the Persons entitled to such Distributions.  Holders of Claims subject to undeliverable Distributions will not be entitled to any interest on account of the undeliverable Distributions.

iv.    Any Person that is otherwise entitled to an undeliverable Distribution and that does not, within 120 days after a Distribution is deemed undeliverable or returned as undeliverable, provide Debtor with a written notice asserting its claim to or interest in that undeliverable Distribution and setting forth a current, deliverable address: (i) will be deemed to waive any claim to or interest in that undeliverable Distribution; (ii) will be forever barred from receiving that undeliverable Distribution or asserting any claim with respect thereto against the Debtor and the Estate, or their property; and (iii) to the extent applicable, will have the Allowed Claim relating to such undeliverable Distribution reduced on account of such undeliverable Distribution.  Any undeliverable Distributions that are not claimed timely under Section 5.23 of the Plan will be

withdrawn from the Undeliverable Distribution Reserve and treated as Assets of the Debtor. Nothing in the Plan requires the Debtor or Debtor to attempt to locate any Person holding an Allowed Claim and whose Distribution is undeliverable.

Section 5.24.  **Undeliverable Distributions Reserve.**  On or as soon as practicable after the Effective Date, Debtor shall establish an Undeliverable Distributions Reserve into which undeliverable Distributions shall be deposited and withdrawn as provided in Section 5.23 of the Plan.

Section 5.25.  **Negotiation of Checks.**  Checks issued in respect of Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Subject to Section 5.23 of the Plan, requests for reissuance of any check shall be made to Debtor by the Holder of the Allowed Claim to whom such check originally was issued and must be made on or before ninety (90) days after the expiration of the ninety (90) day period following the date of issuance of such check.  Thereafter, the funds represented by such voided check shall irrevocably revert to the Debtor and the Holder of the Claim relating to such voided check: (i) will be deemed to waive any Claim to or interest in that voided check and the funds related thereto; (ii) will be forever barred from receiving the funds represented by the voided check or asserting any Claim with respect thereto against the Debtor, the Estate, or their property; and (iii) to the extent applicable, will have the Allowed Claim relating to such funds and voided check reduced on account of such funds.  Debtor in its sole discretion may waive or modify any requirement in Section 5.23, 5.24 or 5.25 of the Plan.

Section 5.26.  **Record Date.**  The record date for purposes of Distributions under this Plan shall be the Effective Date.  The Debtor will rely on the register of proofs of claim filed in the Case except to the extent a notice of transfer of a Claim or Interest has been filed with the Court prior to the Effective Date pursuant to Bankruptcy Rule 3001.

Section 5.27.  **Postpetition Interest.**  Except as otherwise provided in the Plan or by Final Court Order, interest accruing Postpetition or otherwise relating to the Postpetition period will not be paid on account of any Claims.

**Section 5.28.   Sequence of Payments.**  Notwithstanding any other provision of the Plan, Distributions shall be made from the Debtor in the following order:

a)   all outstanding and projected Post Effective Date Expenses until they are paid in full or are fully reserved for;

b)   all Allowed Administrative Claims until they are paid in full, to the extent such claims are not paid by the Debtor from the Administrative Claims Reserve;

c)   all Allowed Secured Claims until they are paid in full or are reserved for;

d)   all Allowed Priority Tax Claims until they are paid in full or are reserved for;

e)   all Allowed General Unsecured Claims until they are paid in full or are reserved for; and

f)   All Allowed Interests.

**Section 5.29.   Withholding and Reporting Requirements.**  In connection with the Distributions under the Plan, Debtor shall comply with all applicable withholding and reporting requirements imposed by any Governmental Authority, and all Distributions shall be subject to any such withholding or reporting requirements.  All such amounts withheld and paid to the appropriate Governmental Authority shall be treated as distributed to such Holders.  Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed by any Governmental Authority, including income, withholding, and other Tax obligations, on account of such Distribution.  Debtor has the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to Debtor for payment of any such Tax obligations.  Debtor may require, as a condition to receipt of a Distribution, that the Holder of an Allowed Claim provide a completed Form W-8, W-9, and/or other Tax information deemed necessary in the sole discretion of Debtor.  If Debtor makes such a request and the Holder fails to comply before the date that is ninety (90) days after the request is made:

(a) the amount of such Distribution shall irrevocably revert to the Debtor; (b) the Holder of the claim relating to such Distribution will be deemed to waive any claim to or interest in that Distribution and the funds related thereto;  (c) the Claim(s) of such Holder shall be deemed to be disallowed and terminated and be entitled to no Distributions; and (d) the Holder will be forever barred from receiving the funds represented by that Distribution or any Distributions on such disallowed and terminated Claims, or asserting any Claim with respect thereto against the Debtor, the Estate, or their property.

**Section 5.30.  Claims Transfer.**  Debtor shall not recognize any transfer of a Claim made after the Effective Date, except to a legal heir or successor on the death or incapacity of the Holder of the Claim.  Except as otherwise provided in the Plan, any transfer of a Claim shall not affect or alter the classification and treatment of such Claim under the Plan and any such transferred Claim shall be subject to classification, allowance, or treatment under the Plan as if such Claim was held by the transferor.

**Section 5.31.  Maximum Amount of Distributions**.  In no event shall a Holder of an Allowed Claim be entitled to receive in the aggregate on account of such Allowed Claim from the Debtor or any other source, more than the total amount of such Allowed Claim.

**Section 5.32.**  After: (i) all Claims have been resolved; (ii) all Allowed Claims except General Unsecured Claims have been paid or satisfied as provided in the Plan; (iii) all material Assets have been converted to Cash; and (iv) the Operating Reserve has been adequately funded, Debtor shall distribute all Cash to holders of Allowed Class 4 Claims pursuant to the provisions of the Plan and up to the amount of such Allowed Class 4 Claims and taking into account any prior Distributions that have been made on account of such Allowed Class 4 Claims. After all Allowed Class 4 Claims have been paid in full, Debtor shall distribute all Cash to the holder of Allowed Class 5 Interests pursuant to the provisions of the Plan.

## VI.  LITIGATION AND CLAIM OBJECTIONS

**Section 6.1.  Preservation of Causes of Action.**

a.  As of the Effective Date, Debtor shall hold and retain all rights and privileges on behalf of the Debtor and the Estate to commence, pursue, and settle, as appropriate, any and all

Causes of Action and Defenses (including, without limitation, Avoidance Actions), whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, adversary proceeding(s) filed in the Case, including but not limited to the State Court Lawsuit.  The failure to explicitly list any Causes of Action and other potential or existing claims of the Debtor or Estate is not intended to and shall not limit the rights of the Debtor to pursue any Causes of Action and Defenses and claims not so identified.  Notwithstanding any otherwise applicable principle of law or equity, including any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, analyze, or refer to any Cause of Action, or potential Cause of Action, in the Plan, the Disclosure Statement, or any other document filed with the Court shall in no manner waive, eliminate, modify, release, or alter the Debtor's, or the Estate's right to commence, prosecute, defend against, settle, and realize upon any Cause of Action that the Debtor or the Estate has or may have as of the Confirmation Date.  Debtor may commence, prosecute, defend against, recover on account of, and settle all Causes of Action in Debtor's sole discretion in accordance with what is in the best interests, and for the benefit, of the Debtor.

a.      Unless a Cause of Action and Defense is expressly waived, relinquished, released, compromised, or settled by Final Order, the Debtor and the Estate expressly reserve such Causes of Action for later adjudication (including, without limitation, Causes of Action of which the Debtor or the Estate may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor or the Estate at this time, or facts or circumstances which may change or be different from those which the Debtor or the Estate now believes to exist) and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to Causes of Action and Defenses upon, or after, the Confirmation Date or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such Causes of Action have been expressly released by Final Order.

c.      Any Person with respect to which the Debtor has incurred an obligation (whether on account of services, purchase or sale of property, or otherwise), or which has received services

from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, or leased property from or to the Debtor should assume that such obligation, transfer, or transaction may be reviewed by Debtor, on behalf of the Debtor and Estate subsequent to the Effective Date and may, if appropriate, be the subject of an action after the Effective Date, whether or not: (a) such Person has filed a proof of claim against the Debtor; (b) such Person's proof of claim has been objected to by the Debtor or any other Person; (c) such Person's Claim was included in the Bankruptcy Schedules; or (d) such Person's scheduled Claims have been objected to by the Debtor or any other Person, or has been identified as disputed, contingent, or unliquidated

**Section 6.2.    Objections to and Resolution of Disputed Claims.**  Except as otherwise provided in the Plan or Confirmation Order, on and after the Effective Date, Debtor shall have the exclusive right to make and file objections to Claims and to prosecute, settle, and/or withdraw such objections.  Debtor shall have the authority to compromise, settle, withdraw, or otherwise resolve any objections to any Claim without approval of the Court; provided, however, that the Debtor may in its discretion seek relief before the Court with respect to any Disputed Claim.  Debtor shall file and serve all objections to Claims (other than Administrative Claims that are subject to Sections 3.3, 3.4, 3.5 and 3.6) upon the Holder of the Claim as to which the objection is made by the Claims Objection Deadline.  Debtor may extend the Claims Objection Deadline for no more than two (2) one-hundred eighty (180) day periods by filing a notice of the extended deadline with the Court; provided, however, that nothing herein shall modify the statute of limitations for any affirmative Cause of Action that Debtor may assert.  Thereafter, the Claims Objection Deadline may be further extended only by an Order of the Court.  The filing of a motion to extend the Claims Objection Deadline shall automatically extend the Claims Objection Deadline until a Final Order is entered on such motion.  In the event that such motion is denied by the Court, or approved by the Court and reversed on appeal, the Claims Objection Deadline shall be the later of the then current Claims Objection Deadline (as previously extended, if applicable) or thirty (30) days after entry of a Final Order denying the motion to extend the Claims Objection Deadline or reversing the Order approving the motion

## VII.   OTHER PLAN PROVISIONS

**Section 7.1.   Recourse for Claims**. All Holders of Claims and Interests are bound by the Plan and the Confirmation Order.  No Holder of a Claim may receive any payment from, or seek recourse against, any Assets that are to be distributed under the Plan other than Assets required to be distributed to that Holder pursuant to the Plan.  As of the Confirmation Date, all Persons are enjoined from asserting against any property that is to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or interests related thereto based upon any act, omission, transaction, or other activity that occurred before the Confirmation Date except as expressly provided in the Plan or the Confirmation Order.  As of the Effective Date, notes, contracts, judgments, and any other evidence of Claims will represent only the right to receive the Distributions contemplated under the Plan.

**Section 7.2.   Exculpation and Release of Debtor and Professionals.**

The Debtor, GFH, CLC, and their respective representatives shall have all the benefits and protections afforded under Section 1125(e) of the Bankruptcy Code and applicable law.  As specified in Section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer issuance, sale, or purchase of securities.

The Debor will request in its motion seeking confirmation of the Plan that the Confirmation Order contain the following exculpation language:

Except to the extent arising from fraud, willful misconduct, gross negligence, or legal malpractice, none of the Debtor, GFH, CLC, and their respective representatives ("Exculpated Parties"), will have or incur any liability as set forth in 11 U.S.C §1125(e) to any holder of a Claim or Interest or any other entity for any act or omission in connection with, from any Cause of Action for any claim related to any act or omission arising on or after the Petition Date and through the Effective Date in connection with, relating to, or arising out of, the Bankruptcy

Case, the formulation, preparation, dissemination, negotiation, filing, or pursuit of approval of the Disclosure Statement or the Plan, or the solicitation of votes for or confirmation of the Plan , the Sale, or any transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the filing of the Bankruptcy Case (the "Chapter 11 Process").  The Exculpated Parties have, and upon the Confirmation Date will be deemed to have, participated in good faith and in compliance with applicable laws with regard to the Chapter 11 Process  and, therefore, will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the Chapter 11 Process.

### Section 7.3.   Good Faith.

Confirmation of this Plan shall constitute a finding that the Plan was proposed, and that acceptances of the Plan were solicited, in good faith and in compliance with applicable provisions of the Bankruptcy Code.

### Section 7.4.   Injunction Enjoining Holders of Claims.

a.       The Plan is the sole means for resolving, paying, or otherwise dealing with Claims and Interests with respect to the Estate, the Debtor, and their assets.  To that end, except as expressly provided herein, at all times on and after the Effective Date, all Persons who have been, are, or may be Holders of Claims or Interests arising prior to the Effective Date shall be permanently enjoined from taking any of the following actions on account of any such Claims or Interests, against the Estate, the Debtor, or their property (other than actions brought to enforce any rights or obligations under the Plan and any claim, contested matters, or adversary proceedings pending in the Case as of the Effective Date):

(1)       commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Estate, the Debtor, or the Professionals, their successors, or their respective property or assets (including, without limitation, all suits, actions, and proceedings that are pending, other than before the Court or by explicit provision of the Court, as of the Effective Date, which shall be deemed to be withdrawn or dismissed with prejudice);

(2)    enforcing, levying, attaching, executing, collecting, or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree, or Order against the Estate, the Debtor, or the Professionals, their successors, or their respective property;

(3)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien against the Estate, the Debtor, or the Professionals, their successors, or their respective property; and

(4)    proceeding in any place whatsoever against the Estate, the Debtor, or the Professionals, their successors, or their respective property, in any manner that does not conform to or comply with the provisions of the Plan.

b.    No suit, action, or other proceeding may be commenced, conducted, or continued in any manner, directly or indirectly, by a Holder of a Claim or Interest on account of such Claim or Interest against the Debtor without the written consent of Debtor or Order of the Court acquired by motion on notice to Debtor.  If the Holder of a Claim violates this provision, in addition to any other recourse or damages to which the Debtor may be entitled, the Claims of such Holder shall be disallowed, and any Distributions made on account of such Claims shall be repaid by such Holder to the Debtor.

**Section 7.5.    Injunctions or Stays.**  Unless otherwise provided by Court Order, all injunctions or stays arising under or entered during the Case under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**Section 7.6.    Exemption from Stamp, Transfer, and Other Taxes; Exemption from Securities Laws.**  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of assets under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar Tax.  The interests of Holders of Claims against the Estate or Debtor, if any, will constitute neither

- 35 -

"securities" under the Securities Act of 1933, as amended nor "equity securities" under Section 12(g) of the Securities Exchange Act of 1934, as amended (the "Exchange Act").  Even if such interests were, or were deemed, to constitute securities, the exemptions from registration provided by section 1145 of the Bankruptcy Code and by other applicable law apply to their issuance under the Plan.  Pursuant to Bankruptcy Code sections 1125 and 1145, the Debtor shall not be required to comply with the registration and, to the fullest extent possible under law, reporting requirements of the Securities Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended.  Further, because the assets of the Debtor will not be $10 million or more, even if such interests were, or were deemed, to constitute, equity securities within the meaning of Section 12(g) of the Exchange Act, no registration or reporting requirements under the Exchange Act would attach.

**Section 7.7.    No Admissions.**  Except as specifically provided in the Plan, nothing contained in the Plan shall be deemed or construed in any way as an admission by the Debtor or the Estate with respect to any matter set forth in the Plan, including the amount or allowability of any Claim, or the value of any property of the Estate.  Notwithstanding anything to the contrary in the Plan, if the Plan is revoked or withdrawn or is not confirmed, the Plan will be null and void, and nothing contained in the Plan will: (a) be deemed to be an admission by the Debtor or the Estate with respect to any matter discussed in the Plan, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgement, or release of any Claims, Interests, or any claims held by the Debtor or the Estate; or (c) prejudice in any manner the rights of the Debtor or the Estate in any further proceedings.

**Section 7.8.    Severability of Plan Provisions.**  If, before entry of the Confirmation Order, the Court holds that any Plan term or provision is invalid, void, or unenforceable, the Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision.  That term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or

invalidated.  The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section, is valid and enforceable under its terms.

Section 7.9.   Governing Law.  The rights and obligations arising under the Plan and any agreements, contracts, documents, or instruments executed in connection with the Plan will be governed by, and construed and enforced in accordance with, California law without giving effect to California law's conflict of law principles, unless a rule of law or procedure is supplied by: (a) federal law (including the Bankruptcy Code and the Bankruptcy Rules); or (b) an express choice-of-law provision in any document provided for, or executed under or in connection with, the Plan.

Section 7.10.   Successors and Assigns.  The rights, benefits, and obligations of any Person referred to in the Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assignee of that Person.

Section 7.11.   Nonconsensual Confirmation.  In the event that any of the Classes entitled to vote to accept or reject the Plan fails to accept the Plan in accordance with Bankruptcy Code section 1129(a)(8): (a) the Debtor reserves the right to modify the Plan in accordance with Bankruptcy Code section 1127; and (b) with respect to any Classes of Claims that do not accept the Plan or are deemed not to accept the Plan, the Debtor seeks confirmation under section 1129(b) of the Bankruptcy Code.  Notwithstanding any other provision of the Plan, the Debtor reserves the right to modify the Plan.

Section 7.12.   Revocation of the Plan.  The Debtor reserves the right to revoke or withdraw the Plan before the Effective Date.

Section 7.13.   Amendment or Modification of the Plan.  The Debtor may modify the Plan at any time before Confirmation.  However, the Court may under certain circumstances require a new disclosure statement and/or revoting on the Plan if the Debtor modifies the Plan prior to its Confirmation.  After Confirmation, modification of the Plan may occur in accordance with the provisions of Bankruptcy Code section 1127(b).  In accordance with section 1127 of the Bankruptcy Code, the Debtor reserves the right to alter, amend, or modify the

Plan, including amending or modifying it to satisfy the requirements of the Bankruptcy Code.

**Section 7.14.  Saturday, Sunday, or Legal Holiday.**  If any payment or act under the Plan should be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**Section 7.15.  Post-Effective Date Status Reports.**  Debtor shall file status reports regarding the implementation of the Plan and the review, prosecution, and resolution of Causes of Action, respectively, every one-hundred twenty (120) days following the Effective Date through entry of a final decree closing the Case, or as otherwise ordered by the Court.

**Section 7.16.  Post-Effective Date Notice.**  From and after the Effective Date, any Person who desires notice of any matter as to which the Bankruptcy Code requires notice to be provided shall file a request for post-Effective Date notice and shall serve the request on Debtor and counsel for Debtor; provided, however, that the U.S. Trustee and the Debtor shall be deemed to have requested post-Effective Date notice.

**Section 7.17.  Maintenance and Disposition of Trust Records.**  Debtor shall continue to maintain the books and records of account relating to any assets and liabilities of the Debtor. Debtor may destroy the books and records of the Debtor when its final decree is obtained, or it is dissolved under applicable law.

**Section 7.18.  Retention of Jurisdiction.**  The Court will retain and have such jurisdiction regarding the Case, proceedings in the Case and the Plan, as such jurisdiction existed before the Effective Date, including with respect to the following:

(a)      the resolution of any disputes regarding the interpretation, enforcement, breach, performance and/or a default under this Plan and the Confirmation Order;

(b)      the entry of such Orders as may be necessary or appropriate to implement, execute or consummate the provisions of the Plan, including, without limitations, the Confirmation Order, any appropriate Orders to affect the provisions of this Plan and to protect the Debtor and the Exculpated Parties

from Creditors' actions and all contracts, instruments, releases, modification of this Plan pursuant to Section 1127, and other agreements or documents created in connection with the Plan, and rights, title, or interest of the Estate, as modified, or specified under the Plan, in any property , including to determine the extent, validity and priority of any lien asserted against property of the Estate;

(c)    the determination of any and all motions, objections to Claims, adversary proceedings, applications, and contested or litigated matters that may be pending before the Court on the Effective Date or that, pursuant to the Plan, may be instituted by Debtor after the Effective Date;

(d)    ensuring that Distributions to Holders of Allowed Claims and Interests are accomplished as provided in the Plan;

(e)    hearing and determining any objections to Administrative Claims or Proofs of Claim, both before and after the Confirmation Date, including any objections to the classification of any Claim and to allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim, in whole or in part;

(f)    the entry and implementation of such Orders as may be appropriate in the event that the Confirmation Order is, for any reason, stayed, revoked, modified, reversed, or vacated;

(g)    the issuance of such Orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(h)    consideration of any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any Order of the Court, including the Confirmation Order;

(i)    determination of requests for payment of Claims entitled to priority under Section 507 including all applications of professionals for awards of compensation for services rendered and reimbursement of expenses

- 39 -

incurred prior to the Effective Date;

(j)     hearing and determining disputes arising in connection with, or relating to, the Plan or the interpretation, implementation, or enforcement of the Plan, or the extent of any Person's obligations incurred in connection with or released or exculpated under the Plan;

(k)     the recovery of all Assets of the Debtor and property of the Estate, wherever located, and the prosecution of all Causes of Action;

(l)     the issuance of injunctions or other Orders as may be necessary or appropriate to restrain interference by any Person with consummation, implementation, or enforcement of the Plan;

(m)     the determination of any other matters that may arise in connection with, or are related to, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan;

(n)     hearing and determining matters concerning state, local, and federal Taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)     hearing any other matter that is not inconsistent with the Bankruptcy Code;

(p)     hearing and determining, to the fullest extent authorized by applicable law, any issue or dispute directly or indirectly arising from or related to the Debtor, the Plan or the Assets;

(q)     hearing and determining any other matter deemed relevant to the consummation of the Plan or the administration of the Case;

(r)     interpreting and enforcing Orders entered by the Court; and

(s)     entry of a final decree closing the Case.

**Section 7.19.   Entry of a Final Decree.**  Promptly following the disposition of all Assets, including the Litigation Claims, and distribution of all Assets pursuant to the Plan, the Debtor will file a motion with the Court to obtain entry of a final decree closing the Case.

## VIII.    TAX CONSEQUENCES OF THE PLAN

**CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS**.

The following disclosure of possible tax consequences is intended solely for the purpose of alerting Creditors about possible tax issues the Plan may present to the Debtor.  The Plan Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all of the tax implications of any action.

### Federal Income Tax Consequences in General

The following summary addresses certain material federal income tax consequences of the Plan to the holders of Allowed Claims.  The summary is based upon the Internal Revenue Code, applicable Treasury Regulations, judicial authority and current administrative rulings and pronouncements of the IRS, all of which are subject to change, possibly with retroactive effect. Due to the differences in the nature of the various holders of Allowed Claims, their taxpayer status, residence and methods of accounting and prior actions taken by such Holders with respect to their Allowed Claims, the tax consequences described below are general in nature and are subject to significant considerations applicable to each holder of an Allowed Claim.

This discussion of the federal income tax consequences is not binding on the IRS, and the Debtor has not and does not intend to request an administrative ruling from the IRS with respect to any of the federal income tax aspects of the Plan.  No opinion of counsel has either been sought or obtained with respect to the federal, state, local or foreign tax aspects of the Plan.  Legislative, judicial or administrative changes or interpretations may be forthcoming that could alter or modify the statements and conclusions set forth herein.  Additionally, changes in the facts or circumstances relating to the consummation or operation of the Plan or other changes in circumstances could likewise affect the tax consequences to such parties.  The federal income tax consequences of the Plan and distributions are complex and subject to significant uncertainties. This summary does not address foreign, state or local tax consequences of the Plan except to the

extent noted herein, nor does it purport to address all of the federal income tax consequences of the Plan.  This summary also does not purport to address the federal income tax consequences of the Plan to Holders of Claims subject to special treatment under the federal income tax laws, such as broker-dealers, tax-exempt entities, financial institutions, insurance companies, limited liability companies, small business investment companies, mutual funds, regulated investment companies, foreign corporations, and foreign persons.

**The Debtor CANNOT and DOES NOT represent that the tax consequences below are the only tax consequences of the Plan because the Internal Revenue Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action on the Debtor's tax liability or the tax implications to holders of Allowed Claims and Interests.  Holders of Allowed Claims and Interests are urged to consult with their tax advisors about the state, local and foreign tax consequences of the transactions contemplated under or in connection with the Plan.**

A distribution paid to a Holder of an Allowed Claim that is attributable to accrued but unpaid interest should be treated as ordinary income. Although not free from doubt, the intent is to treat payments as applied first to principal, and if the principal amount is paid in full, then any interest portion of the Allowed Claim.

**Importance of Obtaining Professional Tax Assistance.**

**The foregoing is intended as a summary only and is not a substitute for careful tax planning with a tax professional.  The U.S. federal, foreign, state and local income and other tax consequences of the Plan are complex and, in some cases, uncertain.  Such consequences may also vary based on the particular circumstances of each holder of an Allowed Claim. Accordingly, each holder of an Allowed Claim is strongly urged to consult with his, her or its own tax advisor regarding the federal, foreign, state and local income and other tax consequences under the Plan.**

**To ensure compliance with requirements imposed by the Internal Revenue Service, acting on behalf of the United States Treasury, you must be informed that any tax information contained in this Disclosure Statement is not intended or written to be used, and**

**cannot be used, by any taxpayer for the purpose of avoiding tax-related penalties under any applicable law or regulation.  The tax information contained in this Disclosure Statement was written to support the promotion of the transactions described in this Disclosure Statement.**

**IX.      EFFECT OF CONFIRMATION OF THE PLAN**

####      A.      Revesting Of Property In Debtor

All property of the Estate shall be revested in the Reorganized Debtor on the Effective Date.

####      B.      Property Free and Clear of Claims

Except as provided herein to the contrary, all property of the Estate distributed under the Plan shall be distributed free and clear of all Claims asserted by any Claimants, Interest Holders, parties in interest and other entities.

####      C.      Limitation of Liability

Except to the extent arising from fraud, willful misconduct, gross negligence, or legal malpractice, none of the Debtor, GFH, CLC, and their respective representatives ("Exculpated Parties"), will have or incur any liability as set forth in 11 U.S.C §1125(e) to any holder of a Claim or Interest or any other entity for any act or omission in connection with, from any Cause of Action for any claim related to any act or omission arising on or after the Petition Date and through the Effective Date in connection with, relating to, or arising out of, the Bankruptcy Case, the formulation, preparation, dissemination, negotiation, filing, or pursuit of approval of the Disclosure Statement or the Plan, or the solicitation of votes for or confirmation of the Plan , the Sale, or any transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the Sale, or the Plan, the filing of the Bankruptcy Case (the "Chapter 11 Process").  The Exculpated Parties have, and upon the Confirmation Date will be deemed to have, participated in good faith and in compliance with applicable laws with regard to the Chapter 11 Process  and, therefore, will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the Chapter 11 Process.

**D.      No Liability for Solicitation or Participation**

As specified in Section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law,  rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer issuance, sale, or purchase of securities.

**E.      Corporate Actions**

On the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects (subject to the provisions of this Plan) by virtue of the entry of the Confirmation Order, in accordance with the Bankruptcy Code and applicable state law and without any requirement of further action by the Debtor, the stockholders, officers or directors of the Debtor.  All matters provided for under the Plan involving the corporate structure of the Debtor and any corporate action required by the Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect pursuant to the Bankruptcy Code, without any requirement of further action by the Debtor, shareholders, officers or directors of the Debtor.  On the Effective Date, the Reorganized Debtor is authorized and directed to implement the provisions by the Plan and any other agreements, documents and instruments contemplated by the Plan.

**F.      Post-Confirmation Injunction**

The Plan is the sole means for resolving, paying, or otherwise dealing with Claims and Interests with respect to the Estate, the Debtor, and their Assets.  To that end, except as expressly provided herein, at all times on and after the Effective Date, all Persons who have been, are, or may be Holders of Claims or Interests arising prior to the Effective Date shall be permanently enjoined from taking any of the following actions on account of any such Claims or Interests, against the Estate, the Debtor, or their Assets (other than actions brought to enforce any rights or obligations under the Plan and any Claim, contested matters, or adversary proceedings pending in the Case as of the Effective Date):

1.    Commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Estate, the Debtor, or the Professionals, their successors, or their respective property or assets (including, without limitation, all suits, actions, and proceedings that are pending, other than before the Bankruptcy Court or by explicit provision of the Bankruptcy Court, as of the Effective Date);

2.    Enforcing, levying, attaching, executing, collecting, or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree, or Order against the Estate, the Debtor, or the Professionals, their successors, or their respective property;

3.    Creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien against the Estate, the Debtor, or the Professionals, their successors, or their respective Assets; and

4.    Proceeding in any place whatsoever against the Estate, the Debtor, or the Professionals, their successors, or their respective Assets, in any manner that does not conform to or comply with the provisions of the Plan.

5.    No suit, action, or other proceeding may be commenced, conducted, or continued in any manner, directly or indirectly, by a Holder of a Claim or Interest on account of such Claim or Interest against the Debtor without the written consent of Debtor or Order of the Bankruptcy Court acquired by motion on notice to Debtor.  If the Holder of a Claim violates this provision, in addition to any other recourse or damages to which the Debtor may be entitled, the Claims of such Holder shall be disallowed, and any Distributions made on account of such Claims shall be repaid by such Holder to the Debtor.

### G.    Modification of Plan

The Debtor may modify the Plan at any time before the Confirmation Hearing Date. However, the Bankruptcy Court may under certain circumstances require a new disclosure statement and/or revoting on the Debtor modifies the Plan prior to confirmation of the Plan.  After confirmation, modification of the Plan may occur in accordance with the provisions of Bankruptcy Code section 1127(b).

**H.      Post-Confirmation Status Report**

Within 120 days of the entry of the Confirmation Order, the Debtor shall file a status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee and those parties who have requested post-Effective Date notice in accordance with Section 7.15 of the Plan. Further status reports shall be filed every 120 days and served on the same entities.

**I.      Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of entry of the Confirmation Order shall be paid to the United States Trustee on or before the effective date of the plan. Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after the Confirmation Order shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree.

**J.      Post-Confirmation / Pre-Effective Date**

During the period between the Confirmation Hearing Date—provided that the Bankruptcy Court confirms the Plan—and the occurrence of the Effective Date, the Debtor will continue to manage the business and affairs of the Debtor as a debtor and debtor in possession under the Bankruptcy Code.

**K.      Post-Confirmation Conversion/Dismissal**

A Creditor or party in interest may bring a motion to convert or dismiss the Case under Bankruptcy Code section 1112(b), after the Plan is confirmed.  If the Bankruptcy Court orders the Case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the Estate, and that has not been disbursed pursuant to the Plan, will revest in the chapter 7 estate, and the automatic stay will be reimposed upon the revested property.

**L.      Final Decree**

Once the Estate has been fully administered as referred to in Rule 3022 of the Federal Rules of Bankruptcy Procedure, Debtor shall file a motion with the Bankruptcy Court to obtain a final decree to close the Case.

**M.      Exemption from Stamp, Transfer and Other Taxes**

Pursuant to Section 1146(c), the issuance, transfer, or exchange of assets under the Plan by

the Debtor, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**N.    Headings**

Headings are used in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

**O.    Binding Effect**

The Plan shall be binding upon and inure to the benefit of the Estate, Claimholders, Holders of Interests, and their respective successors or assign.

**P.    Governing Law**

Unless a rule of law or procedure is supplied by (1) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (2) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, this Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California without giving effect to the principles of conflict of laws thereof.

**Q.    Other Documents and Actions**

The Debtor may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under this Plan.

**R.    Inconsistencies**

In the event that any provisions of this Plan are inconsistent with the provisions of the Disclosure Statement, the provisions of this Plan shall control.

**S.    Effectiveness of Court Orders**

All orders and judgments, including injunctions, entered by the Bankruptcy Court during the Bankruptcy Case, and in existence on the Confirmation Date, shall remain in full force and

effect from and after the Effective Date, to the extent not inconsistent with the provisions of this Plan or the Confirmation Orde

## X.      RECOMMENDATION AND CONCLUSION

The Debtor believes that Plan confirmation and implementation are preferable to any feasible alternative.  **Accordingly, the Debtor urges Persons who hold Allowed Claims entitled to vote to accept the Plan by checking the box marked "Accept" on their Ballots and then returning the Ballots as directed in the Disclosure Statement.**

Dated: March 7, 2025

Respectfully submitted by
**GOE FORSYTHE & HODGES LLP**

By: /s/Robert P. Goe
Robert P. Goe
Attorneys for American Open Space
Remedies, LLC, a California limited
liability company, Debtor and Debtor in
Possession

## DECLARATION OF SCOTT KRENTEL

I, Scott Krentel, declare and state,

I am the authorized representative of Beaumont 1600, LLC, the Manager of American Open Space Remedies, LLC, the debtor and debtor in possession in the instant bankruptcy case ("Debtor") to make this declaration in support of *Debtor's Chapter 11 Plan of Reorganization Dated March 7, 2025* ("Plan"). I have personal knowledge of the facts stated herein, and if called upon to testify, I could and would competently and truthfully testify thereto. Capitalized terms set forth herein shall have the same meaning set forth in the Disclosure Statement.

1. Debtor's voluntary Chapter 11 petition commencing this Case was filed on November 8, 2024 ("Petition Date").

2. I have reviewed the Plan.

3. All statements and representations made in the Plan are truthful and accurate and I support approval of the same.

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

EXECUTED this 7th day of March 2025 in California.

_____
Scott Krentel

- 49 -

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 17701 Cowan, Lobby D, Suite 210, Irvine, CA 92614.

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION DATED MARCH 7, 2025; DECLARATION OF SCOTT KRENTEL IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 7, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Keith Patrick Banner    kbanner@greenbergglusker.com, calendar@greenbergglusker.com;cmillerwatkins@greenbergglusker.com**
- **Reem J Bello    rbello@goeforlaw.com, kmurphy@goeforlaw.com**
- **Jeffrey W Broker    jbroker@brokerlaw.biz**
- **Brian L. Davidoff    bdavidoff@greenbergglusker.com, calendar@greenbergglusker.com;jking@greenbergglusker.com;cmillerwatkins@greenbergglusker.com**
- **Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com**
- **Kenneth Misken    Kenneth.M.Misken@usdoj.gov**
- **Cole F. Nicholas    cnicholas@greenbergglusker.com, calendar@greenbergglusker.com;cmillerwatkins@greenbergglusker.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

☐    Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL**:
On (*date*) March 7, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows: Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:
(state the method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) March 7, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- The Honorable Scott Clarkson, USBC, 411 West Fourth Street, Suite 5130, Santa Ana, CA 92701

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 7, 2025 | Susan C. Stein | /s/Susan C. Stein |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

- 50 -